# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br>         Plaintiff, <br><br>         v. <br><br> THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, Delaware Statutory Trusts, <br><br>         Defendants. | Case No. |

**[PROPOSED] CONSENT JUDGMENT**

1

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), commenced this civil action against fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts"), which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 on September 14, 2017, to obtain injunctive relief, damages and other monetary relief, and civil money penalties.

The Complaint alleges violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1).

Plaintiff and Defendants request that the Court enter this Consent Judgment. The parties have agreed to resolve this case without further litigation. The Defendants waive service, answering the Complaint, and consent to the entry of this Consent Judgment against them by this Court, the terms of which are set forth herein.

## **FINDINGS**

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Plaintiff and Defendants agree to entry of this Order to settle and resolve all matters in this dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

3. Defendants neither admit nor deny any allegations in the Complaint, except as specifically stated in this Order. For the purposes of this Order,

Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

4.   Since at least November 1, 2012, in order to collect on defaulted private student loans, Defendants' Servicers filed Collections Lawsuits on behalf of Defendants in state courts across the country. In support of these lawsuits, Subservicers on behalf of Defendants executed and filed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, Defendants' Servicers on behalf of Defendants filed more than 2,000 debt collections lawsuits without the documentation necessary to prove Trust ownership of the loans or on debt that was time-barred. Finally, notaries for Defendants' Servicers notarized over 25,000 affidavits even though they did not witness the affiants' signatures.

5.   Defendants waive any rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including without limitation attorneys' fees.

6.   Entry of this Order is in the public interest.

## DEFINITIONS

7.   The following definitions apply to this Order:

a. "Administration Agreements" means the agreements by and among each of the Trusts and the Administrator dated November 1, 2001 (Master Trust); December 11, 2003 (NCSLT 2003-1); September 10, 2004 (NCSLT 2004-1); October 28, 2004 (NCSLT 2004-2); February 23, 2005 (NCSLT 2005-1); June 9, 2005 (NCSLT 2005-2); October 12, 2005 (NCSLT 2005-3); March 9, 2006 (NCSLT 2006-1); June 9, 2006 (NCSLT 2006-2); June 8, 2006 (NCSLT 2006-3); December 7, 2006 (NCSLT 2006-4); March 8, 2007 (NCSLT 2007-1); June 14, 2007 (NCSLT 2007-2); September 20, 2007 (NCSLT 2007-3); and September 20, 2007 (NCSLT 2007-4).

b. "Administrator" means the Administrator, as defined in the Trust Indenture, providing certain duties of the Trusts pursuant to the Administration Agreements.

c. "Affected Consumers" includes Consumers who are or were subject to a Collections Lawsuit filed by Defendants' agents on behalf of Defendants on or after November 1, 2012 to collect a Debt where (a) the documentation necessary to prove the existence of the Debt does not exist or cannot be located by Defendants; (b) the documentation necessary to prove Trust ownership of the Debt does not exist or cannot be located by Defendants; or (c) the lawsuit was time-barred.

d. "Affiant" means any signatory to an Affidavit, other than one signing solely as a notary or witness to the act of signing, signing in his or her capacity as an employee or agent of Defendants,

4

including employees or agents of Defendants' Servicers or Subservicers.

e.    "Affidavit" means any sworn statement filed with a court in connection with litigation to collect on a Debt.

f.    "Board" means the registered owner of a majority of the beneficial interest in each of the Trusts.

g.    "Clearly and Prominently" means

    i.    as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

    ii.    as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

h.    "Collections Lawsuits" means attempts by Defendants' Servicers on behalf of Defendants (or a third party acting on their behalf for an account owned or alleged to be owned by Defendants) through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

i.    "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

j.     "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services that are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

k.     "Effective Date" means the date on which the Order is entered on the docket by the Court.

l.     "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

m.     "Primary Servicer" means the Servicer servicing student loans for Defendants under the Amended and Restated Private Student Loan Servicing Agreement dated September 28, 2006.

n.     "Related Consumer Action" means a private action by or on behalf of one or more Consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

o.     "Relevant Period" includes the period from November 1, 2012 to the Effective Date.

p.     "Defendants" means any or all of the fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts," which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT

6

2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4) and their successors and assigns.

q.      "Servicer" (or "Trusts' Servicer") means any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of Defendants with respect to the servicing of the student loans owned by Defendants, whether retained directly by Defendants or retained by an individual or entity acting on behalf of Defendants.

r.      "Servicing Agreement" means any Servicing Agreement that meets the definition of Servicing Agreement in each Trust's Indenture.

s.      "Special Servicer" means the Servicer providing services to the Trusts with respect to defaulted and delinquent student loans under the Special Servicing Agreements dated March 1, 2009 and May 1, 2009 (the "Special Servicing Agreements").

t.      "Subservicer" means any service provider that was retained by, and contracted with, directly or indirectly, the Special Servicer, as an agent of the Special Servicer, to provide services, including default prevention, and collection services, including but not limited to litigation, with respect to the servicing of the student loans owned by Defendants.

u.      "The Trust Agreements" are the Trust Agreements creating each of the Trusts.

7

## **ORDER**

**IT IS ORDERED** that:

### I. **Conduct Requirements**

8.     Defendants must provide all Defendants' Servicers that are engaged in the servicing or collection of Debts with actual notice of this Order within thirty (30) days of the Effective Date.

9.     Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

a.     Defendants shall take all actions necessary to comply with the terms of the Order, including but not limited to ensuring that all of Defendants' Servicers acting as Defendants' agents comply with the terms of the Order.

b.     Defendants must require that any of Defendants' Servicers or other agents retained by Defendants in connection with servicing or collection of student loans (1) agree to abide by the terms and conditions of the Order and (2) require any agents that Defendants' Servicers hire in connection with servicing or collection of student loans to abide by the terms and conditions of the Order.

c.     Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or

indirectly, may not initiate a Collections Lawsuit to collect Debt unless they possess:

    i.    the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

    ii.    a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

d.    Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

e.    Defendants and their officers, agents, servants, employees, and attorneys who have actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, may not collect any Debt through Collections Lawsuits that Defendants or their agents have any reason to believe may be unenforceable.

f.    Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting

directly or indirectly, are permanently restrained and prohibited, in connection with the collection of a Debt, from submitting any Affidavit:

i.    containing an inaccurate statement;

ii.    in which the Affiant represents, expressly or by implication, that the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records when that is not the case;

iii.    in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the Consumer's Debt when that is not the case;

iv.    in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the loan's chain of assignment or ownership when that is not the case;

v.    in which the Affiant represents, expressly or by implication, that the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership when that is not the case;

vi.    representing, expressly or by implication, that the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

vii.    in which the Affiant represents, expressly or by implication, that any documents or records concerning the Debt that

forms the basis of the Collections Lawsuit have been reviewed by the Affiant when that is not the case.

10. Defendants are permanently restrained and prohibited from reselling Debt that is time-barred or for which Defendants lack the necessary documentation required by Paragraph 9(c) without obtaining the written agreement of the purchaser to comply with this Order.

11. Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, including but not limited to all of Defendants' Servicers, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony in a Collections Lawsuit that contains any misrepresentations, including false statements that the witness:

    a.   is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

    b.   has personal knowledge of the Consumer's Debt;

    c.   has personal knowledge of the loan's chain of assignment or ownership; or

    d.   has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

12. If Defendants determine that any of their agents, including but not limited to all of Defendants' Servicers, are on behalf of Defendants engaging in any conduct prohibited by this Order, including but not limited to Paragraphs

9 and 11 of this Order, Defendants promptly will take the necessary steps to ensure that their agents cease any and all practices that violate this Order.

13.    Within thirty (30) days of making any determination described in Paragraph 12, Defendants must submit to the Enforcement Director a report detailing (1) the practices that violate the Order, (2) the specific agents engaged in the practices in question, and (3) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

14.    With regard to pending Collections Lawsuits in which Defendants, through actions taken by Defendants' Servicers acting on behalf of Defendants, have filed an Affidavit that contains any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must either withdraw the pending Collections Lawsuit or ensure that the Affidavit is withdrawn. Defendants must instruct their attorneys, Defendants' Servicers, and their agents to either withdraw the pending Collections Lawsuit or notify the court of the following in writing while simultaneously providing the court with a copy

12

of the Order entered into between the Bureau and Defendants: "Plaintiff withdraws the affidavit of [insert name of affiant] pursuant to an Order entered into by the Consumer Financial Protection Bureau and the National Collegiate Student Loan Trusts."

15.     With regard to concluded Collections Lawsuits in which Defendants, through actions of Defendants' Servicers acting on behalf of Defendants, filed with a court or in arbitration an Affidavit that contained any misrepresentations—including but not limited to false statements that the Affiant (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Defendants must instruct their attorneys, the Defendants' Servicers, and their agents to cease post-judgment enforcement activities and will seek, and will instruct their agents to seek, to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such concluded Collections Lawsuits.

16.     With regard to servicing of Debt owned by Defendants, Defendants shall within ten (10) days of the Effective Date (1) direct the Primary Servicer to cease transferring any Debt to the Special Servicer and any Subservicer and

instead retain possession of the Debt pending approval and implementation of the Compliance Plan provided for in Section III; (2) direct the Special Servicer and any Subservicer to suspend further collection efforts on all Debt owned by Defendants pending approval and implementation of the Compliance Plan provided for in Section III; (3) direct the Special Servicer and any Special Servicer agent to discontinue making outbound call attempts, sending collection letters, providing negative reports to any of consumer reporting agencies the credit bureaus, or other efforts as may be instructed by Defendants and are necessary to effectuate compliance with this Order; (4) direct the Primary Servicer to instruct the Special Servicer and all Subservicers to return to the Primary Servicer all student loans in their portfolio owned by Defendants that are completed and the subject of each monthly Compliance Audit Report described in Paragraph 20; and (5) direct Defendants' Servicers  to take any other appropriate actions necessary to effectuate compliance with this Order as instructed by the Defendants.

17. Defendants shall direct (1) the Primary Servicer and Special Servicer to remit all payments from Consumers to an escrow account as designated by Defendants pursuant to Paragraph 18; (2) the Subservicer to remit funds to the Special Servicer and the Special Servicer to remit those payments to the escrow account as designated by Defendants pursuant to Paragraph 18; and (3) the Primary Servicer and Special Servicer to provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants.

18.     Nothing in this Order shall prohibit Defendants or their Servicers from
accepting payments from Consumers made in the regular course on Debt
that is not subject to a Collections Lawsuit. All such payments shall be held
in escrow until the requirements of Paragraphs 9(c)(1) and (2) are satisfied
and Defendants have determined that sufficient loan documentation exists
to either retain the payment or refund the amount paid as to be provided
for in the Compliance Plan of Section III. Defendants may use funds from
the escrow to carry out Trust operations, including payments to
noteholders sufficient to avoid events of default under the Indenture
Trust, auditors, consultants, accountants, legal counsel, and other
necessary professionals.

## II. Compliance Audit

19.     Within thirty (30) days of the Effective Date, Defendants must secure and
retain one or more qualified, independent consultants or auditors with
specialized experience in the servicing of student loans, and acceptable to
the Enforcement Director, to conduct an independent audit of all of the
servicing and collecting conducted by Defendants' Servicers on student
loans owned by Defendants from inception of each of the Trusts to the
present, using procedures and standards generally acceptable to the
student loan–servicing industry. The purposes of the Compliance Audit
must be to determine, at a minimum:

a.      For each and every student loan, whether Defendants, or their
agents (including Defendants' Servicers), have or ever had in their
possession sufficient loan documentation, including signed

15

promissory notes and documentation reflecting the complete chain of assignment since the loan's origination, to support the claim that a Debt is currently owed to a Trust, including but not limited to, assignments from the Debt's originator to the Trust claiming ownership and any subsequent assignments by the Trust to a student loan guarantor (such as The Education Resources Institute or its successors);

b.    Whether certain loans owned by Defendants are no longer legally enforceable because the applicable statute of limitations has expired;

c.    Whether Collections Lawsuits have been filed on any loans for which sufficient documentation, including signed promissory notes and documentation reflecting the complete chain of assignment from the Debt's originator to the Collections Lawsuit's named plaintiff, is not in the possession of the Collections Lawsuit's named plaintiff, or a Defendants' Servicer acting on behalf of the named plaintiff, to prove the existence of the Debt owed to the Trust in question, or where the applicable statute of limitations has expired;

d.    Whether judgments were obtained in Collections Lawsuits described in Paragraph 19(c), the identity of Consumers from whom the Defendants obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers;

16

e.       Whether any student loans were disbursed to the Consumers after the loans allegedly were transferred to the Defendants;

f.       Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, have failed to comply with any Federal consumer financial law or any of the Servicers' Servicing Guidelines; and

g.       Whether any of Defendants' agents, including but not limited to any of Defendants' Servicers, are or have engaged in any practices on behalf of Defendants after the Effective Date that violate this Order.

20.   Within one hundred and eighty (180) days of the Effective Date and each thirty (30) days thereafter until finished, the independent consultant(s) must provide a written report to Defendants detailing the findings of the audit (the "Compliance Audit Reports"). The Compliance Audit Report with respect to additional Affected Consumers shall be completed within one hundred and eighty (180) days of the Effective Date, and the remainder of the Compliance Audit Reports within three hundred and sixty (360) days of the Effective Date. The Compliance Audit Report shall include the auditors' findings, conclusions, and a description of its methodology.

21.   Defendants must provide the Compliance Audit Reports to the Enforcement Director within fourteen (14) days of receipt by Defendants.

22.   Within thirty (30) days of receiving the final Compliance Audit Report identified in Paragraph 20, Defendants must submit to the Enforcement

Director for review and non-objection an amendment to the Compliance Plan ("Amended Compliance Plan") described in Section III to:

a.  ensure the withdrawal and dismissal without prejudice of any pending Collections Lawsuits identified in Paragraph 19(c);

b.  ensure that Defendants and their agents, including but not limited to any of Defendants' Servicers, will not take any steps to initiate collections or furnish negative reports to consumer reporting agencies, on loans identified in Paragraph 19(a), or accept payments on any defaulted Debts, unless and until Defendants first verify the existence of the documentation referenced in that subparagraph in order to prove the existence of the Debt and the identity of the current owner;

c.   ensure that Defendants and their agents, including but not limited to any of Defendants' Servicers, will not take any steps to collect Debts by any means on any loans identified in Paragraph 19(b) without Clearly and Prominently disclosing to the Consumer as follows:

    i.  For those time-barred debts that generally cannot be included in a consumer report under the provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your

18

credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

ii. For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

23. Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 22.

24. Defendants will be deemed to have complied with the disclosure requirements of Paragraph 22 if Defendants or their agents makes a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 22.

25. The Enforcement Director will have the discretion to make a determination of non-objection to the Amended Compliance Plan or to direct the Defendants to revise it. If the Enforcement Director directs the Defendants to revise the Amended Compliance Plan, Defendants must

make the requested revisions and resubmit the Amended Compliance Plan to the Enforcement Director within thirty (30) days.

26.     After receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Amended Compliance Plan.

27.     Within thirty (30) days of receiving notification that the Enforcement Director has made a determination of non-objection to the Amended Compliance Plan, Defendants will provide the Amended Compliance Plan and the Compliance Audit Reports to Transworld Systems, Inc. ("TSI"), or, if applicable, to the Defendants' successor Special Servicer or Subservicer.

## III.    Compliance Plan

28.     Within one hundred and twenty (120) days of the Effective Date, Defendants must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendants and Defendants' Servicers acting on their behalf comply with all applicable Federal consumer financial laws and the terms of this Order ("Compliance Plan"). The Compliance Plan must include, at a minimum:

a.      Detailed steps for addressing each action required by this Order including operations meetings with the Primary Servicer;

b.      Specific timeframes and deadlines for implementation of the steps described above; and

c.   Comprehensive, written policies and procedures designed to ensure that any agents acting on behalf of the Defendants do not engage in practices in violation of this Order. These policies and procedures must include:

i.   Detailed steps for addressing each action required of the Defendants or their agents, including but not limited to the Defendants' Servicers, by this Order;

ii.   Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers including regular operations meetings with and audits of each Servicer and establishment of procedures to respond to exception requests;

iii.   An effective employee training program required for all of the agents' employees, including but not limited to Affiants, whose duties include reviewing, drafting, preparing, processing, verification, execution or notarization of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

iv.   Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

21

v.    Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit; and

vi.   Comprehensive, written policies and procedures designed to ensure that any law firms engaged by any agent to collect Debt does not violate any Federal consumer financial laws, which must include, at a minimum:

(1)   the law firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

(2)   the law firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and the agent's policies and procedures related to Collections Lawsuits;

(3)   the agent's authority to conduct periodic onsite reviews of the law firm's controls, performance, and information systems related to Collections Lawsuits; and

(4)   periodic review by the agent of the law firm's controls, performance, and information systems related to Collections Lawsuits.

29.   The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct

Defendants to revise it. If the Enforcement Director directs Defendants to revise the Compliance Plan, Defendants must make the revisions and resubmit the Compliance Plan to the Enforcement Director within thirty (30) days.

30. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## IV.    Role of the Board

31. The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

32. Although this Order requires Defendants to submit certain documents for the review or non-objection by the Enforcement Director, the Board of Defendants will have the ultimate responsibility for proper and sound management of Defendants and for ensuring that Defendants comply with Federal consumer financial law and this Order.

33. In each instance that this Order requires the Board to ensure adherence to or perform certain obligations of Defendants, the Board must:

    a.    Authorize whatever actions are necessary for Defendants to fully comply with the Order;

    b.    Require timely reporting by Defendants' Servicers to the Board on the status of compliance obligations; and

23

    *c.*    Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## V. Order to Pay Redress

34.    Within ten (10) days of the Effective Date, the Defendants must reserve or deposit into a segregated deposit account $3,500,000, for the purpose of providing redress to Affected Consumers as required by this Section.

35.    Within one-hundred and twenty (120) days of the Effective Date, the Defendants must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress to the previously identified Affected Consumers consistent with this Order ("Redress Plan"). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Defendants to revise it. If the Enforcement Director directs Defendants to revise the Redress Plan, Defendants must make the revisions and resubmit the Redress Plan to the Enforcement Director within thirty (30) days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendants must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

36.    The Redress Plan must apply to all Affected Consumers and:

    a.    Specify how Defendants will identify all Affected Consumers;

b.   Provide processes for providing redress covering all Affected Consumers including providing redress for:

    i.   Affected Consumers where the documentation necessary to prove the existence of the Debt did not exist or cannot be located by Defendants;

    ii.   Affected Consumers where the documentation necessary to prove Trust ownership of the Debt did not exist or cannot be located by Defendants; and

    iii.   Affected Consumers who were subject to a Collections Lawsuit outside the applicable statute of limitations.

c.   Include a description of the following:

    i.   Methods used to compile a list of potential Affected Consumers;

    ii.   Methods used to calculate the amount of redress to be paid to each Affected Consumer;

    iii.   Procedures for issuance and tracking of redress to Affected Consumers; and

    iv.   Procedures for monitoring compliance with the Redress Plan.

37.   The Redress Plan, at a minimum, must provide full restitution of all amounts collected since the initiation of the Collections Lawsuit filed against them from:

a.   The approximately 2,700 Affected Consumers identified prior to the Effective Date, who paid approximately $3,500,000; and

25

    b.    The Affected Consumers identified by the Compliance Audit in Section II.

38.    The Redress Plan must describe the process for providing redress for Affected Consumers and must include the following requirements:

    a.    A timetable for providing restitution to Affected Consumers identified in Paragraph 37(a) and (b) that provides restitution to each group of Affected Consumers as soon as practicable;

    b.    Defendants must mail a bank check to each Affected Consumer along with a Redress Notification Letter (as defined below);

    c.    Defendants must send the bank check by United States Postal Service first-class mail, address correction service requested, to the Affected Consumer's last known address as maintained by Defendants' records;

    d.    Defendants must make reasonable attempts to obtain a current address for any Affected Consumer whose Redress Notification Letter or redress check is returned for any reason, using the National Change of Address System, and must promptly re-mail all returned letters and redress checks to current addresses, if any; and

    e.    Processes for handling any unclaimed funds.

39.    With respect to redress paid to Affected Consumers, the Redress Plan must include:

    a.    The form of the letter ("Redress Notification Letter") to be sent notifying Affected Consumers of the redress, which must include language explaining the manner in which the amount of redress

26

was calculated and a statement that the provision of the refund payment is in accordance with the terms of this Order; and

b. The form of the envelope that will contain the Redress Notification Letter.

40. Defendants must not include in any envelope containing a "Redress Notification Letter" any materials other than the approved letters and redress checks, unless Defendants have obtained written confirmation from the Enforcement Director that the Bureau does not object to the inclusion of such additional materials.

41. Within ninety (90) days of completion of the Redress Plan, Defendants must submit a report ("Redress Plan Report") to the Enforcement Director, which must include a review and assessment from an independent auditor agreed upon by Defendants and the Enforcement Director, on Defendants' compliance with the terms of the Redress Plan, including:

a. The methodology used to determine the population of Affected Consumers;

b. The redress amount for each Affected Consumer;

c. The total number of Affected Consumers;

d. The procedures used to issue and track redress payments;

e. The amount, status, and planned disposition of all unclaimed redress payments; and

    f.      A description of the work of independent consultants that Defendants have used, if any, to assist and review their execution of the Redress Plan.

42.    Defendants must submit an Amended Redress Plan within thirty (30) days of the completion of the Compliance Audit with respect to additional Affected Consumers required by Section II that incorporates the results of that Audit. The amended Redress Plan must contemplate providing full restitution to all additional Affected Consumers identified in the Compliance Audit within 120 days of submission of the Amended Redress Plan.

43.    Defendants must provide all of the relief to Consumers required by the Order, regardless of whether the total of such relief exceeds the amount reserved or deposited into a segregated account in this Section.

44.    After completing the Redress Plan, if the amount of redress provided to Affected Consumers is less than $3,500,000, within thirty (30) days of the completion of the Redress Plan, Defendants must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Affected Consumers and $3,500,000.

45.    The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as

disgorgement. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

46. Defendants may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer's waiving any right.

47. With regard to the Debt that has yet to be collected from Affected Consumers for whom Defendants and their agents do not possess or cannot locate the documentation necessary to prove the existence of the Debt or Defendants' ownership of the Debt, Defendants must within one hundred and twenty (120) days of the Effective Date—and for Affected Consumers identified in the Compliance Audit Reports, within thirty (30) days of the completion of the Compliance Audit Reports—instruct that their agents within 90 days:

   a. Withdraw, dismiss, or terminate all pending Collections Lawsuits filed against Affected Consumers;

   b. Release or move to vacate all judgments obtained during the Relevant Time Period in connection with these Collections Lawsuits;

   c. Cease post-judgment enforcement activities and seek to remove, withdraw, or terminate its active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any Collections Lawsuits;

    d.      Refrain from (i) representing to a Consumer or any other person that Defendants are or were owed a Debt, (ii) taking any steps to collect or to seek to collect the Debt in question, (iii) furnishing reports on the Debt in question, except as otherwise required by this Order; and

    e.      Request that the consumer reporting agencies correct any affected collection account or tradeline, which may include amending, deleting, or suppressing the incorrect account or tradeline.

48.    With regard to time-barred Debt that has yet to be collected from Affected Consumers, Defendants and their agents will not take any steps to collect Debts by any means without Clearly and Prominently disclosing to the consumer:

    a.      For those time-barred debts that generally cannot be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), but can be collected through other means pursuant to applicable state law, Defendants will instruct their agents to include the following statement: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."

    b.      For those time-barred debts that can be collected through other means pursuant to applicable state law, and may be included in a consumer report under the provisions of the FCRA, 15 U.S.C. § 1681c(a), Defendants will instruct their agents to include the

following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

49.   Defendants and their agents are prohibited from making any representation or statement, or from taking any other action that interferes with, detracts from, contradicts, or otherwise undermines the disclosures required in Paragraph 48.

50.   Defendants will be deemed to have complied with the disclosure requirements of Paragraph 48 if Defendants or their agents make a disclosure to Consumers in a specific jurisdiction that (1) is required by the laws or regulations of that jurisdiction, (2) complies with those laws or regulations, and (3) is substantially similar to the disclosure required by Paragraph 48.

## VI.   Order to Pay Disgorgement

51.   Defendants shall pay $7,800,000 as disgorgement for the proceeds they received from the unlawful practices related to the filing of Collections Lawsuits during the Relevant Period.

52.   Within ten (10) days of the Effective Date, Defendants shall pay the above amount in the form of a wire transfer to the Bureau or such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the CFPB. The Bureau will then transfer the payment to the United States Treasury as disgorgement.

53.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended,

will accrue on any outstanding amounts not paid from the date of default
to the date of payment, and will immediately become due and payable.

## VII.   Order to Pay Civil Money Penalty

54.   Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the
violations of law described in the Complaint, and taking into account the
factors in 12 U.S.C. § 5565(c)(3), the Defendants must pay a civil money
penalty of $7,800,000 to the Bureau.

55.   Within ten (10) days of the Effective Date, Defendants must pay the civil
money penalty by wire transfer to the Bureau or to the Bureau's agent in
compliance with the Bureau's wiring instructions.

56.   The civil money penalty paid under this Order will be deposited in the Civil
Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12
U.S.C. § 5497(d).

57.   Defendants must treat the civil money penalty paid under this Order as a
penalty paid to the government for all purposes. Regardless of how the
Bureau ultimately uses those funds, Defendants may not:

   a.   Claim, assert, or apply for a tax deduction, tax credit, or any other
tax benefit for any civil money penalty paid under this Order; or

   b.   Seek or accept, directly or indirectly, reimbursement or
indemnification from any source, including but not limited to
payment made under any insurance policy, with regard to any civil
money penalty paid under this Order.

58.   To preserve the deterrent effect of the civil money penalty in any Related
Consumer Action, Defendants may not argue that Defendants are entitled

to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Enforcement Director, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VIII.   Additional Monetary Provisions

59.   In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

60.   Defendants must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

61.   Under 31 U.S.C. § 7701, Defendants, unless they already have done so, must furnish to the Bureau their taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

62.   Within thirty (30) days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the

Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendants paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## IX.   Reporting Requirements

63.   Defendants must notify the Enforcement Director of any development that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' name or address. Defendants must provide this notice, if practicable, at least thirty (30) days before the development but in any case no later than fourteen (14) days after the development.

64.   Within one hundred and twenty (120) days of the Effective Date, and again one year after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report ("Compliance Report") that has been approved by the Board, which, at a minimum:

a.    Describes in detail the manner and form in which Defendants have complied with this Order; and

      b.    Attaches a copy of each Order Acknowledgment obtained under Section X, unless previously submitted to the Enforcement Director.

## X.  Order Distribution and Acknowledgment

65.    Within thirty (30) days of the Effective Date, Defendants must deliver a copy of this Order to each of their board members or owners as well as to any managers, employees, Servicers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

66.    For five (5) years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section IX, any future board members, executive officers, or owners, as well as to any managers, employees, Servicers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

67.    Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001–31, within thirty (30) days of delivery, from all persons receiving a copy of this Order under this Section.

## XI.  Recordkeeping

68.    Defendants must create, or if already created, must retain for at least five (5) years from the Effective Date, the following business records:

      a.    All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

     b.    All documents and records pertaining to the Redress Plan, described in Section V.

69.    Defendants must retain the documents identified in Paragraph 68 for the duration of the Order.

70.    Defendants must make the documents identified in Paragraph 68 available to the Bureau upon the Bureau's request.

## XII.   Notices

71.    Unless otherwise directed in writing by the Enforcement Director, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*In re* [name of Respondent], File No. Year-CFPB-    ," and send them either:

     a.    By overnight courier (not the U.S. Postal Service), as follows:

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1625 Eye Street, N.W.
        Washington D.C. 20006; or

     b.    By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1700 G Street, N.W.
        Washington D.C. 20552

## XIII.  Cooperation with the Bureau

72.    Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint. Defendants must provide truthful and complete information,

36

evidence, and testimony, and Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon five (5) days' written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XIV. Compliance Monitoring

73. Within fourteen (14) days of receipt of a written request from the Bureau, Defendants must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

74. Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

75. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XV. Retention of Jurisdiction

76. The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

77. Notwithstanding the provisions of Paragraph 76, any time limits for performance fixed by this Order may be extended by mutual written agreement of the parties and without further Court approval. Additionally, details related to administration of §§ IX through XIV of this Order may be

37

modified by written agreement of the parties and without further Court approval. Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

## XVI. Administrative Provisions

78. The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Order in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order or to seek penalties for any violations of the Order.

79. Should Defendants seek to transfer or assign all or part of its operations that are subject to this Order, Defendants must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**IT IS SO ORDERED.**

Dated: _____                    _____
                                                                        UNITED STATES DISTRICT JUDGE

Consented and agreed to:


FOR THE CONSUMER FINANCIAL PROTECTION BUREAU:

ANTHONY ALEXIS
*Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

/s/ Carolyn Hahn                              _
Carolyn Hahn
(E-mail: Carolyn.Hahn@cfpb.gov)
(Phone: 202-435-7250)
Edward Keefe
(E-mail: Edward.Keefe@cfpb.gov)
(Phone: 202-435-9198)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

Attorneys for Plaintiff
Consumer Financial Protection Bureau

FOR THE NATIONAL COLLEGIATE STUDENT LOAN TRUSTS

Defendants National Collegiate Student Loan Trusts
Waive service and answer of the Complaint and
Consent to entry of this Consent Judgment.

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com


/s/ James A. Kosch
JAMES A. KOSCH
(E-mail: jkosch@mccarter.com)
(Telephone: 973-639-2028)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
Fax (973) 297-3964