## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : : : | C.A. No. 17-1323 (GMS) |
| Plaintiff, | : : | |
| v. | : : | |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST et al., | : : : | |
| Defendants. | : | |

## AMBAC'S MOTION TO INTERVENE AND
## REQUEST FOR BRIEFING SCHEDULE

Ambac Assurance Corporation ("Ambac") hereby moves pursuant to Fed. R. Civ. P. 24

to intervene in this action so it can oppose the Proposed Consent Judgment (D.I. 3-1) filed on

September 18, 2017, by plaintiff Consumer Financial Protection Bureau (the "CFPB") and by

persons purporting to act on behalf of the defendant student-loan securitization trusts.

## INTRODUCTION

Ambac is entitled to intervene in this action, and the CFPB's Proposed Consent Judgment

("Proposed Order") should not be so-ordered, if at all, until Ambac—and other interested

parties—have had the opportunity to address the validity of the purported consent provided and

the propriety of the requested relief.  Importantly, Ambac first obtained notice of the Proposed

Order two days ago, despite Ambac's significant interest in many of the named trusts (the

"Defendant Trusts").  The request that this Court enter the Proposed Order without affording

interested parties the opportunity to be heard is improper and should be denied, particularly

insofar as the Proposed Order is defective.

9996742v.1

The Proposed Order is purportedly filed on behalf of the Defendant Trusts, but that is clearly not true. Wilmington Trust Company ("WTC"), the Owner Trustee of the Defendant Trusts and the only entity entitled under Delaware law and the governing trust agreements to act on behalf of the Defendant Trusts, did not provide its consent to the Proposed Order. Rather, after concluding that the indentures and related agreements forbid the proposed transaction, WTC refused to sign. WTC then submitted notice of resignation as Owner Trustee in July 2017 and petitioned the Delaware Court of Chancery for a successor. In accordance with the trust agreements, WTC's resignation cannot take effect until its successor is appointed, but eligible institutions have thus far refused to take the job, and the question of WTC's resignation has been placed before the Court of Chancery, where a hearing is scheduled for October 9, 2017.

Indeed, both the complaint filed in this action and the Proposed Order is silent as to how the consent of the Defendant Trusts allegedly was secured. The signatory of the Proposed Order is a law firm, McCarter & English ("McCarter"), and the Proposed Order does not specify the entity that has directed that firm to provide the consent on behalf of the Defendant Trusts.

What is clear is that the Proposed Order mandates a number of steps contrary to the indentures and other documents governing the Defendant Trusts. It demands that all payments from student-loan obligors to be redirected to an "escrow account" to be designated by the "Defendants" and held there until the Defendants have determined that certain conditions are satisfied. The waterfall provisions of, and the security interest granted by, the indentures are disregarded. While it allows "Defendants" to use funds from the escrow to carry out Trust operations, including payments sufficient to avoid events of default, there is no mandate for them to do so. The Proposed Order provides that the power to decide how to use the funds will be given to an entity whose purported interests in these trusts is being actively litigated, and that has

2

been alleged to have acted contrary to the interests of the trusts, Ambac, or investors.

Accordingly, the Proposed Order asserts control over millions of dollars of payments for an

unknown period of time, and places seemingly complete discretion over such monies in the

hands of a self-interested entity, all contrary to the terms of documentation agreed to over a

decade ago and observed by the parties thereto, including the Indenture Trustee, the Owner

Trustee, the Trust Administrator, the Servicers, Ambac, and the investors.  This complete

disregard of the governing documentation threatens not only this transaction but also calls into

question the fundamental assumptions that capital markets have long accepted in structuring

analogous transactions.

The Proposed Order is improper, and the CFPB's motion to approve it should be denied.

The parties with interests in the Defendant Trusts were only given formal notice of this action

on Monday.  Ambac respectfully requests that the Court set a briefing schedule permitting all

interested parties to be heard in connection with the CFPB's request for entry of the Proposed

Order.

## ARGUMENT

**I.     THIS COURT SHOULD GRANT AMBAC'S MOTION TO INTERVENE UNDER RULE 24 BECAUSE AMBAC HAS AN INTEREST IN THE SECURITIZATIONS THAT IS NOT ADEQUATELY REPRESENTED BY THE PARTIES**

Rule 24 provides that a court must permit a nonparty to intervene as of right where the

nonparty "claims an interest relating to the property or transaction that is the subject of the

action, and is so situated that disposing of the action may as a practical matter impair or impede

the movant's ability to protect its interest."  Fed. R. Civ. P. 24 (a)(2).  The non-conclusory

allegations set forth in a motion to intervene are accepted as true.  *See Endoheart AG v. Edwards*

*Lifesciences Corp.*, 14 Civ. 1473, 2015 U.S. Dist. LEXIS 150711, at *4 n.2 (D. Del. Nov. 6,

2015), *report & recommendation adopted*, 2016 U.S. Dist. LEXIS 42946 (D. Del. Mar. 31, 2016). A nonparty should be permitted to intervene as of right if it establishes that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014).

Alternatively, the court may exercise its discretion to permit intervention under Rule 24(b) where a nonparty "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). In exercising that discretion, the "central consideration" is "whether allowing intervention will cause delay or prejudice." *Bell Atl.-Del., Inc. v. Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999); *see also* Fed. R. Civ. P. 24(b)(3) (court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").

### A.   Ambac's Motion to Intervene Is Timely

In determining timeliness, the Court should consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). This action was commenced just two days ago, and particularly because the Proposed Order has not yet been entered, Ambac's intervention will neither prejudice the parties nor cause any undue delay in the proceedings. Under these circumstances, the instant motion is clearly timely.

### B.   Ambac Has Valid Interests in the Property and Transactions at Issue in this Matter

Under this factor, the Court must determine whether Ambac has a "significantly protectable" legal interest in the property or transaction at issue in this matter. *Mountain Top*

4

*Condo. Ass'n*, 72 F.3d at 366; *see also Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.").

Here, Ambac has a substantial economic and legal interest in this matter. Under indentures registered under the Trust Indenture Act, all of the Defendant Trusts have pledged all of their respective assets to an indenture trustee, U.S. Bank National Association (the "Indenture Trustee"), for the benefit of the holders of debt securities issued by the trusts and, in certain of the trusts, Ambac. As a regulated financial guarantee insurance company, Ambac has provided financial guarantee insurance with respect to securities in nine of the fifteen trusts, making up shortfalls in the relevant trusts' payments on their debt obligations.[1] This insurance requires Ambac to pay policy beneficiaries the full amount of unpaid interest when due from time to time, and unpaid principal at final maturity, for the guaranteed debt securities if the trusts fail to make such payments. As of September 30, 2017, Ambac is expecting to pay policy claims in connection with the insured trusts in an amount estimated to exceed $350 million. In the three trusts in which Ambac's insurance is direct, Ambac is a direct beneficiary of the indenture to secure the relevant trusts' obligation to reimburse Ambac for claims paid. In addition, Ambac is an investor in two of the trusts, owning approximately $150 million notional in bonds in such trusts.

---

[1] Ambac has guaranteed certain securities issued by three of the trusts, The National Collegiate Student Loan Master Trust I (the "Master Trust"), The National Collegiate Student Loan Trust 2007-3 ("NCSLT 2007-3"), and The National Collegiate Student Loan Trust 2007-4 ("NCSLT 2007-4"). In those three trusts (the "Ambac Wrapped Trusts"), Ambac is a direct beneficiary of the indenture. Securities issued by several other trusts (The National Collegiate Student Loan Trust 2003-1, The National Collegiate Student Loan Trust 2004-1, The National Collegiate Student Loan Trust 2005-1, The National Collegiate Student Loan Trust 2005-3, The National Collegiate Student Loan Trust 2006-2, and The National Collegiate Student Loan Trust 2006-3) are insured by Ambac indirectly.

9996742v.1

As the Third Circuit has explained, an "interest in a specific fund is sufficient to entitle

intervention in a case affecting that fund." *Mountain Top Condo Ass'n*, 72 F.3d at 366.  That

precedent squarely applies here, because Ambac—both as financial guaranty insurer and

investor—is a beneficiary of security interests in the precise trusts revenues the Proposed Order

would divert.  The risk that property in which the intervenor benefits from a security interest

might be wiped away "readily supports [the secured party's] entitlement to intervene as a matter

of right." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192

(D.N.J. 2015); *see also EEOC v. AT&T*, 506 F.2d 735, 741–42 (3d Cir. 1974) (permitting union

to intervene where proposed EEOC consent decree under which "provisions of its collective

bargaining agreements … may well be modified or invalidated").

### C.       Ambac's Interests May Be Impaired and Impeded by the Requested Relief

This factor requires the Court to "assess the practical consequences of the litigation" and

also "consider any significant legal effect" on Ambac's interest.  *Brody v. Spang*, 957 F.2d 1108,

1123 (3d Cir. 1992).

The Proposed Order diverts cash flows out of the Defendant Trusts controlled by the

Indenture Trustee, as secured party, and potentially places such cash flows, as well as servicing

oversight, in the hands of an entity whose authority to act on behalf of the trusts is being

challenged in several litigations, whose economic stake in the transactions and motivations

remain unclear and questionable, and whose interests are subordinated and may be adverse to the

interests of Ambac and the Defendant Trusts' investors.[2]  As a financial guarantor, Ambac also

---

[2] The Proposed Order contemplates a compliance audit of 800,000 loans.  The fees for that audit, which will be paid by the Defendant Trusts, could be significant.  In other contexts, Ambac has seen audit fees ranging from $25 to $100 *per loan.* If similar here, the audit fees contemplated by the Proposed Order could range from $20 million to $80 million, exclusive of legal or other expenses.

9996742v.1

has certain contractual rights that may be violated pursuant to this Proposed Order.  Ambac is therefore entitled to intervene in this matter.

**D.      The Existing Parties Will Not Adequately Represent Ambac's Interests**

The CFPB and McCarter are not adequately representing Ambac's interests or those of the Defendant Trusts.  Representation is inadequate if the existing parties' interests diverge from the movant's, or if "there is collusion between the representative party and the opposing party." *Brody*, 957 F.2d at 1123.

**1.      The CFPB Has Not and Will Not Represent Ambac's Interest**

The CFPB seeks to impose fees, penalties, and sanctions on the Defendant Trusts, which necessarily increases Ambac's exposure.  At the same time, by refusing the Defendant Trusts the right to obtain reimbursement or indemnification, Proposed Order ¶ 57(b), the CFPB is precluding the trusts from recovering from the parties actually engaged in the underlying wrongdoing, which in turn adversely affects Ambac's interests.  The CFPB clearly does not represent Ambac's interests.

**2.      The Purported Signatory on Behalf of the Trust Is Not Acting in Ambac's Interest**

McCarter does not represent Ambac's interests.  The client on whose behalf McCarter apparently acts —VCG Securities LLC and its affiliates (collectively "VCG") —has rejected a books and records demand Ambac sent on July 14, 2017 seeking a draft of the Proposed Order and refused Ambac's request to discuss the nature of the CFPB's investigation, and the negotiations and potential adverse impact to the trusts.  Moreover, by entering into the Proposed Order, which includes relief to which the Defendant Trusts may not agree under the terms of the Indentures, McCarter is acting in derogation of the trusts' and Ambac's interests.

7

9996742v.1

## II. THE PROPOSED ORDER IS UNAUTHORIZED AND INVALID, AND SHOULD NOT BE APPROVED

Although Ambac was deprived of information pertaining to basis for and negotiation of the Proposed Order, and therefore expressly reserves its right to supplement its position, it is evident that the Proposed Order is unauthorized and unenforceable.

First, the McCarter firm signed the Proposed Order, but it is unclear on whose authority it is doing so. As both the CFPB and McCarter are aware, the authority of McCarter's client, VCG, to act in the name of the trusts is currently in dispute and being litigated before Vice Chancellor Slights in the Court of Chancery action *National Collegiate Student Loan Master Trust et al. v. Pennsylvania Higher Education Assistance Agency*, C.A. No. 12111. Thus, until that dispute is resolved, or adjudicated herein, the Proposed Order may not be binding on the Defendant Trusts.

McCarter apparently is taking orders from Don Uderitz (Chairman and Chief Investment Officer of VCG). VCG claims to own 99.9999% of the residual equity interests in all of the trusts except the Master Trust (the "VCG Interests"). As noted above, the validity of VCG's ownership of the VCG Interests has been litigated for the past year in the Court of Chancery case. If VCG loses that case, then there can be no suggestion that it has the authority to direct the business of the Defendant Trusts.

But even if VCG validly acquired its positions in the trusts, the holder of a residual equity interest in the trusts is not commensurate with the equity interest in a corporation. To the contrary, any action taken in the name of the Defendant Trusts must be directed through WTC— the Owner Trustee, who has recently resigned. Section 2.04 of the Trust Agreement vests in the Owner Trustee "all the rights, powers and duties set forth" in the Trust Agreement or in the Delaware statute. That is consistent with the provisions of the Delaware statute that "the

9996742v.1

business and affairs of a statutory trust shall be managed by or under the direction of its

trustees." 12 Del. C. § 3806(a). The Trust Agreement further provides that "the Trust will act

solely in its own name and the Owner Trustee or other agents selected in accordance with this

Agreement will act on behalf of the Trust subject to direction by the Owners as provided herein,

but such action shall not be in violation of the terms of this Agreement." Trust Agreement

§ 2.03(b)(i) (emphasis added). The only agent "selected in accordance with this Agreement" is

the Administrator, GSS Data Services, Inc. Thus, only the Owner Trustee or its duly-appointed

agent, the Administrator, may act on behalf of the Trusts, and those are the only entities that

could have signed the Proposed Order on behalf of the trusts. But neither the Owner Trustee nor

the Administrator has agreed to the Proposed Order.[3]

Second, the parties to the Proposed Order have agreed to terms that are not contemplated

by, or otherwise violate, the governing trust documents. Even if it turns out that VCG is entitled

to direct the Owner Trustee in some respects, "No Owner shall direct the Owner Trustee to take

any action … contrary to … any Trust Related Agreement, nor shall the Owner Trustee be

obligated to follow any such direction, if given." Trust Agreement § 4.02(a). As WTC has

informed the Court of Chancery, the transactions contemplated with the CFPB are clearly

forbidden under the relevant agreements. The Indenture's "Granting Clause" conveys to the

Indenture Trustee all of the Issuer's assets as collateral security for the Issuer's obligations. The

Issuer may "not sell, transfer, exchange or otherwise dispose of any portion of the Indenture

---

[3] In July 2017, the CFPB acknowledged to Ambac counsel that it could not go forward in a settlement with the trusts unless the Owner Trustee participated. The CFPB was also made aware of the dispute concerning the validity of the VCG Interests and the issues associated with diverting cash flows under the terms of the indenture, yet ignoring both of these issues, commenced this action and filed a motion seeking approval of the Proposed Order.

9996742v.1

Trust Estate except as expressly permitted by this Indenture." Indenture § 3.23(m). The Issuer is

forbidden, "directly or indirectly, [to] make payments to or distributions from the Collection

Account except in accordance with this Indenture and the other Basic Documents." *Id.* § 3.17.

The Issuer may not permit the lien of the Indenture to be trumped, defeated or evaded. *Id.*

§§ 3.08(iii), 3.23(o).

The Proposed Order violates all of these principles and other terms of the transaction

documents. Paragraphs 17 and 18 divert all revenue to a fund controlled by VCG. The proposal

to use trust assets to pay fines is impermissible. All of that money is pledged to the Indenture

Trustee.

**CONCLUSION**

Ambac respectfully requests that this Court grant Ambac's motion to intervene as of right

pursuant to Rule 24(a) or alternatively with permission pursuant to Rule 24(b). Ambac also

respectfully requests that this Court refrain from granting the CFPB's motion seeking approval

of the Proposed Order until all interested parties have been given (a) an opportunity to intervene

and (b) an opportunity to be heard by this Court.


September 20, 2017                                    DRINKER BIDDLE & REATH LLP

                                                        */s/ Todd C. Schiltz*
                                                      Todd C. Schiltz (No. 3253)
                                                      222 Delaware Avenue, Suite 1410
                                                      Wilmington, DE 19801
                                                      (302) 467-4200

                                                      *Attorneys for proposed intervenor*
                                                         *Ambac Assurance Corporation*


10

*Of counsel:*

Michael O. Ware
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500

Erik W. Haas
Peter W. Tomlinson
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

9996742v.1