IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: 1:17-cv-01323-GMS |
| The National Collegiate Master Student Loan Trust, *et al*. | ) ) | |
| | ) | |
| Defendants. | ) | |

**TRANSWORLD SYSTEMS INC.'S MOTION TO INTERVENE
AND OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE CONSENT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 24, Intervenor Transworld Systems Inc. ("TSI") hereby moves to intervene and opposes the Motion to Approve Consent Judgment (D.I. 3) filed by Plaintiff Consumer Financial Protection Bureau ("CFPB" or "Bureau").

**INTRODUCTION**

TSI is entitled to intervene in this action by right, and the Court should not approve the Proposed Consent Judgment (D.I. 3-1) filed by the CFPB. The Proposed Consent Judgment directly and substantially implicates the rights and obligations of numerous interested parties, including TSI, and the Proposed Consent Judgment contemplates conduct that would harm consumers.

On the same day that the Bureau filed and publicly announced the Proposed Consent Judgment, the Bureau also publicly announced that, in connection with a separate administrative proceeding, it had entered into a Consent Order with TSI; that Order was stipulated to by TSI and has an effective date of September 15, 2017. *See In the Matter of Transworld Systems, Inc.*, File

1

No. 2017-CFPB-0018, Doc. 1 ("TSI Consent Order").[1] The TSI Consent Order requires TSI to undertake certain tasks as part of prospective injunctive relief. The terms of the TSI Consent Order are substantially inconsistent with the requirements of the Proposed Consent Judgment that the CFPB has submitted to the Court for approval. Approval of the Proposed Consent Judgment would put TSI in an untenable position, subjecting it to two dueling and inconsistent consent orders: (1) the TSI Consent Order to which TSI is a party and which TSI negotiated in good-faith with the Bureau, and (2) the Proposed Consent Judgment between the CFPB and fifteen NCSLT Trusts ("Trusts"), to which TSI is not a party and only learned about on September 18. One glaring contradiction between the two orders is that the TSI Consent Order provides that TSI will provide certain reports and compliance plans to the "successor special servicer," which is U.S. Bank; the Proposed Consent Judgment, however, includes a different reporting structure, apparently empowering the Trusts to oversee all Servicers, including TSI, in total disregard of the contractual relationships among the Trusts and servicing parties and in stark contradiction to the TSI Consent Order. This alone provides a basis for the Court to deny entry of the Proposed Consent Judgment.

Moreover, there is a cloud of uncertainty surrounding the authority of McCarter & English, LLP, the law firm that signed the Proposed Consent Judgment, to enter into an agreement on behalf of the Trusts. Issues relating to the Trusts' governance structure currently are being litigated in the Delaware state and federal courts. *See National Collegiate Student Loan Master Trust et al. v. Pennsylvania Higher Education Assistance Agency et al.,* Case No. 12111 (Del. Ch.); *In re National Collegiate Student Loan Trusts 2003-1 et al.*, Case No. 1:16-cv-

---

[1] Available at http://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf

00341-JFB-SRF (D. Del).   McCarter & English serves as counsel to VCG Securities, LLC ("VCG") (though this is not disclosed anywhere on the Proposed Consent Order).[2]  VCG and its principal, Mr. Donald Uderitz, purportedly on behalf of the Trusts, have been mounting an aggressive campaign to install one of VCG's affiliates, Odyssey Education Resources LLC, as a servicer for the Trusts.  Tellingly, the very same day the CFPB filed its motion to enter the Proposed Consent Judgment, VCG (purportedly on behalf of the Trusts) submitted a "notice of supplemental authority" in the parallel proceeding pending in this District involving the Trusts, citing the Proposed Consent Judgment (which VCG's representatives signed) as grounds for appointing VCG's affiliate Odyssey as a servicer for the Trusts.  *See* Notice of Supplemental Authority, Case No. 16-341-JFB-SRF, D.I. 76 (Sept. 18, 2017).  Now, VCG's counsel has signed a Proposed Consent Judgment with a federal regulatory agency, once again purporting to act on behalf of the Trusts.  Entry of this Proposed Consent Judgment would enable VCG to appoint its own affiliates to undertake servicing work for the Trusts, and likely other actions that are contemplated by the Proposed Consent Judgment, notwithstanding the fact that VCG's ability to assert such control over the Trusts is highly contested and the subject of several cases pending in Delaware federal and state courts.

In addition, as discussed below, TSI will suffer substantial harm if the Proposed Consent Judgment is approved, as it substantially constrains TSI's ability to provide services for the NCSLT portfolio of loans.  Moreover, entry of the Proposed Consent Judgment as written could cause consumer harm.  The contemplated cessation of collection efforts could significantly impact consumers in that it risks causing confusion to borrowers about the status of their debt,

---

[2]  VCG and its affiliates have been represented by McCarter & English in at least one other Trust-related matter.  *See, e.g.*, *Pennsylvania Higher Education Assistance Agency v. NC*

while at the same time hamstringing TSI's ability to respond to borrower queries about their NCSLT loans.  Further, it is unclear whether interest will continue to accrue during the pending Compliance Audit called for in the Proposed Consent Judgment, while collections are ceased; this risks making consumer debt more expensive over time.  The Proposed Consent Judgment also contemplates that consumer payments will be deposited into a single escrow account that would not necessarily segregate funds and that would be controlled by the Trusts' purported representatives, who could, in turn, use the funds at their discretion.  It is similarly not clear from the Proposed Consent Judgment whether the flow of money directly into an escrow account would even enable the servicers to credit consumers' accounts through the system of record at the time that consumers make their payments.  Each of these items is an example of how the Proposed Consent Judgment's provisions could also harm consumers.  For all of these reasons, the Court should grant TSI's Motion to Intervene and decline to enter the Proposed Consent Judgment.

## THE CONFLICTING ORDERS

TSI and the CFPB entered into a negotiated Consent Order (the "TSI Consent Order") that was signed and executed on September 15, 2017; this concluded an investigation into the services TSI's Attorney Network business unit, which engages law firms to collect on defaulted private student loans, provided to the Trusts.  The TSI Consent Order includes specific injunctive provisions, including that TSI:

- Provide reports about collections lawsuits to the successor special servicer;
- Provide account-level detail to the successor special servicer;
- Provide loan information to the successor special servicer;

---

*Owners, LLC et al.*, Case No. 1:16-cv-01826-CCC (M.D. Pa.).

- Confer with the successor special servicer regarding pending collections lawsuits, including whether to withdraw pending lawsuits;

- Confer with the successor special servicer regarding directions to law firms;

- Confer with the successor special servicer regarding disclosures in connection with collection of debt owned by the Trusts;

- Submit a compliance plan to the CFPB that includes written policies and procedures.

Thus, TSI's interactions under the TSI Consent Order are with the successor special servicer (U.S. Bank), not with the Trusts themselves.

On September 18, 2017, the CFPB filed a Complaint against the Trusts, alleging violations of the Consumer Financial Protection Act's (CFPA) prohibitions against unfair, deceptive or abusive acts and practices (UDAAP; *see* 12 U.S.C. §§ 5531, 5536). Contemporaneously, the CFPB filed a motion to enforce a Proposed Consent Judgment (D.I. 3) the Bureau purportedly had entered into with the "Trusts." No prior notice of the existence of the Proposed Consent Judgment was given to TSI, even though TSI spent months negotiating the TSI Consent Order with the same Bureau attorneys. The Proposed Consent Judgment differs materially from the TSI Consent Order, including that it:

- Contemplates that the Trusts – and not the successor special servicer – will interact with the Trusts' servicers, including TSI, to implement the injunctive provisions. (It should be noted that paragraph 5 of the TSI Consent Order states that "[t]he Trusts do not have any employees and all actions taken by the Trusts in connection with loan servicing and all actions taken by the Trusts in connection with loan servicing and collecting Debt are carried out by third parties. Thus, it is unclear how the Trusts will effectuate the conduct provisions in the Proposed Consent Judgment.);

- Contemplates different affidavit-related policies and procedures than those in the TSI Consent Order;

5

- Contemplates that the Trusts will instruct the "Primary Servicer" to cease transferring any debt to "the Special Servicer and any Subservicer" and instead "retain possession of the Debt pending approval and implementation" of a compliance plan (which is to be prepared by the Trusts and thus is different than the plan to be provided by TSI under the TSI Consent Order);

- Contemplates the cessation of "collection efforts" pending approval of the Trusts' compliance plan;

- Contemplates that all payments will be remitted to a single escrow account designated by the Trusts (or, presumably, the entity purporting to represent the Trusts);

- Contemplates an "independent audit" to be overseen by the Trusts (or the entity purporting to represent the Trusts) of all loans owned by the Trusts, with reports to be provided to the Trusts and the CFPB (and not to the successor special servicer or to any of the Trusts' servicers);

- Contemplates that a "Board" of the Trust will have the responsibility for overseeing the Trusts' implementation of the conduct provisions, when it is not clear that the Trusts have a "Board," let alone one that is authorized; and

- Apparently contemplates that, for certain borrowers, the Trusts will refrain from "furnishing reports on the Debt in question, except as otherwise required by this Order."

Thus, the TSI Consent Order and the Proposed Consent Judgment are materially inconsistent in that they contemplate different supervisory and reporting structures and they contemplate the implementation of different policies, procedures, and relief.

Finally, there is a threshold question as to whether the Court has subject matter jurisdiction to entertain the CFPB's motion. Specifically, the Bureau's authority to assert UDAAP claims, as it does here, arises only if the Trusts are "covered persons" within the meaning of the CFPA, the Bureau's enabling statute. The Bureau's Complaint avers that the Trusts are "covered person[s]," under 12 U.S.C. § 5481(6), because they have "engaged in" "servicing loans, including acquiring, purchasing, selling [or] brokering" of debt. *See* D.I. 1,

6

CFPB Compl. at ¶8. But the Complaint and the Proposed Consent Judgment expressly enumerate those entities that service the loans in the NCSLT portfolio; indeed, the Trusts are expressly distinguished from those servicing entities. Moreover, as noted above, the TSI Consent Order expressly states that the Trusts have no employees and carry out servicing functions through third parties. *See supra* at 5. The CFPA does not intend for the definition of "covered persons" to extend to entities with no employees that hold debt through securitization and conduct their servicing and collection activities through third parties. Indeed, other provisions of the CFPA that define other activities that make an actor a "covered person" within the meaning of the CFPA make this clear. *See, e.g*, 12 U.S.C. § 5481(15).

And if the Trusts are not "covered persons," then the Court has no subject matter jurisdiction as to this matter. Specifically, the Bureau's Complaint alleges that its authority to pursue UDAAP claims under the CFPA confers federal question jurisdiction in this matter. *See* D.I. 1, CFPB Compl. at ¶4 (referencing federal consumer financial law, which, as here, is the prohibition against UDAAP, referenced in 12 U.S.C. §§ 5531, 5536)). And UDAAP claims can only be brought against entities that are expressly defined as "covered persons" within the meaning of the CFPA. *See* 12 U.S.C. §§ 5531, 5536. If the Trusts are not "covered persons," this matter must be dismissed in its entirety, with prejudice.

# ARGUMENT

## I. TSI IS ENTITLED TO INTERVENE BY RIGHT IN THIS ACTION

Federal Rule of Civil Procedure 24 governs intervention in pending federal actions. *See* Fed. R. Civ. P. 24. Under Rule 24, a Court must permit a third party to intervene as of right where the third party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see Endoheart AG v. Edwards Lifesciences Corp.*, No. 1:14-CV-1473, 2015 WL 6956603, at *1 (D. Del. Nov. 6, 2015). A third party should be permitted to intervene as of right if it establishes that "(1) its application for leave to intervene was timely; (2) it has a sufficient interest in the litigation; (3) there is a threat that that interest will be impaired or affected, as a practical matter, by the disposition of the action; and (4) there is inadequate representation of this interest by the existing parties in the litigation." *Advanced Dynamic Interfaces, LLC v. Aderas Inc.*, No. 1:12-CV-963, 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). An intervention by right must be permitted where warranted. *See* Fed. R. Civ. P. 24; *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)). The non-conclusory allegations set forth in a motion to intervene are accepted as true. *See Endoheart*, 2015 WL 6956603, at *2 & n.2.

### A. TSI's Motion To Intervene Is Timely

A court considers the following factors when determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir.

1995). This action was commenced on September 18, 2017, a mere four days ago. No scheduling conference has occurred. Given the very early stages of the proceeding, there is no delay and certainly no prejudice from any purported delay. There can be no legitimate dispute that TSI's Motion is timely.

### B. TSI Has A Sufficient Interest In The Property And Transactions At Issue In This Litigation, And Those Interests May Be Impaired Or Impeded If The Consent Judgment Is Approved

A third party has a sufficient interest in the subject of litigation when there is a "significantly protectable" legal interest in the property or transaction at issue. *Mountain Top*, 72 F.3d at 366. "[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972. To determine whether an intervenor's interests may be impaired or impeded, a court assesses "the practical consequences of the litigation" and "consider[s] any significant legal effect" on the interests. *See Brody by and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). Contesting provisions in a consent order that affect contractual obligations is recognized as a sufficient interest warranting intervention in this Circuit. *See EEOC v. Opportunity Comm'n v. Am. Tel. & Tel. Co.*, 506 F.2d 735, 739 (3d Cir. 1974).

TSI's interest in this matter is significant. First, if the Court enters the Proposed Consent Judgment, there will be two consent orders with irreconcilable provisions. As described above, the TSI Consent Order and the Proposed Consent Judgment are materially inconsistent and envision the implementation of different relief and, critically, subject TSI to different oversight regimes.

Additional complications arise in connection with the Compliance Plans required under the two orders. The Proposed Consent Judgment directs the Trusts to Direct "any Subservicer"

(and TSI is a subservicer) to suspend collection efforts on all debt owned by Defendants until a Compliance Plan that the Trusts must provide to the CFPB is approved and implemented. (D.I. 3-1 ¶ 16). Here again TSI may be caught between a rock and a hard place if it submits its own Compliance Plan, which the Bureau will accept (and which is due before the Trusts' Compliance Plan), but the Trusts submit a conflicting or more onerous Compliance Plan that affects the exact same activities. Delaware law does not allow for the type of business uncertainty and confusion these conflicting orders would create. *See, e.g., Stroud v. Grace*, 606 A.2d 75, 87 (Del. 1992) *(*noting that certainty is a key policy consideration in corporation law).

Second, TSI has a substantial economic interest in this matter that may be impeded or impaired if the Proposed Consent Judgment is accepted. The Proposed Consent Judgment requires the Trusts to direct the Primary Servicer to "cease transferring any Debt to the Special Servicer and any Subservicer" (again, TSI is a subservicer) and to instead retain possession of all debt pending approval and implementation of a Compliance Plan. *See* D.I. 3-1 ¶ 16. It also directs the Trusts to direct "any Subservicer" to suspend collection efforts on *all Debt* owned by the Trusts until the Compliance Plan is approved and implemented. *See id.* The Compliance Plan will not be approved and implemented for at least four months from the date of execution. *See id.* ¶ 28 (giving the Trusts 120 days to submit the Compliance Plan), ¶ 29 (detailing procedure for submitting revised Compliance Plan if it is not accepted by the Bureau). Thus, for at least four months, and likely longer, TSI cannot engage in any collection efforts on behalf of the Trusts. If implemented, this provision – which was not proposed or included by the Bureau in the Consent Order it negotiated with TSI – undoubtedly will cause TSI substantial financial loss, even as TSI is not a party to this Proposed Order.

### C. The Existing Parties Do Not Adequately Represent TSI's Interests

The inquiry into whether representation is inadequate is flexible and "varies with each case." *Kleissler*, 157 F.3d at 972. The CFPB does not represent TSI's interests. Nor do the purported representatives of the Trusts. VCG, whose attorneys signed the Proposed Consent Judgment on behalf of the Trusts, does not necessarily represent the Trusts' interests (*see* Ambac's Motion to Intervene, D.I. 4 at 7), nor does it represent TSI's interests. VCG's desire to have its affiliate serve as the Trusts' servicer, alone, renders VCG – and the Trusts it purports to speak for – unsuited to represent TSI's interests in this matter.

Because TSI overwhelmingly satisfies all of the requirements for intervention by right under Rule 24(a), TSI's Motion to Intervene must be granted.[3]

### II. THE CFPB'S CONSENT JUDGMENT IS NEITHER FAIR NOR REASONABLE AND SHOULD NOT BE APPROVED

Proposed consent judgments "are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler*, 771 F.2d 1556, 1568-69 (2d Cir. 1985). Before approving entry of a proposed consent judgment, a district court must independently review the negotiated consent decree to ensure it is "fair, adequate, reasonable, and in the public interest." *See F.T.C. v. Circa Direct LLC*, 2012 WL 2178705, at *1 (D.N.J.

---

[3] To the extent the Court finds that permissive intervention is more appropriate here, TSI easily fulfills the requirements under Rule 24(b). Permissive intervention is allowed when a third party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *United States v. Territory of V.I.*, 748 F.3d, 514, 524 (3d Cir. 2014). In exercising its discretion in allowing a permissive intervention, a court's "central consideration" is "whether allowing intervention will cause delay or prejudice." *Bell Atl.-Del., Inc. v. Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999); *see also* Fed. R. Civ. P. 24(b)(3) (court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). As explained above, TSI shares claims with common questions of fact or law with the main action, and given the early stages of this matter there is no delay or prejudice to the parties.

June 13, 2012) (citing *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) ("When a public agency requests that a judicial stamp of approval be placed on a negotiated consent decree ... [t]he court, rather than blindly following the agency's lead, must make its own inquiry into the issue of reasonableness before judgment") (internal quotations omitted))).

In recent years, courts have reduced their analysis to whether a proposed consent judgment is both fair and reasonable. *See S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 294 (2d. Cir. 2014); *United States v. Peterson*, 859 F. Supp. 2d 477, 478 (E.D.N.Y. 2012) ("A district court has the duty to determine whether a consent decree based on a proposed settlement is fair and reasonable."). To determine whether a proposed consent judgment is both fair and reasonable, courts assess: "(1) the basic legality of the decree, *see Benjamin v. Jacobson*, 172 F.3d 144, 155-59 (2d Cir. 1999)"; (2) whether enforcement mechanisms and other terms are clear, *see, e.g., Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993) (finding abuse of discretion when lower court approved consent decree that failed to properly define enforcement mechanisms); (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup Glob. Markets*, 752 F.3d at 294. A court will decline to enter a consent judgment it determines to be unfair or unreasonable. *See, e.g.*, *Clinton*, 999 F.2d at 325. Here, the Proposed Consent Judgment is neither fair nor reasonable.

### A. The Proposed Consent Judgment Could Harm Consumers

As explained above, the Proposed Consent Judgment includes numerous provisions that may expose consumers to harm. For example, the Proposed Consent Judgment contemplates a simultaneous bar on collection activities and servicer communication with borrowers, which risks consumer confusion regarding the terms of the two consent orders and their effects on

individual account-holders. If interest continues to accrue during the period that collection activity is frozen, borrowers' loans may become more expensive. And, the Proposed Consent Judgment's contemplated single escrow account construct, which is to be overseen by the disputed representatives of the Trust, presents a risk that those representatives may abuse their unfettered control over the escrow funds while simultaneously denying consumers credit for those escrowed payments.

### B. The Proposed Consent Judgment Would Impose Conflicting Directives On TSI, And Is Therefore Unfair And Unreasonable

As discussed *supra*, should the Court approve the Proposed Consent Judgment, TSI will be held to conflicting consent orders with irreconcilable provisions demanding compliance. Placing TSI in such a predicament, when it negotiated and executed a Consent Order with not only the same agency but the same attorneys at the agency that contemporaneously announced a conflicting Proposed Consent Judgment with another entity, is precisely the type of unfairness and unreasonableness that reviewing district courts seek to avoid. *See Standard Fin. Mgmt. Corp.*, 830 F.2d at 408.

### C. The Proposed Consent Judgment Is Unfair And Unreasonable Because The Purported Signatory for Defendants Lacks The Authority To Bind Certain Named Trusts

The Proposed Consent Judgment indicates McCarter & English as the purported signatory for Defendants. However, as previously discussed, whether McCarter & English and their client were authorized to enter into the Proposed Consent Judgment on behalf of Defendants is a hotly disputed issue. *See* Ambac Mot. To Intervene, D.I. 4 at 8. It would be unfair and unreasonable to the other interested parties, including TSI, for the Court to approve a Proposed Consent

Judgment that was negotiated and executed by a party with dubious authority. *See Citigroup Glob. Markets, Inc.*, 752 F.3d at 294.

## CONCLUSION

For these reasons, TSI respectfully requests the Court grant its Motion to Intervene and Deny Plaintiff's Motion to Approve Consent Judgment.

## **Oral Hearing Requested**

Pursuant to Local Rule 7.1.4, TSI respectfully requests an oral hearing on this Motion.

Dated: September 22, 2017

    Respectfully submitted,

    /s/ *Jamie L. Edmonson*
    Jamie L. Edmonson (No. 4247)
    VENABLE LLP
    1201 N. Market Street
    Suite 1400
    Wilmington, DE 19801
    Phone: (302) 298-3535
    Fax: (302) 298-3550
    JLEdmonson@venable.com

    Allyson B. Baker (*pro hac vice to be filed*)
    Meredith L. Boylan (*pro hac vice to be filed*)
    Sameer P. Sheikh (*pro hac vice to be filed*)
    Katherine M. Wright (*pro hac vice to be filed*)
    VENABLE LLP
    600 Massachusetts Ave., NW
    Washington, DC 20001
    Phone: (202) 344-4000
    Fax: (202) 344-8300
    ABBaker@venable.com
    MLBoylan@venable.com
    SPSheikh@venable.com
    KMWright@venable.com

    *Counsel for Intervenor Transworld Systems Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22d day of September, 2017, a copy of the foregoing document was electronically filed with the court and served via CM/ECF, on parties with counsel of record identified on the Court's docket. A copy of the foregoing also has been sent via email to any party without a designated counsel of record currently identified on the Court's docket.

/s/ *Jamie L. Edmonson*
Jamie L. Edmonson
