# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU<br><br>Plaintiff,<br><br>v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, et al.,<br><br>Defendants. | C.A. No. 17-1323 (GMS) |

## GSS DATA SERVICES, INC.'S MOTION TO INTERVENE

GSS Data Services, Inc., in its capacity as Administrator ("GSS" or the "Administrator") for each of the Defendant Trusts (the "Trusts"), hereby moves (the "Motion") pursuant to Fed. R. Civ. P. 24 to intervene in this action so it may be heard in connection with the Proposed Consent Judgment (the "Proposed Consent Judgment") (D.I. 3-1) filed on September 18, 2017, by plaintiff Consumer Financial Protection Bureau (the "CFPB").

### PRELIMINARY STATEMENT

GSS is entitled to intervene by right pursuant to Fed. R. Civ. P. 24. GSS is the Administrator of the Trusts at issue pursuant to Administration Agreements. GSS has a significantly protectable interest in the subject matter of this litigation for at least three reasons.

First, the purported Owners of the Trusts will apparently attempt to use the Proposed Consent Judgment to seek to have GSS removed as Administrator. Most recently, on Friday, the purported Owners of the Trusts filed an emergency motion in a litigation pending in Court of Chancery seeking to have a Notice of Default issued to the Administrator based on the findings of fact in the Proposed Consent Judgment. Although the motion was denied yesterday (*see*

{1110.003-W0048794.}

Butcher Decl.[1] ¶ 7), GSS must be afforded the right to intervene to address the inaccurate allegations in the Proposed Consent Judgment that the purported Owners are using to seek GSS' removal.

Second, as Administrator, GSS performs the administrative functions set forth in the Administration Agreements. GSS does not perform loan servicing for the Trusts. Notwithstanding this, GSS is named in the Proposed Consent Judgment and is improperly identified as a "Servicer." As a purported Servicer, GSS is apparently charged with certain enumerated loan servicing–related "Conduct Requirements" going forward. This must be clarified. At a minimum, this creates significant ambiguity as to GSS' responsibilities, if any, under the Proposed Consent Judgment and under the Administration Agreements.

Third, and relatedly, the Proposed Consent Judgment conflicts with the Trust Related Agreements concerning the future day-to-day operation of the Trusts. The Trusts, through the Owner Trustee and GSS, the Administrator, have a structure in place to operate according to the Trust Related Agreements. The Proposed Consent Judgment, however, appears to vest control of the Trusts with a newly-created concept, the "Board" of the Trusts. Under the Trust Related Agreements, there is no "Board" of the Trusts and no such "Board" has the type of decision-making authority over the Trusts that apparently is granted to the Board under the Proposed Consent Judgment. This, at a minimum, creates potential conflicts for GSS between the Administration Agreements and the Proposed Consent Judgment.

Accordingly, the Court should grant GSS' Motion to Intervene in this case.

---

[1] Butcher Declaration refers to the Declaration of Rebecca L. Butcher filed in support of this Motion.

## FACTUAL BACKGROUND

**A. The Trusts' Parties**

The Trusts are Delaware statutory trusts created pursuant to the Delaware Statutory Trust Act, 12 Del. Code § 3801, et. seq. The Trusts were formed for the purpose of acquiring student loans and selling notes backed by these student loans to investors. The Trusts were created pursuant to Trust Agreements.[2]

Wilmington Trust Company is the Owner Trustee for the Trusts and has the rights, powers and duties set forth in the Trust Agreements and in the Delaware Statutory Trust Act.

U.S. Bank, National Association, is the Indenture Trustee for the Trust, pursuant to the Indentures. The Trusts issued student loan asset backed notes, which are held by noteholders to the Trusts, pursuant to the Indentures. The Trusts' collateral is pledged to the Indenture Trustee for the benefit of noteholders.

GSS is the Administrator of the Trust pursuant to Administration Agreements.[3]

Pennsylvania Higher Education Assistance Agency ("PHEAA") is the servicer for the vast majority of the student loans held by the Trusts.

U.S. Bank, N.A. is the Special Servicer for the Trust. U.S. Bank, N.A., as special servicer, engaged Transworld Systems, Inc. as Special Sub-Servicer to handle certain collection functions relating to the student loans held by the Trusts.

The beneficial interests of the Trusts are purportedly owned by one or more entities owned or controlled by VCG Securities LLC and Mr. Donald Uderitz, including NC Owners, LLC and Pathmark Associates, LLC.

---

[2] A representative Trust Agreement is attached to the Butcher Declaration as Exhibit A.
[3] A representative Administration Agreement is attached to the Butcher Declaration as Exhibit B.

## B. The Operation of the Trusts

Since the Trusts have no employees or management, the Trust Related Agreements (including but not limited to the Trust Agreements and the Administration Agreements) provide for the day-to-day operation of the Trusts. The Trust Agreements provide that "the Trust will act solely in its own name and the Owner Trustee or other agents selected in accordance with this Agreement will act on behalf of the Trust subject to direction by the Owners as provided herein, but such action shall not be in violation of the terms of this Agreement." Butcher Decl., Ex. A, § 2.03(b)(i) (emphasis added).

The limited duties and obligations of the Administrator are contractually defined in the Administration Agreements. Relevant here, these duties include—

Section 1(a) sets forth the Administrator's duties with respect to "Trust Related Agreements," which, as noted above, is defined as only those documents "signed by the Owner Trustee on behalf of the Issuer". Such duties include, "[d]irecting the Indenture Trustee . . . to deposit moneys with Paying Agents" (Butcher Decl., Ex. B, § 1(a)(i)(A)); "[p]aying all expenses in connection with the issuance of the Notes" (*Id.*, § 1(a)(i)(E)); (and) providing certain instructions to the Indenture Trustee (*Id.*, § 1(a)(i)(E)).

Section 1(c) of the Administration Agreement provides that the Administrator will perform certain duties and obligations of the Owner Trustee, which include, those set forth on Schedule A of the Administration Agreement, such as "[f]iling tax returns, "[f]iling a Certificate of Termination of the Trust upon termination," providing certain "statements to Noteholders," and "providing, signing, and filing" certain reports required by securities laws.

Section 1(d) of the Administration Agreement sets forth the Administrator's duties in connection with "non-ministerial matters," which are defined to include: "[t]he initiation of any

claim or lawsuit by the Issuer and compromise of any action, claim or lawsuit brought by or against the Issuer. . . ." *Id.*, § 1(d)(i)(B). With respect to any "matters that in the reasonable judgment of the Administrator are non-ministerial, the Administrator shall not be under any obligation to take any action, and any event shall not take any action, unless the Administrator shall have received instructions from the Indenture Trustee, in accordance with the Indenture, from the Owner Trustee or the Owners, in accordance with the Trust Agreement." *Id.*, § 1(d)(i).[4]

The Administration Agreements do not provide GSS with loan-servicing obligations.

### C. Purported Owners Disputes with Trust Parties

There have been a number of disputes and litigations between, on the one hand, the purported Owners and, on the other hand, the Trust parties, including the Owner Trustee, Indenture Trustee, Master Servicer, the Administrator, Special Servicer and the Special Sub-Servicer. *See* Butcher Decl., Ex. C at 7-11. While a detailed discussion is beyond the scope of the Motion, it is important to understand that certain Trust parties have contended in litigation that the purported Owners violated Section 3.04 of the Trust Agreement and thus cannot exercise the rights and powers of Owners, including giving directions to the Owner Trustee. *See, e.g., The National Collegiate Student Loan Master Trust, et al. v. Pennsylvania Higher Education*

---

[4] Section 5 of the Administration Agreements provide that:

> For all purposes of this Agreement, the Administrator shall be an independent contractor and shall not be subject to the supervision of the Issuer or the Owner Trustee with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Issuer or the Owner Trustee, the Administrator shall have no authority to act for or represent the Issuer of the Owner Trustee, respectively, in any way and shall not otherwise be deemed an agent of the Issuer or the Owner Trustee.

Butcher Decl., Ex. B, § 5. GSS notes that, therefore, in the September 20, 2017, Motion to Intervene and Request for Briefing Schedule (D.I. 4), filed by Ambac Assurance Corporation ("Ambac"), to the extent Ambac indicates that the Administrator is an agent of the Trusts, that characterization is incorrect. *See* D.I. 4 at 9.

*Assistance Agency D/B/A American Educational Services*, No. 12111-VCS (Del. Ch.), Docket Nos. 276 (Defendant's Supplemental Submission Concerning Section 3.04 of the Trust Agreement); 277 (Plaintiffs' Opening Supplemental Brief concerning the Issue as to Ownership of the Beneficial Interests in the Trusts with Certificate of Service).

## ARGUMENT

### I. THE ADMINISTRATOR'S MOTION TO INTERVENE UNDER RULE 24 SHOULD BE GRANTED

Pursuant to Rule 24 a nonparty may intervene as of right where the nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24 (a)(2). The non-conclusory allegations set forth in a motion to intervene are accepted as true. *See Endoheart AG v. Edwards Lifesciences Corp.*, 14 Civ. 1473, 2015 U.S. Dist. LEXIS 150711, at *4 n.2 (D. Del. Nov. 6, 2015), *report & recommendation adopted*, 2016 U.S. Dist. LEXIS 42946 (D. Del. Mar. 31, 2016). A nonparty should be permitted to intervene as of right if it establishes that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014).

Alternatively, the court may exercise its discretion to permit intervention under Rule 24(b) where a nonparty "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). In exercising that discretion, the "central consideration" is "whether allowing intervention will cause delay or prejudice." *Bell Atl.-Del., Inc. v. Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999); *see also* Fed. R. Civ. P.

24(b)(3) (court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").

### A. The Administrator's Motion to Intervene Is Timely

In determining timeliness, the Court should consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). This action was commenced one week ago on September 18, 2017. Thus, the Motion is timely.

### B. GSS Has Valid Interests in the Property and Transactions at Issue in this Matter and GSS's Interests May Be Impaired and Impeded by the Requested Relief

A third party has a sufficient interest in the subject matter of litigation when there is a "significantly protectable" legal interest in the property or transaction at issue in this matter. *Mountain Top Condo. Ass'n*, 72 F.3d at 366; *see also Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) ("[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought."). To assess whether an intervenor's interests may be impaired or impeded, a court assesses the "the practical consequences of the litigation" and "consider[s] any significant legal effect" on GSS' interests. *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). Contesting provisions in a consent order that impact contractual obligations is recognized as a sufficient interest warranting intervention in this Circuit. *See EEOC v. Opportunity Comm'n*, 506 F.2d 735, 739 (3d Cir. 1974).

GSS has a significantly protectable legal interest in this matter that may be impaired or harmed if the Proposed Consent Judgment is approved in at least three ways.

The purported Owners of the Trusts will apparently attempt to use the Proposed Consent Judgment to as a pre-text to have GSS removed as Administrator—likely so that the purported

Owners can replace GSS with a hand-picked successor. Last week, the purported Owners directed the Owner Trustee to issue a Notice of Default to GSS, which the Owner Trustee refused to do. *See* Butcher Decl., Ex. D at 4-7. Unsatisfied, the Trusts filed an emergency motion to have the Notice of Default issued to GSS, notwithstanding that the Owner Trustee deemed it improper, based on the findings of fact in the Proposed Consent Judgment, in the action entitled *The National Collegiate Student Loan Master Trust, et al. v. Pennsylvania Higher Education Assistance Agency d/b/a American Educational Services*, in the Court of Chancery of the State of Delaware, C.A. No. 12111-VCS. *See* Butcher Decl., Ex. D. In response, GSS filed a Motion for Leave to File Opposition as *Amicus* Curiae, which argued, among other things, that the Proposed Consent Judgment did not support a default against GSS. *See* Butcher Decl., Ex. E. On September 25, 2017, the Court of Chancery held a hearing and denied the motion. *See* Butcher Decl. ¶ 7. Nonetheless, GSS must be afforded the right to intervene because the purported Owners will apparently seek to use the Proposed Consent Judgment as a sword to serve its own agenda and seek GSS' removal.[5]

Second, GSS is misidentified in the Proposed Consent Judgment as a "Servicer" (*see* Proposed Consent Judgment at 7)—which may have been done intentionally to give the potential Owners a basis to seek to remove GSS. If the Proposed Consent Judgment is not amended to be consistent with the Administration Agreement, GSS will have conflicting, or at a minimum

---

[5] The purported Owners may be wrongfully seeking to remove GSS in order to advance its own interests. For instance, earlier this year, Chaitman LLP, a law firm retained by the purported Owners, and the Trusts commenced an action against the Owner Trustee and GSS alleged that the Owner Trustee and GSS wrongfully refused to certain legal invoices of Chaitman LLP and other firms, entitled *The Master Collegiate Student Loan Trust I, et al. v. Wilmington Trust Company, et al.,* in the Supreme Court for the State of New York (Case No. 652165/2017). This litigation arises from the ownership issue pending in the PHEEA litigation in Court of Chancery. Presumably, the purported Owners believe their selected administrator will simply carry out its wishes.

unclear obligations to the Trusts under the Proposed Consent Judgment and the Administration Agreements.

Third, and relatedly, the Proposed Consent Judgment conflicts with the Trust Related Agreements concerning the ongoing operation of the Trusts. Incredibly, if approved, the Proposed Consent Judgment would supplant the Trusts' obligations under the Trust Related Agreements and hand control of the Trusts to the purported Owners – whose legitimacy is currently challenged. Large swaths of the Trust Agreements and the Administration Agreements would appear to be superseded by the Proposed Consent Judgment. As a result, the Owners would obtain the right – which they do not have under the Trust Related Agreements - to manage the multi-billion dollar Trusts (and to control its cash).

On a more granular level, GSS has a number of obligations to the Owner Trustee and others under "Trust Related Agreements" (defined in the Administration Agreements (*see* Butcher Decl., Ex. B at 1)), but the Proposed Consent Judgment is not a Trust Related Agreement and the "Board" is a foreign concept to the Administration Agreements. Said simply, the management provision in the Proposed Consent Judgment involving the Trusts' "Board," even if permissible, simply does not work under the Administration Agreements.

Under the Administration Agreements, GSS is obligated to perform the duties of the Trusts under "Trust Related Agreements." *See id.* Trust Related Agreements are defined as the Trust Agreements, the Indentures and any other documents signed by the Owner Trustee on behalf of the Trusts. *See id.* The Owner Trustee did not sign the Proposed Consent Judgment and, therefore, it is not a Trust Related Agreement. In addition, GSS shall have no obligation to take any action with respect to matters that in the reasonable judgment of GSS are non-ministerial, unless GSS shall have received instructions from the Owner Trustee, the Indenture

Trustee or the Owners. *See id.* at § 1(d). The Proposed Consent Judgment appears to vest authority over the Trusts with the "Board" – which is neither the Owner Trustee, the Indenture Trustee nor the Owners. *See* Proposed Consent Judgment at 5. Accordingly, GSS' rights and obligations are unclear and GSS could face conflicting or unclear obligations under the Administration Agreements and the Proposed Consent Judgment, which could create potential liability to GSS.

### C. The Existing Parties Will Not Adequately Represent the Administrator's Interests

The CFPB and the law firm McCarter & English are not adequately representing the Administrator's interests. Representation is inadequate if the existing parties' interests diverge from the movant's, or if "there is collusion between the representative party and the opposing party." *Brody*, 957 F.2d at 1123. GSS is a distinct entity within the structure of the Trusts, whose duties and obligations under the Administration Agreements is personal to it. No other party shares those duties and obligations and no other party can adequately represent the Administrator's interests in connection with the Administration Agreements and related Trust Related Agreements.

## CONCLUSION

The Administrator respectfully requests that this Court grant the Administrator's motion to intervene as of right pursuant to Rule 24(a) or alternatively with permission pursuant to Rule 24(b). The Administrator also respectfully requests that this Court refrain from granting the CFPB's motion seeking approval of the Proposed Consent Judgment until all interested parties have been given (a) an opportunity to intervene and (b) an opportunity to be heard by this Court.

Dated: September 25, 2017

**LANDIS RATH & COBB LLP**

/s/ Rebecca L. Butcher

Rebecca L. Butcher (No. 3816)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: butcher@lrclaw.com

*Attorneys for Proposed Intervenor
GSS Data Services, Inc.*