# EXHIBIT C

EFiled:  Sep 19 2017 06:18PM EDT
Transaction ID 61136953
Case No. 12111-VCS

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| THE NATIONAL COLLEGIATE STUDENT LOAN MASTER TRUST, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12111-VCS |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY D/B/A AMERICAN EDUCATIONAL SERVICES, | ) ) ) ) | |
| Defendant, and | ) ) | |
| WILMINGTON TRUST COMPANY, | ) ) | |
| Intervenor. | ) ) | |

### WILMINGTON TRUST COMPANY'S ANSWERING BRIEF IN OPPOSITION TO THE PURPORTED OWNERS' MOTION FOR EXTENSION OF DEADLINE FOR APPOINTMENT OF SUCCESSOR OWNER-TRUSTEE AND FOR OTHER RELIEF CONSISTENT WITH THE TRUST AGREEMENTS

Dated: September 19, 2017

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (# 4952)
Sara E. Bussiere (# 5725)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

*Attorneys for Intervenor*
*Wilmington Trust Company*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................1

FACTUAL BACKGROUND ..........................................................................4

    A.    The Role of the Owner Trustee ..............................................4

    B.    The Purported Owners Direct and Sue WTC to Compel it to Act Contrary to the Trust Agreements & Court Orders ........................7

ARGUMENT ..................................................................................................12

    A.    The Request To Extend Time is Moot. ..................................13

    B.    The "Reasons" For The Relief The Purported Owners Seek Do Not Justify The Relief They Request. ..................................14

    C.    There Is No Basis To Compel WTC To Take Actions It Heretofore Has Refused To Take. ..........................................16

CONCLUSION ..............................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Homan v. Turoczy*,
  2005 WL 5756927 (Del. Ch.) ................................................................................14

*Seidensticker v. Gasparilla Inn, Inc.*,
  2007 WL 1930428 (Del. Ch.) ...............................................................................14

*Tull v. Turek*,
  147 A.2d 658 (Del. 1958) .....................................................................................13

**Statutes**

DEL. CODE ANN. tit. 12, § 3807 ..................................................................................5

Intervenor Wilmington Trust Company ("WTC"), by and through its undersigned counsel, respectfully submits this answering brief in opposition to the Motion for Extension of Deadline for Appointment of Successor Owner-Trustee and for other Relief Consistent with the Trust Agreements (the "Motion") filed by NC Owners, LLC and Pathmark Associates LLC (the "Movants").[1]

## INTRODUCTION

On July 20, 2017, WTC tendered its resignation as Owner Trustee of all 15 plaintiff Trusts[2]. In the Motion, the Movants[3] seek to force WTC to serve as Owner Trustee[4] until an "acceptable" successor Owner Trustee can be appointed. (Mot. at 8.) From WTC's experience as Owner Trustee, "acceptable" means an Owner Trustee that will blindly follow the directions of the Purported Owners notwithstanding the Purported Owners' authority to direct or any conflicts between the directions and the Trust Agreements. The Trust Agreements do not, however, allow the Purported Owners to delay their selection of a successor Owner Trustee until they find one "acceptable." Rather, the Trust Agreements require the Purported Owners to select a successor Owner Trustee within thirty (30) days of

---

[1] Movants claim to own 100% of the Beneficial Interests in certain student loan trusts for which WTC serves as Owner Trustee. There are 15 plaintiff Trusts, but Movants' motion only pertains to 14 of them. Movants exclude The National Collegiate Master Student Loan Trust I, because it is currently (and indisputably) owned by NC Residuals Owners Trust and SL Resid Holdings LLC. The National Collegiate Student Loan Trust 2003-1 also is undisputedly partially owned by NC Residuals Owners Trust.

1

WTC's resignation or risk having a court select a successor for them at WTC's request.  Having failed to do so, on August 21, 2017, WTC exercised its right

---

[2] The National Collegiate Student Loan Master Trust I, The National Collegiate Student Loan Trust 2003-1, The National Collegiate Student Loan Trust 2004-1, The National Collegiate Student Loan Trust 2004-2, The National Collegiate Student Loan Trust 2005-1, The National Collegiate Student Loan Trust 2005-2, The National Collegiate Student Loan Trust 2005-3, The National Collegiate Student Loan Trust 2006-1, The National Collegiate Student Loan Trust 2006-2, The National Collegiate Student Loan Trust 2006-3, The National Collegiate Student Loan Trust 2006-4, The National Collegiate Student Loan Trust 2007-1, The National Collegiate Student Loan Trust 2007-2, The National Collegiate Student Loan Trust 2007-3, The National Collegiate Student Loan Trust 2007-4 (herein, "Plaintiffs" or "Trusts").

[3] Movants and NC Residuals Owners Trust (collectively, the "Purported Owners") consistently disregard these proceedings, the Court's rulings in these proceedings, and the implications of these proceedings for WTC and other relevant parties.  As the Court knows, during the course of this litigation, a dispute arose as to the validity of certain transfers of ownership interests in the Trusts (the "Ownership Dispute"), which may have resulted in a concentration of 100% of the beneficial ownership interests of the Trusts held by the Purported Owners in violation of the trust agreements for the Trusts (the "Trust Agreements").  As discussed in greater detail below, WTC's authority to act as Owner Trustee derives, in part, from instructions from the Trusts' Owners.  Thus, the identity of the Owners is critical to WTC's ability to perform as Owner Trustee.  (*See generally* WTC's Motion to Intervene, D.I. 91.)   Accordingly, WTC has declined to follow substantive instructions until the Court resolves the Ownership Dispute.  The Purported Owners' surprising disagreement with WTC's position in this regard illustrates one of the many reasons why WTC can no longer serve as Owner Trustee.  (See Ex. A at 2 (claiming WTC's refusal to act until the Ownership Dispute is resolved is based on a "misplaced reliance an [sic] unsubstantiated, third-party allegation" and accusing WTC of "latch[ing] on to this unsupported allegation as an excuse to seek assurances and 'comfort'. . . resulting in their contractual breaches and related wrongdoing").)

[4] Terms not defined herein shall have the meanings ascribed to them in the Trust Agreements.

under the Trust Agreements and filed a motion with this Court seeking
appointment of a successor trustee ("WTC's Motion").

The Purported Owners do not identify any justifiable reason for their failure
to appoint a successor Owner Trustee in the time allotted by the Trust
Agreements.[5]  Accordingly, the Court should deny the Motion,[6] grant WTC's
Motion,[7] and appoint a successor Owner Trustee "to act until such time, if any, as a

---

[5] During this time, the Purported Owners appear to have plenty of time to
prosecute litigation against various parties related to the Trusts. (*See, supra*, n.11
(describing litigation pending in the New York Supreme Court against WTC and
GSS Data Services in connection with legal fees for services performed on behalf
of the Purported Owners, which fees the Purported Owners seek to have
characterized as "Owner Trustee" expenses (and they have directed WTC to so
certify) in order to have such fees paid by Noteholders on a priority basis under the
Indentures); *see also* D.I. 151 (briefing Ownership Dispute).)  The Purported
Owners acknowledge that their litigiousness has made it difficult to secure a
successor Owner Trustee.

[6] The Proposed Order attached to the Motion seeks an extension to appoint a
successor Owner Trustee until October 18, 2017.  WTC recognizes that under the
agreed-upon briefing schedule, the earliest the Court could decide the Motion is
October 9, 2017.  Notwithstanding this reality, for the reasons stated herein, the
Court should deny the Motion, and grant WTC's Motion to Appoint a Successor
Owner Trustee ("WTC's Motion") to preclude any future requests for extension
and instead focus the parties' efforts on finding a successor Owner Trustee.  (D.I.
156.)

[7] The Purported Owners do not oppose and instead affirmatively seek the
alternative relief requested in WTC's Motion.  (Mot. at 8 ("Alternatively, if
Wilmington Trust refuses to follows its contractual obligations and any order by
this Court, Movants respectfully request that the Court implement a process, as set
forth in the Trust Agreements, to 'appoint a successor Owner Trustee to act until
such time, if any, as successor Owner Trustee shall have been appointed [by the
Owners][.]").)

successor Owner Trustee shall have been appointed" by the Owners pursuant to the terms of Section 12.01 of the Trust Agreements.[8]

## FACTUAL BACKGROUND

### A.     The Role of the Owner Trustee

The Trusts act through the Owner Trustee.   (Ex. B §§ 2.03(b)(i), 2.03(b)(iv); 4.02.)  The stated purpose of the Trusts is to "acquire a pool of Student Loans[,]" "enter into the Trust Related Agreements and to provide for the administration of the Trust and the servicing of the Student Loans[,]" "engage in those activities and to enter into such agreements that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith[,]" and conserve "Trust Property and Distributions to Owners."  (*Id.* at § 2.03(a).)  The Owner Trustee acts pursuant to the express authority granted to it under the Trust Agreements or any Trust Related Agreement,[9] or as "directed by all the Owners[.]"  (*Id.* at § 4.01(a).)  The Owner Trustee does not have any discretionary management or regulatory responsibilities, but serves principally as an accommodation party that receives *de-minimus* annual compensation and

---

[8]   *See* Ex. B, § 12.01(a).

[9]   "Trust Related Agreements" are defined in the Trust Agreements as "any instruments or agreements signed by the Owner Trustee on behalf of the Trust, including without limitation, the Indenture, the Loan Purchase Agreements, the Administration Agreement, the Deposit and Sale Agreement, the Deposit and Security Agreement, the Servicer Consent Letters, the Structuring Advisory Agreement, the Assignments of the Servicing Agreements, the Back-up Agreement, the Custodial Agreements, the Notes, the Indemnification Agreements, the Issuer Order and the Issuer Orders to Authenticate."  (Ex. B at 7.)

ensures the Trusts' compliance with the requirement for a Delaware resident trustee under Section 3807 of the Delaware Statutory Trust Act.[10]   DEL. CODE ANN. tit. 12, § 3807.

If a conflict exists between an instruction given by the Owners and the terms of the Trust Agreements or the Trust Related Agreements, the terms of the Trust Agreements and Trust Related Agreements control.  (*Id.* at §§ 2.03(a); 4.02(b).)

---

[10] The Administrator is primarily responsible for management of the Trusts and compliance with the Trust Related Agreements. Section 8.03 of the Trust Agreements provide that:

> It shall be the duty of the Owner Trustee to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Agreement and to administer the Trust in the interest of the Owners. Notwithstanding the foregoing, the Owner Trustee shall be deemed to have discharged its duties and responsibilities hereunder and under the Trust Related Agreements to the extent the Administrator has agreed in the Administration Agreement to perform such acts or to discharge such duties of the Owner Trustee hereunder or under any Trust Related Agreement, and the Owner Trustee shall not be held liable for the default or failure of the Administrator to carry out its obligations under the Administration Agreement.

*Id.* at §8.03.  Section 1 of the Administration Agreements provides that:

> The Administrator agrees to perform all its duties as Administrator and the duties of the Issuer under the Trust Related Agreements. In addition, the Administrator shall consult with the Owner Trustee regarding the duties of the Issuer under the Trust Related Agreements. The Administrator shall monitor the performance of the Issuer and shall advise the Owner Trustee when action is necessary to comply with the Issuer's duties under the Trust Related Agreements. The Administrator shall prepare for execution by the Issuer, or shall cause the preparation by other appropriate persons or entities of, all such documents, reports, filings, instruments, certificates and opinions that it shall be the duty of the Issuer to prepare, file or deliver pursuant to the Trust Related Agreements. In furtherance of the foregoing, the Administrator shall take all appropriate action that is the duty of the Issuer to take pursuant to the Trust Related Agreements.

(Ex. C at 2.)

The Owners have an affirmative duty *not* to direct the Owner Trustee to take action "contrary to [the Trust Agreements] or any Trust Related Agreement[,]" and the Owner Trustee is not "obligated to follow such direction, if given." (*Id.* at §4.02(b).)  The Trust Agreements further allow the Owner Trustee to decline to act if:

> [the Owner Trustee] shall have reasonably determined, or shall have been advised by counsel, that such action (i) is contrary to the terms hereof or any document contemplated hereby to which the Trust or the Owner Trustee is a party of is otherwise contrary to law, (ii) is likely to result in personal liability on the part of the Owner Trustee, unless the Owners shall have provided to the Owner Trustee indemnification or security reasonably satisfactory to the Owner Trustee against all costs, expenses and liabilities arising from the Owner Trustee's taking of such action, or (iii) would adversely affect the status of the Trust as a partnership for Federal income tax purposes.

(*Id.* at § 4.02(a); *see also* § 4.02(c) (noting other restrictions on Owner Trustee actions).)

WTC has served as Owner Trustee for over 10 years.  (Ex. D at 18:19-23.) For most of that time, WTC generally performed its duties as Owner Trustee without issue, however the frequency of directions was greater than in other trusts that WTC handles. (Ex. D at 47:10-22.)   In 2016, after the Purported Owners believed that they had obtained control over the Trusts, they began to give increasingly improper instructions and litigation activity increased, which has

made it difficult and uneconomical for WTC to continue to serve as Owner Trustee

and ultimately led to WTC's resignation on July 20, 2017.[11]

### B. The Purported Owners Direct and Sue WTC to Compel it to Act Contrary to the Trust Agreements & Court Orders

The Purported Owners have issued voluminous and burdensome directions

that have compromised WTC's ability to serve as Owner Trustee.  These directions

have persisted and even become more frequent and complex, notwithstanding the

Ownership Dispute.  The Purported Owners have continued their attempts to direct

WTC without regard to WTC's reasonable refusals to follow such directions and

even *after* the Court ordered discovery and supplemental briefing on the

---

[11] For example, in February, 2016, the Indenture Trustee was forced to initiate litigation, currently pending in the United States District Court for the District of Delaware, seeking judicial instructions in response to the Plaintiffs' allegedly unauthorized retention of Odyssey Education Resources LLC ("Odyssey") – an affiliate of at least two of the Purported Owners – as a new servicer for each of the Trusts under an agreement signed by WTC as Owner Trustee pursuant to Owner directions.  The propriety of this action is subject to contentious dispute.  Likewise, in March, 2016, the Purported Owners initiated this action, in which the propriety of the Purported Owners' instructions was questioned.  Related litigation brought by PHEAA is also pending in Pennsylvania.  The Purported Owners have even forced WTC to defend litigation in New York arising from WTC's justified refusal to follow the Purported Owners' demand that WTC certify the invoices of legal counsel retained to pursue their litigation agenda for payment as "Owner Trustee expenses."  Most recently, the Purported Owners encouraged the Consumer Financial Protection Bureau to institute litigation against the Trusts in the United States District Court for the District of Delaware, and the Purported Owners instructed their counsel to sign a Consent Judgement on behalf of the Trusts to settle the matter upon filing. This latest action is expected to result in further contentious litigation among the deal participants. These matters have placed, and will continue to place, an inordinate burden on WTC's corporate trust administration personnel.  (Ex. D at 46-47.)

Ownership Dispute.  Throughout its tenure as Owner Trustee, and consistent with the terms of the Trust Agreements, WTC reviews and considers each direction provided by the Owners, evaluates for compliance with the Trust Agreement or any Trust Related Agreement, and, if necessary, confers with its counsel as part of its due diligence as to whether the direction is proper.  (Ex. B at § 4.02(a)-(b).)  This process continued after the Ownership Dispute arose.

The Ownership Dispute arose as a result of "two inaccurate affidavits describing aspects of the ownership situation" submitted by the Plaintiffs in this litigation.  (D.I. 144 at 8.)  Once the Ownership Dispute arose, WTC intervened – without opposition – in this action.  (D.I. 91.)  WTC's position with respect to the Ownership Dispute has been consistent and clear:

> Before becoming aware of the Ownership Dispute, the Owner Trustee followed the instructions of the Purported Owners. As a result of the Ownership Dispute, the Owner Trustee is now uncertain as to whether the Purported Transfers were valid and whether the Purported Owners validly own 100% of the beneficial interests of the Trusts with the corresponding right, under the Trust Agreements, to direct the actions of the Owner Trustee. ***Based on such uncertainty, the Owner Trustee believes in good faith that it cannot prudently follow the directions of the Purported Owners unless or until the Ownership Dispute is resolved by the Court***.

(Mot. to Intervene at 3 (emphasis added).)  WTC took this position, in part, because of concern that following unauthorized instructions could expose WTC, the Purported Owners, and Plaintiffs to significant risk.  (Ex. B § 4.02(a)-(b).)

8

After the Court granted WTC's Motion to Intervene, WTC fully cooperated with the parties' efforts to resolve the Ownership Dispute, including by producing thousands of pages of documents and providing deposition testimony.  Contrary to the Purported Owners' assertions otherwise, WTC took (and takes) no position with respect to the Ownership Dispute.[12]  (Mot. at 3.)

Notwithstanding the pending Ownership Dispute, and WTC's clear position concerning its import, the Purported Owners repeatedly have violated the Trust Agreements by continuing to attempt to force WTC to follow their instructions. (*See* Ex. B § 4.02(b) ("No Owner shall direct the Owner Trustee to take or refrain from taking any action contrary to this Agreement or any Trust Related Agreement, nor shall the Owner Trustee be obligated to follow any such direction, if given.").)  The Purported Owners persisted.  As detailed in WTC's Motion, the Purported Owners directed WTC to approve a consent order with the United States Consumer Financial Protection Bureau ("CFBP") negotiated by the Purported Owners on behalf of the Trusts (the "CFBP Instruction"), and instructed WTC to refuse Ambac Assurance Corporation's request to access the content of the proposed consent order (the "Ambac Instruction").[13]  (WTC Mot. at 4-6.)  In

---

[12] Any lay opinion provided by Ms. Costello in her deposition does not contradict WTC's position in this regard.

[13]  The proposed "Consent Judgment" jointly filed yesterday with the CFPB in the United States District Court for the District of Delaware, in an apparent end-run around the Owner Trustee and other deal parties, appears to impose on the Trusts

connection with the CFBP and Ambac Instructions, the Purported Owners refused WTC's request to confer with the Trusts' Administrator, a critical right under the Trust Agreements.   (*See infra*, n.11.)   After consultation with counsel, WTC declined to follow both the CFBP and Ambac Instructions to avoid violating the terms of the Trust Agreements.  (*Id.* at 6-9.)

The Purported Owners' disregard for these proceedings also has sparked litigation in the New York Supreme Court.[14]  As WTC noted in footnote 6 of its Motion, the Purported Owners caused the Trusts, along with Chaitman LLP ("Chaitman"), to sue WTC because WTC refused to comply with the Purported Owners' direction to certify to the Administrator and the Indenture Trustee that legal expenses of Chaitman and certain counsel retained by Chaitman qualify as "Owner Trustee fees and expenses" that would receive higher priority payment ahead of Noteholders and to direct the Administrator to process them for payment.  The Trust Related Agreements do not require WTC to take either action

_____

the same terms as the prior form of CFPB consent order that WTC declined to execute because it would have violated the Trust Related Agreements.  (Ex E.) The new proposed Consent Judgment has not been entered by the District Court, yet the Purported Owners have already delivered additional instructions, purporting to demand that WTC execute and deliver default letters to the Administrator and Indenture Trustee "as required by" the proposed Consent Judgment (the "Additional Instructions"). The Additional Instructions were served under threat of litigation if not complied with during an unreasonably expedited time frame imposed by the Purported Owners.

[14] Related litigation is also pending in the United States District Court for the District of Delaware.  (D.I. 156 at n.6.)

and WTC has sought to dismiss the lawsuit.  In response to WTC's motion to dismiss that action, Chaitman stated the following in its brief filed with the Court on August 28, 2017:

- "Defendants' actions are purportedly based upon their misplaced reliance an [sic] unsubstantiated, third-party allegation that when a small change in the minority ownership of the Trusts occurred in March of 2016, it resulted in the current Owners (whom Defendants continue to affirmatively recognizes as the 'Owners') as actually being the owners of the beneficial interests of the Trusts…"

- "But the allegation is bogus: as set forth below, even [WTC] has admitted Plaintiffs are, as a matter of law, the Owners, and if Defendants have ownership questions, the Trust Documents provide ample protection and recourse."

- "If Defendants had questions regarding ownership, they should have sought court relief or at least an opinion from counsel to resolve who has what payment obligations.  Instead, Defendants, because of their own unrelated disputes with the Owners, latched on to this unsupported allegation as an excuse to seek assurances and 'comfort' from each other (that the Trust Documents neither require nor permit), resulting in their contractual breaches and related wrongdoing in the Complaint."

(Ex. A at 1-2.)

The Purported Owners' conduct, through their refusal to appoint a successor Owner Trustee, conflicting directions to WTC, and ever-increasing litigation, demonstrates the Purported Owners' refusal to consider the seriousness of the Ownership Issue or to allow this Court the opportunity to resolve it.  This conduct has also made it unduly burdensome for WTC to continue to serve as Owner

11

Trustee regardless of how the Ownership Issue is resolved. Judicial intervention is necessary to ensure that WTC's right to resign is enforced, and a qualifying successor Owner Trustee is promptly identified and appointed.

## ARGUMENT

The Purported Owners acknowledge that there is litigation pending in this Court to determine whether the ownership interests of the Trusts comply with the Trust Agreements. (Mot. at 3.) The Purported Owners admit that they have filed at least one lawsuit against WTC and have given instructions that WTC cannot follow under the terms of the Trust Agreements or the Trust Related Agreements. (*Id.* at 2-3.) The Purported Owners recognize that WTC has the right, under the Trust Agreements, to resign as Owner Trustee at any time for any reason. (Mot. at 4.) The Purported Owners concede that WTC resigned as Owner Trustee by letter dated July 20, 2017. (*Id.* at 4.) The Purported Owners know that WTC's resignation triggered "a series of events and deadlines," including the obligation to appoint a successor Owner Trustee by August 19, 2017. (*Id.* at 4.)

August 19, 2017 passed without the appointment of a successor Owner Trustee. Having ignored their contractual obligations, the Purported Owners nevertheless ask this Court to conscript WTC into continued service as Owner Trustee for an additional sixty (60) days. The Court should deny the Purported Owners' request because the passage of time mooted the relief they seek and the

Purported Owners' "reasons" for such extension do not justify their request. The Court should reject the Purported Owners' efforts to force WTC to continue to serve as Owner Trustee and should either order the Purported Owners to select a successor Owner Trustee or appoint a successor Owner Trustee.

### A.  The Request To Extend Time is Moot.

The Purported Owners seek to extend their deadline to appoint a successor Owner Trustee until October 18, 2017.  (D.I. 154.)  Oral argument on this Motion is scheduled for October 9, 2017.[15]  (D.I. 161.)  Even if the Court decides the Motion at the end of the October 9, 2017 hearing, the Purported Owners will have obtained nearly all of the extension they seek.  *Tull v. Turek*, 147 A.2d 658, 664 (Del. 1958) ("The point now seems moot by reason of the passage of time."). Wilmington Trust does not wish further to burden this Court's limited resources by fighting over the nine (9) remaining days.  Since, by virtue of the passage of time, the Purported Owners will have given themselves, unconditionally,[16] the extension they seek, the Court should find that the motion to extend time is moot.

---

[15]  The Purported Owners originally proposed to brief this motion so it would be presented ***after*** October 18, 2017.  While WTC hoped to present WTC's Motion sooner, WTC compromised on a schedule to avoid burdening the Court with unnecessary motion practice about scheduling issues.

[16]  WTC offered to agree to the Purported Owners' extension request if the Purported Owners agreed to withdraw all pending instructions and refrain from issuing new instructions until a successor Owner Trustee was appointed.  The Purported Owners rejected WTC's offer.

**B.     The "Reasons" For The Relief The Purported Owners Seek Do Not Justify The Relief They Request.**

The Purported Owners offer three excuses for their failure to appoint a successor Owner Trustee in the thirty (30) days permitted by the Trust Agreements.  First, they claim that the timing of WTC's resignation, in the middle of summer, makes it difficult to find a successor Owner Trustee.  (Mot. at 4.) While summer may occasion more vacation, the parties agreed in the Trust Agreements that thirty (30) days was sufficient time for the owners of the Trusts to appoint a successor Owner Trustee.  The Purported Owners, or their predecessors, could have bargained for more time (or for a clause that allowed for more time in the summer), but they did not.  *Homan v. Turoczy*, 2005 WL 5756927, at *18 (Del. Ch.) ("Courts must interpret the reasonable expectations of the parties within the context of existing contract terms . . . should not imply alleged obligation where the contract addresses the subject of the alleged wrong, but fails to include the obligation alleged."); *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 1930428, at *5 (Del. Ch.) ("A court will not write conditions into the contract that are not present, especially where the language is clear and such terms easily could have been included.").  The Court should not allow the Purported Owners selectively to rewrite terms of the Trust Agreements.  Regardless, by late-October, summer will long have ended and the Purported Owners will have had more than enough time to select a successor Owner Trustee.

14

The Purported Owners next blame their failure to comply with the Trust Agreements on the qualification requirements the Trust Agreements imposed upon the successor Owner Trustee.  (Mot. at 5.)  While the Trust Agreements do impose these requirements, they were known (and expressly set forth) when the Trust Agreements were executed and the parties agreed that thirty (30) days would allow sufficient time for the owners of the Trusts to select a replacement Owner Trustee. The Purported Owners do not provide any evidence or explanation about how these requirements are delaying their efforts to select a replacement successor Owner Trustee.  The Court should not find that this excuse justifies the Purported Owners' failure to comply with the terms of the Trust Agreements.

Finally, the Purported Owners blame their failure to select a successor Owner Trustee within the allotted time on difficulty in securing information from WTC.  (*Id.* at 5.)  The only "difficulties" the Purported Owners identify, however, are WTC's requests for the identity of the potential successor Owner Trustees that would receive the Trusts' confidential information and to speak with counsel for the perspective successor Owner Trustees.  The Purported Owners neither allege any delay in providing the requested information nor identify any information that WTC refused to supply.  Instead, the Purported Owners admit that this prospective successor Owner Trustee refused to move forward with the selection process not because of any conduct by WTC, but rather, because of substantial litigation

15

concerning the Trusts.   (Mot. at 6 ("one potential successor Owner Trustee specifically advised the Owners that it was declining the representation due to the ongoing litigation.").)   The Purported Owners initiated much of that litigation – particularly with respect to the Owner Trustee – and are responsible for their own conduct in that regard.   Any alleged "difficulties" in obtaining information from WTC do not justify the extension the Purported Owners seek.   The Court should deny the Motion.

### C. There Is No Basis To Compel WTC To Take Actions It Heretofore Has Refused To Take.

In their request for relief, the Purported Owners ask the Court to compel WTC to follow its contractual obligations until a successor Owner Trustee is appointed on October 18, 2017.   (Mot. at 7-8.)   The Purported Owners do not identify any provision of the Trust Agreement or any related agreement with which WTC has not complied.   The Purported Owners likewise do not identify any purported instructions WTC improperly declined to follow.

To the extent WTC has declined to follow the Purported Owners' instructions, ample authority supported WTC's decisions, and the Trust Agreements themselves authorize WTC's position with respect to each declined instruction.   Unlike the Purported Owners, WTC has complied with the terms of the Trust Agreements and Related Trust Agreements.   The Purported Owners' attempts to force WTC to follow their instructions violates the terms of the Trust

16

Agreements.  These improper instructions from the Purported Owners, and their failure to comply with the Trust Agreements, contributed to WTC's resignation in the first instance.  The Motion does not contain any basis for the Court to compel WTC to comply with unidentified contractual provisions and the Court should deny the Motion.

## CONCLUSION

For the foregoing reasons, the Court should deny the Purported Owners' motion to extend the deadline to appoint a successor Owner Trustee and should compel the Purported Owners to comply with the Trust Agreements and appoint a successor Owner Trustee.

Dated: September 19, 2017               BAYARD, P.A.

                                        _/s/ Stephen B. Brauerman_
                                        Stephen B. Brauerman (# 4952)
                                        Sara E. Bussiere (# 5725)
                                        222 Delaware Avenue, Suite 900
                                        P.O. Box 25130
                                        Wilmington, Delaware 19899
                                        (302) 655-5000

                                        _Attorneys for Intervenor_
                                        _Wilmington Trust Company_
                                        **Word Count: 4,634**

17