# EXHIBIT E

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

THE NATIONAL COLLEGIATE )
STUDENT LOAN MASTER )
TRUST, et al., )
 )
   Plaintiffs )
 )
  v. ) Case No. 12111-VCS
 )
PENNSYLVANIA HIGHER )
EDUCATION ASSISTANCE )
AGENCY D/B/A AMERICAN )
EDUCATIONAL SERVICES, )
 )
   Defendant. )

## MOTION FOR LEAVE TO FILE OPPOSITION AS *AMICUS CURIAE*

Non-Party GSS Data Services, Inc. ("GSSDS") hereby moves this Court for authority to file the attached Opposition of Non-Party GSS Data Services, Inc. to Plaintiffs' Motion for Emergency Relief ("Opposition") as *amicus curiae*. In support of this motion, GSSDS states the following:

## BACKGROUND

1. Plaintiffs in the above-captioned action are a series of trusts for which GSSDS acts as the Administrator.

2. On September 22, 2017, Plaintiffs filed a Motion for Emergency Relief ("Motion"). The Motion requests that the purported Owners[1] be allowed to

---

[1] All defined terms not otherwise defined herein shall have the meaning set forth in the Motion and the supporting Memorandum of Law.

take over the duties assigned to Wilmington Trust Company as Owner Trustee under the Trust Agreements and execute Notices of Default directed to Servicers of the Trusts and the Administrator, GSSDS.

3.      On September 18, 2017, the Consumer Financial Protection Bureau ("CFPB") initiated an action in the United States District Court for the District of Delaware against numerous Trusts entitled *Consumer Financial Protection Bureau, et al. v. National Collegiate Master Student Loan Trust*, C.A. No. 17-1323 (GMS) ("CFPB Action").  Along with the filing of the Complaint, the CFPB and the Trusts filed a proposed consent order containing purported "findings of fact" that would, according to Plaintiffs, support their contention that various parties, including the Servicers and the Administrator, had violated the terms of the Trust Agreements ("Proposed Consent Order").  The "findings of fact" contained in the Proposed Consent Order are disputed.

4.      Even if the District Court enters the Proposed Consent Order, it is not in any way clear that the Proposed Consent Order, on its face, would cause a default by the Administrator, or that any default by the Administrator led to the "findings of fact" in the Proposed Consent Order.  Plaintiffs have not explained the causal nexus between the allegations in the Proposed Consent Order and any actual breach of the Administration Agreement.  In the breach notice attached to the Motion, Plaintiffs simply list sections of the Administration Agreement that the

Administrator has purportedly violated and as the basis for each such violation reference the Proposed Consent Order, without referencing or listing the specific conduct by the Administrator that underlies such alleged violations.

5.     The Proposed Consent Order was not negotiated with any of the other parties to the Trust Agreements or parties having beneficial interests in the Trusts, including the Noteholders.  GSSDS became aware of the CFPB Action last week and filed a letter with the District Court indicating its intent to file a motion to intervene in the CFPB Action.

6.     In addition to GSSDS, several other parties, including certain Noteholders, have already filed motions to intervene in the CFPB Action.

## ARGUMENT

7.     The decision to allow a non-party to participate as *amicus curiae* is committed to the Court's discretion. *See La. Mun. Pol. Employees Ret. Sys. v The Hershey Co.*, 2013 Del. Ch. LEXIS 121, at *3 (Del. Ch. Apr. 16, 2013); James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 24.23[2] (3d Ed. 2015 Supp.) ("A court may allow a movant to participate as an *amicus curiae* as an alternative to intervention. *Amicus* status allows the movant to present legal argument …"). A non-party may be afforded the opportunity to participate simply "to introduce argument, authority or evidence to protect his interests." *Giammalvo v. Sunshine Mining Co.*, 644 A.2d 407, 410 (Del. 1994).

8.    GSSDS has information regarding the effects of the Motion on non-parties and its relationship to other ongoing litigation that is germane to this Court's determination of the Motion.

9.    GSSDS has no new claims to raise in the above-captioned matter. Plaintiffs are seeking the unique relief of asking this Court to enforce a proposed order, not yet entered by another Court, to which numerous parties object based on ownership arguments still pending before this Court.   GSSDS has not taken a position on the ownership issue currently pending before this Court, however this Motion is not just about the pending ownership issues, but rather seeks to support and enforce a proposed order under consideration by another court.   Most importantly, the Motion seeks to confirm the substance of the Proposed Consent Order before any of the affected parties have the opportunity to be heard in that court and before the District Court has had the opportunity to rule on the requested relief.  Therefore, GSSDS should be allowed to participate in this matter as *amicus curiae* solely with regard to the Motion.  *See Wier v. Howard Hughes Medical Institute*, 404 A.2d 140, 146 (Del. Ch. 1979) ("Where he presents no new questions, a third party can contribute usually most effectively and most expeditiously by a brief *amicus curiae* and not by intervention.") (internal quotation omitted).

## CONCLUSION

For the foregoing reasons, GSSDS respectfully requests that this Court grant

GSSDS leave to file the attached Opposition to the Motion as *amicus curiae*.


Dated:  September 25, 2017                **LANDIS RATH & COBB LLP**


Rebecca L. Butcher (No. 3816)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  butcher@lrclaw.com


*Counsel to GSS Data Services, Inc.*

**WORDS: 822**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| THE NATIONAL COLLEGIATE<br>STUDENT LOAN MASTER<br>TRUST, et al., | ) ) ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 12111-VCS |
| | ) | |
| PENNSYLVANIA HIGHER<br>EDUCATION ASSISTANCE<br>AGENCY D/B/A AMERICAN<br>EDUCATIONAL SERVICES, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION OF NON-PARTY GSS DATA SERVICES, INC.
## TO PLAINTIFFS' MOTION FOR EMERGENCY RELIEF

Non-party GSS Data Services, Inc. ("GSSDS") opposes the relief requested in Plaintiffs' Motion for Emergency Relief ("Motion") to the extent it seeks to usurp the authority of the United States District Court for the District of Delaware ("District Court") by having this Court enforce a proposed order not yet entered by the District Court and deny the affected parties their due process rights before that court.  In support of this opposition GSSDS states the following:

## BACKGROUND

1.     On September 22, 2017, Plaintiffs filed the Motion requesting that they be allowed to circumvent the Owner Trustee's refusal to send default notices to the Servicers and the Administrator, GSSDS, by executing and sending such

default notices directly.  (*See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Emergency Relief ("Emergency Memo") at 7).

2.      GSSDS is the Administrator of the Trusts, which are the named Plaintiffs in this action.  GSSDS is not a party to this action.  However, Plaintiffs are seeking to have this Court force a default notice to be sent to GSSDS over the objection of the Owner Trustee.  Once such a default notice has been issued, the purported Owners will seek to remove GSSDS as Administrator of the Trusts.

3.      The alleged basis for the default notice are "findings of fact" admitted by the Trusts in a proposed consent order ("Proposed Consent Order") negotiated between the purported Owners and the Consumer Financial Protection Bureau ("CFPB") filed with the District Court on September 18.  *See Consumer Financial Protection Bureau, et al. v. National Collegiate Master Student Loan Trust*, C.A. No. 17-1323 (GMS) ("CFPB Action").   Plaintiffs apparently negotiated the Proposed Consent Order in secret and did not permit the involvement of, among others, the Owner Trustee.

4.      The Proposed Consent Order does not contain affirmative allegations of wrongdoing against GSSDS.  While the Proposed Consent Order includes GSSDS within the definition of "Servicers," and requires that Servicers take certain remedial actions, GSSDS did not act as a servicer in connection with the

Trusts.  GSSDS intends to challenge the Proposed Consent Order on this basis, among others.

5.      Plaintiffs have not explained the causal nexus between the allegations in the Proposed Consent Order and any actual breach of the Administration Agreement.  In the breach notice attached to the Motion, Plaintiffs simply list sections of the Administration Agreement that the Administrator has purportedly violated and as the basis for each such violation reference the Proposed Consent Order, without referencing or listing the specific conduct by the Administrator that underlies such alleged violations.

6.      Notably, prior to initiation of the CFPB Action, the Owners directed the Owner Trustee to execute the Proposed Consent Order as well, but the Owner Trustee refused to "avoid violating the terms of the Trust Agreements" and as part of the escalating conflicts between the purported Owners and the Owner Trustee that culminated in the Owner Trustee's resignation.  (*See* Wilmington Trust Company's Answering Brief in Opposition to the Purported Owners' Motion for Extension of Deadline for Appointment of Successor Owner-Trustee and for Other Relief Consistent with the Trusts Agreements, at 9-10.)

7.      The District Court has not entered the Proposed Consent Order.

8.      Since the filing of the Proposed Consent Order, numerous parties with interests in the Trusts have filed or indicated their intent to file motions to

intervene in the CFPB Action for the purpose of objecting to the Proposed Consent Order.

## ARGUMENT

9.      GSSDS, therefore, submits this Statement in Opposition to the Motion and the relief requested in it seeking to effectuate a Proposed Consent Order not yet ruled on by the District Court.

### A.      Plaintiffs Have Not and Cannot Satisfy the Heightened Burden Required for a Mandatory Injunction

10.     Plaintiffs' request for relief seeks to either order the Owner Trustee to follow the purported Owners' directions or to usurp the Owner Trustee's authority to issue default notices under the Trust Agreements.  Plaintiffs seek to require the issuance of notices of default against the Servicers and the Administrator based on "findings of fact" contained in the Proposed Consent Order.  This request falls well short of the standard for such mandatory injunctive relief.

11.     Plaintiffs have styled this Motion as a request for a temporary restraining order.  In order to establish a right to a temporary restraining order, the movant must establish 1) the existence of a colorable claim, 2) the irreparable harm that will be suffered if relief is not granted, and (3) a balancing of the hardships in the favor of the moving party.  *Arkema, Inc. v. Dow Chem. Corp.*, 2010 Del. Ch. LEXIS 120, at *11 (Del. Ch. May 13, 2010).  However, where the moving party is

seeking the relief that it would be entitled to after a full trial on the merits, then the movant is held to a higher standard. *Id*. at *12.

12.     Where the moving party seeks mandatory relief, *i.e.*, an order requiring the responding party to take affirmative action, then Delaware courts require the moving party to clearly establish the legal right the movant seeks to protect and that the material facts are not in substantial dispute. *See id*., *see also Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1120 (Del. Ch. 1990). Plaintiffs' Motion requests mandatory action regarding the issuance of default notices that cannot be easily undone if it is later proven that the purported Owners were not entitled to issue those notices. *See Stahl*, 579 A.2d at 1120. The stringent standard for a mandatory injunction should be applied here. *See In re Real Estate*, 2000 Del. Ch. LEXIS 185, *5 (Del. Ch. Nov. 9, 2000) (Glasscock, Master) ("The analysis for a mandatory injunction is even more stringent than that for a permanent injunction. A court will not grant a mandatory injunction unless a party can clearly establish the legal right that party seeks to protect." (quotation and ellipsis omitted)). "This requires more than simply a showing of a reasonable probability of success. . . . It requires, in addition, a showing that the petitioner is entitled as a matter of law to the relief it seeks based on undisputed facts." *Alpha Nat. Res., Inc. v. Cliffs Natural Res., Inc.*, 2008 WL 4951060, at *2 (Del. Ch. Nov. 6, 2008).

13.     Because of this heightened burden, Delaware courts are allowed to impose a mandatory injunction only after the court holds a trial and makes findings of fact, or on the basis of undisputed facts.  *C&J Energy Servs., Inc. v. City of Miami Gen. Employees & Sanitation Employees' Ret. Trust*, 107 A.3d 1049, 1053-54, 1071 (Del. 2014).

14.     Plaintiffs have not requested a trial. Instead the Plaintiffs are asking this Court to rule on these issues on three days' notice based on the thinnest of proffered explanations in a blatant effort to deny any party that may be affected by the Proposed Consent Order the opportunity to be heard by *any* court.

## B.     The Purported Owners Have Not Established a Likelihood to Succeed on the Merits

15.     Plaintiffs ask this Court to accept as a basis for their likelihood to succeed on the merits the "findings of fact" contained in the Proposed Consent Order filed in the CFPB Action.  Due to the Plaintiffs' request for a mandatory injunction they are not entitled to the more lenient colorable claim standard that assumes facts alleged in the motion for a temporary restraining order as true. Instead Plaintiffs must establish they are entitled to the requested relief based on undisputed facts.

16.     The "findings of fact" in the Proposed Consent Order on which Plaintiffs seek to rely are not actual factual determinations made by a court after notice and an opportunity to be heard by all affected parties.  These are "findings

of fact" that the purported Owners agreed to with the CFPB and placed in the Proposed Consent Order (which coincidentally when entered arguably would give the purported Owners the power to remove the Servicers, the Administrator and to upend the financial structure of the Trusts.)

17.     The purported Owners' ability to enter into such a Proposed Consent Order without the consent of Owner Trustee is disputed.  The "findings of fact" contained in the Proposed Consent Order are disputed.  Numerous parties are filing motions to intervene in the CFPB Action because of the disputes both over the purported Owners' ability to enter the Proposed Consent Order and the terms contained within the Proposed Consent Order itself.  *See* Motion to Intervene and Opposition to Plaintiff's Motion to Approve Consent Judgement filed by Transworld Systems Inc. attached hereto as Exhibit A.  GSSDS intends to file a motion to intervene shortly as well.

18.     Plaintiffs cannot demonstrate their ability to succeed on the merits based on these contested facts that they agreed to with themselves.  The CFPB does not stand in the same position as the Servicers, Administrator, Noteholders or any other party to the Trust Agreements.  The CFPB's willingness to agree to these "facts" does not make these "facts" uncontested.

19.     Further, even the alleged "findings of fact" do not support the relief Plaintiffs seek – the issuance of a default notice to GSSDS.  Plaintiffs have just

baldly asserted that the Administrator has violated various provisions of the Trust Agreements without pointing to any specific wrongful actions asserted against the Administrator in the complaint in the CFPB Action or the Proposed Consent Order.

20.     Plaintiffs are not requesting a temporary restraining order seeking to maintain the status quo, but rather are asking for a mandatory injunction requiring action to completely upend the status quo that cannot easily be undone if it is later proven they had no authority to issue these notices of default.  Plaintiffs cannot base such a request for relief on disputed facts.  Plaintiffs are not entitled to an assumption that the "findings of fact" in the Proposed Consent Order are true. Because Plaintiffs' entire argument for establishing a colorable claim is based on the assumption that the disputed "findings of fact" in the Proposed Consent Order are true, Plaintiffs' argument fails *ab initio*.

### C.     Plaintiffs Have Failed to Establish That the Trusts Will Be Irreparably Harmed and that the Balance of the Equities Favor Plaintiffs.

21.     Plaintiffs' assertion of irreparable harm is entirely speculative and theoretical.  As the threat of irreparable harm is central to a consideration of a temporary restraining order, without a showing of irreparable harm Plaintiffs' Motion must be denied.

22.     To demonstrate irreparable harm, the alleged injury must be "imminent and genuine as opposed to speculative." *Aquila Inc. v. Quanta Servs.*

*Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002).  Plaintiffs have not alleged an imminent, genuine injury.  Plaintiffs even state the proposed risk of harm in speculative terms:  "the Trusts *may* be in breach," "the Trusts *may* be unable to recover," and the "Indenture Trustee *may* institute proceedings."  (Emergency Memo at 13.)

23.    Plaintiffs do not even assert that a breach will definitely occur on Monday, just that it *might* occur.  (*See id*.)  These are not allegations of imminent, irreparable harm.

24.    Further, the Indenture Trustee is seeking direction from the Noteholders whether to intervene in the CFPB Action and certain Noteholders have already filed a motion to intervene opposing the relief requested in the Proposed Consent Order.  *See* Letter from U.S. Bank National Association to the Honorable Gregory M. Sleet dated September 22, 2017 attached hereto as Exhibit B and the Notice of Appearance by Objecting Noteholders and Request to Intervene for the Limited Purpose of Objecting to the Proposed Consent Judgment attached hereto as Exhibit C.  Therefore, Plaintiffs' purported imminent harm based on the Indenture Trustee seeking to dissolve the Trusts based on the Trusts' failure to enforce the Proposed Consent Order is not just speculative, but extremely unlikely.

25.    Also Plaintiffs fail to acknowledge that the potential for irreparable harm is entirely of their own making.  Because the purported Owners agreed to the

entry of "findings of fact" with the CFPB, the Trusts now face irreparable harm if it fails to deliver default notices based on those same "findings of fact."  Perhaps the creation of just such a risk of harm is something that should have factored into the purported Owners' decision to enter into the Proposed Consent Order despite the Owner Trustee's refusal to do so.

26.     Finally, the balance of the equities do not favor Plaintiffs.  Plaintiffs are asking this Court to act to enforce the terms of a Proposed Consent Order that has not been entered by the District Court.  GSSDS and other parties to the Trust Agreements have legitimate disputes both with the purported Owners' ability to enter into the Proposed Consent Order and with its terms.  The Proposed Consent Order does not support the finding of any default by GSSDS.  As mentioned above, GSSDS disagrees with the fact that the Proposed Consent Order lists GSSDS as a "Servicer" – even though it is not.  If the requested relief is granted, GSSDS will have received a notice of default under the Administration Agreements, which, under certain circumstances, could result in GSSDS' removal as Administrator of the Trusts.  Plaintiffs' attempts to ram through a contested and controversial order without due process or the opportunity of any of the affected parties to be heard should not be supported by this Court in issuing an order to enforce the Proposed Consent Order.

## **CONCLUSION**

For the foregoing reasons, GSSDS respectfully requests that this Court deny the relief requested in the Motion in its entirety.

Dated:  September 25, 2016          **LANDIS RATH & COBB LLP**

_____/s/Rebecca L. Butcher_____
Rebecca L. Butcher (No. 3816)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  butcher@lrclaw.com

*Counsel to GSS Data Services, Inc.*

**WORDS: 2,240**

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: 1:17-cv-01323-GMS |
| The National Collegiate Master Student | ) | |
| Loan Trust, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## TRANSWORLD SYSTEMS INC.'S MOTION TO INTERVENE AND OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE CONSENT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 24, Intervenor Transworld Systems Inc. ("TSI") hereby moves to intervene and opposes the Motion to Approve Consent Judgment (D.I. 3) filed by Plaintiff Consumer Financial Protection Bureau ("CFPB" or "Bureau").

## INTRODUCTION

TSI is entitled to intervene in this action by right, and the Court should not approve the Proposed Consent Judgment (D.I. 3-1) filed by the CFPB. The Proposed Consent Judgment directly and substantially implicates the rights and obligations of numerous interested parties, including TSI, and the Proposed Consent Judgment contemplates conduct that would harm consumers.

On the same day that the Bureau filed and publicly announced the Proposed Consent Judgment, the Bureau also publicly announced that, in connection with a separate administrative proceeding, it had entered into a Consent Order with TSI; that Order was stipulated to by TSI and has an effective date of September 15, 2017. *See In the Matter of Transworld Systems, Inc.*, File

1

No. 2017-CFPB-0018, Doc. 1 ("TSI Consent Order").[1]  The TSI Consent Order requires TSI to undertake certain tasks as part of prospective injunctive relief.  The terms of the TSI Consent Order are substantially inconsistent with the requirements of the Proposed Consent Judgment that the CFPB has submitted to the Court for approval.  Approval of the Proposed Consent Judgment would put TSI in an untenable position, subjecting it to two dueling and inconsistent consent orders: (1) the TSI Consent Order to which TSI is a party and which TSI negotiated in good-faith with the Bureau, and (2) the Proposed Consent Judgment between the CFPB and fifteen NCSLT Trusts ("Trusts"), to which TSI is not a party and only learned about on September 18.  One glaring contradiction between the two orders is that the TSI Consent Order provides that TSI will provide certain reports and compliance plans to the "successor special servicer," which is U.S. Bank; the Proposed Consent Judgment, however, includes a different reporting structure, apparently empowering the Trusts to oversee all Servicers, including TSI, in total disregard of the contractual relationships among the Trusts and servicing parties and in stark contradiction to the TSI Consent Order.  This alone provides a basis for the Court to deny entry of the Proposed Consent Judgment.

Moreover, there is a cloud of uncertainty surrounding the authority of McCarter & English, LLP, the law firm that signed the Proposed Consent Judgment, to enter into an agreement on behalf of the Trusts.  Issues relating to the Trusts' governance structure currently are being litigated in the Delaware state and federal courts.  *See National Collegiate Student Loan Master Trust et al. v. Pennsylvania Higher Education Assistance Agency et al.,* Case No. 12111 (Del. Ch.); *In re National Collegiate Student Loan Trusts 2003-1 et al.,* Case No. 1:16-cv-

---

[1]     Available    at    http://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf

00341-JFB-SRF (D. Del).    McCarter & English serves as counsel to VCG Securities, LLC ("VCG") (though this is not disclosed anywhere on the Proposed Consent Order).[2]   VCG and its principal, Mr. Donald Uderitz, purportedly on behalf of the Trusts, have been mounting an aggressive campaign to install one of VCG's affiliates, Odyssey Education Resources LLC, as a servicer for the Trusts.   Tellingly, the very same day the CFPB filed its motion to enter the Proposed Consent Judgment, VCG (purportedly on behalf of the Trusts) submitted a "notice of supplemental authority" in the parallel proceeding pending in this District involving the Trusts, citing the Proposed Consent Judgment (which VCG's representatives signed) as grounds for appointing VCG's affiliate Odyssey as a servicer for the Trusts.   *See* Notice of Supplemental Authority, Case No. 16-341-JFB-SRF, D.I. 76 (Sept. 18, 2017).   Now, VCG's counsel has signed a Proposed Consent Judgment with a federal regulatory agency, once again purporting to act on behalf of the Trusts.   Entry of this Proposed Consent Judgment would enable VCG to appoint its own affiliates to undertake servicing work for the Trusts, and likely other actions that are contemplated by the Proposed Consent Judgment, notwithstanding the fact that VCG's ability to assert such control over the Trusts is highly contested and the subject of several cases pending in Delaware federal and state courts.

In addition, as discussed below, TSI will suffer substantial harm if the Proposed Consent Judgment is approved, as it substantially constrains TSI's ability to provide services for the NCSLT portfolio of loans.   Moreover, entry of the Proposed Consent Judgment as written could cause consumer harm.   The contemplated cessation of collection efforts could significantly impact consumers in that it risks causing confusion to borrowers about the status of their debt,

---

[2]     VCG and its affiliates have been represented by McCarter & English in at least one other Trust-related matter.   *See, e.g., Pennsylvania Higher Education Assistance Agency v. NC*

while at the same time hamstringing TSI's ability to respond to borrower queries about their NCSLT loans. Further, it is unclear whether interest will continue to accrue during the pending Compliance Audit called for in the Proposed Consent Judgment, while collections are ceased; this risks making consumer debt more expensive over time. The Proposed Consent Judgment also contemplates that consumer payments will be deposited into a single escrow account that would not necessarily segregate funds and that would be controlled by the Trusts' purported representatives, who could, in turn, use the funds at their discretion. It is similarly not clear from the Proposed Consent Judgment whether the flow of money directly into an escrow account would even enable the servicers to credit consumers' accounts through the system of record at the time that consumers make their payments. Each of these items is an example of how the Proposed Consent Judgment's provisions could also harm consumers. For all of these reasons, the Court should grant TSI's Motion to Intervene and decline to enter the Proposed Consent Judgment.

## THE CONFLICTING ORDERS

TSI and the CFPB entered into a negotiated Consent Order (the "TSI Consent Order") that was signed and executed on September 15, 2017; this concluded an investigation into the services TSI's Attorney Network business unit, which engages law firms to collect on defaulted private student loans, provided to the Trusts. The TSI Consent Order includes specific injunctive provisions, including that TSI:

- Provide reports about collections lawsuits to the successor special servicer;

- Provide account-level detail to the successor special servicer;

- Provide loan information to the successor special servicer;

*Owners, LLC et al.*, Case No. 1:16-cv-01826-CCC (M.D. Pa.).

- Confer with the successor special servicer regarding pending collections lawsuits, including whether to withdraw pending lawsuits;

- Confer with the successor special servicer regarding directions to law firms;

- Confer with the successor special servicer regarding disclosures in connection with collection of debt owned by the Trusts;

- Submit a compliance plan to the CFPB that includes written policies and procedures.

Thus, TSI's interactions under the TSI Consent Order are with the successor special servicer (U.S. Bank), not with the Trusts themselves.

On September 18, 2017, the CFPB filed a Complaint against the Trusts, alleging violations of the Consumer Financial Protection Act's (CFPA) prohibitions against unfair, deceptive or abusive acts and practices (UDAAP; *see* 12 U.S.C. §§ 5531, 5536). Contemporaneously, the CFPB filed a motion to enforce a Proposed Consent Judgment (D.I. 3) the Bureau purportedly had entered into with the "Trusts." No prior notice of the existence of the Proposed Consent Judgment was given to TSI, even though TSI spent months negotiating the TSI Consent Order with the same Bureau attorneys. The Proposed Consent Judgment differs materially from the TSI Consent Order, including that it:

- Contemplates that the Trusts – and not the successor special servicer – will interact with the Trusts' servicers, including TSI, to implement the injunctive provisions. (It should be noted that paragraph 5 of the TSI Consent Order states that "[t]he Trusts do not have any employees and all actions taken by the Trusts in connection with loan servicing and all actions taken by the Trusts in connection with loan servicing and collecting Debt are carried out by third parties. Thus, it is unclear how the Trusts will effectuate the conduct provisions in the Proposed Consent Judgment.");

- Contemplates different affidavit-related policies and procedures than those in the TSI Consent Order;

5

- Contemplates that the Trusts will instruct the "Primary Servicer" to cease transferring any debt to "the Special Servicer and any Subservicer" and instead "retain possession of the Debt pending approval and implementation" of a compliance plan (which is to be prepared by the Trusts and thus is different than the plan to be provided by TSI under the TSI Consent Order);

- Contemplates the cessation of "collection efforts" pending approval of the Trusts' compliance plan;

- Contemplates that all payments will be remitted to a single escrow account designated by the Trusts (or, presumably, the entity purporting to represent the Trusts);

- Contemplates an "independent audit" to be overseen by the Trusts (or the entity purporting to represent the Trusts) of all loans owned by the Trusts, with reports to be provided to the Trusts and the CFPB (and not to the successor special servicer or to any of the Trusts' servicers);

- Contemplates that a "Board" of the Trust will have the responsibility for overseeing the Trusts' implementation of the conduct provisions, when it is not clear that the Trusts have a "Board," let alone one that is authorized; and

- Apparently contemplates that, for certain borrowers, the Trusts will refrain from "furnishing reports on the Debt in question, except as otherwise required by this Order."

Thus, the TSI Consent Order and the Proposed Consent Judgment are materially inconsistent in that they contemplate different supervisory and reporting structures and they contemplate the implementation of different policies, procedures, and relief.

Finally, there is a threshold question as to whether the Court has subject matter jurisdiction to entertain the CFPB's motion. Specifically, the Bureau's authority to assert UDAAP claims, as it does here, arises only if the Trusts are "covered persons" within the meaning of the CFPA, the Bureau's enabling statute. The Bureau's Complaint avers that the Trusts are "covered person[s]," under 12 U.S.C. § 5481(6), because they have "engaged in" "servicing loans, including acquiring, purchasing, selling [or] brokering" of debt. *See* D.I. 1,

6

CFPB Compl. at ¶8. But the Complaint and the Proposed Consent Judgment expressly enumerate those entities that service the loans in the NCSLT portfolio; indeed, the Trusts are expressly distinguished from those servicing entities. Moreover, as noted above, the TSI Consent Order expressly states that the Trusts have no employees and carry out servicing functions through third parties. *See supra* at 5. The CFPA does not intend for the definition of "covered persons" to extend to entities with no employees that hold debt through securitization and conduct their servicing and collection activities through third parties. Indeed, other provisions of the CFPA that define other activities that make an actor a "covered person" within the meaning of the CFPA make this clear. *See, e.g,* 12 U.S.C. § 5481(15).

And if the Trusts are not "covered persons," then the Court has no subject matter jurisdiction as to this matter. Specifically, the Bureau's Complaint alleges that its authority to pursue UDAAP claims under the CFPA confers federal question jurisdiction in this matter. *See* D.I. 1, CFPB Compl. at ¶4 (referencing federal consumer financial law, which, as here, is the prohibition against UDAAP, referenced in 12 U.S.C. §§ 5531, 5536)). And UDAAP claims can only be brought against entities that are expressly defined as "covered persons" within the meaning of the CFPA. *See* 12 U.S.C. §§ 5531, 5536. If the Trusts are not "covered persons," this matter must be dismissed in its entirety, with prejudice.

## ARGUMENT

### I.    TSI IS ENTITLED TO INTERVENE BY RIGHT IN THIS ACTION

Federal Rule of Civil Procedure 24 governs intervention in pending federal actions.  *See*
Fed. R. Civ. P. 24.  Under Rule 24, a Court must permit a third party to intervene as of right
where the third party "claims an interest relating to the property or transaction that is the subject
of the action, and is so situated that disposing of the action may as a practical matter impair or
impede the movant's ability to protect its interest, unless existing parties adequately represent
that interest." Fed. R. Civ. P. 24(a)(2); *see Endoheart AG v. Edwards Lifesciences Corp.*, No.
1:14-CV-1473, 2015 WL 6956603, at *1 (D. Del. Nov. 6, 2015). A third party should be
permitted to intervene as of right if it establishes that "(1) its application for leave to intervene
was timely; (2) it has a sufficient interest in the litigation; (3) there is a threat that that interest
will be impaired or affected, as a practical matter, by the disposition of the action; and (4) there is
inadequate representation of this interest by the existing parties in the litigation." *Advanced
Dynamic Interfaces, LLC v. Aderas Inc.*, No. 1:12-CV-963, 2013 WL 6989428, at *1 n.1 (D. Del.
Jan. 11, 2013) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). An
intervention by right must be permitted where warranted.  *See* Fed. R. Civ. P. 24; *Brody By and
Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)). The non-conclusory
allegations set forth in a motion to intervene are accepted as true. *See Endoheart*, 2015 WL
6956603, at *2 & n.2.

### A.  TSI's Motion To Intervene Is Timely

A court considers the following factors when determining timeliness: "(1) the stage of the
proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."
*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir.

1995). This action was commenced on September 18, 2017, a mere four days ago. No scheduling conference has occurred. Given the very early stages of the proceeding, there is no delay and certainly no prejudice from any purported delay. There can be no legitimate dispute that TSI's Motion is timely.

### B. TSI Has A Sufficient Interest In The Property And Transactions At Issue In This Litigation, And Those Interests May Be Impaired Or Impeded If The Consent Judgment Is Approved

A third party has a sufficient interest in the subject of litigation when there is a "significantly protectable" legal interest in the property or transaction at issue. *Mountain Top*, 72 F.3d at 366. "[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972. To determine whether an intervenor's interests may be impaired or impeded, a court assesses "the practical consequences of the litigation" and "consider[s] any significant legal effect" on the interests. *See Brody by and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). Contesting provisions in a consent order that affect contractual obligations is recognized as a sufficient interest warranting intervention in this Circuit. *See EEOC v. Opportunity Comm'n v. Am. Tel. & Tel. Co.*, 506 F.2d 735, 739 (3d Cir. 1974).

TSI's interest in this matter is significant. First, if the Court enters the Proposed Consent Judgment, there will be two consent orders with irreconcilable provisions. As described above, the TSI Consent Order and the Proposed Consent Judgment are materially inconsistent and envision the implementation of different relief and, critically, subject TSI to different oversight regimes.

Additional complications arise in connection with the Compliance Plans required under the two orders. The Proposed Consent Judgment directs the Trusts to Direct "any Subservicer"

9

(and TSI is a subservicer) to suspend collection efforts on all debt owned by Defendants until a Compliance Plan that the Trusts must provide to the CFPB is approved and implemented. (D.I. 3-1 ¶ 16). Here again TSI may be caught between a rock and a hard place if it submits its own Compliance Plan, which the Bureau will accept (and which is due before the Trusts' Compliance Plan), but the Trusts submit a conflicting or more onerous Compliance Plan that affects the exact same activities. Delaware law does not allow for the type of business uncertainty and confusion these conflicting orders would create. *See, e.g., Stroud v. Grace*, 606 A.2d 75, 87 (Del. 1992) (noting that certainty is a key policy consideration in corporation law).

Second, TSI has a substantial economic interest in this matter that may be impeded or impaired if the Proposed Consent Judgment is accepted. The Proposed Consent Judgment requires the Trusts to direct the Primary Servicer to "cease transferring any Debt to the Special Servicer and any Subservicer" (again, TSI is a subservicer) and to instead retain possession of all debt pending approval and implementation of a Compliance Plan. *See* D.I. 3-1 ¶ 16. It also directs the Trusts to direct "any Subservicer" to suspend collection efforts on *all Debt* owned by the Trusts until the Compliance Plan is approved and implemented. *See id.* The Compliance Plan will not be approved and implemented for at least four months from the date of execution. *See id.* ¶ 28 (giving the Trusts 120 days to submit the Compliance Plan), ¶ 29 (detailing procedure for submitting revised Compliance Plan if it is not accepted by the Bureau). Thus, for at least four months, and likely longer, TSI cannot engage in any collection efforts on behalf of the Trusts. If implemented, this provision – which was not proposed or included by the Bureau in the Consent Order it negotiated with TSI – undoubtedly will cause TSI substantial financial loss, even as TSI is not a party to this Proposed Order.

## C.  The Existing Parties Do Not Adequately Represent TSI's Interests

The inquiry into whether representation is inadequate is flexible and "varies with each case." *Kleissler*, 157 F.3d at 972.  The CFPB does not represent TSI's interests.  Nor do the purported representatives of the Trusts. VCG, whose attorneys signed the Proposed Consent Judgment on behalf of the Trusts, does not necessarily represent the Trusts' interests (*see* Ambac's Motion to Intervene, D.I. 4 at 7), nor does it represent TSI's interests.  VCG's desire to have its affiliate serve as the Trusts' servicer, alone, renders VCG – and the Trusts it purports to speak for – unsuited to represent TSI's interests in this matter.

Because TSI overwhelmingly satisfies all of the requirements for intervention by right under Rule 24(a), TSI's Motion to Intervene must be granted.[3]

## II.    THE CFPB'S CONSENT JUDGMENT IS NEITHER FAIR NOR REASONABLE AND SHOULD NOT BE APPROVED

Proposed consent judgments "are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler*, 771 F.2d 1556, 1568-69 (2d Cir. 1985).  Before approving entry of a proposed consent judgment, a district court must independently review the negotiated consent decree to ensure it is "fair, adequate, reasonable, and in the public interest." *See F.T.C. v. Circa Direct LLC*, 2012 WL 2178705, at *1 (D.N.J.

---

[3]     To the extent the Court finds that permissive intervention is more appropriate here, TSI easily fulfills the requirements under Rule 24(b).  Permissive intervention is allowed when a third party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *United States v. Territory of V.I.*, 748 F.3d, 514, 524 (3d Cir. 2014). In exercising its discretion in allowing a permissive intervention, a court's "central consideration" is "whether allowing intervention will cause delay or prejudice." *Bell Atl.-Del., Inc. v. Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999); *see also* Fed. R. Civ. P. 24(b)(3) (court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").  As explained above, TSI shares claims with common questions of fact or law with the main action, and given the early stages of this matter there is no delay or prejudice to the parties.

June 13, 2012) (citing *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) ("When a public agency requests that a judicial stamp of approval be placed on a negotiated consent decree ... [t]he court, rather than blindly following the agency's lead, must make its own inquiry into the issue of reasonableness before judgment") (internal quotations omitted))).

In recent years, courts have reduced their analysis to whether a proposed consent judgment is both fair and reasonable. *See S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 294 (2d. Cir. 2014); *United States v. Peterson*, 859 F. Supp. 2d 477, 478 (E.D.N.Y. 2012) ("A district court has the duty to determine whether a consent decree based on a proposed settlement is fair and reasonable."). To determine whether a proposed consent judgment is both fair and reasonable, courts assess: "(1) the basic legality of the decree, *see Benjamin v. Jacobson*, 172 F.3d 144, 155-59 (2d Cir. 1999)"; (2) whether enforcement mechanisms and other terms are clear, *see, e.g., Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993) (finding abuse of discretion when lower court approved consent decree that failed to properly define enforcement mechanisms); (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup Glob. Markets*, 752 F.3d at 294. A court will decline to enter a consent judgment it determines to be unfair or unreasonable. *See, e.g., Clinton*, 999 F.2d at 325. Here, the Proposed Consent Judgment is neither fair nor reasonable.

### A. The Proposed Consent Judgment Could Harm Consumers

As explained above, the Proposed Consent Judgment includes numerous provisions that may expose consumers to harm. For example, the Proposed Consent Judgment contemplates a simultaneous bar on collection activities and servicer communication with borrowers, which risks consumer confusion regarding the terms of the two consent orders and their effects on

12

individual account-holders.  If interest continues to accrue during the period that collection activity is frozen, borrowers' loans may become more expensive.  And, the Proposed Consent Judgment's contemplated single escrow account construct, which is to be overseen by the disputed representatives of the Trust, presents a risk that those representatives may abuse their unfettered control over the escrow funds while simultaneously denying consumers credit for those escrowed payments.

**B.  The Proposed Consent Judgment Would Impose Conflicting Directives On TSI, And Is Therefore Unfair And Unreasonable**

As discussed *supra*, should the Court approve the Proposed Consent Judgment, TSI will be held to conflicting consent orders with irreconcilable provisions demanding compliance. Placing TSI in such a predicament, when it negotiated and executed a Consent Order with not only the same agency but the same attorneys at the agency that contemporaneously announced a conflicting Proposed Consent Judgment with another entity, is precisely the type of unfairness and unreasonableness that reviewing district courts seek to avoid.  *See Standard Fin. Mgmt. Corp.*, 830 F.2d at 408.

**C.  The Proposed Consent Judgment Is Unfair And Unreasonable Because The Purported Signatory for Defendants Lacks The Authority To Bind Certain Named Trusts**

The Proposed Consent Judgment indicates McCarter & English as the purported signatory for Defendants. However, as previously discussed, whether McCarter & English and their client were authorized to enter into the Proposed Consent Judgment on behalf of Defendants is a hotly disputed issue.  *See Ambac Mot. To Intervene, D.I. 4 at 8.*  It would be unfair and unreasonable to the other interested parties, including TSI, for the Court to approve a Proposed Consent

Judgment that was negotiated and executed by a party with dubious authority. *See Citigroup Glob. Markets, Inc.*, 752 F.3d at 294.

## CONCLUSION

For these reasons, TSI respectfully requests the Court grant its Motion to Intervene and Deny Plaintiff's Motion to Approve Consent Judgment.

### **Oral Hearing Requested**

Pursuant to Local Rule 7.1.4, TSI respectfully requests an oral hearing on this Motion.

Dated: September 22, 2017

<div style="margin-left:40%">

Respectfully submitted,

/s/ *Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
VENABLE LLP
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
Phone: (302) 298-3535
Fax: (302) 298-3550
JLEdmonson@venable.com

Allyson B. Baker (*pro hac vice to be filed*)
Meredith L. Boylan (*pro hac vice to be filed*)
Sameer P. Sheikh (*pro hac vice to be filed*)
Katherine M. Wright (*pro hac vice to be filed*)
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Phone:  (202) 344-4000
Fax:  (202) 344-8300
ABBaker@venable.com
MLBoylan@venable.com
SPSheikh@venable.com
KMWright@venable.com

*Counsel for Intervenor Transworld Systems Inc.*

</div>

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of September, 2017, a copy of the foregoing

document was electronically filed with the court and served via CM/ECF, on parties with counsel

of record identified on the Court's docket. A copy of the foregoing also has been sent via email

to any party without a designated counsel of record currently identified on the Court's docket.


/s/ *Jamie L. Edmonson*
Jamie L. Edmonson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | Civil Action No.:  1:17-cv-01323-GMS |
| Plaintiff, | ) | |
| | ) | **[PROPOSED]** |
| v. | ) | **ORDER GRANTING TRANSWORLD** |
| | ) | **SYSTEMS' MOTION TO INTERVENE** |
| The National Collegiate Master Student | ) | **AND DENYING PLAINTIFF'S MOTION** |
| Loan Trust, *et al.* | ) | **TO APPROVE CONSENT JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Upon review of the Motion to Intervene and Opposition to Plaintiff's Motion to

Approve Consent Judgment by Transworld Systems Inc.'s ("TSI"); it is hereby

      **ORDERED** that the Motion to Intervene is **GRANTED**; and it is further

      **ORDERED** that TSI may intervene in this matter pursuant to Fed. R. Civ. P.

24; and it is further

      **ORDERED** that Plaintiff's Motion to Approve Consent Judgment is **DENIED**.


Dated: _____


                                   _____
                                      Hon. Gregory M. Sleet, U.S.D.J.

# EXHIBIT B



SHAW KELLER
LLP

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705
dfry@shawkeller.com

September 22, 2017

**BY CM/ECF**
The Honorable Gregory M. Sleet
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:   *Consumer Financial Protection Bureau* v. *The National Collegiate Master Student Loan Trust et al.*, C.A. No. 17-1323

Dear Judge Sleet:

I write on behalf of U.S. Bank National Association ("U.S. Bank"), in connection with the above-captioned action (the "Action").

U.S. Bank serves as Indenture Trustee for the Indentures established for the debt securities that were issued by each of the defendants in the Action, fifteen discrete National Collegiate Student Loan securitization trusts (the "NCSLTs"). In addition, upon the resignation of the original Special Servicer in 2012, U.S. Bank also assumed the role of Successor Special Servicer for each of the NCSLTs.

At the time of filing the Action, plaintiff Consumer Financial Protection Bureau also moved for court approval of a proposed Consent Judgment against the NCSLTs. The economic interests and contractual rights of noteholders of each of the debt securities will be affected by entry of the proposed Consent Judgment. In addition, both as Indenture Trustee and as Successor Special Servicer, U.S. Bank's contractual responsibilities will be affected if the proposed Consent Judgment is approved.

On September 20, 2017, Ambac Assurance Corp. ("Ambac") moved to intervene and to request a briefing schedule (D.I. 4) to enable all interested parties to be given an opportunity to participate in the Court's consideration of whether to approve the proposed Consent Judgment. And on September 21, Transworld Systems Inc. submitted a letter to the Court indicating that it intended to intervene and oppose issuance of the proposed Consent Judgment.

Since the filing of the Action earlier this week, U.S. Bank, as Indenture Trustee, has notified holders of the related debt securities issued pursuant to each Indenture of the proposed Consent Judgment. U.S. Bank believes that noteholders may provide instructions to U.S. Bank as Indenture Trustee to participate in the approval process, and also that some may seek to participate directly.

There are numerous third parties whose economic and contractual interests would be directly affected by the Court's entry of the proposed Consent Judgment. Ambac's request for a defined briefing schedule would provide for an orderly approval process that in U.S. Bank's view would serve the public interest.

SHAW KELLER LLP

The Honorable Gregory M. Sleet
Page 2

Respectfully,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc:     All Counsel of Record (via e-mail)

Carolyn Hahn, counsel for Plaintiff Consumer Financial Protection Bureau (via ECF)
Daniel Silver, counsel for National Collegiate Student Loan Trusts (via email)
James Kosch, counsel for National Collegiate Student Loan Trusts (via email)
Todd C. Shiltz, counsel for Intervenor Ambac (via ECF)
Allyson B. Baker, counsel for Transworld Systems Inc. (via email)
Jamie Edmonson, counsel for Transworld Systems Inc. (via ECF)
Stephen H. Meyer, Sullivan & Cromwell, LLP, counsel for U.S. Bank National Association

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*,<br><br>Defendants. | No. 17-CV-01323 (GMS) |

## NOTICE OF APPEARANCE BY OBJECTING NOTEHOLDERS AND REQUEST TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED CONSENT JUDGMENT

PLEASE TAKE NOTICE that Andrew D. Cordo of Ashby & Geddes, PA, 500 Delaware Ave., P.O. Box 1150, Wilmington, Delaware 19899, hereby appears on behalf of:  Waterfall Eden Master Fund, Ltd., Waterfall Delta Offshore Master Fund, LP, Waterfall Sandstone Fund, LP., Baldr Sherwood Fund, Inc., One William Street Capital Master Fund, Ltd., OWS ABS Master Fund II, L.P., OWS COF I Master, L.P., OWS Credit Opportunity I, LLC, and OWS Global Fixed Income Fund (USD-Hedged), Ltd., LibreMax Master Fund, Ltd., LibreMax Value Master Fund, Ltd.. LibreMax MSW Fund, Ltd., AG Mortgage Value Partners Master Fund, L.P., AG TCDRS, L.P., AG Pisgah, L.P., AG Super RMBS LLC, and AG Opportunistic Whole Loan Select, L.P. (together, the "Objecting Noteholders").  The Objecting Noteholders collectively own notes (the "Notes") with an aggregate face amount of approximately $1.4 billion, and hold Notes issued by each of the defendant Trusts (the "Trusts").

The Objecting Noteholders hereby move to intervene for the limited purpose of objecting to the Proposed Consent Judgment filed on September 18, 2017 (the "Proposed Order") by

plaintiff Consumer Financial Protection Bureau ("CFPB"), Dkt. 3-1. The Objecting Noteholders

hereby join in the requests by Ambac Assurance Corporation ("Ambac"), Dkt. 4, Transworld

Systems Inc., Dkt. 6, and GSS Data Services, Inc., Dkt. 7, that the Court refrain from entering

the Proposed Order until all interested parties, including but not limited to the Objecting

Noteholders, have received notice of the Proposed Order and have been afforded the opportunity

to be heard on critically important issues impacting the Trusts.

### The Objecting Noteholders Should Be Granted Leave to Intervene

A nonparty should be granted leave to intervene where:  (i) its application for

intervention is timely; (ii) it has a sufficient interest in the litigation; (iii) the litigation threatens

to impair or affect the nonparty's interest; and (iv) the existing parties to the litigation do not

adequately represent the interests of the nonparty. *See, e.g., Kleissler v. U.S. Forest Svc.*, 157

F.3d 964 (3d Cir. 1998).[1]

Inasmuch as this action was commenced earlier this week and assigned to this Court just

two days ago, the Objecting Noteholders' application is timely.  Intervention at this stage of the

proceedings will not cause prejudice to any party and will not unduly delay the proceedings.

The Objecting Noteholders have an interest in this litigation by virtue of their ownership

of Notes. *See Lansuppe Feeder, LLC v. Wells Fargo Bank, NA ex rel. Soloso CDO 2005-1 Ltd.*,

2015 WL 6455274, at **3-4 (S.D.N.Y. Oct. 26, 2015) (granting motion to intervene by holders

of notes issued by trust).  The Proposed Order would impose a substantial -- and potentially

irreparable -- injury on the Objecting Noteholders.  As a preliminary matter, the Proposed Order

contemplates that the Trusts, whose assets back and guarantee repayment on the Notes, pay at

---

[1]     Virtually all of the grounds for intervention applicable to Ambac (and set forth in
Ambac's Motion to Intervene and Request for Briefing Schedule, Dkt. 4), apply with equal force
to the Objecting Noteholders.

least $19.1 million in civil penalties and other amounts and bear the costs of extraordinary audits

and compliance efforts.  More fundamentally, the Proposed Order threatens to vitiate the

Objecting Noteholders' rights under the agreements governing the Trusts, including the

Indentures.  For example, the Proposed Order jeopardizes the payment of principal and interest

to Noteholders under the Indentures by, among other things: (i) requiring that the Trusts direct

the Special Servicer[2] and any Subservicer to cease all collection efforts related to the Trusts'

underlying assets (student loans); (ii) establishing an "escrow" account for all monies received

by the Trusts, including monies received in the ordinary course and therefore wholly unrelated to

the conduct addressed by the Proposed Order; and (iii) replacing the priority of payments under

the Indenture with a compliance regime that permits a self-interested "Board" acting

(purportedly) on behalf of the Trusts to determine what amounts, if any, are paid to Noteholders.

Stated simply, the contracts governing the rights of Noteholders should not (and cannot

be) rewritten without -- at an absolute minimum -- first affording Noteholders a full and fair

opportunity to be heard.

Lastly, neither CFPB nor the Trusts adequately represent the interests of the Objecting

Noteholders in connection with the Proposed Order.  In the Proposed Order, CFPB seeks to

impose upon the Trusts various fees and penalties, and to institute a compliance scheme that, as

set forth above, threatens the Objecting Noteholders' core interests. The Trusts may only act

through their service providers, and as more fully set forth in Ambac's motion, Dkt. 4:  (i) it is

not entirely clear at this point what person or entity is acting on behalf of the Trusts; and (ii)

whether the person or entity acting for the Trusts actually has the authority to do so.  If the entity

---

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the
Proposed Order.

purporting to act on behalf of the Trusts with respect to the Proposed Order is VCG Securities, LLC and/or its affiliates ("VCG"),[3] VCG lacks the authority to do so.  Also, VCG does not represent the interests of the Objecting Noteholders.  VCG, the Trusts' equity owner, has sought to enrich itself personally by, among other things, appointing VCG affiliates to lucrative positions servicing the Trusts, and restructuring the Trusts' servicing agreements to allow VCG's affiliates to acquire the Trusts' loans at a discount.  VCG's wrongful attempt to appoint an affiliate to service loans held by the Trusts without obtaining the required approval of noteholders is currently the subject of ongoing litigation in this Court, in which certain of the Objecting Noteholders have challenged VCG's actions.[4]

## Conclusion

For the reasons set forth above, the Objecting Noteholders respectfully request that the Court grant them leave to intervene for the limited purpose of objecting to the Proposed Order, and to refrain from granting the CFPB Motion and approving the Proposed Order until such time as the Objecting Noteholders and all other interested parties have been given notice and an opportunity to intervene and/or otherwise be heard.

---

[3]     VCG is the ultimate beneficial owner of the overwhelming residual equity interests in the Trusts.

[4]     *See In the Matter of the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, and 2005-3*, C.A. No. 16-342-SLR (D. Del.).

ASHBY & GEDDES, PA

Of counsel:

Michael Hanin
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1788
mhanin@kasowitz.com

Henry Brownstein
Kasowitz Benson Torres LLP
1399 New York Ave., NW
Washington, D.C. 20005
Tel: (202) 760-3403
hbrownstein@kasowitz.com

DATED:  September 22, 2017

/s/ Andrew D. Cordo
Andrew D. Cordo (#4534)
500 Delaware Ave. 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Tel: (302) 654-1888
acordo@ashby-geddes.com

*Attorneys for the Objecting Noteholders*

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| THE NATIONAL COLLEGIATE STUDENT LOAN MASTER TRUST, et al., | ) ) ) ) |
| Plaintiffs | ) ) |
| v. | ) Case No. 12111-VCS ) |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY D/B/A AMERICAN EDUCATIONAL SERVICES, | ) ) ) ) ) |
| Defendant. | ) |

## [PROPOSED] ORDER GRANTING NON-PARTY GSS DATA SERVICES, INC.'S MOTION FOR LEAVE TO FILE OPPOSITION AS *AMICUS CURIAE*

Upon Non-Party GSS Data Services, Inc.'s Motion for Leave to File Opposition as *Amicus Curiae* ("Motion"), the Court having considered the Motion, as well as the papers filed in support thereof; and having heard and considered the arguments of counsel;

IT IS HEREBY ORDERED, this _____ day of September 2017, as follows:

1.      The Motion is hereby GRANTED.

2.      Non-Party GSS Data Services, Inc. has leave to file the Opposition attached to the Motion upon entry of this Order.


_____
The Honorable Joseph R. Slights III

{1110.002-W0048780.}

## CERTIFICATE OF SERVICE

I, Rebecca L. Butcher, Esquire hereby certify that on September 25, 2017, a true and correct copy of the foregoing *Motion for Leave to File Opposition as Amicus Curiae* was caused to be served on the following counsel in the manner indicated:

**Via File & Serve*Xpress***

*Attorneys for Plaintiff*
Stuart M. Grant
James J. Sabella
Michael T. Manuel
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801

**Via File & Serve*Xpress***

*Attorney for Defendant*
Stacey A. Scrivani
STEVENS & LEE, P.C.
919 Market Street, Suite 1300
Wilmington, DE 19801

**Via File & Serve*Xpress***

*Attorneys for Interested Party U.S. Bank National Association*
John W. Shaw
Jeffrey T. Castellano
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801

**Via File & Serve*Xpress***

*Attorneys for Intervenor Wilmington Trust Company*
Stephen Brauerman
Sara Bussiere
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19899

Dated:  September 25, 2017

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)

{1110.002-W0048779.}

# File & ServeXpress Transaction Receipt

| | |
|---|---|
| **File & ServeXpress Transaction ID:** 61154771 | |
| **Submitted by:** | Erica Raucci, Landis Rath & Cobb LLP |
| **Authorized by:** | Rebecca L Butcher, Landis Rath & Cobb LLP |
| **Authorize and file on:** | Sep 25 2017 9:51AM EDT 🛈 |

| | |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Division/Courtroom:** | N/A |
| **Case Class:** | Civil Action |
| **Case Type:** | Breach of Contract |
| **Case Number:** | 12111-VCS |
| **Case Name:** | CONF ORDER - The National Collegiate Student Loan Master Trust v. Pennsylvania Higher Education Assistance Agency d/b/a American Educational Services |

| | |
|---|---|
| **Transaction Option:** | File and Serve |
| **Billing Reference:** | 1110.002 |

## Documents List

7 Document(s)

**Attached Document, 5 Pages    Document ID: 80022295**

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Motion | Public | $1.25 | Yes |

Document title:
Non-Party GSS Data Services, Inc.'s Motion for Leave to File Opposition as Amicus Curiae

**Attached Document, 11 Pages    Document ID: 80022296**
Related Document ID: 80022295

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Opposition | Public | $1.25 | |

Document title:
Opposition of Non-Party GSS Data Services, Inc. to Plaintiffs' Motion for Emergency Relief

**Attached Document, 17 Pages    Document ID: 80022297**
Related Document ID: 80022296

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Exhibits | Public | $1.25 | |

Document title:
Exhibit A to Opposition of Non-Party GSS Data Services, Inc. to Plaintiffs' Motion for Emergency Relief

**Attached Document, 3 Pages    Document ID: 80022298**
Related Document ID: 80022296

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Exhibits | Public | $1.25 | |

Document title:
Exhibit B to Opposition of Non-Party GSS Data Services, Inc. to Plaintiffs' Motion for Emergency Relief

**Attached Document, 6 Pages    Document ID: 80022299**
Related Document ID: 80022296

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Exhibits | Public | $1.25 | |

Document title:
Exhibit C to Opposition of Non-Party GSS Data Services, Inc. to Plaintiffs' Motion for Emergency Relief

**Attached Document, 1 Pages    Document ID: 80022300**
Related Document ID: 80022295

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Proposed Order | Public | $1.25 | |

Document title:
[Proposed] Order Granting Non-Party GSS Data Services, Inc.'s Motion for Leave to File Opposition Amicus Curiae

**Attached Document, 1 Pages    Document ID: 80022301**
Related Document ID: 80022295

| Document Type: | Access: | Statutory Fee: | Linked: |
|---|---|---|---|
| Certificate of Service | Public | $1.25 | |

Document title:
Certificate of Service of Non-Party GSS Data Services, Inc.'s Motion for Leave to File Opposition as Amicus Curiae

Expand All

**Sending Parties (1)**

| Party | Party Type | Attorney | Firm | Attorney Type |
|---|---|---|---|---|
| GSS Data Services Inc | Interested Party | Butcher, Rebecca L | Landis Rath & Cobb LLP | Attorney in Charge |

⊟ **Recipients (44)**

⊞ Service List (44)

⊟ Additional Recipients (0)

⊞ **Case Parties**

[ Close ]

About File & ServeXpress | Resource Center | FAQs

Terms & Conditions | Privacy

© 2017 File & ServeXpress, LLC. All rights reserved.

**Client Support**

☎ 1-888-529-7587

✉ support@fileandservexpress.com

💬 Chat Online

File & ServeXpress
The e-Filing and e-Service Experts