IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : <br> : <br> : <br> : |
| Plaintiff | : C.A. No. 17-1323 (GMS) <br> : |
| v. | : <br> : |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, et al., | : <br> : <br> : |
| Defendants. | : <br> : <br> : |

**PHEAA'S MOTION TO INTERVENE**

The Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("PHEAA") hereby moves pursuant to Fed. R. Civ. P. 24 to intervene in this action so that it may oppose the Motion to Approve Judgment [D.I. 3] as filed by Plaintiff Consumer Financial Protection Bureau (the "CFPB") on September 18, 2017.

## I. INTRODUCTION

PHEAA should be permitted to intervene in this action to oppose the entry of the CFPB's Proposed Consent Judgment (the "Proposed Consent Order") [D.I. 3-1]. As the CFPB and Defendant Trusts (the "Trusts") [1] are well aware, PHEAA's role is contractually limited to performing specific duties with regard to the servicing of student loans held by the Trusts.

---

[1] The term "Trusts" includes the National Collegiate Student Loan Master Trust, the National Collegiate Student Loan Trust 2003-1, the National Collegiate Student Loan 2004-1, the National Collegiate Student Loan Trust 2004-2, the National Collegiate Student Loan Trust 2005-1, the National Collegiate Student Loan Trust 2005-2, the National Collegiate Student Loan Trust 2005-3, the National Collegiate Student Loan Trust 2006-1, the National Collegiate Student Loan Trust 2006-2, the National Collegiate Student Loan Trust 2006-3, the National Collegiate Student Loan Trust 2006-4, the National Collegiate Student Loan Trust 2007-1, the National Collegiate Student Loan Trust 2007-2, the National Collegiate Student Loan Trust 2007-3, and the National Collegiate Student Loan Trust 2007-4.

Despite this knowledge, the CFPB's Complaint (the "CFPB Complaint") and Proposed Consent Order improperly lump PHEAA in with other entities that allegedly engaged in improper conduct in seeking to collect on delinquent student loans held by the Trusts, which is an activity PHEAA does not perform. Further, the Proposed Consent Order, which was purportedly executed on behalf of the Trusts by an attorney with no authority to do so, attempts to reform the agreement between PHEAA and the Trusts to impose additional, onerous, and expensive obligations on PHEAA.

For the reasons explained herein, PHEAA should be permitted to intervene in this action to protect its significant interests and oppose the entry of the Proposed Consent Order.

## II. FACTUAL BACKGROUND

On Monday, September 18, 2017, without any advance notice to PHEAA, the CFPB filed the CFPB Complaint and the Proposed Consent Order with this Court seeking to impose significant obligations on PHEAA that are well beyond the requirements PHEAA bargained for when it agreed to become the servicer of record for student loans held by the Trusts.

On September 28, 2006, PHEAA and First Marblehead Corporation ("FMC") entered into the Amended and Restated Private Student Loan Servicing Agreement (the "Servicing Agreement"), which governs the day to day servicing of student loans that serve as collateral for asset-backed securities that were issued by the Trusts. Under fifteen separate Servicer Consent Letters, FMC assigned its interest in the Servicing Agreement to each Trust solely to the extent such interest pertained to the servicing of the related pool of private student loans acquired by that Trust.

PHEAA's duties under the Servicing Agreement include customer service and correspondence, payment posting, and credit reporting, among others. In accordance with the Servicing Agreement, PHEAA is responsible for performing servicing and collection activities with respect to of the student loans only that are either current in making their payments or that are no more than thirty days delinquent. Thereafter, PHEAA is contractually obligated to transfer the collection servicing of the loans to the Trusts' Special Servicer or its appointed sub-servicer. If a Trust loan remains delinquent and never becomes current, PHEAA never again has collection responsibility for that loan.

U.S. Bank, in its capacity as Special Servicer, is responsible for the performance of all collection activity on loans that are delinquent for thirty-one days or longer. These activities are performed through U.S. Bank's agents, under separate contracts to which PHEAA is not a party. Crucial here, **PHEAA cannot and does not file debt collection lawsuits against borrowers of student loans owned by the Trusts**.

### III. ARGUMENT

#### A. PHEAA should be permitted to intervene in this matter.

Federal Rule of Civil Procedure 24(a)(2) permits a nonparty to intervene as of right where the nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. Civ. P. 24(a)(2). Accordingly, courts in the Third Circuit will permit a nonparty to intervene under Fed. R. Civ. P. 24(a)(2) when: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the

3

litigation." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005); *see also United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014); *Porter v. T.D. Bank, N.A.*, Civ. No. 10-7243, 2011 WL 925734, at *1 (E.D. Pa. Mar. 14, 2011).

Here, PHEAA satisfies the requirements to intervene in this matter.

    1. *PHEAA's Motion to Intervene is timely.*

When determining whether a motion to intervene as of right is timely, a court must consider the totality of the circumstances, including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Cmty. Bank of N. Virginia*, 418 F.3d at 314. The determination of whether such a motion is timely lies within the sound discretion of the district court. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995); *see also U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 419 (W.D. Pa. 2006).

Based on the above standard, PHEAA's motion is timely. The CFPB only initiated this action 7 days ago. Since the filing of the action, no less than four additional parties have moved to intervene so that they may oppose the entry of the Proposed Consent Order. Further, the Proposed Consent Order has not yet been entered and should not be until any and all intervention motions have been resolved. Thus, PHEAA's intervention will not prejudice the parties nor cause any improper delay in the proceedings. Under these circumstances, PHEAA's motion is unquestionably timely.

    2. *PHEAA has substantial interests in the transactions at issue in this matter.*

PHEAA should be permitted to intervene in this matter because it has a significant, protectable legal interest in the transactions at issue. According to the Third Circuit, "intervenors should have an interest that is specific to them, is capable of definition, and will be directly

affected in a substantially concrete fashion by the relief sought." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

PHEAA's interests in this matter are significant. While the Proposed Consent Order does not mention PHEAA by name[2], the Proposed Consent Order harms PHEAA's reputation by improperly implicating PHEAA in wrongful conduct, which the CFPB knows is incorrect. As the CFPB and the Trusts are well aware, PHEAA has never engaged in any collection action or lawsuit related to student loans held by the Trusts. PHEAA's interest in maintaining its reputation and putting an end to the smear campaign orchestrated by the CFPB and those pretending to act for the Trusts are significant.

Additionally, the Proposed Consent Order attempts to impose massive obligations on PHEAA that go well beyond PHEAA's duties under the Servicing Agreement. As the Trusts' "Primary Servicer," the Proposed Consent Order requires, *inter alia*, that PHEAA:

- cease transferring any Debt to the Special Servicer and any Subservicer and instead retain possession of the Debt pending approval and implementation of the Compliance Plan [Proposed Consent Order, D.I. 3-1, ¶ 16(1)];
- instruct the Special Servicer and all Subservicers to return to PHEAA all student loans in their portfolio owned by Defendants that are completed and the subject of each monthly Compliance Audit Report [*Id.* ¶ 16(4)];
- remit all payments from Consumers to an escrow account as designated by Defendants [Proposed Consent Order, ¶ 17(1)];
- provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants [*Id.* ¶ 17(3)];
- submit to an extensive audit of all of servicing activity for each student loan owned by the Trusts from inception of each of the Trusts to the present [*Id.* ¶ 19]; and

---

[2] According to the Proposed Consent Order, PHEAA qualifies at the "Primary Servicer" to the Trusts as that term is defined in ¶ 7(m) of the Proposed Consent Order. The definition of "Servicer" in the Proposed Consent Order specifically includes "Primary Servicer," therefore, also includes PHEAA. [Proposed Consent Order, ¶ 7(q)].

5

- comply with an onerous "Compliance Plan" that will be drafted by the Trusts and submitted to the CFPB without PHEAA's input or consultation [*Id.* ¶ 28].

None of these obligations are included within the Servicing Agreement. Moreover, the Proposed Consent Order does not provide PHEAA with any additional compensation with regard to these new and onerous obligations. Further, the Proposed Consent Order imposes these significant obligations onto PHEAA despite the fact that there is no dispute that PHEAA did not and contractually could not engage in any of the wrongful conduct discussed in the CFPB Complaint. Based on the harm to PHEAA's reputation and the additional obligations and expense that the Proposed Consent Order seeks to impose upon PHEAA, PHEAA has significant interest in this matter and should be permitted to intervene.

> 3. *PHEAA's interests will be impaired and impeded by the Proposed Consent Order.*

In analyzing this element, courts in this circuit must "assess the practical consequences of the litigation" and "consider any significant legal effect" on PHEAA's interest. *Brody v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). Here, multiple facets of the Proposed Consent Order will impair and impede PHEAA's significant interests.

> (a) The CFPB Complaint and the Proposed Consent Order improperly assert that PHEAA engaged in wrongful conduct.

The CFPB Complaint and the Proposed Consent Order erroneously group PHEAA with other entities that allegedly participated in improper conduct. This crucial inaccuracy is of significant interest to PHEAA because there can be no dispute that PHEAA **never** engaged in any of the wrongful conduct set forth in the CFPB Complaint and discussed in the Proposed Consent Order. Therefore, PHEAA faces significant expense and reputational harm if the Proposed Consent Order is entered.

6

As explained above, PHEAA's servicing role with regard to the Trusts is contractually limited. Pursuant to the Servicing Agreement, PHEAA's responsibility for collecting on the loans owned by the Trusts ends when those loans hit their thirty-first day of delinquency, and PHEAA never again has responsibility pursuing collections on such a loan if the loan does not become current.

The CFPB knows full well PHEAA's limited role under the Servicing Agreement as the agreement is expressly referenced in the Proposed Consent Order. [Proposed Consent Order, D.I. 3-1, ¶ 7(m)]. As the CFPB must have discovered as part of its investigation, PHEAA cannot file, does not file, and never has filed a debt collection lawsuit against a Trust borrower. Having never filed such a lawsuit against a Trust borrower, PHEAA could not have and never has (1) submitted a false and misleading affidavit or testimony in support of borrower litigation; (2) signed or submitted an improperly notarized affidavit; (3) filed a lawsuit without the intent or ability to prove the claims; and (4) sought to collect time-barred debt. Indeed, the CFPB concedes that all of the alleged wrongful conduct related to the collections lawsuits occurred at the hands of the Trusts' Special Servicer and its sub-servicer. [CFPB Complaint, D.I. 1, ¶ 21].

Regardless of its knowledge concerning PHEAA's limited role, the CFPB repeatedly states in the Complaint that it was the "Servicers" (defined to include PHEAA) who engaged in the alleged wrongful conduct associated with collection lawsuits.[3] Therefore, PHEAA should be permitted to intervene in this action so that it may oppose the Proposed Consent Order because it is based on knowingly inaccurate and false allegations concerning PHEAA.

---

[3] Whether this glaring inaccuracy is simply inartful drafting or intentionally misleading is not yet determined. Indeed, PHEAA has written to the CFPB to advise it of the false statements contained in the Complaint and Proposed Consent Order and is currently awaiting a response.

    (b) The Proposed Consent Order attempts to improperly modify the Servicing Agreement without PHEAA's consent or with the consent of other intersected parties.

  PHEAA should be permitted to intervene in this action to protect its contractual rights. As the CFPB is aware, PHEAA's only obligations to the Trusts arise from the Servicing Agreement. PHEAA entered into the Servicing Agreement as part of an arms' length transaction. Now, the CFPB and the Trusts, without any input or consent from PHEAA, have determined to reform the terms of the Servicing Agreement and impose new, onerous, and extremely expensive obligations upon PHEAA.

  As discussed above, the CFPB Complaint and the Proposed Consent Order contain numerous inaccurate allegations concerning PHEAA. The CFPB and certain of the beneficial interest holders are attempting to use these false allegations to support their effort to change the terms of the Servicing Agreement in a manner that was not contemplated or bargained for, and which will impose additional and costly obligations on PHEAA. However, PHEAA did not bargain for any of these new obligations nor does it now consent to the modification of the Servicing Agreement. Simply put, the beneficial interest holders and CFPB are attempting to improperly reform the Servicing Agreement.

  In Delaware, reformation of a written agreement is only appropriate where (1) "an agreement has been made[,] . . . but in reducing such agreement or transaction to writing, either through the mistake common to both parties," or (2) "through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant," the written document fails to express the real agreement or transaction." *Waggoner v. Laster*, 581 A.2d 1127, 1135 (Del. 1990) (citations omitted). Thus, any reformation of a written instrument must

be based on a showing of either a mutual mistake, or a unilateral mistake by the plaintiff, combined with knowing silence by the defendant.  *Collins v. Burke*, 418 A.2d 999, 1002 (Del. 1980).  The party seeking reformation must show by clear and convincing evidence that the parties' actual agreement was not accurately reflected in their executed written contract.  *Id.*

Here, there can be no dispute that the CFPB and the Trusts cannot make the showing required to reform the Servicing Agreement.  Therefore, it is simply not possible for the CFPB and the Trusts to show, by clear and convincing evidence, that the Servicing Agreements should be reformed.  Regardless, the CFPB and the Trusts now seek to impose additional burdens on PHEAA without consent to do so.

Moreover, without reforming the terms of the Servicing Agreement, PHEAA is not aware of any authority that would require it to abide by the terms of the Proposed Consent Order.  First, PHEAA is not a party to the Proposed Consent Order.  Indeed, PHEAA is not specifically named anywhere in the document.  Second, the Proposed Consent Order does not require any action from anyone other than the Trusts.  The Proposed Consent Order repeatedly requires the Trusts to direct others to act.  For example, Paragraph 17 of the Proposed Consent Order states as follows:

> Defendants [the Trusts] shall direct (1) the Primary Servicer and Special Servicer to remit all payments from Consumers to an escrow account as designated by Defendants pursuant to Paragraph 18; (2) the Subservicer to remit funds to the Special Servicer and the Special Servicer to remit those payments to the escrow account as designated by Defendants pursuant to Paragraph 18; and (3) the Primary Servicer and Special Servicer to provide an itemized report to the Defendants identifying the payments remitted at the loan level in a format approved by the Defendants.

The obligation in this paragraph (and others) lies with the Trusts.  Thus, PHEAA is not required to comply with the Trusts' directions because the Proposed Consent Order is in conflict with terms of the Trust Agreement and the Servicing Agreement.  Therefore, PHEAA should be

9

permitted to intervene in this action so that it may dispute any attempt by the CFPB or the beneficial interest holders purporting to act as the Trusts to alter PHEAA's obligations under the Servicing Agreement.

        4. *The existing parties do not represent PHEAA's interests.*

The CFPB and the Trusts do not represent PHEAA's interests. The inquiry into whether representation is inadequate is flexible and "varies with each case." *Kleissler*, 157 F.3d at 972. Representation is inadequate if the existing parties' interests diverge from the movant's, or if "there is collusion between the representative party and the opposing party." *Brody*, 957 F.2d at 1123.

Here, there can be no argument that the current parties do not represent PHEAA's interests. First, the CFPB is an agency of the federal government seeking to impose sanctions on PHEAA. Further, the CFPB Complaint includes numerous, knowingly false allegations regarding wrongful conduct that the CFPB knows that PHEAA did not, and indeed, could not perform. Based on these knowingly false allegations against PHEAA, there can be no dispute that the CFPB does not represent PHEAA's interests.

Likewise, the Trusts do not represent PHEAA's interest. The Proposed Consent Order is signed by McCarter & English as representatives of the Trusts. As has been pointed out by several other parties seeking to intervene in this matter, McCarter & English represents was not appointed by the Trusts and actually represents VCG Securities, LLC ("VCG"), who is currently pursuing litigation against PHEAA in the Delaware Chancery Court, purportedly on behalf of the Trusts. Indeed, based upon PHEAA's contentions, the Delaware Chancery Court is currently evaluating whether VCG and its Affiliates are even the valid owners of the beneficial interests they claim to own in the Trusts. VCG has vigorously disputed PHEAA's contention concerning

the Ownership Issue.  The fact that it is currently adverse to PHEAA in a related litigation renders VCG, and the Trusts that it purports to represent, adverse to PHEAA's interests here.  Therefore, the existing parties do not represent PHEAA's interests.

Because PHEAA indisputably satisfies each of the requirements for intervention by right under Federal Rule 24(a)(2), PHEAA's Motion to Intervene should be granted.

### B. The Proposed Consent Order is invalid and must not be entered.

The Proposed Consent Order is invalid because McCarter & English does not have authority to provide consent on behalf of the Trusts.  As the CFPB knows, the very question regarding who exactly is authorized to cause the Trusts to act is an ongoing dispute before Vice Chancellor Joseph E. Slights, III of the Delaware Court of Chancery.  *See National Collegiate Student Loan Master Trust et al. v. Pennsylvania Higher Education Assistance Agency,* C.A. No. 12111.  Regardless of how that dispute is resolved, McCarter & English lacks the authority to agree to the Proposed Consent Order on behalf of the Trusts.

McCarter & English are representing one of the Trusts' purported beneficial owners, VCG and its litigious owner, Don Uderitz.  As noted above, the validity of VCG's ownership of certain beneficial interests in the Trust is currently pending in the Chancery Court.  While the Trust Agreement allows 100% of the beneficial interest holders to direct the Owner Trustee with respect to non-ministerial actions, it does **not** grant the beneficial interest holders the authority to act independently as, or on behalf of, the Trusts, each of which are Delaware Statutory Trusts, and each of which is a distinct and separate legal entity.

However, even if the Chancery Court finds in VCG's favor, McCarter & English still lack authority to execute the Proposed Consent Order on the Trusts' behalf.  The holder of a beneficial interest in Delaware Statutory Trusts is not analogous with holding the equity interest

11

in a corporation. Rather, the relevant Trust Agreements govern and provide specific guidance with how the Trusts are permitted to take action and under what authority they may do so. Pursuant to the Trust Agreements, any action taken in the name of the Trusts must be directed through the Owner Trustee (in this case, Wilmington Trust Company ("WTC")). [Trust Agreement, §§ 2.03(b)(i), 2.03(b)(iv)]. Only WTC, or its successor,[4] is permitted to sign a retention agreement with an attorney to act on the Trusts' behalf. [*Id*., § 4.02.]. WTC never signed any such agreement authorizing McCarter & English to represent the Trusts. Therefore, McCarter & English has no authority to execute the Proposed Consent Order on the Trusts' behalf and the Proposed Consent Order is invalid.[5]

### IV. CONCLUSION

For the reasons set forth herein, PHEAA respectfully requests that this Court grant PHEAA's Motion to Intervene as of right pursuant to Federal Rule 24(a). PHEAA also respectfully requests that this Court refrain from granting the CFPB's motion seeking approval of the Proposed Consent Order until all interested parties have been given an opportunity to intervene and an opportunity to be heard by this Court.

---

[4] On July 20, 2017, WTC gave notice of its resignation as Owner Trustee for the Trusts. Pursuant to § 12.01(a) of the Trust Agreement, WTC was required to provide 60 days' notice of the resignation. WTC and the Trusts filed opposing motions concerning WTC's resignation and those motions are pending before Vice Chancellor Slights in the Chancery Court litigation. Argument on this issue is currently scheduled for October 9, 2017.

[5] The CFPB is well aware that the Proposed Consent Order is invalid. As AMBAC explains in its Motion to Intervene, in "July 2017, the CFPB acknowledged to Ambac counsel that it could not go forward in a settlement with the trusts unless the Owner Trustee participated." [D.I. 4, p. 9 n3].

Dated: September 26, 2017   STEVENS & LEE, P.C.

/s/ *Stacey A. Scrivani*
Stacey A. Scrivani (6129)
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Ph.: (302)425-3306
Fax: (610)988-0812
sasc@stevenslee.com

*Attorneys for Plaintiff Pennsylvania Higher Education Assistance Agency d/b/a American Education Services*