IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 17-1323-GMS ) |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**U.S. BANK NATIONAL ASSOCIATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE IN ITS CAPACITY AS SUCCESSOR SPECIAL SERVICER**

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for U.S. Bank National Association*

OF COUNSEL:
Stephen H. Meyer
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006

Matthew A. Martel
Keith M. Kollmeyer
JONES DAY
100 High Street
Boston, MA 02110

Dated: October 10, 2017

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

    A.     The NCSLTs. ...................................................................................................... 2

    B.     U.S. Bank's Role as Successor Special Servicer and the Impact of the Proposed Consent on That Role. .......................................................................... 6

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ................................................................................................................... 10

I.     U.S. Bank, as Successor Special Servicer, Should Be Allowed to Intervene Pursuant to Rule 24. .................................................................................................. 10

    A.     The Application for Intervention Is Timely. .................................................... 10

    B.     U.S. Bank's Contractual Responsibilities as Special Successor Servicer Will Be Affected as a Practical Matter by the Proposed Consent, and It Therefore Has a Sufficient Interest in the Action. ................................................ 11

    C.     U.S. Bank's Interests Are Not Adequately Represented by an Existing Party in the Litigation. .................................................................................... 12

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayou Fleet, Inc.* v. *Alexander*,
 234 F.3d 852 (5th Cir. 2000) ...................................................................................11

*Bell Atlantic-Delaware., Inc.* v. *Global NAPs S., Inc.*,
 77 F. Supp. 2d 492 (D. Del. 1999) ...........................................................................10

*Endoheart AG* v. *Edwards Lifesciences Corp.*,
 2015 WL 6956603 (D. Del. Nov. 6, 2015) ...............................................................10

*F.T.C.* v. *Circa Direct LLC*,
 2012 WL 2178705 (D.N.J. June 13, 2012) ...............................................................11

*League of United Latin American Citizens, Council No. 4434* v. *Clements*,
 999 F.2d 831 (5th Cir. 1993) ....................................................................................11

*Local No. 93, International Association of Firefighters, AFL-CIO C.L.C.* v.
 *City of Cleveland*, 478 U.S. 501 (1986) ...................................................................11

*N.L.R.B.* v. *Brooke Industries Inc.*,
 867 F.2d 434 (7th Cir. 1989) ....................................................................................11

*S.E.C.* v. *Citigroup Global Markets, Inc.*,
 752 F.3d 285 (2d Cir. 2014) .....................................................................................12

*United States* v. *Territory of Virgin Islands*,
 748 F.3d 514 (3d Cir. 2014) .......................................................................................9

*Utility Contractors Association of New Jersey, Inc.* v. *Toops*,
 507 F.2d 83 (3d Cir. 1974) .......................................................................................11

**Other Authorities**

12 U.S.C. §§ 5563(b)(2) & 5564(c) ....................................................................................6

Fed. R. Civ. P. 24 ........................................................................................... *passim*

U.S. Bank National Association ("U.S. Bank"), in its capacity as Successor Special Servicer for fifteen separate National Collegiate Student Loan Trusts (the "NCSLTs" or the "Trusts"), respectfully files this motion to intervene in the above-titled action solely with respect to the Court's consideration of the motion of the Consumer Financial Protection Bureau (the "CFPB" or the "Bureau") to approve a proposed Consent Judgment (the "Proposed Consent") against the NCSLTs (the "Motion to Approve"). (*See* D. 3.)[1]

## NATURE AND STAGE OF THE PROCEEDINGS

At the outset, U.S. Bank wishes to emphasize that it shares the CFPB's interest in ensuring that student loan collection litigation be conducted in a wholly lawful manner. This filing is not intended to address in any way the CFPB's investigation or its election to take enforcement action.

Although U.S. Bank's role as Successor Special Servicer to the Trusts is, by contract, a limited one, nonetheless it seeks to intervene in this Action because that role is directly affected by the Proposed Consent and U.S. Bank's agreement to the Proposed Consent was neither solicited nor obtained by the CFPB or the NCSLTs (purportedly acting through a law firm). Among other things, the Proposed Consent would: (i) significantly expand and otherwise alter U.S. Bank's current limited contractual responsibilities; (ii) impose substantial liability risks on U.S. Bank, including potential vicarious liability; (iii) require U.S. Bank to take direction

---

[1] U.S. Bank is separately filing a motion to intervene in this process in its capacity as Indenture Trustee for the debt securities issued by the NCSLTs. The future conduct provisions of the Proposed Consent would have a significant impact on U.S. Bank's limited role as Successor Special Servicer. The Proposed Consent's financial requirements (*e.g.*, disgorgement, civil money penalty, restitution, the expense entailed by a broad loan file review, and a lengthy collection moratorium) and other provisions affecting the contractual rights of those holding debt issued by the Trusts (the "Noteholders") more directly implicate U.S. Bank's role as Indenture Trustee of the debt issuance by the NCSLTs.

from a party that currently has no contractual entitlement to direct U.S. Bank; and (iv) require U.S. Bank to facilitate the diversion of funds away from Noteholders that, through the Indentures, have the benefit of a perfected security interest in those funds. These burdens would be imposed on the Successor Special Servicer despite the fact that the CFPB has not alleged, much less found, that U.S. Bank engaged in, or was vicariously responsible for, any violations of law with respect to the collection of defaulted student loans.

In sum and as more fully described below, U.S. Bank's interests as Special Successor Servicer are affected by the Proposed Consent, will be impaired by the disposition of the Motion to Approve, and are not adequately represented by an existing party in this action. For these reasons, and because its motion is timely, the Successor Special Servicer respectfully requests that this Court grant its motion to intervene.[2]

## STATEMENT OF FACTS

**A.     The NCSLTs.**

The fifteen NCSLT defendants in this action are special purpose vehicles formed under Delaware Statutory Trust law during the period 2003 through 2007, solely for the purpose of issuing debt securities to the Noteholders under the fifteen related Indentures. The NCSLTs are in most respects conventional securitization trusts sponsored by First Marblehead

---

[2]     As other proposed intervenors have asserted, there is a substantial question as to whether the law firm that signed the Proposed Consent purportedly on behalf of the NCSLTs possessed the authorization to bind the NCSLTs in any respect. *See* D.4, *Ambac's Motion to Intervene and Request for Briefing Schedule*, filed Sept. 20, 2017, at 8-10. There is an additional significant issue as to whether the NCSLTs, even if the law firm was properly authorized to represent them, may consent to a judgment in derogation of the perfected security interest held by the Indenture Trustee in the student loans, and in the proceeds of collection activities, particularly when the NCSLTs are subject to a covenant in the Indentures to maintain the Indenture Trustee's security interest. U.S. Bank addresses this latter issue in its Motion to Intervene as Indenture Trustee.

Corporation and its affiliates (collectively, "First Marblehead"). The NCSLTs acquired private student loans originated by financial institutions and pledged those loans and all other rights and interests of each Trust as collateral pursuant to the Indentures.

The student loans in the NCSLTs were originally covered by a guaranty from The Educational Resources Institution ("TERI"), a Massachusetts non-profit entity. Noteholders of three of the Trusts received credit enhancement in the form of insurance provided by Ambac Assurance, as described in Ambac's Motion to Intervene. (*See* D. 4.)[3] For most of the loans in the NCSLTs, the primary servicer (*i.e.*, the servicer that collects payments and maintains documentation for loans that are current or not seriously past due) is the Pennsylvania Higher Education Assistance Agency.

In addition, each of the NCSLTs issued certificates to First Marblehead and TERI constituting a subordinated equity interest in the Trusts, which entitled the equity holder to payments from the Trusts' cash flows, but only after all payment obligations to the Noteholders have been satisfied. Simply stated, the Trusts issued both debt and equity, with the repayment of debt to Noteholders taking priority over any payments to equity holders owning certificates in the Trusts.

Because of the TERI guaranty, the governing documents for the NCSLTs did not initially include any agreement specific to servicing of past-due and defaulted student loans, generally referred to as special servicing. Instead, First Marblehead, which served as the Trusts' Administrator, performed those functions to the extent they were necessary. A change occurred when TERI declared bankruptcy in April 2008 because the guaranty it provided was no longer

---

[3] Ambac directly insures the Master Trust, 2007-3 and 2007-4. Ambac also states in its motion that it has insured indirectly six other NCSLTs. *Ambac's Motion to Intervene* at 5 n.1. (D. 4.)

effective as the bankruptcy case proceeded. The decision was therefore made to formalize past-due and default collection activity under two Special Servicing Agreements, one for the three NCSLTs directly insured by Ambac and the other for the twelve "uninsured" NCSLTs. The Special Servicing Agreements were executed in 2009 by the Trusts, U.S. Bank as Indenture Trustee, and a First Marblehead affiliate, with that affiliate performing the special servicing function, including overseeing collection litigation.[4]

At that time, U.S. Bank was named as the "back-up" Special Servicer in the Special Servicing Agreements.[5] It would assume certain contractual obligations in the Special Servicing Agreements, or appoint another eligible entity to do so, in the event that First Marblehead was removed or resigned as Special Servicer. Pursuant to a "Default Prevention and Collection Services Agreement" contemporaneously executed and incorporated by reference into the Special Servicing Agreements, if U.S. Bank became the Successor Special Servicer, NCO Financial Systems ("NCO"), a debt collection firm, would be the entity obligated to conduct collection activities, including the management of collection litigation. U.S. Bank's duties as Successor Special Servicer were intentionally limited to certain specific responsibilities, which specifically excluded any direct involvement in the past-due and default servicing and collection activities. U.S. Bank also entered into a standby agreement with Goal Structured Solutions ("Goal") for Goal to step into the Successor Special Servicing role from U.S. Bank, if

---

[4] Ambac was also a signatory for the agreement that pertained to the three NCSLTs it insures directly.

[5] Rating agencies' methodologies for assessing private student loan transactions generally require an examination of whether a back-up servicer arrangement exists. As a reliably solvent and respected entity, U.S. Bank's agreement to serve as Back-Up Special Servicer thus was important to First Marblehead to help avoid further ratings downgrades of the debt securities issued to Noteholders by the NCSLTs.

needed. These arrangements and the Indenture Trustee's role in back-up servicing are fairly typical for banks acting as Indenture Trustee for asset-backed securities such as the NCSLTs.

In 2012, First Marblehead resigned as Special Servicer and sold most of the equity interests it held at that time to Vantage Capital Group and/or its affiliates (collectively, "VCG").[6] VCG then owned the majority of the equity interests. In that same year, U.S. Bank assumed the role as Successor Special Servicer, and NCO began management and operation of the special servicing and collection activities, including litigation. U.S. Bank also entered into a Special Sub-Servicing Agreement with an affiliate of Goal, Turnstile Capital Management ("Turnstile"), to oversee and audit the activities of NCO, establishing a mechanism for both NCO and Turnstile to consult with U.S. Bank periodically or as otherwise needed. Under this arrangement, U.S. Bank agreed that NCO and Turnstile could split all fees that would otherwise be paid by the NCSLTs to U.S. Bank as Successor Special Servicer. In other words, U.S. Bank has never received any compensation for serving as the named Successor Special Servicer.

It is U.S. Bank's understanding that, in October 2014, NCO transferred the business line that managed special servicing activities for the NCSLTs to a subsidiary, Transworld Systems, Inc. ("TSI"), which was then acquired by Platinum Equity. Since November 2014, with new senior management, TSI has managed the past-due and default servicing for the NCSLTs.[7]

---

[6]   As noted below, VCG is engaged in litigation with U.S. Bank, as Indenture Trustee, in this District with respect to VCG's efforts to obtain the special servicing rights for its affiliate, Odyssey Education Resources LLC.

[7]   On the same day that this action was filed, the CFPB issued an administrative consent order against TSI, the current special subservicer who oversees the collection process (including litigation) for the NCSLTs. TSI has itself filed a motion to intervene and an opposition to approval of the Proposed Consent stating that it had negotiated its own consent order to satisfy the CFPB's concerns, but would be faced with broader and more

### B. U.S. Bank's Role as Successor Special Servicer and the Impact of the Proposed Consent on that Role.

U.S. Bank's responsibilities as Successor Special Servicer are limited by contract. Significantly, any direct servicing activities by U.S. Bank of delinquent and defaulted loans were expressly prohibited in the Special Servicing Agreements. Among other things, the Special Servicing Agreements provide that:

- "Nothing in this Agreement shall be construed to require or permit the Back-up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities . . . with respect to consumer borrowers or consumer obligors";

- U.S. Bank would suffer no liability if it was unable to engage subservicers to perform collection work "so long as it took commercially reasonable efforts" to identify them;

- U.S. Bank was authorized to appoint another person as Successor Special Servicer, subject only to the rating agencies not reducing or withdrawing credit ratings of the Notes as a result of the successor being appointed;

- U.S. Bank was not required to enter into agreements with collection agencies, to retain counsel to pursue collection actions through litigation, to negotiate settlements with defaulted borrowers, or to review claims packages;

- U.S. Bank was not required to obtain monthly reports from subservicers.

The Proposed Consent, if entered in its current form, imposes obligations that are in conflict with the contractual terms governing U.S. Bank's role as Successor Special Servicer, including the requirement to take direction from and be overseen by a "Board" (as defined below) consisting of those holding a majority of the equity interests in the NCSLTs, contrary to express terms of the Special Servicing Agreement. The structure of the Proposed Consent would also potentially subject U.S. Bank to vicarious liability for a violation of a federal court order. And the Proposed Order appears to require that U.S. Bank, as Successor Special Servicer,

---

onerous obligations under the Proposed Consent. (D. 9.) The administrative order did not require court approval like the Proposed Consent and is already effective. *See* 12 U.S.C. §§ 5563(b)(2) & 5564(c).

facilitate the diversion of funds that are pledged to and solely to be applied towards the repayment of debt owed to the Noteholders and for the payment of certain other allowed expenses.

*Vicarious Liability.* Multiple provisions of the Proposed Consent include within the scope of various injunctive requirements actions to be done by "Defendants' [*i.e.*, the NCSLTs] Servicers, whether acting directly or indirectly." The definitions of "Servicer" and "Special Servicer"[8] appear to bring U.S. Bank, as Successor Special Servicer, within the ambit of these injunctive provisions imposing liability for the "indirect" actions of others. The provisions include:

- The prohibition on unfair, deceptive or abusive acts or practices or any other law or regulation administered by the CFPB. (*See* Proposed Consent ¶ 9.)

- The requirement that Defendants' Servicers not initiate or pursue lawsuits that have documentation defects in the chain of title, lack a promissory note, are filed outside the statute of limitation, for which there is "any reason to believe is unenforceable," or include affidavits that include inaccurate statements or other irregularities in execution. (*See id.* ¶¶ 9(c), (d), (e) or (f).)

- The injunction against certain false testimony in collections actions. (*See id.* ¶ 11.)

*Obligations Inconsistent with the Governing Contracts.* Multiple provisions of the Proposed Consent subject U.S. Bank, as Successor Special Servicer, to the direction and control of the "registered owner of a majority of the beneficial [equity] interest in each of the Trusts,"[9] referred to as the "Board,"[10] with respect to various compliance matters. The NCSLTs currently have no board of directors or similar governing body. Under Delaware Statutory Trust

---

[8] Proposed Consent, ¶¶ 7(q), (r), (s).

[9] Proposed Consent, ¶ 7(f)

[10] Proposed Consent, ¶¶ 31-33.

Law and the governing trust documents, the Trusts' may only act through the Owner Trustee,[11] typically at the direction of the equity holders including VCG, and then only if the actions are consistent with the powers granted to the Owner Trustee and equity holders under the agreements that created the Trusts, which are then further limited by the terms of the Indentures. Except as specified in such documents, the equity holders simply do not have the unilateral authority to modify or restrict the contractual or other rights of other parties, including the Indenture Trustee, the Noteholders, or servicers acting under any contract.

The Special Servicing Agreements specifically provide that "the Special Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder." The following provisions in the Proposed Consent are inconsistent with the governing contracts:

- That the Successor Special Servicer "take any other appropriate actions necessary to effectuate compliance with this Order as instructed by the [NCSLTs]." (Proposed Consent ¶ 16(5).)

- That U.S. Bank as Successor Special Servicer adhere to a compliance plan that the NCSLTs will submit to the CFPB for approval. (*See id.* ¶¶ 28-30.)

- That the NCSLTs ensure that the trusts' servicers comply with the terms of the Proposed Consent. (*See id.* ¶ 9(a).)

- That the trusts' servicers agree to abide by the terms and conditions of the Proposed Consent. (*See id.* ¶ 9(b).)

- That, if the NCSLTs determine that trusts' servicers are engaging in any conduct prohibited by the Proposed Consent, the Defendants must take steps to ensure that the practices cease, report the violations to the CFPB, and submit a plan to ensure the practices cease and the harm is remediated. (*See id.* ¶¶ 12, 13.)

---

[11] The Owner Trustee is Wilmington Trust Co., which has filed a Motion to Intervene in this Action. Wilmington Trust explained in its motion that in July 2017 it declined to follow VCG's direction that Wilmington Trust execute a proposed CFPB consent order, because, among other reasons, the order would contravene the Trusts' Indenture. (*See* D. 31 at 3.)

*Actions Contrary to the Obligations of U.S. Bank, as Successor Special Servicer, to Remit Collections for the Benefit of Noteholders.*  Multiple provisions result in the diversion of funds or otherwise hinder collection activity without regard to whether the activity is otherwise lawful:

- The requirement that U.S. Bank, as Successor Special Servicer, facilitate the diversion of any funds collected from borrowers away from the Noteholders, and use those funds instead to pay various restitution amounts, a civil money penalty and disgorgement. (*See* Proposed Consent ¶¶ 17, 51-52, 54-55.)

- The requirement to deposit funds into an escrow account on a monthly basis also rewrites the terms of the special servicing and other agreements. (*See id.* ¶ 17.)

- The requirements that collection efforts be suspended until the Compliance Plan is approved by the CFPB, which is not expected to occur for at least four months after the Proposed Order is effective. (*See id.* ¶ 16.)

## **LEGAL STANDARD**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "[i]ntervention as of right must be granted when a party claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  *U.S.* v. *Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (internal quotations and citations omitted).  "A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *Id.*  "Intervention as a matter of right presents a situation where '[t]he facts assume overwhelming importance in [the] decision.'"  *Id.* (quoting *Kleissler* v. *United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).  In considering a motion for intervention, the "court must accept the non-conclusory

allegations made in support thereof." *Endoheart AG* v. *Edwards Lifesciences Corp.*, 2015 WL 6956603, at *2 n.2 (D. Del. Nov. 6, 2015), *report and recommendation adopted*, 2016 WL 1317203, at *1 (D. Del. Mar. 31, 2016).

Alternatively, the Court may permit intervention under Rule 24(b) in its discretion when a non-party "has a claim or defense that shares with the main action a common question of law or fact." In such case, the Court's discretion should be guided by "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). *Bell Atl.-Del., Inc.* v. *Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999).

## ARGUMENT

I.  **U.S. BANK, AS SUCCESSOR SPECIAL SERVICER, SHOULD BE ALLOWED TO INTERVENE PURSUANT TO RULE 24.**

   A.  **The Application for Intervention Is Timely.**

The CFPB initiated this Action on September 18, 2017. The CFPB, the attorney who purportedly appeared for the NCSLTs, and the proposed intervenors have filed stipulations that the parties' responses to the outstanding motions will be due October 19, nine days after the filing of this motion. (D. 23, D. 27, D 30.) The due date under the Rules for the response to U.S. Bank's motion, therefore, will be only a few days after the parties must respond to other intervention motions. In addition, a timetable has not been established for Court resolution of the CFPB's Motion for Approval. Accordingly, U.S. Bank's motion for intervention would not impede the timely resolution of the Motion for Approval or prejudice the rights of either the CFPB or the NCSLTs.

### B. U.S. Bank's Contractual Responsibilities as Special Successor Servicer Will Be Affected as a Practical Matter by the Proposed Consent, and It Therefore Has a Sufficient Interest in the Action.

U.S. Bank was not a party to the Proposed Consent or otherwise apprised of its terms in advance of the CFPB's filing. Yet, as shown above, U.S. Bank's contractual obligations as Successor Special Servicer would be directly affected by entry of the Proposed Consent. "Parties who choose to resolve litigation through [consent decree] may not dispose of the claims of a third party, and *a fortiori may not impose duties or obligations on a third party, without that party's agreement*." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C.* v. *City of Cleveland*, 478 U.S. 501, 529 (1986) (emphasis added). Therefore, "a consent decree affecting third party rights should not be entered without affording such parties an opportunity to be heard." *Util. Contractors Ass'n of New Jersey, Inc.* v. *Toops*, 507 F.2d 83, 86 n.2 (3d Cir. 1974); *see also N.L.R.B.* v. *Brooke Indus. Inc.*, 867 F.2d 434, 435 (7th Cir. 1989) (noting that in a "case of a consent judgment's affecting the rights of a third party . . . [f]ar from being required to rubber stamp such a judgment, a court would be obliged to reject it").[12]

In light of the significant conflict between the contractual obligations that U.S. Bank undertook as Successor Special Servicer set forth above, and the requirements that would be imposed on U.S. Bank as a result of the Proposed Consent, U.S. Bank has satisfied the

---

[12] *See*, *e.g.*, *Bayou Fleet, Inc.* v. *Alexander*, 234 F.3d 852, 858 (5th Cir. 2000) (quoting *United States* v. *City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (*en banc*) ("When litigants reach a settlement that also effects third parties, 'the court must be satisfied that the effect on them is neither unreasonable nor proscribed.'"); *see also League of United Latin Am. Citizens, Council No. 4434* v. *Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (stating that courts' "preferences for settlement and accord are insufficient to justify the imposition of a decree that infringes upon the rights of third parties"); *F.T.C.* v. *Circa Direct LLC*, 2012 WL 2178705, at *5 (D.N.J. June 13, 2012) (noting that courts have "recognized 'a heightened responsibility' to protect the public interest when a consent decree affects the public interest or third parties") (quoting *United States* v. *Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).

second and third elements of mandatory intervention under Fed. R. Civ. P. 24(a)(2). The intervention request is of particular importance in considering the Motion to Approve, because the Court should consider the impact on third parties of the Proposed Order, as well as the more general proposition that the Proposed Order should be "fair and reasonable." *S.E.C.* v. *Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (The "proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved, in the event that the consent decree includes injunctive relief.") (internal quotation omitted).

      **C.**      **U.S. Bank's Interests Are Not Adequately Represented by an Existing Party in the Litigation.**

Neither the CFPB nor the NCSLTs adequately represented the interests of U.S. Bank as Successor Special Servicer in coming to an agreement on the terms of the Proposed Consent, nor will they with respect to the Motion for Approval before this Court. The CFPB is charged with advancing the interests of consumers, and cannot be expected to consider as a priority the contractual interests of an affected third party such as U.S. Bank.

From the NCSLT side, the Proposed Consent was apparently negotiated by lawyers who are representing the equity holders, VCG (and have not been properly authorized by the NCSLTs). Yet, compliance with the Proposed Order's servicing-related provisions will fall to U.S. Bank and others meeting the definition of "Servicers" in the Proposed Order, while giving VCG (as majority equity holder) a measure of control over the servicing arrangements, either through the Board or through directions VCG might issue to the Owner Trustee, contrary to the settled and binding contractual limitations on the equity holders' authority.

VCG's actions may be explained by the litigation in this District involving it and U.S. Bank, as Indenture Trustee. In that litigation, a Trustee Instruction Proceeding, attorneys purportedly representing the Trusts, but retained by VCG, seek to validate a competing special servicing arrangement operated by one of VCG's affiliates, Odyssey Education Resources LLC, which if VCG is successful would permit Odyssey (and therefore, VCG) to secure for VCG a revenue stream from the special servicing of certain of the NCSLTs.[13] In fact, within hours of the announcement of the Proposed Consent, VCG's attorney informed the court in that matter that the Proposed Consent militated in favor of VCG's appointment of Odyssey as special servicer.[14] As a result, a reasonable inference would be that the NCSLTs, as represented by the law firm that executed the Proposed Consent, and VCG are interested in using the Proposed Consent as a sword in VCG's servicing-related litigation by attempting to insert its affiliate as a servicer without complying with the terms of the Indentures.

In short, neither of these named parties in the action is in a position to adequately represent the interests of U.S. Bank as Special Successor Servicer.

---

[13] Because of the level of defaults of the student loans in the Trusts, it is highly unlikely that the Noteholders will be fully paid, thereby precluding the equity interests held by VCG from receiving any cash flow from loan collections.

[14] *In re National Collegiate Student Loan Trusts 2003-1 et al.*, No. 16-CV-341 (JFB) (D. Del.), at D. 76. The parties have filed cross motions for summary judgment in this case. The motions were argued before Magistrate Judge Fallon on May 12.

## **CONCLUSION**

For the reasons set forth above, U.S. Bank, as Successor Special Servicer, respectfully requests the Court grant its Motion to Intervene as of right under Fed. R. Civ. P. 24(a)(2), or, alternatively, as a matter of the court's discretion under Fed. R. Civ. P. 24(b).

Respectfully submitted,

SHAW KELLER LLP

*/s/ David M. Fry*
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for U.S. Bank*
*National Association*

OF COUNSEL:
Stephen H. Meyer
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006

Matthew A. Martel
Keith M. Kollmeyer
JONES DAY
100 High Street
Boston, MA 02110

Dated: October 10, 2017