IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) C.A. No. 17-1323-GMS |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**U.S. BANK NATIONAL ASSOCIATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE IN ITS CAPACITY AS INDENTURE TRUSTEE**

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
I.M. Pei Building
SHAW KELLER LLP
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for U.S. Bank National Association*

OF COUNSEL:
Matthew A. Martel
Keith M. Kollmeyer
JONES DAY
100 High Street
Boston, MA 02110

Stephen H. Meyer
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006

Dated: October 10, 2017

## **TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

FACTUAL BACKGROUND .........................................................................................................4

    A.    U.S. Bank's Role as Indenture Trustee. ..................................................................4

    B.    The Proposed Consent's Impact on U.S. Bank as Indenture Trustee and the Noteholders. .............................................................................................................5

LEGAL STANDARD.....................................................................................................................6

ARGUMENT ..................................................................................................................................7

I.    U.S. BANK, AS INDENTURE TRUSTEE, SHOULD BE ALLOWED TO INTERVENE PURSUANT TO RULE 24..................................................................................................7

    A.    The Application for Intervention Is Timely............................................................7

    B.    U.S. Bank's Responsibilities as Indenture Trustee and the Noteholders' Interests Will Be Affected as a Practical Matter by the Proposed Consent, and the Indenture Trustee Therefore Has a Sufficient Interest in the Action........................8

    C.    No Party Presently in This Litigation Adequately Represents U.S. Bank or the Noteholders. ..........................................................................................................10

CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayou Fleet, Inc.* v. *Alexander*,
 234 F.3d 852 (5th Cir. 2000) ...................................................................................................9

*Bell Atlantic-Delaware, Inc.* v. *Global NAPs S., Inc.*,
 77 F. Supp. 2d 492 (D. Del. 1999) ..........................................................................................7

*Consumer Financial Protection Bureau* v. *Sprint Corp.*,
 2015 WL 3395581 (S.D.N.Y. 2015) .......................................................................................9

*Endoheart AG* v. *Edwards Lifesciences Corp.*,
 2015 WL 6956603 (D. Del. Nov. 6, 2015) .............................................................................7

*F.T.C.* v. *Circa Direct LLC*,
 2012 WL 2178705 (D.N.J. June 13, 2012) .............................................................................9

*Kleissler* v. *United States Forest Service*,
 157 F.3d 964 (3d Cir. 1998) ....................................................................................................7

*League of United Latin American Citizens, Council No. 4434* v. *Clements*,
 999 F.2d 831 (5th Cir. 1993) ...................................................................................................9

*Local No. 93, International Association of Firefighters, AFL-CIO C.L.C.* v.
 *City of Cleveland*,
 478 U.S. 501 (1986) .................................................................................................................8

*N.L.R.B.* v. *Brooke Industries Inc.*,
 867 F.2d 434 (7th Cir. 1989) ...................................................................................................9

*S.E.C.* v. *Citigroup Global Markets, Inc.*,
 752 F.3d 285 (2d Cir. 2014) ....................................................................................................9

*United States* v. *Territory of Virgin Islands*,
 748 F.3d 514 (3d Cir. 2014) ....................................................................................................6

*United States* v. *City of Miami*,
 664 F.2d 435 (5th Cir. 1981) (*en banc*) ..................................................................................9

*United States* v. *Oregon*,
 913 F.2d 576 (9th Cir. 1990) ...................................................................................................9

*Utility Contractors Association of New Jersey, Inc.* v. *Toops*,
 507 F.2d 83 (3d Cir. 1974) ......................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................................................................. *passim*

U.S. Bank National Association ("U.S. Bank"), in its capacity as Indenture Trustee under Indentures (the "Indentures") created in connection with fifteen separate National Collegiate Student Loan Trusts (the "NCSLTs" or the "Trusts"), respectfully files this motion to intervene in the above-titled action solely in connection with the Court's consideration of the motion of the Consumer Financial Protection Bureau (the "CFPB" or the "Bureau") to approve a proposed Consent Judgment (the "Proposed Consent") against the NCSLTs).[1]  (D. 3.)

## NATURE AND STAGE OF THE PROCEEDINGS

At the outset, U.S. Bank wishes to emphasize that it shares the CFPB's interest in ensuring that student loan collection litigation be conducted in a lawful manner.  This filing is not intended to address in any way the CFPB's investigation or its election to take enforcement action.

U.S. Bank holds as "trustee for the benefit of the holders" of the debt issued by the Trusts (the "Noteholders") a perfected security interest in the student loans underlying the Trusts, including payments collected by servicers and paid out as principal and interest to the debt holders.  The Indenture Trustee also holds a security interest in those contracts governing the Trusts, including the servicing agreements (collectively, the "Governing Contracts").  The Proposed Consent, however, would have a substantial impact on these contractual arrangements

---

[1] U.S. Bank is separately filing a motion to intervene in this action in its capacity as Successor Special Servicer under Special Servicing Agreements with respect to the past due and default servicing and collection activities for the student loans in the Trusts.  In its role as Indenture Trustee, it is seeking to intervene because the Proposed Consent's financial terms (*e.g.*, disgorgement, civil money penalty, restitution, a broad file review of hundreds of thousands of student loan files, and a lengthy collection moratorium) and other provisions of the Proposed Consent affect the rights of Noteholders.  It seeks to intervene as Successor Special Servicer because certain of the special servicing conduct provisions of the Proposed Consent have an impact on U.S. Bank's role as Successor Special Servicer.  These are examples of the ways in which U.S. Bank's roles are implicated and are not meant to be exhaustive.

and the security interest of the Noteholders of the debt securities issued by the NCSLTs. The Noteholders did not, and could not, engage in the violations alleged in the Proposed Consent; nor were they signatories to its terms. The absence of the Noteholders' consent to the Proposed Consent raises significant concerns, which prompt U.S. Bank to seek to intervene as Indenture Trustee.

*First,* the Proposed Consent modifies various parties' contractual rights and roles from those originally prescribed by the Trusts' Governing Contracts and, in particular, the Indentures. The Proposed Consent would divert funds that are pledged to the Indenture Trustee under the fifteen Indentures and collected under the servicing agreements, and apply them toward satisfaction of the mandated compliance and "lookback" requirements, as well as to pay a significant civil money penalty ($7.8 million), disgorgement to the United States Treasury (an additional $7.8 million), and restitution (at least $3.5 million and possibly more). In addition, the Proposed Consent imposes a lengthy moratorium on collection activity, which will inevitably reduce the funds available to pay Noteholders. Further, pursuant to a proposed escrow arrangement, the Proposed Consent effectively gives to equity holder Vantage Capital Group ("VCG") complete control of cash flows, which the Trusts contractually pledged to repay the Noteholders, to pay for "Trust operations" (which includes principal and interest to Noteholders) as they see fit. Finally, the Proposed Consent upsets other existing contractual rights under the Indenture, including settled special servicing relationships.

*Second*, there appears to be no basis in the Governing Contracts to conclude that the law firm that executed the Proposed Consent, purportedly on behalf of the Trusts, was properly authorized to do so, as several of the other putative intervenors have noted. The Proposed Consent was executed by a law firm apparently retained by VCG and its affiliates.

VCG acquired majority equity ownership interests in the NCSLTs from their original sponsor and owner. However, neither VCG nor its law firm has the unilateral right under the Governing Contracts to consent to the terms contemplated by the Proposed Consent. Indeed, the Governing Contracts expressly prohibit the Trusts from engaging in any action that would affect the rights of the Indenture Trustee and Noteholders in the Governing Contracts, including impairment of the perfected security interest in the loans and proceeds of collection.

Equity holder VCG apparently agreed to the Proposed Consent even though the economic and other costs of implementation will be borne by those holding the debt issued by the Trusts – the Noteholders. The NCSLTs, similar to other asset-backed securitization vehicles, are structured such that all funds collected by servicers from payments made on the underlying loans are first applied to pay principal and interest (net of certain expenses) to Noteholders. Equity holders have only a residual interest in the Trusts, thus VCG would only be paid after all obligations to the Noteholders have been satisfied. But because the Trusts' loan default rates have been sufficiently high, the equity holders presently are not expected to receive any cash flow from loan repayments. Accordingly, to the extent that VCG's agents have agreed in the Proposed Consent to incur liabilities for the NCSLTs, and that those liabilities will be satisfied from the proceeds of collections, it is principally (if not exclusively) the Noteholders that will be adversely affected even though their consent has not been obtained.[2] The same is true with respect to the escrow account to be created from student loan collections and over which VCG will have unfettered control. Finally, through its expanded and unrestrained oversight of

---

[2] Ambac, one of the putative intervenors, will also be affected by the Proposed Consent because Ambac expects to pay insurance claims to Noteholders currently estimated at more than $350 million. *See* D.4, *Motion to Intervene and Request for Briefing Schedule*, at 5. In this memorandum, references to the impact of the Proposed Order on the Noteholders also necessarily includes Ambac as a result.

servicing pursuant to the Proposed Consent's redefinition of special servicing roles, equity holder VCG can further act for its own benefit and to the detriment of Noteholders.

In sum, the Proposed Consent would significantly affect the interests and rights of U.S. Bank in its capacity as Indenture Trustee for the benefit of the Noteholders, and circumvent its perfected security interests in the NCSLTs' student loans, related collections and contractual agreements.

## **FACTUAL BACKGROUND**

### A. **U.S. Bank's Role as Indenture Trustee.**[3]

Each of the Defendant Trusts is a special purpose vehicle formed under Delaware Statutory Trust law during the period 2003 through 2007, and created for the purpose of issuing debt securities under their related Indentures. The Indentures provide that until all obligations to its debtholders—the Noteholders—are satisfied, all assets of the Trusts are pledged to the Indenture Trustee. Those assets include, among other things, the underlying student loans held by the Trusts, the collections from such loans, and the contractual agreements governing the Trusts' activities, including the servicing related agreements (collectively, with other assets, the "Trust Indenture Estate"). The Trusts also issued equity interests in the form of certificates to holders, such as to current holder VCG. While the debt securities issued pursuant to the Indentures remain outstanding, there are substantial limitations on the ability of the NCSLTs, or

---

[3] U.S. Bank, in its motion to intervene in the capacity as Successor Special Servicer filed contemporaneously, set out background information concerning the structure and history of the NCSLTs and how U.S. Bank came to be the Successor Special Servicer. We do not repeat that information here.

any equity holder acting through the NCSLTs, to affect the Trust Indenture Estate without the consent of Noteholders, the Indenture Trustee, or both, as specifically set forth in the Indentures.[4]

The Indentures also establish the Indenture Trustee's powers, which include the right and authority to act in furtherance of preserving the property in the Trust Indenture Estate, including the security interests held in trust. In addition to having the ability to accept a direction from Noteholders to take specific action, the Indenture Trustee may otherwise act at its election when the Indenture Trustee makes a judgment in good faith that it is reasonable and appropriate to do so. After notification to, ongoing consultation with, and expressions of support from Noteholders, U.S. Bank as Indenture Trustee has determined that intervention is a reasonable and appropriate response to the Proposed Consent.

### B. The Proposed Consent's Impact on U.S. Bank as Indenture Trustee and the Noteholders.

The Proposed Consent, if approved, would: (1) grant the Trusts' equity holders, VCG, broad authority over servicing activities and cash flows, thus modifying the terms of the Governing Contracts pledged under the Indentures (*see* Proposed Consent ¶¶ 7(f), 18, 31-33); (2) require the Trusts' servicers to initially divert more than $19 million in funds collected from the underlying collateral pledged under the Indentures (*see* Proposed Consent ¶¶ 34, 51, 54); (3) suspend collection activities for many months (*see* Proposed Consent ¶ 6); and (4) require a multi-million-dollar audit of hundreds of thousands of loan files (*see* Proposed Consent ¶¶ 19-27). As explained above, the financial impact of the Proposed Consent's terms will be borne by the Noteholders.

---

[4] Depending on the circumstances, Ambac and the credit ratings agencies may also be required to grant consent to modifications of the contractual limitations in the Governing Contracts.

Under the Indentures, the "Issuer" (*i.e.*, each NCSLT) covenanted to not permit any impairment of the Indenture Trustee's lien or security interest in the student loans, including by reducing or delaying collections or to otherwise impair the Governing Contracts. Such changes are only permitted if the Indenture Trustee and, as applicable, the Noteholders, the insurer or credit rating agencies, affirmatively consent. The terms of the Proposed Consent indisputably impair the Indenture Trustee's security interest in the underlying student loans and the proceeds of collections, as well as alter the terms of the Governing Contracts.

By ostensibly agreeing to the Proposed Consent without the requisite approval from other affected parties, the NCSLTs have taken steps that contravene their covenants under the Governing Contracts. Failing to observe a covenant, including when the failure arises as a result of a decree or order of any court (here, purportedly by consent), could ultimately constitute an Event of Default under the Indentures. If an Event of Default occurs, and is not cured or waived as the Indenture may permit, the Indenture Trustee is empowered to exercise, and shall exercise if directed by the majority of Noteholders or control party, additional rights and powers vested in it by the Indentures to protect the Indenture Trust Estate, including the student loans and payment stream from collections.

## LEGAL STANDARD

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, "[i]ntervention as of right must be granted when a party claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *U.S.* v. *Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (internal quotations and citations omitted). "A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): (1) the application for intervention

is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Id.* "Intervention as a matter of right presents a situation where 'the facts assume overwhelming importance in [the] decision.'" *Id.* (quoting *Kleissler* v. *United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)). In considering a motion for intervention, the "court must accept the non-conclusory allegations made in support thereof." *Endoheart AG* v. *Edwards Lifesciences Corp.*, 2015 WL 6956603, at *2 n.2 (D. Del. Nov. 6, 2015), *report and recommendation adopted*, 2016 WL 1317203, at *1 (D. Del. Mar. 31, 2016).

Alternatively, the Court may permit intervention under Rule 24(b) in its discretion when a third party "has a claim or defense that shares with the main action a common question of law or fact." In such *case*, the Court's discretion should be guided by "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). *See Bell Atl.-Del., Inc. v. Global NAPs S., Inc.,* 77 F. Supp. 2d 492, 502 (D. Del. 1999).

## ARGUMENT

I.  **U.S. BANK, AS INDENTURE TRUSTEE, SHOULD BE ALLOWED TO INTERVENE PURSUANT TO RULE 24.**

   A.  **The Application for Intervention Is Timely.**

The CFPB initiated this Action on September 18, 2017. The CFPB, the attorney who purportedly appeared for the NCSLTs, and the proposed intervenors have filed stipulations that the CFPB's and the NCSLTs' responses to the outstanding motions will be due October 19, nine days after the filing of this motion. (*See* D. 23, D. 27, D 30.) The due date under the Rules for the response to this motion, therefore, will be only a few days after the parties must respond

to the other intervention motions.  In addition, a timetable has not been established for the Court's resolution of the CFPB's Motion for Approval.  This motion, therefore, would not impede timely resolution of the Motion for Approval, or prejudice the rights of either the CFPB or the NCSLTs.

> **B.     U.S. Bank's Responsibilities as Indenture Trustee and the Noteholders' Interests Will Be Affected as a Practical Matter by the Proposed Consent, and the Indenture Trustee Therefore Has a Sufficient Interest in the Action.**

U.S. Bank, as Indenture Trustee or otherwise, was not a party to the Proposed Consent or otherwise apprised of its terms in advance of the CFPB's filing.  Yet, as shown above, the Proposed Consent will directly and adversely affect the security and other contractual interests of Noteholders, and, therefore, affect the Indenture Trustee.  In short, the Proposed Consent places the interests of equity holders ahead of those of debt holders in contravention of the deals' Governing Contracts.  U.S. Bank, as Indenture Trustee, has consulted with Noteholders and has the authority under the Indentures to act for Noteholders in legal proceedings, such as this matter.  In its capacity as Indenture Trustee, U.S. Bank has a sufficient basis for intervening as of right in this Court's consideration of the CFPB's motion to approve a government-imposed consent decree that affects these parties.

Intervention by the Indenture Trustee is particularly appropriate because the Court is being asked to approve a consent decree that affects third-party property and other contractual interests without seeking consent from or providing due process to those third parties.  "Parties who choose to resolve litigation through [consent decree] may not dispose of the claims of a third party, and *a fortiori may not impose duties or obligations on a third party, without that party's agreement.*"  *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C.* v. *City of Cleveland*, 478 U.S. 501, 529 (1986) (emphasis added).  Therefore, "a consent decree affecting third party rights should not be entered without affording such parties an opportunity to be

heard." *Util. Contractors Ass'n of New Jersey, Inc.* v. *Toops*, 507 F.2d 83, 86 n.2 (3d Cir. 1974); *see also N.L.R.B.* v. *Brooke Indus. Inc.,* 867 F.2d 434, 435 (7th Cir. 1989) (noting that in a "case of a consent judgment's affecting the rights of a third party . . . [f]ar from being required to rubber stamp such a judgment, a court would be obliged to reject it").[5]

In light of the significant impairment of the Trust Indenture Estate through the Proposed Consent, U.S. Bank, as Indenture Trustee, has satisfied the second and third elements of mandatory intervention under Fed. R. Civ. P. 24(a)(2). The intervention request is of particular importance in considering the Motion to Approve, because the Court should consider the impact on third parties of the Proposed Order, as well as the more general proposition that the Proposed Order should be "fair and reasonable." *See S.E.C.* v. *Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (The "proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved,' in the event that the consent decree includes injunctive relief."); C*onsumer Financial Protection Bureau* v. *Sprint Corp.*, 2015 WL 3395581, at *1 (S.D.N.Y. May 19, 2015).

---

[5] *See Bayou Fleet, Inc.* v. *Alexander*, 234 F.3d 852, 858 (5th Cir. 2000) (quoting *United States* v. *City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) (*en banc*)) ("When litigants reach a settlement that also effects third parties, 'the court must be satisfied that the effect on them is neither unreasonable nor proscribed.'"); *see also League of United Latin Am. Citizens, Council No. 4434* v. *Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (stating that courts' "preferences for settlement and accord are insufficient to justify the imposition of a decree that infringes upon the rights of third parties"); *F.T.C.* v. *Circa Direct LLC*, 2012 WL 2178705, at *5 (D.N.J. June 13, 2012) (noting that courts have "recognized 'a heightened responsibility' to protect the public interest when a consent decree affects the public interest or third parties") (quoting *United States* v. *Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).

### C. No Party Presently in This Litigation Adequately Represents U.S. Bank or the Noteholders.

Neither the CFPB nor the NCSLTs adequately represented the interests of U.S. Bank, as Indenture Trustee, or the interests of Noteholders in coming to an agreement on the terms of the Proposed Consent, nor will they with respect to the Motion for Approval before this Court. The CFPB is charged with advancing the interests of consumers, and cannot be expected to prioritize the economic or contractual interests or rights of affected Noteholders.

From the NCSLT side, the Proposed Consent was apparently negotiated and executed by lawyers who are representing the equity holders, VCG (and have not been properly authorized by the NCSLTs). Yet, the financial consequences of, and the implications of shifting control over servicing and cash flows to VCG, through the Proposed Consent, will fall squarely on Noteholders. Equity holder VCG agreed to commit someone else—the Noteholders—to pay the penalty, disgorgement, restitution and other expenses of the Proposed Consent, while VCG will pay nothing. All of these consequences—which are adverse to the Noteholders' interests in continued adherence to the agreed-upon terms of the Governing Contracts (including the Indenture)—flow from VCG's agreement to the Proposed Consent, despite VCG's (and its law firm's) lack of authority to represent Noteholder interests and the absence of Noteholder permission to impair their protections in the Governing Contracts.

VCG's conduct may be explained by the litigation in this District involving it and U.S. Bank, as Indenture Trustee. In that litigation, a Trustee Instruction Proceeding, attorneys purportedly appearing for the Trusts, but retained by VCG, seek to validate a competing servicing arrangement operated by one of VCG's affiliates, Odyssey Education Resources LLC ("Odyssey"), which, if VCG is successful, would permit Odyssey (and therefore, VCG) to secure

a revenue stream from the special servicing of certain of the NCSLTs.[6] In fact, within hours of the announcement of the Proposed Consent, VCG's attorney informed the court in that matter that the Proposed Consent militated in favor of VCG's appointment of Odyssey as special servicer.[7] As a result, it is reasonable to infer that the NCSLTs, as represented by equity holder VCG and the law firm that executed the Proposed Consent, are interested in using the Proposed Consent as a sword in VCG's servicing-related litigation, where it seeks to insert its affiliate as a servicer without first complying with the terms of the Indentures.

        In short, neither of the named parties in the Action is in a position to adequately represent the interests of U.S. Bank as Indenture Trustee.

---

[6]     Because of the level of defaults of the student loans in the NCSLTs, it is highly unlikely that even Noteholders will be fully repaid on the debt outstanding, thereby precluding VCG from receiving any amount in connection with the purchase price of its residual equity interest in the NCSLTs.

[7]     *See In re National Collegiate Student Loan Trusts 2003-1 et al.*, No. 16-CV-341 (JFB) (D. Del.), at D. 76. The parties have filed cross motions for summary judgment in this case. The motions were argued before Magistrate Judge Fallon on May 12.

## CONCLUSION

For the reasons set forth above, U.S. Bank, as Indenture Trustee, respectfully requests the Court grant its Motion to Intervene as of right under Fed. R. Civ. P. 24(a)(2), or, alternatively, as a matter of the court's discretion under Fed. R. Civ. P. 24(b).

        Respectfully submitted,

        SHAW KELLER LLP

        */s/ David M. Fry*
        John W. Shaw (No. 3362)
        David M. Fry (No. 5486)
        I.M. Pei Building
        1105 North Market Street, 12th Floor
        Wilmington, DE 19801
        (302) 298-0700
        jshaw@shawkeller.com
        dfry@shawkeller.com
        *Attorneys for U.S. Bank*
        *National Association*

OF COUNSEL:
Matthew A. Martel
Keith M. Kollmeyer
JONES DAY
100 High Street
Boston, MA 02110

Stephen H. Meyer
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006

Dated: October 10, 2017