IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THE NATIONAL COLLEGIATE STUDENT LOAN MASTER TRUST, *et al.*,<br><br>Defendant. | C.A. No. 17-1323-GMS |

**WILMINGTON TRUST COMPANY'S REPLY
IN SUPPORT OF MOTION TO INTERVENE**

Wilmington Trust Company ("WTC"), by and through its undersigned counsel, respectfully submits this reply in support of its Motion to Intervene (the "Motion").[1]

**INTRODUCTION**

The Consumer Financial Protection Bureau (the "CFPB") inexplicably opposes the Motion based on the mistaken belief that WTC's involvement is not necessary for the Trusts to enter into the Proposed Consent Order.[2] (D.I. 54 at 2 (opposing intervention because WTC does not "claim to be owners of the Trusts, or to have the power to settle litigation on the Trusts' behalf").) This argument reflects a fundamental misunderstanding of how the Trusts function

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion. (D.I. 31.)

[2] The CFPB also argues that "[n]o movant has articulated a valid reason for why the Bureau should not be able to obtain the relief contained in the Proposed Consent Judgment on behalf of consumers." (D.I. 54 at 3.) A motion to intervene is not, however, the appropriate mechanism by which to raise substantive oppositions to the merits of the underlying dispute. Rather, the entire purpose of intervention is to obtain *the opportunity* to participate in the disposition of the underlying litigation. That notwithstanding, WTC did state in its motion to intervene that it previously determined that the CFPB Consent Order, which is substantially similar to the Proposed Consent Judgment, would violate the Trusts' Indentures and therefore could not be validly entered into on behalf of the Trusts, thus precluding the relief sought by the CFPB in this case.

and WTC's unique role in the operation of the Trusts. For the reasons set forth in the Motion and below, the Court should grant WTC's motion to intervene because the Trusts cannot act, other than through WTC as the Owner Trustee. As the Owner Trustee, WTC has an important interest in the underlying litigation – the right and the obligation to cause the Trusts to act under appropriate circumstances – that will be impaired if WTC is not permitted to intervene. The CFPB provides no valid legal or factual basis to deny the Motion, and it cannot ignore the critical interest of the Owner Trustee in this action. The Court should grant the Motion.

## ARGUMENT

The parties agree that to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), WTC must show:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). The CFPB does not, because it cannot, challenge that WTC's Motion is timely and that the existing parties do not adequately represent WTC's interests. Instead, the CFPB attempts to preclude WTC's intervention by challenging the sufficiency of WTC's interest in this litigation (prong 2) and the threat that this litigation poses to that interest (prong 3). For the following reasons, the CFPB is wrong, and the Court should grant the Motion.

### A. WTC, as Interim Owner Trustee,[3] Maintains an Interest in Ensuring the Parties to this Action Comply with the Deal Documents.

As set forth in the Motion, WTC's role as Owner Trustee of the Trusts demonstrates a sufficient interest in this litigation to justify intervention. Through this action, the CFPB and, purportedly the Trusts,[4] jointly seek the entry of the Proposed Consent Judgment. (D.I. 1.) Neither the CFPB, nor the Trusts (acting through conflicted counsel purportedly representing the Trusts, but who are directed exclusively by, and appear to be serving only the interests of, the Owners) explain how the Trusts have the authority to execute the Proposed Consent Judgment without the involvement of WTC as the Owners Trustee.[5] The Trusts cannot execute the Proposed Consent Judgment other than through proper directions[6] provided to WTC (or by Court order) and WTC's intervention in this action is necessary and appropriate.

The Trust Agreements confirm that, except as may be authorized in the Trust Related Agreements (*i.e.* which provide for Servicers to act on behalf of the Trusts), the Trusts may only

---

[3] WTC resigned as Owner Trustee on July 20, 2017. Pursuant to the terms of the Trust Agreements, that resignation does not take effect until a duly-qualified successor owner trustee is seated or a court of competent jurisdiction accepts WTC's resignation. (D.I. 31, Ex. A at § 12.01.) Because the Owners have failed to appoint a successor owner trustee, WTC moved the Delaware Court of Chancery to appoint a successor owner trustee. Until the Court (or the Owners) appoints a successor owner trustee or accepts WTC's resignation, WTC continues to serve, on an interim basis, as the Trusts' sole Owner Trustee.

[4] WTC did not authorize the Trusts to take such action and WTC does not believe that any other individual or entity, including the purported counsel for the Trusts, have the authority to cause the Trusts to take such action.

[5] Indeed, in their first attempt to bind the Trusts to a settlement with the CFPB, the Owners purported to direct WTC as Owner Trustee to execute the Consent Order. (D.I. 31 at 3-4.) After WTC declined to follow the CFPB Instruction because WTC believed that it violated the Trust Agreements and the Trust Related Agreements, the CFPB initiated this action as an end-run around WTC's declination. (*Id.*) These facts confirm that WTC has a significant interest in this litigation that the existing parties – the Trusts and the CFPB – cannot protect.

[6] As stated in the Motion, the Trust Agreements prohibit the Owners from directing the Owner Trustee to take any action that would contravene the Trust Agreements and Trust Related Agreements; and the Owner Trustee has no obligation to follow any such improper direction, if given. The Owners cannot skirt this obligation by directing counsel to take actions that they cannot properly direct the Owner Trustee to take.

act through the Owner Trustee. Section 2.03 of the Trust Agreements provides that the Trusts "will act solely in [their] own name and the Owner Trustee or other agents selected in accordance with this Agreement[7] will act on behalf of the Trust[s] subject to direction by the Owners as provided herein . . ." (D.I. 31, Ex. A at § 2.03(b)(i) (emphasis added).) The Trust Agreements further provide that the Trusts "shall conduct [their] business at the office of the Owner Trustee." (*Id.* at § 2.03(b)(iv).) The Owner Trustee holds the Trusts' property, subject to the obligations set forth in the Trust Agreement and the Trust Related Agreements. (*Id.* at § 2.05.) All payments made to and from the Trust must be made by the Owner Trustee on behalf of the Trust. (*Id.* at § 2.07.) The Owners may not cause the Trusts to act directly; rather, they have the right to direct the Owner Trustee to act – but only if the directed action complies with the Trust Agreements and the Trust Related Agreements. (*Id.* at §§ 4.01 and 4.02.) The CFPB acknowledges as much. (D.I. 54 at 4-5 (recognizing that the Trusts do not have any employees, but rather act through, among others, the Owner Trustee).) Despite that the Trusts cannot approve the Proposed Consent Judgment without the involvement of WTC as Owner Trustee, the CFPB nevertheless, inexplicably, opposes WTC's efforts to intervene in this action.

The CFPB does not dispute that WTC is the Owner Trustee or that the Trusts must act through the Owner Trustee. The CFPB does not cite any authority on which the Court could conclude that an Owner Trustee, which is the sole trustee of a Delaware statutory trust, lacks a significant interest in litigation involving the statutory trust for which it serves as Owner Trustee. Instead, the CFPB only argues that, since the underlying action seeks to remedy certain conduct by servicers of the Trusts, and WTC is not a servicer of the Trusts and does not play a role in

---

[7] No other agents have been selected in accordance with the Trust Agreements with the power or authority to cause the Trusts to assent to the Proposed Consent Judgment or otherwise to cause the Trusts to compromise the claims raised by the CFPB in this action. The only way for the Trusts to so act would be through the Owner Trustee.

servicing the Trusts, WTC has no interest in this action. As set forth above, this argument ignores WTC's important role in the administration of the Trusts. The Trusts are directly impacted by the entry of the Proposed Consent Order, which the CFPB acknowledged by naming them as defendants in this action. WTC's role as Owner Trustee, therefore, justifies its intervention under Rule 24.

### B. The CFPB Action Threatens to Impair WTC's Interests By Requiring the Trusts to Act Other Than Through the Owner Trustee.

The CFPB Action impairs WTC's interests as Owner Trustee in at least two ways. First, the CFPB Action purports to authorize the Owners (or their purported counsel) to act on behalf of the Trusts to the detriment of the Owner Trustee, which has the contractual right and the obligation to act, when appropriate, on behalf of the Trusts.[8] Second, the CFPB Action threatens to disrupt the payment and priority schemes set forth in the Trust Agreements and Trust Related Agreements. Approving the Proposed Consent Order, without the Owner Trustee, would violate contractual protections benefitting WTC that prevent the Trusts from taking action (through the Owner Trustee) in violation of the Trust Agreement and Trust Related Agreements.[9] *PPDG, LLC v. Templeton*, No. 2:13-CV-768-FTM-29CM, 2014 WL 5780612, at *2 (M.D. Fla. Nov. 5, 2014) (permitting a party to intervene under Rule 24(a)(1) to protect its contractual rights). The

---

[8] The CFPB suggests, without support, that the Owners may settle litigation on behalf of the Trusts. (D.I. 54 at 25.) This statement is inaccurate. As set forth above, the Trusts may only act through the Owner Trustee and nothing in the Trust Agreements authorizes the Owners to settle or compromise litigation themselves. Rather, the Trust Agreements give the Owners the right to direct WTC to enter into settlements (if the settlement terms are consistent with the Trust Related Agreements) and prohibit WTC from settling litigation on behalf of the Trusts without the consent of the Owners. (D.I. 31, Ex. A at § 4.01(b)(i).) Here, because WTC declined the Owners' instruction to sign the CFPB Consent Order as contemplated by the Trust Agreements, the CFPB seeks to ignore the requirements of the Trust Agreements and to exclude WTC from this action.

[9] The CFPB criticizes WTC for failing to *prove* that the Proposed Consent Order will violate the Trust Agreements or the Trust Related Agreements. (D.I. 54 at 25-26.) But WTC does not have any such burden. Rather, WTC must demonstrate, as it has, that it possesses rights in the subject matter of the litigation that cannot be protected without intervention.

5

Proposed Consent Order, if entered, would materially and adversely disrupt WTC's contractual rights under the priority payment scheme for Owner Trustee expenses in the Indentures. *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 570 (D. Del. 1981) (recognizing that impairment sufficient to intervene occurs in situations where a discrete, distinguishable fund exists and where the intervenor has a legally enforceable right to access such fund). Given other pending litigation concerning WTC's resignation and improper directions from the Owners, WTC has a direct and unprotected interest in preserving its heavily negotiated priority payment right that the CFPB seeks to disrupt in this action.

That WTC has certain indemnification rights does not adequately protect either of these impaired interests. Even if it would not face any threat of liability from a breach of the Trust Agreements or Trust Related Agreements, WTC has an independent right – as a party to such agreements – to protect against adverse consequences from any such breach. Modifying (or causing the Trusts to breach) the heavily negotiated secured finance transaction contract terms memorialized in the Trust Agreements and Trust Related Agreements to implement the Proposed Consent Order would impair WTC's ability to administer the Trusts in the future, exposing WTC to various conflicting obligations and potential liabilities from numerous deal parties. Moreover, any indemnification rights WTC may have do not address, or remedy in any way, the threat to the priority payment scheme for Owner Trustee expenses presented by the Proposed Consent Order. This action threatens WTC's interests as Owner Trustee in clear and identifiable ways and the Court should permit WTC to intervene.

## CONCLUSION

For the foregoing reasons, the Court should grant WTC's motion to intervene and permit WTC to intervene in this matter for so long as WTC serves as Owner Trustee of the Trusts.

|  |  |
|---|---|
| November 20, 2017 | BAYARD, P.A.<br><br>*/s/ Stephen B. Brauerman*<br>Stephen B. Brauerman (#4952)<br>Sara E. Bussiere (#5725)<br>600 North King Street, Suite 400<br>Wilmington, DE  19899<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>sbussiere@bayardlaw.com<br><br>*Attorneys for Proposed Intervenor*<br>*Wilmington Trust Company* |