IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU<br><br>    Plaintiff,<br><br>    v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*,<br><br>    Defendant. | Civil Action No. 17-1323-GMS |

**GSS DATA SERVICES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE**

GSS Data Services, Inc., in its capacity as Administrator for each of the Defendant Trusts, respectfully submits the following reply memorandum of law in further support of its Motion to Intervene.[1]

**PRELIMINARY STATEMENT**

In its opening brief, GSS demonstrated that it is entitled to intervene pursuant to Fed. R. Civ. P. 24 because the Proposed Consent Judgment mistakenly labels GSS as a "Servicer," directly affects GSS' contractual rights and obligations as Administrator, and imposes certain extra-contractual obligations upon GSS.  In response, the Trusts took the position that they ***did not oppose GSS' motion***.[2]  As such, only the CFPB has objected to GSS' Motion to intervene – and its objection wholly lacks merit.[3]

---

[1] Capitalized terms not defined herein shall have the same meanings as those set forth in GSS' opening brief.
[2] The Trusts stated that they "do not oppose the Court permitting the proposed intervenors to appear in this action." *See* D.E. 55 at 2.
[3] Curiously, the CFPB does not oppose the motions to intervene filed by Ambac or U.S. Bank.  The CFPB should not be allowed to pick and choose which affected parties may intervene.

First, GSS should be allowed to intervene because the Proposed Consent Judgment mistakenly labels GSS as a "Servicer," despite the fact that GSS does not play any role in the servicing of the loans at issue and did not contribute in any way to the alleged misconduct underlying the CFPB investigation and action.[4]  As a consequence of this mislabeling, the Proposed Consent Judgment wrongly condemns GSS for activity in which it had no involvement and imposes numerous extra-contractual obligations on GSS.  Such a mischaracterization could create potential liability for GSS – for conduct it had no part in.  In its Opposition, the CFPB *conceded* that GSS does not service loans, but the CFPB is nonetheless unwilling to allow GSS to intervene to correct this error in the Proposed Consent Judgment nor has the CFPB indicated that it would seek to remove GSS from the "Servicer" definition.  GSS should be permitted to intervene to address and remedy these issues, particularly because it is clear that neither the CFPB nor the Trusts can adequately represent GSS' interests in this regard.

Second, the Proposed Consent Judgment would prevent the Administrator from carrying out certain of its duties under the Administration Agreements and other Trust Related Agreements.  For example, as discussed in further detail below, the Administrator is charged with ensuring that principal and interest payments to noteholders, as well as other payments, are timely made in accordance with the Trusts' waterfalls.  The Proposed Consent Judgment would divert the flow of funds to an escrow account, preventing payments to be made in accordance with the terms of the Indentures, and could cause the Administrator to be unable to perform its duties.

---

[4] As explained in further detail below, the Trusts and CFPB are not even in agreement on GSS' role or how GSS is affected.  Such confusion necessarily requires that GSS be permitted to intervene and object.

Similarly, the management of the Trusts' affairs by a "Board" pursuant to the Proposed Consent Judgment also runs afoul of the Trust Related Agreements and the contractual rights of the Administrator thereunder. The Administrator has no obligation under the Administration Agreements to answer to or take instruction from a "Board" consisting of a simple majority of Owners but, under the Proposed Consent Judgment, the Board would be vested with broad powers to require the Administrator to perform obligations, such as providing certain reporting, which are outside the scope of the Administrators' duties and obligations under the Administration Agreements and other Trust Related Agreements.

It is undisputed that the Proposed Consent Judgment implicates GSS and its contractual and other interests. The CFPB attempts to marginalize those interests and asks that this Court not wade into the "labyrinth of trust-related agreements" (Opp. at 2-3); however, the Proposed Consent Judgment plainly implicates the Administration Agreements and the other Trust Related Agreements, and it is these precise agreements that govern the rights and obligations of the parties thereto. Thus, the Court should permit GSS to be heard.

For these reasons and those discussed in further detail below, the Court should grant GSS' Motion to Intervene.

## ARGUMENT

### I. THE ADMINISTRATOR'S MOTION TO INTERVENE UNDER RULE 24(a) SHOULD BE GRANTED

In its opening brief, GSS demonstrated that it has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). GSS further demonstrated that it met all four factors that courts evaluate when considering a motion to intervene under Rule 24(a) - "(1) the application for intervention is

timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014). In its Opposition, the CFPB does not dispute that the application was timely or that GSS' interest is not adequately represented by the existing parties. The CFPB contends only that GSS has not shown that it has a legally sufficient interest that will be impaired. The CFPB is wrong, and its attempt to exclude GSS should be rejected.

### A. The Administrator Will be Harmed If It Is Labeled a "Servicer" under the Proposed Consent Judgment

First, the CFPB dubs GSS' concern that it has been mistakenly labeled as a "Servicer" as a "hypothetical" concern and attempts to backtrack from the plain language of the Proposed Consent Judgment by saying that its conduct provisions "predominantly address the filing of collection lawsuits." Opp. at 23. But the Proposed Consent Judgment plainly defines "Servicers" to include GSS (D.E. 3-1 at 7), and all of the conduct provisions and other obligations are directed toward any and all entities that are defined as a Servicer. *See, e.g.*, D.E. 3-1 at 8-11. The Proposed Consent Judgment therefore does not "hypothetically" impose obligations on GSS as a "Servicer" thereunder—it plainly and actually does so. The CFPB's Opposition mischaracterizes GSS as a "Servicer" as well, despite admitting elsewhere that GSS "has no role on the servicing of the delinquent loans at issue, let alone the filing of collection lawsuits." *Compare* Opp. at 11, n. 11; Opp. at 20-21. Thus, as the Proposed Consent Judgment is currently written, no matter how the CFPB attempts to characterize it now, GSS and its contractual rights are implicated, and it should accordingly be permitted to intervene in order to ensure that the Proposed Consent Judgment accurately describes the implicated entities and their roles. And, this is not a mere "hypothetical" concern – the Trusts have signaled on several

occasions that they will use the misstatements in the Proposed Consent Judgment to try to remove GSS from its role as Administrator and to impose liability on GSS.

GSS' need to intervene is highlighted by the fact that the CFPB and the Trusts—the two parties to the Proposed Consent Judgment—cannot even agree on GSS' role in the underlying conduct and how it is affected by the Proposed Consent Judgment. In a recent filing, the Trusts stated that GSS has "engaged in the misconduct that led to the [CFPB]'s enforcement action" and has "violated [its] contractual duties and obligations." D.E. 55 at 1. The CFPB responded in order to clarify the Trusts' errors –

> That statement is not accurate. The [CFPB] has not made findings that . . . GSS Data Services . . . engaged in the misconduct that resulted in the [CFPB] filing its enforcement action in this Court. Nor has the [CFPB] found or alleged that [GSS] violated Federal consumer financial law. The [CFPB]'s Complaint and Proposed Consent Judgment include legal claims against only the Trusts related to the filing of collection lawsuits on its behalf.

D.E. 56 at 2.

If the two signatories to the Proposed Consent Judgment themselves cannot even agree on what GSS has or has not done, and, accordingly, how it is affected by the Proposed Consent Judgment, it is clear that neither party can adequately represent GSS' rights in the matter. GSS should be permitted to intervene so that it can protect its own rights and be heard. Further, because, as the CFPB points out, GSS did not play any role in the underlying servicing or loan collection misconduct, then it cannot be bound to the myriad servicing and loan collection-related remedial measures contained in the Proposed Consent Judgment.

### B. The Administrator's Contract Rights Are Implicated by Other Provisions of the Proposed Consent Judgment

GSS' contractual rights and obligations as Administrator are concretely harmed by other provisions of the Proposed Consent Judgment as well. The CFPB in opposition states that GSS'

5

position on this issue is "conclusory" and that GSS "does not identify any contractual interest that it possesses that would be directly and concretely affected . . . ." Opp. at 21. Not so.

The Proposed Consent Judgment contains a number of provisions related to the flow of funds. *See* D.E. 3-1 at 14-15. Specifically, paragraphs 17 and 18 of the Proposed Consent Judgment would require that "all payments from Consumers" be remitted to an escrow account and that "Defendants may use funds from the escrow to carry out Trust operations, including payments to noteholders sufficient to avoid events of default under the Indenture Trust, auditors, consultants, accountants, legal counsel, and other necessary professionals." *See id*. However, Section 1(a) of the Administration Agreements requires the Administrator to carry out the Trusts' obligations under the Indentures, and Section 3.01 of the Indentures in turn requires the Trusts to "*duly and punctually pay*" *all principal and interest due to noteholders on each payment date*. If the Proposed Consent Judgment were entered, the Trusts would be unable to do so and the Administrator would be unable to perform this contractual obligation. Similarly, Section 1(a)(i)(G) of the Administration Agreements requires the Administrator to provide instructions to the Indenture Trustee for payment of monies pursuant to the waterfall structure set forth in Section 8.02(d) of the Indentures. Because paragraphs 17 and 18 of the Proposed Consent Judgment would disrupt the flow of funds and the operation of the waterfall under the Indentures, it would prevent the Administrator from carrying out its duties under this section. Because paragraphs 17 and 18 of the Proposed Consent Judgment are squarely in conflict with GSS' obligations under the Administration Agreements, GSS' Motion should be granted.

The Proposed Consent Judgment also contains a number of provisions regarding the creation and role of a "Board" consisting of "the registered owner of a majority of the beneficial interest in each of the Trusts." *See* D.E. 3-1 at 5. If entered, the Proposed Consent Judgment

6

would vest a simple majority of Owners with broad, extra-contractual powers in direct contravention of the Trust Related Agreements. For example, paragraph 33(b) of the Proposed Consent Judgment would allow a simple majority of Owners to require GSS to provide reporting to the Board on the "status of compliance obligations"—a requirement that is nowhere to be found the Administration Agreements or Trust Related Agreements.

In addition, as noted above, Section 1(a) of the Administration Agreements requires the Administrator to "perform the duties of the [Trusts] under the Trust Related Agreements," which includes the Indentures. Under the Indentures, the Trusts are forbidden to "take any action and [are required to] use its best efforts not to permit any action to be taken . . . that would result in the amendment . . . of, or impair the validity or effectiveness of, any [Trust Related Agreements], except as expressly provided in this Indenture or the other Basic Documents." *See* Indentures § 3.07(a); *see also* Indentures § 3.07(c) ("[T]he [Trusts] shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders holding a majority of the Outstanding Amount of the related Classes of Notes."). Numerous provisions of the Proposed Consent Judgment would effectively amend the Trust Related Agreements, including provisions for the management of the Trusts by a simple majority of Owners and the disruption of cash flow to noteholders. Thus, entry of the Proposed Consent Judgment would contravene the Indentures and interfere with the Administrator's duties on behalf of the Trusts.

The CFPB misreads the Administration Agreements when it argues that "GSS is explicitly forbidden from taking any action at all unless directed by the Indenture Trustee, Owner Trustee, or Owners" citing to Sections (1)(d)(i) and 1(d)(i)(B) of the Administration Agreements. Opp. at 20. These provisions instead plainly provide that the Administrator "shall not be under

any obligation to take any action, and in any event shall not take any action" unless it receives instructions in connection with "non-ministerial matters." Those provisions do not require the Administrator to follow any such instructions issued by the Indenture Trustee, Owner Trustee, or Owners. Indeed, Section 5 of the Administration Agreements make clear that "the Administrator shall be an independent contractor and shall not be subject to the supervision of the [Trusts] or the Owner Trustee with respect to the manner in which it accomplishes its performance of its obligations hereunder" and "shall not . . . be deemed an agent of the [Trusts] or the Owner Trustee." Thus, the CFPB's argument that GSS should not be permitted to intervene because GSS is obligated to act at the direction of the Owners is both untrue and unavailing.[5]

As GSS noted in its opening Motion, it is well-settled in the Third Circuit that contesting provisions in a consent order that impact contractual obligations is a sufficient interest warranting intervention in this Circuit. *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("Courts thus have found that an applicant has a sufficient interest to intervene when the action will have a significant *stare decisis* effect on the applicant's rights . . . or where the contractual rights of the applicant may be affected by a proposed remedy.") (internal citations omitted); *EEOC v. Opportunity Comm'n*, 506 F.2d 735, 739 (3d Cir. 1974) (same). As such, because GSS' contractual rights would be affected by the proposed remedy, GSS' Motion should be granted and it should be permitted to object to the Proposed Consent Judgment. *See Vulcan Soc. of Westchester Cty. Inc. v. Fire Dept. or City of White Plains*, 505 F. Supp. 955, 961 (S.D.N.Y.

---

[5] In addition, Section (1)(d)(i) of the Administration Agreements requires any instructions from the Owner Trustee or Owners to be made "in accordance with the Trust Agreement[s]." The Trust Agreements do not provide for instructions to be made by Owners to the Administrator. Instead, it provides for Owner instructions to be made to the Owner Trustee, who then, in turn, may provide instructions to the Administrator. *See, e.g.*, Trust Agreements, Art. IV. Notably, the Trust Agreements explicitly provide that the Owner Trustee is not obligated to take any actions at the direction of Owners that are contrary to the Trust Agreements or the Trust Related Agreements. *See* Trust Agreements § 4.02(b).

1981) (noting that district courts have an obligation to consider "the potential impact of settlements upon non-consenting parties" when reviewing a consent judgment).

## II. THE ADMINISTRATOR'S MOTION TO INTERVENE UNDER RULE 24(b) SHOULD BE GRANTED

GSS also demonstrated that it should separately be permitted to intervene under Rule 24(b), which requires that the nonparty "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B). The "central consideration" is "whether allowing intervention will cause delay or prejudice." *Bell Atl.-Del., Inc. v. Global NAPs S., Inc.*, 77 F. Supp. 2d 492, 502 (D. Del. 1999).

CFPB contends in its Opposition that Rule 24(b) does not apply because GSS plays a largely ministerial role and it is not involved in the collection actions that are at issue in this matter. The CFPB is absolutely correct and, as such, GSS should not be named as a "Servicer" and should not be named in or bound by the Proposed Consent Judgment. But the CFPB does not propose to remove GSS from the Proposed Consent Judgment. Instead, the CFPB maintains that, because GSS' role is largely ministerial, it should not be allowed to intervene. The CFPB cannot have it both ways. As shown above, the Proposed Consent Judgment explicitly names GSS as a "Servicer" and subjects it to numerous requirements outside the bounds of the Trust Related Agreements. Thus, it is readily apparent that GSS shares a common question of law or fact with the main action – namely, whether the Proposed Consent Judgment is fair and reasonable and in the best interests of all affected parties. Nor will there be any undue delay or burden. The Court has already been tasked with evaluating the reasonableness and fairness of the proposed settlement, so it may as well do so with the benefit of hearing from all affected parties, including GSS.

## CONCLUSION

The Administrator respectfully requests that this Court grant the Administrator's motion to intervene pursuant to Rule 24(a) or Rule 24(b) and refrain from granting the CFPB's motion seeking approval of the Proposed Consent Judgment until all interested parties have been given (a) an opportunity to intervene and (b) an opportunity to be heard by this Court.

Dated: November 20, 2017                **LANDIS RATH & COBB LLP**

*/s/ Rebecca L. Butcher*
Rebecca L. Butcher (No. 3816)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: butcher@lrclaw.com

- and –

**ALSTON & BIRD LLP**
John P. Doherty (*pro hac vice* motion pending)
William Hao (*pro hac vice* motion pending)
90 Park Avenue
New York, New York 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: john.doherty@alston.com
           william.hao@alston.com

*Attorneys for Proposed Intervenor*
*GSS Data Services, Inc.*