# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Consumer Financial Protection Bureau, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The National Collegiate Master Student ) <br> Loan Trust, *et al*. ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No.: 1:17-cv-01323-GMS |

## TRANSWORLD SYSTEMS INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO INTERVENE

Proposed Intervenor Transworld Systems Inc. ("TSI") respectfully submits this reply in support of its motion to intervene. TSI is entitled to intervene in this matter as of right under Rule 24(a). In the alternative, this Court has the discretion to grant permissive intervention under Rule 24(b) because TSI meets the necessary requirements.[1] *See* Fed. R. Civ. P. 24(b). Further, the Court should reject the argument, raised by the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), that TSI is foreclosed from litigating issues that clearly affect TSI's interests and that are manifest in the Proposed Consent Judgment ("PCJ"). The PCJ would impose significant burdens on Special Sub-Servicer TSI, even though the Bureau excluded TSI from participation in the negotiation and development of the remedial actions described in the PCJ and even though TSI spent months negotiating with the Bureau – in good faith -- a parallel

---

[1] The Bureau's argument that TSI did not pursue permissive intervention, and thus is precluded from doing so now, is disingenuous. In its Motion to Intervene, TSI clearly states that the Court would be in its right to grant permissive intervention and explains that TSI "fulfills the requirements under 24(b)." *See* D.I. 9 at 11.

1

Consent Order (effective on September 15), without knowledge of the PCJ or its content. *See* D.I. 9 at 9-10.

## PRELIMINARY STATEMENT

TSI *does* dispute the allegations raised in the Complaint, contrary to the Bureau's assertions. Indeed, the Consent Order executed by TSI includes no admission to any alleged wrongdoing. *See* TSI Consent Order (D.I. 54-2) at ¶ 2.

Second, the Bureau attempts to sidestep the threshold jurisdictional question of whether the Trusts are "covered persons" for purposes of the Consumer Financial Protection Act ("CFPA"). Specifically, the Complaint states that the CFPA confers federal question jurisdiction, as the Complaint and PCJ allege violations of prohibitions against unfair, deceptive or abusive acts or practices (UDAAP), which is conduct in which only a "covered person" within the meaning of the CFPA can engage. *See* 12 U.S.C. §§ 5531, 5536 (limiting scope of Bureau UDAAP authority to covered persons and service providers); 5481(6) (defining "covered person" as "any person that <u>engages</u> in offering or providing a consumer financial product or service") (emphasis added). Here, the Bureau relies on the "covered person" definition that states that the Trusts offer or provide a consumer financial service or product because they "extend[] credit and service[] loans, including acquiring, purchasing, selling, brokering or other extensions of credit." The Bureau argues that because the Trusts acquire loans, the Trusts therefore also extend credit and service loans. 12 U.S.C. §5481(15)(a)(i). But, the Trusts do not extend credit and, by the Bureau's own admission, the other parties "service" the loans comprising the Trusts – hence the distinction made in the PCJ between the Trusts and the "servicers."

The Bureau impermissibly ignores the comma after the phrase "extending credit and servicing loans" and instead argues that the Trusts' acquisition of loans means that they extend

2

credit or service them. But "[a] statute's plain meaning must be enforced ..., and the meaning of a statute will typically heed the commands of its punctuation." *United States Nat'l Bank of Oregon v. Independent Ins. Agents*, 508 U.S. 439, 454 (1993). In the Third Circuit, "[t]he first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir.2002) (quoting *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir.2001) (internal quotations omitted). Courts have found plain meaning from verb tense and usage. *See, e.g., Ingalls Shipbuilding v. Director*, OWCP, 519 U.S. 248, 255 (1997) (present tense of verb is an element of plain meaning). Where, as here, the relevant statutory language relies on verbs that unambiguously convey that the "covered person" is one "engaging" in one of the enumerated activities, it cannot be said that an employee-less Trust that holds securitized debt and can only act through third parties is a "covered person" for purposes of the CFPA.

If the Court finds that there is federal question jurisdiction here, then the Court should grant TSI's motion to intervene as of right pursuant to Rule 24(a) or, in the alternative, by permission under 24(b).

## ARGUMENT

**I.    THE CONFLICTS BETWEEN THE TSI CONSENT ORDER AND THE PROPOSED CONSENT JUDGMENT ARE SUBSTANTIAL AND ALONE JUSTIFY NOT ENTERING THE PROPOSED CONSENT JUDGMENT**

The Bureau disregards TSI's valid concern that the Proposed Consent Judgment and already-in-force Consent Order feature inconsistent reporting structures and compliance program requirements, which are condition precedents for certain special sub-servicing activities. The TSI Consent Order (D.I. 54-2) specifically references TSI's contractual relationship with the

successor special servicer (U.S. Bank) and directs TSI to interact with the successor special servicer in its implementation efforts:

- Paragraph 6: "Debt-collection activities on behalf of the Trusts are carried out by the successor special servicer's sub-servicer pursuant to servicing agreements with the successor special servicer."
- Paragraph 45(d) & (e): TSI must provide certain information regarding lawsuits to "the successor special servicer";
- Paragraph 49: In the event that TSI determines certain affidavits should be withdrawn or lawsuits should be dismissed, it will "take the steps necessary, including getting permission from the successor special servicer."
- Paragraph 50: In the event that TSI determines certain post-judgment collection actions should not be enforced, it will "take the steps necessary, including getting permission from the successor special servicer …";
- Paragraph 51: Requires cooperation "in all respects with any directive from the successor special servicer acting on behalf of the Trusts" including provision of certain loan documents and information to the successor special servicer.

By contrast, the PCJ (D.I. 3-1) implements a regime that wholly disregards the contract structure between the successor special servicer and the subservicers, including the fact that TSI's contract counterparty is the successor special servicer. The PCJ also fails to account for the fact that the fifteen Trusts have no employees and no "Board[s]" – while it nonetheless imposes a requirement that TSI and other servicers engage in "timely reporting … to the Board [of each

4

Trust] on the status of compliance obligations" (D.I. 3-1, ¶ 33(b)), and directs "Defendants" (the fifteen Trusts) to "take all actions necessary" to ensure that all of "Defendants' Servicers" comply with the terms of the PCJ. D.I. 3-1, ¶ 9(a); *see also id.* at ¶ 9(b) (directing Defendants to then direct the Defendants' Servicers to require their vendors to abide by the terms of the Proposed Consent Judgment); ¶ 14 (directing Defendants to withdraw certain lawsuits or affidavits); ¶ 15 (directing Defendants, their Servicers, and those engaged by the Servicers to cease certain collection actions, including "accepting settlement payments"). The TSI Consent Order and the PCJ each include a requirement to submit to the Bureau separate, potentially inconsistent and incompatible, compliance plans for review and approval by separate sets of personnel. *Compare* D.I. 3-1, ¶ 28-30 *with* D.I. 54-2, ¶ 52-54. Further, the PCJ imposes terms and conditions that impede collection activities and substantially constrain TSI's ability to provide services in connection with the Trusts' portfolio of loans. *See* D.I. 3-1, ¶ 16. For example, the PCJ requires the Trusts to direct the "Primary Servicer" (PHEAA) to cease referring accounts to TSI for collection, pending the Bureau's approval and implementation of the Trusts' compliance plan. *See id.*

In light of the facial infirmities and inconsistencies in the PCJ, coupled with the governance disputes raised by the various proposed intervenors in this matter, TSI cannot rest on the Bureau's blanket assurance that "it has every incentive to ensure that TSI is not subject to conflicting obligations." D.I. 54 at 13. Thus, TSI should be permitted to intervene in order to assert its rights and protect its interests.

## II. TSI IS ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)

The Bureau's arguments opposing TSI's intervention are premised on an insupportably narrow reading of the requirements under Fed. R. Civ. P. 24(a)(2). The Third Circuit has

5

consistently rejected the Bureau's reading, and interpreted Rule 24 to allow that: "a party may intervene in an action as of right if that party can establish that: (1) its application for leave to intervene was timely; (2) it has a sufficient interest in the litigation; (3) there is a threat that that interest will be impaired or affected, as a practical matter, by the disposition of the action; and (4) there is inadequate representation of this interest by the existing parties in the litigation." *see, e.g., Advanced Dynamic Interfaces, L.L.C. v. Aderas Inc.*, 2013 WL 6989428, at *1 (D. Del. Jan. 11, 2013).

Moreover, the Third Circuit has held that "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998) (reversing order denying intervention and remanding to the district court). As courts in other circuits adopting similar policies have explained, the purpose of such a policy is to involve "as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (citations omitted).

In light of this policy that favors intervention, and because TSI satisfies each prong of the four-part test for intervention under Rule 24(a), TSI should be permitted to intervene as of right.

### a. TSI's Motion to Intervene Is Timely

The Bureau does not dispute that TSI's motion to intervene is timely. TSI filed its Motion to Intervene just four days after the action was commenced and TSI first learned of the Proposed Consent Judgment.

### b. TSI Has Sufficient Interest in This Action and That Interest Will Be Impaired If Intervention is Not Granted

Contesting TSI's protected interest in this action, the Bureau's response sets forth an insupportably narrow interpretation of the "interest" requirement under Rule 24(a). *See Kleissler*, 157 F.3d at 969 (3d Cir. 1998).[2] In its motion to intervene, TSI established that it has a significant legal interest in the subject of this action. As described above, the PCJ's conflicting requirements – and total disregard for the existing contractual relationships between the Trusts and the servicers – impair and impede TSI's rights under its servicing contract, as well as its ability to meet the responsibilities under the already-entered Consent Order. TSI clearly has a protected legal *and* economic interest exists and intervention is appropriate. *See Util. Contractors Ass'n of New Jersey, Inc. Toops*, 507 F. 2d 83, 86 n.2 (3d Cir. 1974) ("a consent decree affecting third party rights should not be entered without affording such parties an opportunity to be heard"); *see also Liberty Mut. Ins. Co v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).

### c. TSI's Interests Are Not Adequately Represented by Any Party

By failing to address, let alone respond to TSI's specific arguments that it has satisfied the fourth prong, the Bureau has waived any challenge to TSI's motion on these grounds. It is obvious, however, that TSI's interests – in particular, its interest in ensuring that it is not subject to competing obligations under two consent orders – would not be adequately represented by either the Bureau or the party purporting to represent the Trusts.

---

[2] FRCP 24(a) provides: "[u]pon timely application anyone shall be permitted to intervene in an action ... when the applicant claims **an interest relating to the property or transaction** which is the subject of the action and the applicant is so situated that **the disposition of the action may as a practical matter impair or impede** the applicant's ability to protect that interest, unless the

## III. TSI HAS MET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

In the alternative, this Court should exercise its discretion in granting permissive intervention under Federal Rule of Civil Procedure 24(b). Notwithstanding the Bureau's incorrect assertion, TSI's Motion to Intervene addressed the Court's authority to grant permissive intervention in this action, and explained how TSI "fulfills the requirements under 24(b)." *See* D.I. 9 at 11. Thus, even if the Court were to determine that TSI did not establish intervention as a matter of right, intervention should still be permitted under Rule 24(b).

### a. TSI Shares Claims with Common Questions of Fact or Law with This Action

As discussed above, TSI shares claims with common questions of fact or law that are central to this action. The factual and legal issues to be decided in reviewing the Proposed Consent Judgment are intertwined with the issues and claims that TSI seeks to resolve.

### b. Permitting TSI to Intervene Will Not Result in Any Delay or Prejudice to the Parties

Intervention will facilitate an expeditious resolution of this matter rather than cause delay or prejudice. Even the Trusts – whose response was filled with inflammatory and inaccurate rhetoric and conjecture with which TSI disagrees – nonetheless recognize that the grant of intervention would serve the interests of time and efficiency and, accordingly, do not oppose it. *See* D.I. 55 at 2. Further, as the number of movants and urgency of their motions would indicate, the issues central to this action and the interests involved are significant and time-sensitive.

---

applicant's interest is adequately represented by existing parties. Fed.R.Civ.P. 24(a) (emphasis added).

## IV. THE COURT SHOULD NOT LIMIT PROPOSED INTERVENOR TSI'S PARTICIPATION IN THIS LAWSUIT

At such time that the Court grants the motions to intervene, the Bureau has asked the Court to limit TSI's and other proposed intervenors' participation in this action. Although TSI intends to focus its arguments on the fairness and reasonableness of the PCJ, as it affects TSI, this Court should not grant the Bureau's request to foreclose TSI from litigating issues that may arise which affect TSI's interests. Furthermore, here, the Bureau cites inapposite cases that concern numerous "phases of action" and the resolution of multiple claims. *See* D.I. 54 at 29-30. By contrast, this action is limited to the review of the PCJ; the Bureau's proposal is neither appropriate nor would it result in greater efficiency.

## CONCLUSION

For the reasons set forth in its opening brief and herein, TSI respectfully requests that the Court grant its motion to intervene.

Dated: November 20, 2017

Respectfully submitted,

/s/ *Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
VENABLE LLP
1201 N. Market Street
Suite 1400
Wilmington, DE 19801
Phone: (302) 298-3535
Fax: (302) 298-3550
JLEdmonson@venable.com

Allyson B. Baker (*pro hac vice*)
Meredith L. Boylan (*pro hac vice*)
Sameer P. Sheikh (*pro hac vice*)
Katherine M. Wright (*pro hac vice*)
VENABLE LLP
600 Massachusetts Ave., NW

Washington, DC 20001
Phone: (202) 344-4000
Fax: (202) 344-8300
ABBaker@venable.com
MLBoylan@venable.com
SPSheikh@venable.com
KMWright@venable.com

*Counsel for Intervenor Transworld Systems Inc.*