# CHAITMAN LLP
### 465 PARK AVENUE
### NEW YORK, NY 10022
### (888) 759-1114
TELEPHONE & FAX

*LANCE GOTTHOFFER*
*lgotthoffer@chaitmanllp.com*

August 3, 2018


RECEIVED AUG - 6 2018 U.S. DISTRICT COURT DISTRICT OF DELAWARE

**VIA OVERNIGHT MAIL: 7728 8357 0029**

The Honorable Gregory M. Sleet
United States District Judge
United States Courthouse
844 N. King Street
Wilmington, DE 19801

Re: *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust*, No. 17-cv-01323-GMS (D. Del.)

Dear Judge Sleet:

I am special litigation counsel for the defendant Trusts and a member of the New York bar. I write in connection with Your Honor's order of July 16, 2018 relieving the firm of McCarter & English as counsel of record for Defendants, and requiring Defendants to secure new counsel within 30 days. As set forth below, the Trusts cannot retain new counsel, and I respectfully request a telephonic conference at the Court's convenience to discuss whether there is a solution to this unfortunate situation.

This is an action by the Consumer Financial Protection Bureau against the Trusts for abusive practices in the collection of student loans by the Trusts and their service providers, in which a proposed consent judgment has been negotiated and submitted to the Court for entry. The Trusts' counsel, who represented the Trusts during the lengthy CFPB investigation and negotiated the consent judgment, have not been paid for over a year and a half. This is not the fault of the Trusts. The Trusts are on record as affirmatively stating such payments should be made.

{00036998 2 }

**CHAITMAN LLP**

The Honorable Gregory M. Sleet
August 3, 2018
2

The problem is, Wilmington Trust Company (the Owner Trustee), GSS Data Services, Inc. (the Administrator), and U.S. Bank N.A. (the Indenture Trustee and Special Servicer), all of whom are seeking to intervene claiming they will be adversely affected by the proposed judgment, control the purse strings of the Trusts. They are parties with vested interests to maintain the status quo and prevent the CFPB and the Trusts from interfering with their wrongful handling of the Trusts' affairs, and they have refused to take the steps required of them under the Trust Agreement, the Administration Agreement and the Indenture to effect payment. The obvious purpose is to choke off the Trusts' ability to retain counsel, successfully in the case of McCarter.

This is not the money belonging to the Owner Trustee or the Administrator or the Indenture Trustee. It is money belonging to the Trusts, who need to use it for their legal defense here. Until the payment issue is resolved, the Trusts are effectively being denied the right to have counsel in this proceeding (and in spin off proceedings involving state attorneys general). For reasons the Court may readily infer, this is not the kind of case that a Delaware law firm is going to take on contingency.

So that the Court may fully appreciate the magnitude and urgency of this matter, it should be aware that no payments have been made since November 2016—correct, 2016—under the retainer agreement entered into by the Trusts with Chaitman LLP, including for this matter and for matters pending in other courts. This is true even though:

a. In October 2015, the Trusts engaged Chaitman to act as Special Counsel in connection with litigation matters. *See* Exh. A. Such retention agreement expressly authorized Chaitman to retain other counsel on behalf of the Trusts (*see* Exh. A Section A), and other firms that have represented the Trusts in this case – McCarter & English and DiCello Levitt & Casey – were retained by Chaitman pursuant to that authority.

{00036998 2 }

**CHAITMAN LLP**

The Honorable Gregory M. Sleet
August 3, 2018
3

b. The Trusts' retention agreement with Chaitman, drafted and signed by the Owner Trustee and its counsel and consented to by the Administrator, requires the Trusts make payment to the firm within 30 days of each invoice (*see* Exh. A Section C);

c. The Owners of the beneficial interests in the Trusts, who have the right under the Chaitman letter to direct counsel, have specifically directed the Owner Trustee and the Administrator to take the steps necessary to effect these payments (*see, e.g.*, Exh. B);

d. The Owner Trustee and the Administrator did process payments from November 2015 through November 2016, a process that terminated, according to the Owner Trustee, because of unanswered questions respecting ownership issues;

e. While the ownership issue was resolved by the Delaware Chancery Court last year, the Owner Trustee and Administrator now claim a variety of other reasons impel them to disregard the Owners' instructions, including that the Trust Agreements contemplate that counsel for the Trusts will not be paid until the Trusts are wound down—a process that may not occur for years.

f. Both McCarter and the DiCello firm have withdrawn for non-payment. But while paralyzing the Trusts by refusing to allow Trust monies to be paid to the Trusts' lawyers, the Owner Trustee, the Administrator and the Indenture Trustee are using Trust monies to pay their lawyers, among other things, to oppose the requests for payment by the Trusts' lawyers.

As a consequence of the foregoing, law firms that were contractually promised payment within 30 days, whose entitlement to payment has been admitted by the Trusts and heretofore by the Owner Trustee, are now owed over $3 million.

{00036998 2 }

# CHAITMAN LLP

The Honorable Gregory M. Sleet
August 3, 2018
4

It is foreseeable that the Owner Trustee and Administrator will proffer a barrelful of excuses as to why their refusals to enable the Trusts to honor their contractual obligations and pay counsel is justified. But whatever they say in this regard will be misplaced. The Chaitman firm, and the firms Chaitman retained pursuant to its retention agreement, have rendered services to the Trusts for which they are entitled to compensation, as would be any firm now retained in this case to replace McCarter. As to how those payments are dealt with internally by the Owner Trustee, *et al*, and as to who has what responsibilities under the Trust Agreement, the Administration Agreement or the Indenture, the lawyers are not parties to those agreements. Their rights can be determined within the four corners of the Chaitman retention agreement.

Perhaps more importantly, whatever issues the Owner Trustee, Administrator or the Indenture Trustee raise will be largely academic. If they are allowed to continue to thwart payment, there will be no Trust lawyers left to explain to the Court why they are wrong.

It may be noted that Chaitman has sued the Owner Trustee and the Administrator in New York State Court over the fee issue. However, the Owner Trustee and the Administrator have moved to dismiss for lack of jurisdiction, and there can be no certainty when that case will be resolved and whether the Owner Trustee and Administrator will appeal an adverse determination. Further, the DiCello Levitt firm is suing the Trusts in Illinois to confirm an award it recently obtained in a fee arbitration there.

The CFPB has found fraud and other serious misconduct on the part of certain of the service providers. The consequences of their actions fall on the Trusts who, as may be seen, are agreeing to pay substantial restitution and penalties under the proposed consent judgment. It is vitally important the Trusts be permitted to defend and to pursue entry of the consent judgment in this

{00036998 2 }

**CHAITMAN LLP**

The Honorable Gregory M. Sleet
August 3, 2018
5

action, to put these improper activities by service providers to an end. This they cannot do unless some provision is made at least for interim attorneys' fees.

May I respectfully request the Court schedule a telephone conference at its earliest convenience to see if there is at least some interim solution that can be fashioned so that the Trusts can secure legal representation to address ongoing matters.

I thank the Court for its attention.

> Respectfully,
>
> Lance Gotthoffer

LG/sh
Enclosures (as stated)

cc: <u>VIA ELECTRONIC MAIL</u>:
Carolyn I. Hahn, Esq. (Carolyn.Hahn@cfpb.gov)
Stacey Scrivani, Esq. (sasc@stevenslee.com)
Stephen B. Brauerman, Esq. (SBrauerman@bayardlaw.com)
Rebecca L. Butcher, Esq. (butcher@lrclaw.com)
Andrew D. Cordo, Esq. (ACordo@ashbygeddes.com)
Kurt M. Heyman, Esq. (kheyman@hegh.law)
A. Thompson Bayliss, Esq. (Bayliss@AbramsBayliss.com)
David M. Fry, Esq. (dfry@shawkeller.com)
Allyson B. Baker, Esq. (abaker@Venable.com)
Jamie Lynne Edmonson, Esq. (jledmonson@venable.com)
Keith M. Kollmeyer, Esq. (kkollmeyer@jonesday.com)
Michael Hanin, Esq. (mhanin@kasowitz.com)
Erik Haas, Esq. (ehaas@pbwt.com)

<u>VIA OVERNIGHT MAIL</u>:
Clerk, United States District Court District of Delaware
(Tracking No. 7728 8376 6190)

# EXHIBIT A

Chaitman LLP
465 Park Avenue
New York, New York 10022

October 12, 2015

Wilmington Trust Company
1100 North Market Street
Wilmington, DE 19890
Attn: Dorri Costello

Re: National Collegiate Student Loan Trusts listed on Annex A (each a "Trust" and collectively, the "Trusts")

To Whom It May Concern:

Wilmington Trust Company ("WTC") serves as Trustee for and on behalf of the owners of the Trusts (the "Owners") listed on Annex A. At the request of the Owners, WTC confirms its retention of Chaitman LLP ("Chaitman") to represent the Trusts.

A. Scope of Work.

1. Chaitman will act as Special Counsel for the Trusts managing litigation or other adversarial proceedings arising from or relating to one or more Trusts by (i) providing legal services in connection with such matters, and/or (ii) on behalf of the Trusts, selecting, engaging and managing other law firms to provide such Services, at the discretion of Chaitman;

2. As requested or directed by WTC or the Owners, Chaitman provide legal services in connection with any litigation, regulatory proceeding, inquiry or investigation arising from or relating to one or more Trusts;

3. In the event that WTC is named in its individual capacity in any borrower lawsuit, Chaitman will take steps to have WTC, in its individual capacity removed as a party to the relevant lawsuit; and

4. Communicate with WTC and the Owners and interact as needed in Special Counsel's discretion with the Administrator, Indenture Trustee, various servicers and other service providers to the Trusts.

The engagement of Chaitman hereunder does not prohibit you from retaining separate counsel to represent you in connection with any matters that fall within the foregoing Scope of Work.

Professional Fees. We agree that the Trusts shall solely be responsible for the payment of the legal fees and expenses of Chaitman for legal work performed in connection with this engagement. We further agree that WTC is not responsible to pay the legal fees and expenses of Chaitman incurred in connection with this

Page 2
October 12, 2015

**engagement.** You acknowledge that Chaitman shall have no obligation to provide legal services hereunder in the event that there are insufficient funds to pay Chaitman.

Our fees are based on the value of our services determined in accordance with the New York State Code of Professional Responsibility and our hourly billing rates set from time to time for each attorney and paralegal. My current rate is $775. The billing rates for other attorneys range from $300 to $750, and for paralegals from $165 to $300. We usually adjust our hourly rates annually.

B. <u>Costs and Expenses</u>. We charge separately for necessary and reasonable costs and expenses. There are no mark-ups on our out-of-pocket expenses.

C. <u>Billing</u>. We generally submit bills for services rendered and expenses incurred on a monthly basis. All bills will include a summary statement of the services rendered during the relevant period and the amount of reimbursable expenses. Payment shall be due upon receipt of such bill and in any event, will be made within 30 days of receipt of any such bill.

D. <u>Mandate</u>. In performing services for you, we will conduct ourselves in accordance with the New York State Code of Professional Responsibility. You may discharge us at any time, but if you elect to discharge us, the Trusts will remain obligated to pay promptly all invoices for services rendered and disbursements incurred prior to our discharge.

E. <u>Billing Disputes</u>. If you at any time have a question about our invoices that we cannot resolve amicably, and the amount in dispute is between $1,000 and $50,000, you have the right to have the matter resolved through mandatory arbitration under the New York State Fee Dispute Resolution Program. However, this Program is not available for claims involving substantial legal questions (including alleged malpractice or misconduct), or where you seek relief other than adjustment of the fee, or where no attorney's services have been rendered by us to you for more than two years. If you desire, we can provide you with further information concerning your right to arbitrate.

F. Based on information known to date, Chaitman does not know of any conflict in representing the Trusts and/or WTC as Trustee as set forth herein. We agree to notify you in the event we become aware of such conflict between one or more parties hereto.

The Trusts, WTC, and Chaitman shall have the right to terminate this engagement at any time by reasonable written notice. If we disengage, we and you each understand that you will take whatever steps are necessary to evidence that we are free from any obligation to perform further.

If the above terms are acceptable to you, please acknowledge that you have reviewed them, understand them, and wish to retain Chaitman on the basis set forth herein by signing and delivering to me the enclosed copy of this letter. We are pleased to provide legal services to you and look forward to working with you.

Page 3
October 12, 2015

      This letter is executed and delivered by WTC, not individually or personally but solely as Owner Trustee of the Trusts. Nothing herein contained shall be construed as creating any liability on WTC, individually or personally, for the payment of any indebtedness or expenses of the Trusts. In executing this letter and taking the actions contemplated hereunder, WTC is taking actions that are covered by the fee and indemnification provisions set forth in the various governing documents of the Trusts.

      Very truly yours,

      CHAITMAN, LLP

By: _____
Name: Lance Gotthoffer
Title:

**AGREED TO:**

**WILMINGTON TRUST COMPANY,**
not in its individual capacity but solely in its
capacity as Owner Trustee for and on behalf of the
Trusts listed on Annex A

By: _____
Name: Adam B. Scozzafava
Title: Vice President

Dated as of: October ___, 2015 *(November 12)*

Page 4
October 12, 2015

## ANNEX A

The National Collegiate Master Student Loan Trust I
The National Collegiate Student Loan Trust 2003-1
The National Collegiate Student Loan Trust 2004-1
The National Collegiate Student Loan Trust 2004-2
The National Collegiate Student Loan Trust 2005-1
The National Collegiate Student Loan Trust 2005-2
The National Collegiate Student Loan Trust 2005-3
The National Collegiate Student Loan Trust 2006-1
The National Collegiate Student Loan Trust 2006-2
The National Collegiate Student Loan Trust 2006-3
The National Collegiate Student Loan Trust 2006-4
The National Collegiate Student Loan Trust 2007-1
The National Collegiate Student Loan Trust 2007-2
The National Collegiate Student Loan Trust 2007-3
The National Collegiate Student Loan Trust 2007-4

# EXHIBIT B



December 8, 2017

*Via Electronic Mail*

GSS Data Services, Inc.
402 West Broadway, 20th Floor
San Diego, California 92101
Attn: Tristan Fleming, Esq.
tfleming@goalsolutions.com

Re: **Payment of Trust Legal Expenses**

Dear Mr. Fleming:

We write to you pursuant to ongoing discussions and communications concerning the payment of legal fees and expenses for the National Collegiate Student Loan Trusts listed on Schedule 1 ("Trusts"). As you know, the Owners of the beneficial interests of the Trusts ("Owners")[1] provided an Authorization and Direction Letter to Wilmington Trust Company, as Owner Trustee, to pay certain of the Trusts' legal fees and expenses on November 13, 2017. Attached to that Authorization and Direction Letter were invoices for authorized legal fees due to the Trusts' attorneys pursuant to an engagement letter signed by Chaitman LLP and the Owner Trustee. The Owner Trustee provided these invoices to you, the Administrator, on November 17, 2017, via electronic mail.

We refer you to the Trust Related Agreements (including the Administration Agreements, Trust Agreements, and Indentures), which are contracts that outline the various duties and responsibilities of agents and servicers of the Trusts. Pursuant to the Trust Related Agreements, you, as the Administrator, agree to perform the duties of the Issuer (the Trusts listed in Schedule 1). *See* Indenture § 3.07(b); Administration Agreement ¶ 1(a)(i). Pursuant to Section 3.07(c) of the Indenture, the Issuer shall "enforce all of its rights under this Indenture and the Basic Documents... and will punctually perform and observe all of its obligations and agreements contained in this Indenture, the other Basic Documents and in the instruments and agreements included in the Indenture Trust Estate...." Pursuant to Trust Agreements §§ 9.03(b) and 10.01, the Owner Trustee executed a retainer agreement with Chaitman LLP to perform certain legal services for the Trusts. Pursuant to that agreement, which the Owner Trustee has given you, payment of all such invoices is due within 30 days of receipt thereof.

---

[1] Attached as Exhibit A is an Order entered by Vice Chancellor Joseph R. Slights III, Court of Chancery for the State of Delaware, determining the ownership of the beneficial interests in the Trusts.

407 SE 1ST STREET, DELRAY BEACH, FLORIDA 33483
(561) 330-6999

GSS Data Services, Inc.
December 8, 2017
Page 2

The Owners of the beneficial interests of the Trusts sent an Authorization and Direction letter to the Owner Trustee on November 14, 2017, to pay certain of the Trusts' legal fees and expenses. Because the Administrator is responsible for performing all of the Issuer's obligations, Administration Agreement ¶ 1(a)(i), and because the Indenture provides that the Issuer is responsible for "punctually perform[ing] and observ[ing] all of its obligations and agreements contained... in the instruments and agreements included in the Indenture Trust Estate," Indenture § 3.07(c), the Administrator must ensure that these invoices are paid by December 15, 2017, or it will be responsible for breaching the retainer agreement and, accordingly, violating its duties and responsibilities under the Administration Agreement and Indenture.

Accordingly, this letter serves to direct you, the Administrator, pursuant to Paragraph 1(d)(i) of the Administration Agreements, to remit the invoices to the Indenture Trustee for payment immediately without further delay.[2]

Pursuant to the Administration Agreement, ¶ 1(a)(ii)(B), you, as the Administrator, have agreed to indemnify the Issuer, Owner Trustee, and their respective agents for any losses, liability, or expense, including reasonable attorneys' fees and expenses, incurred arising out of your willful misconduct, negligence, or bad faith in the performance of your duties, as Administrator. In the event you do not take appropriate action to ensure that the Trusts' legal expenses are paid, and the Trusts need to take further legal action, you, the Administrator, will be responsible for costs and fees resulting from any further legal action.

Further, until the invoices referenced above are paid, you, as Administrator, are further directed, pursuant to (and without limitation) Section 1(d)(ii) of the Administration Agreements, to cease payments to all other counsel, except for counsel engaged pursuant to Section 1(d)(i)(B) to initiate claims or lawsuits in the ordinary course of business by the Issuer (as described in the applicable section in the Administration Agreement) until the Owners confirm to the Administrator in writing that the invoices for the Trusts' legal expenses referenced above have been paid.

Additionally, you, the Administrator, are further directed, pursuant to Sections 2 and 4 of the Administration Agreements to furnish to the Owners within five days all invoices from, and records of payment to, any lawyer or law firm that has been paid by, or has requested payment from, the Trusts or any of them, from November 22, 2015, through the date such documents are provided.

---

[2] Rather than remit the invoices to the Indenture Trustee directly, the Administrator may alternatively issue a direction to the Owner Trustee to remit the invoices for payment pursuant to Section 8.02(d)(1) of the Indenture. If you, the Administrator, elect this option, and the Owner Trustee ignore that direction, we further direct you, the Administrator, to bring a suit against the Owner Trustee to compel performance immediately, as authorized under Paragraph 1(d)(i)(B) of the Administration Agreement.

GSS Data Services, Inc.
December 8, 2017
Page 3

Finally, you, the Administrator, are hereby directed to take any and all additional actions as may be necessary, advisable, or appropriate to carry out the purpose and intent of this letter, including preparing any and all direction, notification, or other communications to the Indenture Trustee as necessary or required pursuant to the corresponding Indenture (collectively, "Necessary Actions").

Notwithstanding the foregoing, the Administrator shall not be individually liable for any fees and expenses pursuant to Section 1(a)(ii)(B) of the Administration Agreement to the extent that the Administrator, in good faith, follows these instructions, and instructs the Indenture Trustee in writing to distribute the funds to pay such fees and (a) such instruction is not followed by the Indenture Trustee, or (b) the Trust Property is unavailable to satisfy such obligations; but in any such instance the refusal or unavailability shall not relieve the Administrator of complying with the directions herein. The Administrator may rely on the accuracy and completeness of all statements and certifications herein in connection with the taking of all Necessary Actions.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

GSS Data Services, Inc.
December 8, 2017
Page 4

Sincerely,

NC OWNERS, LLC, as Owner
By: NC RESIDUALS OWNERS TRUST, (on behalf of itself, as Owner of certain Trusts, and as Sole Member on behalf of NC Owners, LLC)

By: VCG Securities, LLC, as its Agent

By: /s/

Name: Donald Uderitz
Title: Authorized Signatory

Pursuant to Section 3.07(e) of the Amended and Restated Trust Agreement (the "Declaration") of NC Residuals Owners Trust dated May 14, 2009, the undersigned responsible officer of VCG Securities LLC, as Agent, hereby certifies that all conditions precedent, if any, provided for in the Declaration and any applicable Transaction Document (as Defined in the Declaration) relating to the proposed action have been complied with.

By: /s/

Name: Donald Uderitz
Title: Authorized Signatory

PATHMARK ASSOCIATES, LLC

By: /s/

Name: Alberto Moris
Title: Authorized Signatory

# Schedule 1

Trusts

- The National Collegiate Master Student Loan Trust I, created pursuant to the Trust Agreement dated as of November 1, 2001

- National Collegiate Student Loan Trust 2003-1, created pursuant to the Trust Agreement dated as of December 1, 2003

- National Collegiate Student Loan Trust 2004-1, created pursuant to the Trust Agreement dated as of June 10, 2004

- National Collegiate Student Loan Trust 2004-2, created pursuant to the Trust Agreement dated as of October 28, 2004

- National Collegiate Student Loan Trust 2005-1, created pursuant to the Trust Agreement dated as of February 23, 2005

- National Collegiate Student Loan Trust 2005-2, created pursuant to the Trust Agreement dated as of June 9, 2005

- National Collegiate Student Loan Trust 2005-3, created pursuant to the Trust Agreement dated as of October 12, 2005

- National Collegiate Student Loan Trust 2006-1, created pursuant to the Trust Agreement dated as of March 9, 2006

- National Collegiate Student Loan Trust 2006-2, created pursuant to the Trust Agreement dated as of June 8, 2006

- National Collegiate Student Loan Trust 2006-3, created pursuant to the Trust Agreement dated as of September 28, 2006

- National Collegiate Student Loan Trust 2006-4, created pursuant to the Trust Agreement dated as of December 7, 2006

- National Collegiate Student Loan Trust 2007-1, created pursuant to the Trust Agreement dated as of March 8, 2007

- National Collegiate Student Loan Trust 2007-2, created pursuant to the Trust Agreement dated as of June 14, 2007

- National Collegiate Student Loan Trust 2007-3, created pursuant to the Trust Agreement dated as of September 5, 2007

- National Collegiate Student Loan Trust 2007-4, created pursuant to the Trust Agreement dated as of September 11, 2007