# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW
500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

September 28, 2018

By CM/ECF
The Honorable Maryellen Noreika
United States District Judge
United States Courthouse
844 N. King Street
Wilmington, DE 19801

      Re:    *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust*, No. 17-cv-01323-MN (D. Del.)

Dear Judge Noreika:

    We, along with Kasowitz Benson Torres LLP, represent the group of Objecting Noteholders—holders of secured notes issued by the Trusts ("Notes") with a face amount of more than $1.4 billion—that moved to intervene in the above action for the limited purpose of objecting to the Proposed Consent Judgment filed on September 18, 2017 (the "PCJ"). We write in response to the Court's September 21, 2018 order requesting letters addressing "what effect, if any, the subject matter of August 3, 2018 letter has on the motions to intervene."

    The Objecting Noteholders moved to intervene because the PCJ, if implemented, would irreparably damage Noteholders and eviscerate Noteholder rights under the contracts governing the Trusts, including rights distinct from and independent of the rights of the Indenture Trustee. *See* Dkt. #11, 67. Because the McCarter & English firm that formerly purported to represent the Trusts did not oppose intervention by the Objecting Noteholders, their withdrawal as counsel is of no consequence to our pending motion. Nonetheless, the August 3, 2018 letter elucidates why the Bureau's sole argument for opposing intervention by the Objecting Noteholders—that the Indenture Trustee adequately represents the Objecting Noteholders—is meritless.

    The August 3 Letter—as with the PCJ itself—rests on a fundamental misconception regarding the nature and administration of the Trusts. For so long as the Notes held by the Objecting Noteholders are outstanding, the Trusts previously granted—in separate Indentures governing each of the Trusts ("Indentures")—all of the Trusts' right, title and interest in all of the Trusts' assets and claims to an Indenture Trustee for the benefit of Noteholders. While the August 3 Letter is therefore correct that the legal fees sought from the Trusts are not "money belonging to the Owner Trustee or the Administrator or the Indenture Trustee," the August 3 Letter is wrong that this is "money belonging to the Trusts." Letter at 2.

    To the contrary, the Noteholders—not the Trusts or the Indenture Trustee—are the beneficial owners of the many millions in attorneys' fees that Chaitman seeks from the Trusts. If

{01368604;v1 }

the Trusts' assets are used to pay legal fees, the Noteholders alone bear the loss. To the extent the August 3 Letter seeks to modify the lien of the Indentures to pay Chaitman's legal fees, the consent of both the Indenture Trustee <u>and</u> the Noteholders is required. Accordingly, the August 3 Letter exemplifies why the Indenture Trustee does not adequately represent the separate and independent interests of the Noteholders in this action.

The premise underlying the August 3 Letter—that the Trusts "need" funds to "secure legal representation" in this action—is also false. The Trusts are empty shells that may only act through authorized service providers—an Owner Trustee, an Administrator and an Indenture Trustee (each, a "Deal Party")—each of whom is already represented by counsel in this action. Each Deal Party is expressly authorized to act for the Trusts, and each Deal Party has objected to the Proposed Consent Judgment on the grounds that, among other things, McCarter & English was not authorized to execute it. To the extent the Trusts themselves genuinely needed representation in this action (and they do not), one or more of the Deal Parties could authorize it.

The only party unrepresented in the action due to the withdrawal of the McCarter & English firm—and the only party advocating that the Trusts execute the PCJ—is the investment fund VCG Securities, LLC, holder of the Trusts' out-of-the-money equity interests ("VCG"). It was VCG who directed McCarter & English to execute the PCJ—which would saddle Noteholders with tens of millions in losses while placing VCG in control of the Trusts' assets—after the Owner Trustee refused to follow VCG's improper direction to execute it. *See* Dkt. #31 ¶ 5 ("WTC does not believe that the Proposed Consent Judgment has been validly executed"). Whatever limited rights VCG may have to direct the Owner Trustee to act for the Trusts, VCG can neither bypass the Owner Trustee nor direct the Trusts to compromise rights and assets <u>that do not belong to the Trusts</u> because they have been granted to an Indenture Trustee for the benefit of the Noteholders.

The Indentures govern payments from the Trusts and include no provisions for reimbursing VCG's costs and expenses. If VCG wishes to defend the PCJ executed at its direction wrongfully—and for its own benefit—notwithstanding the Owner Trustee's objection, VCG can and should secure its own legal representation at its own cost. In other words, the "interim solution" to the issue presented in the August 3 Letter is that VCG pay its own lawyers to represent its own interests, just as other interested parties—*e.g.,* the Objecting Noteholders and the Note Insurer—are doing already.

Respectfully submitted,

*/s/Andrew D. Cordo*

Andrew D. Cordo (#4534)