IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) C.A. No. 17-1323 (MN)<br>) |
| THE NATIONAL COLLEGIATE MASTER STUDENT TRUST, et al., | )<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM OPINION

Carolyn I. Hahn, Colin T. Reardon, Gabriel S.H. Hopkins, Consumer Financial Protection Bureau, Washington, DC – Attorneys for Plaintiff

Defendants, The National Collegiate Master Student Trusts, currently unrepresented by counsel

Kurt M. Heyman, Melissa N. Brochwicz Donimirski, Heyman Enerio Gattuso & Hirzel LLP, Wilmington, DE; Erik W. Haas, Peter W. Tomlinson, Patterson Belknap Webb & Tyler LLP, New York, NY – Attorneys for Ambac Assurance Corporation

Jamie L. Edmonson, Venable LLP, Wilmington, DE, Allyson B. Baker, Meredith L. Boylan, Sameer P. Sheikh, Katherine M. Wright, Venable LLP, Washington, DC – Attorneys for Transworld Systems Inc.

Andrew D. Cordo, Ashby & Geddes, PA, Wilmington, DE; Michael Hanin, Uri Itkin, Kasowitz Benson Torres LLP, New York, NY – Attorneys for Objecting Noteholders

Rebecca L. Butcher, Landis Rath & Cobb LLP, Wilmington, DE; John P. Doherty, William Hao, Alston & Bird LLP, New York, NY – Attorneys for GSS Data Services, Inc.

Stacey A. Scrivani, Stevens & Lee, P.C., Wilmington, DE – Attorneys for The Pennsylvania Higher Education Assistance Agency d/b/a American Education Services

Stephen B. Brauerman, Sara E. Bussiere, Bayard, P.A., Wilmington, DE – Attorneys for Wilmington Trust Company

John W. Shaw, David M. Fry, Shaw Keller LLP, Wilmington, DE; Stephen H. Meyer, Sullivan & Cromwell, LLP, Washington, DC – Attorneys for U.S. Bank National Association in its capacity as Successor Special Servicer

John W. Shaw, David M. Fry, Shaw Keller LLP, Wilmington, DE; Matthew A. Martel, Keith M. Kollmeyer, Jones Day, Boston, MA – Attorneys for U.S. Bank in its capacity as Indenture Trustee

October 19, 2018
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court are eight motions to intervene in the current litigation between the Consumer Financial Protection Bureau ("CFPB") and fifteen Delaware statutory trusts, called the National Collegiate Student Loan Trusts (collectively "the Trusts"). The motions have been filed by Ambac Assurance Corporation ("Ambac") (D.I. 4); Transworld Systems Inc. ("TSI") (D.I. 9); Objecting Noteholders ("Noteholders") (D.I. 11); GSS Data Services, Inc. ("GSS") (D.I. 12); the Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("PHEAA") (D.I. 20); Wilmington Trust Company ("WTC") (D.I. 31); U.S. Bank National Association ("U.S. Bank") in its capacity as Successor Special Servicer (D.I. 33); and U.S. Bank in its capacity as Indenture Trustee (D.I. 35). For the reasons discussed below, the Court grants each of the motions to intervene and places no limitation on the intervenors' participation in this litigation.

## I. BACKGROUND

The Trusts were created between 2001 and 2007 pursuant to the Delaware Statutory Trust Act, 12 Del. Code § 3801, *et. seq.*, to acquire private student loans, collect payments from borrowers, and distribute gains to the holders of notes. (D.I. 54 at 4). The Trusts have no employees or internal management and rely on certain trust-related agreements to provide their operating structure. These agreements include trust agreements, administration agreements, servicing agreements, and indentures (collectively "Trust Related Agreements") and provide a structure that includes an Owner Trustee, Administrator, Indenture Trustee, Primary Servicer, Special Servicer, and Sub-servicers. (D.I. 54, 4-5).

WTC is the Owner Trustee of the Trusts. (D.I. 21 at 1). In this role, WTC "acts pursuant to the authority granted to it under Trust Related Agreements and can be directed by the equity owners of the Trust or the Administrator." (*Id.* at 2). Should a conflict arise between a directive

1

by the equity owners and the terms of the Trust Related Agreements, the Trust Related Agreements control. (*Id.*).

GSS is the Administrator of the Trusts and is responsible for the administrative functions set forth in the Trust Related Agreements. (D.I. 12 at 1-2).

U.S. Bank serves as both the Indenture Trustee and Special Servicer. As Indenture Trustee, U.S. Bank is pledged all assets of the Trusts including, but not limited to, "the underlying student loans held by the Trusts, the collections from such loans, and the contractual agreements governing the Trusts' activities, including the servicing related agreements." (D.I. 36 at 4). As Special Servicer, U.S. Bank's role is to engage Sub-servicers. (D.I. 24 at 6).

PHEAA is the Primary Servicer for the Trusts and responsible for "customer service and correspondence, payment posting, and credit reporting duties" relating to student loans that are current in making payments or are no more than 30 days delinquent. (D.I. 20 at 2-3). PHEAA does not, however, file debt collection lawsuits against student loans on behalf of the Trusts. (*Id.*)

TSI is one of the Trusts' Sub-servicers and is responsible for the collection of delinquent debts and oversight of collection lawsuits against borrowers. (D.I. 54 at 5).

The Noteholders are a group of entities that collectively own approximately $1.4 billion in notes issued by the Trusts. (D.I. 11 at 1).

Lastly, Ambac is an insurance company that "has provided financial guarantee insurance with respect to securities in nine of the fifteen trusts." (D.I. 4 at 5). At times, Ambac is required to "pay policy beneficiaries the full among of unpaid interest" as well as "unpaid principal at final maturity," which had accounted for payments of more than $350 million as of 2017. (*Id.*)

On September 18, 2017, following an investigation, the CFPB brought this action against the Trusts "to obtain permanent injunctive relief, restitution, refunds, disgorgement, damages, civil

money penalties, and other appropriate relief for Defendants' violations of Federal consumer financial law in connection with Defendants' servicing and collection of private student loan debt." (D.I. 1 at 2). Despite alleging that the violations were the product of actions taken by Defendants' Sub-servicers and their agents and broadly blaming "Defendants' Servicers" as those at fault, the CFPB named only the Trusts as Defendants. (*Id.* at 2-6). The CFPB defined "Defendants' Servicers" as "any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of the Trusts with respect to the servicing and collection of the student loans owned by the Trusts . . . ." (*Id.*).

On the same day it filed the Complaint, the CFPB filed a motion for approval of a Proposed Consent Judgment ("PCJ") creating obligations for the Trusts and their servicers. (D.I. 3-1). The PCJ was signed by the CFPB and attorneys for the McCarter & English law firm, purportedly on behalf of the Trusts. (*Id.*). Provisions of the PCJ include: the creation of a "Board" made up of a majority of the beneficial interests of each Trust and provides it oversight power with respect to all submissions and actions required by the Order, (*Id.* at 23); a requirement that the Trusts undertake an audit of all loans and create a compliance plan to be submitted to the CFPB Enforcement Director for review, (*Id.* at 15-23); and a requirement that the Trusts pay a fine, suspend certain collection activities, and redirect all payments to an escrow account controlled by Defendants. (*Id.* at 14, 24).

Running concurrently with this litigation are a number of state-court actions relating to whether the Trusts' equity owners could direct the WTC to sign the PCJ, whether the McCarter & English law firm had authority to act on behalf of the Trusts when it signed the PCJ, and whether McCarter & English is entitled to payment from Trust funds. *See e.g. The National Collegiate Student Loan Master Trust, et al. v. Pennsylvania Higher Education Assistance Agency D/B/A*

3

*American Educational Services*, No. 12111-VCS (Del. Ch.); *NCSLT v. PHEAA*, C.A. No. 12111-VCS (Del. Ch.); *NCSLT, et al., v. U.S. Bank National Association, et al.*, C.A. No. 2018-0167-VCS (Del. Ch.).

Movants filed their applications for intervention between September 20, 2017 and October 10, 2017. In response to the motions, the CFPB filed an omnibus opposition to five of the motions to intervene but did "not oppose the motions to intervene filed by Ambac, the insurer for some of noteholders as well as an investor, and U.S. Bank in its capacity as indenture Trustee and as Successor Special Servicer." (D.I. 54). The Trusts do not oppose the motions to intervene. (D.I. 55). On July 10, 2018, the Trusts' counsel of record, McCarter & English moved to withdraw, (D.I. 79). That motion was granted by the Court, (D.I. 80) and the Trusts remain unrepresented in this matter.

## II. LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure provides that a court must permit a non-party to intervene as of right where that nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). The Third Circuit has "interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citing *Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995); *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 161-62 (3d Cir. 1995); *United States*

*v. Alcan Alum., Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994); *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). The burden to establish a right to intervene falls squarely on the movant. *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982).

Alternatively, if a court does not find intervention proper as of right under Rule 24(a), Rule 24(b) provides the court discretion to permit intervention to any party that "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. Rule 24(b)(1)(B), and where such an intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. Rule 24(b)(3).

III. **DISCUSSION**

    A. **The Parties Do Not Oppose the Motions to Intervene Filed By Ambac, U.S. Bank as Indenture Trustee, and U.S. Bank as Successor Special Servicer.**

The CFPB and the Trusts do not oppose the motions of Ambac (D.I. 4), U.S. Bank in its capacity as Successor Special Servicer (D.I. 33), and U.S. Bank in its capacity as Indenture Trustee (D.I. 35) to intervene in this action. In the absence of opposition, the Court will grant the motions of these entities to intervene.

    B. **The Remaining Entities, TSI, WTC, GSS, PHEAA, and Noteholders, Have A Right to Intervene Pursuant to Rule 24(a)(2).**

        1. *Movants motions for intervention were timely.*

Each of the remaining five movants ("Movants") has established that its application to intervene was timely.[1] In determining whether an application is timely, the Court must consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; [and] (3) the reason for the delay." *Mountain Top Condo.*, 72 F.3d at 369. Here, the Complaint and motion for

---

[1] The CFPB opposes the remaining motions to intervene, but it has not asserted that the motions are untimely.

approval of the PCJ were filed on September 18, 2017. (D.I. 1, D.I. 3). Each of the motions to intervene was submitted within thirty (30) days thereafter and before any additional substantive filings or actions in the case. The motions were filed at the earliest stages of this litigation. There was no delay. The Court concludes that the Movants have established the first element of the *Kleissler* test.

### 2. *Movants each have a sufficient interest in the litigation, which may be affected or impaired by the disposition of the action.*

A potential intervenor's interest is sufficient if it "is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Mountain Top*, 72 F.3d at 972. When interests are merely economic, indefinite, remote, or attenuated, the interest is not sufficient. *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987); *also Kleissler*, 157 F.3d at 972; *Mountain Top*, 72 F.3d at 366. Non-parties do, however, have a sufficient interest in contesting the provisions of a consent order if the terms therein will impact their prior contractual obligations. *EEOC v. AT&T*, 506 F.2d 735, 739 (3d Cir. 1974).[2]

Once a potential intervenor establishes a sufficient interest, it bears the burden of establishing that that interest will be affected or impaired by disposition of the action. *Brody*, 957 F.2d at 1123. If a movant's interest will be impaired, the Court must consider "the practical consequences of the litigation and also consider any significant legal affect." *Id.* The Supreme Court has found that parties "may not impose duties or obligations on a third party, without that

---

[2] In *EEOC*, a union sought to intervene as a plaintiff to challenge a consent decree negotiated by the EEOC and AT&T, which would affect the union's contractual rights as established in a collective bargaining agreement with AT&T. *Id.* at 741. Though the Court found that intervention as a plaintiff under Rule 24(a) was not proper, it found the union would be entitled to intervention as a party defendant because the movant "has an interest in the provisions of its collective bargaining agreements . . . which may well be modified or invalidated by the . . . consent decree . . . made in its absence and, equally clearly, its continuing ability to protect and enforce those contract provisions will be impaired or impeded by the consent decree." *Id.* at 741-42.

party's agreement." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986). And in cases involving consent orders, the Third Circuit has found that "a consent decree affecting third party rights should not be entered without affording such parties an opportunity to be heard." *Util. Contractors Ass'n of New Jersey, Inc. v. Toops*, 507 F.2d 83, 86 n.2 (3d Cir. 1974).

Here, each of the Movants has contractual obligations related to the Trusts that would be impacted should this Court grant the PCJ. Moreover, each Movant has shown that it has interests in the Trust Related Agreements that are likely to be modified or invalidated or otherwise impacted by the PCJ.

As noted above, WTC, the Owner Trustee, is a party to certain Trust Related Agreements that provide WTC with ministerial responsibilities as well as discretion to act when a directive presented by the equity owners is contrary to those agreements. (D.I. 31 at 2-3). WTC argues that it has interests in ensuring compliance with the Trust Related Agreements, and those interests will be impaired if it is unable to intervene, because under the PCJ it will be forced to act contrary to contractual obligations. (D.I. 64 at 3-4). It argues that the PCJ provides the equity owners with the ability to act on behalf of the Trusts and engenders in the equity owners the authority to oversee and control compliance with the PCJ. This, WTC asserts, would impair its own contractual obligations that require WTC to prevent the Trusts from taking actions in violation of the Trust Related Agreements by the equity owners. (*Id.* at 5-6).

GSS, as the Administrator, is party to certain Trust Related Agreements with the Trusts that govern certain functions of the Trusts' day-to-day activities. (D.I. 11 at 1-2). GSS asserts that the approval of the PCJ will create conflicting or unclear obligations for it as the PCJ conflicts with its obligations under certain Trust Related Agreements with respect to payments to,

7

collections by, and authority over the Trusts and its servicers. (*Id.* at 9-10). Specifically, GSS argues that the PCJ will prevent it "from carrying out certain of its duties [including payments to noteholders] under the Administration Agreements and other Trust Related Agreements" and take instructions from an entity contrary to its requirements under Trust Related Agreements. (D.I. 66 at 2-3). Moreover, GSS asserts that it falls under the broad definition of "Defendants' Servicer" in the PCJ and thus may improperly be forced to act or refrain from acting in accordance with the PCJ. (*Id.* at 4).

PHEAA, as the Primary Servicer for the Trusts, has obligations under Trust Related Agreements including "customer service and correspondence, payment posting, and credit reporting" duties. (D.I. 20 at 2-3). It is not responsible for collecting delinquent debts or pursuing related lawsuits. (*Id.* at 3). PHEAA asserts the PCJ would usurp its current contractual rights and responsibilities with new "massive obligations . . . that go well beyond PHEAA's duties under the Servicing Agreement." (*Id.* at 5). For example, PHEAA argues that the PCJ "imposes additional obligations that are beyond what PHEAA agreed in the Servicing Agreement," including additional extensive audits. (D.I. 65 at 2). According to PHEAA, these new obligations will cause increases in expenditures and employee time beyond what was contemplated and agreed to in the Trust Related Agreements. (*Id.* at 4).

TSI, as one of the Trusts Sub-servicers, has entered into Trust Related Agreements ("Special Sub-Servicing Agreements") with the Trusts' Special Servicer, U.S. Bank, which govern TSI's role in collections and collection lawsuits against borrowers. (D.I. 54 at 5). TSI asserts that the PCJ will interfere with its contractual obligations with the Special Servicer, U.S. Bank. (D.I. 9 at 2). Additionally, TSI has already entered a consent judgment with the CFPB and points out

that the approval of the PCJ may create conflicting obligations relating to reporting structures and compliance programs.[3] (D.I. 72 at 7).

The Noteholders collectively own an aggregate of approximately $1.4 billion of notes issued by the Trusts and are subject to Indentures. (D.I. 11 at 1, 3). Pursuant to the Indentures, the Noteholders have rights to approve modifications of Indentures and to receive payments from trust principal and interest. (D.I. 67 at 2). The Noteholders assert that the PCJ would replace these rights in favor of the equity owners and thus Noteholders rights would be impacted. (*Id.* at 1-3).

Based upon the above, the Court finds that each of Movants has shown a significant interest in the litigation, in that each has shown that it is a party to certain Trust Related Agreements that will be impacted if the PCJ is approved. The Court finds that Movants have each shown that their interests are sufficiently specific and will be directly affected, and thus each has satisfied the second and third *Kleissler* factors.

### 3. *Movants interests are not adequately represented by an existing party.*

Movants have also shown that their interests in this litigation are not adequately represented by any existing party. "Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Brody*, 957 F.2d at 1123 (citation omitted); *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 349 (M.D. Pa. 2013).

---

[3] TSI also has raised an issue of statutory interpretation questioning whether the Defendant Trusts properly fall under the "covered person" definition embodied in the Consumer Financial Protection Act, a question that might require further briefing to determine the Court's jurisdiction over this matter. (*Id.* at 2).

Here, the Trusts do not claim to be representing the interest of the Movants, and do not appear to be representing those interests. The Trusts have no employees and no legal representation.[4] This raises the question whether the Trusts interests are being represented – let alone the Movant's interests.

Additionally, the CFPB appears to acknowledge that there is no adequate representation for all but one of the Movants – the Noteholders. In addressing the fourth *Kleissler* factor, the CFPB asserts "[t]he Noteholders do not and cannot credibly argue that there is any collusion between U.S. Bank and either the Bureau or the Trusts, or that U.S. Bank would not diligently oppose entry of the Proposed Consent Judgment should the Court grant its intervention motion as Indenture Trustee." (D.I. 54 at 28). No rebuttal is offered with respect to the arguments raised by the other Movants.

The Noteholders, in reply, identify divergent interests from U.S. Bank that may arise during later negotiations or settlements. For example, the Noteholders assert that where the CFPB has claimed that U.S. Bank is among the parties responsible for the allegedly improper collections lawsuits filed on behalf of the Trusts, (D.I. 67 at 6), its misconduct creates a divergent interest that could prevent U.S. Bank from adequately representing the interests of the Noteholders in terms of a settlement. (*Id.*). The Court agrees that the interests of the Noteholders sufficiently diverge from U.S. Bank and that U.S. Bank cannot fully represent the Noteholders interests.

C. **Intervention is Also Appropriate Under Rule 24(b)**

Even if the Movants had failed to make the requisite showing under Rule 24(a), the Court finds that Movant's motions should be granted pursuant to Rule 24(b). Rule 24(b) provides the Court with broad discretion to allow intervention where a movant shows a "claim or defense that

---

[4] The law firm representing the Defendants, McCarter & English, has recently withdrawn, leaving the Trusts unrepresented in this litigation.

shares with the main action a common question of law or fact," and that such an intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." *See Brody*, 957 F.2d at 1115-16 (describing the decision of whether to grant intervention under 24(b) as a "highly discretionary decision").

As discussed above, each of the Movants has issues that share a common question of law or fact with the underlying action – some have been blamed for the conduct underlying the lawsuit and some have contractual obligations that will be impacted by approval of the PCJ. With regard to prejudice and delay, the Court does not find that the participation of relevant parties in protecting their contractual rights, beginning at the very inception of this litigation, would create any undue delay or prejudice on the CFPB or the Trusts. Indeed, where, as here, the Trusts are unrepresented and significant questions exist regarding the authority of prior counsel to sign the PCJ on behalf of the Trusts, and over the objection of the Owner Trustee, WTC, the Court finds that allowing the participation of parties who have an interest in the litigation to have a say would be judicially expedient.

### D. The Court Will Not Limit the Intervenors' Participation.

The CFPB asks that, if the Court grants the motions to intervene, "it should limit intervenors' participation in this lawsuit to objecting to entry of the Proposed Consent Judgment." (D.I. 54 at 29). It asserts that "it can be appropriate to limit an intervenor's participation to a 'discrete phase[] of an action' – such as the 'remedial stage' – because the intervenor 'may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole." (*Id.* at 30) (citing *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987)). The Court, however, is mindful of the Supreme Court's precedent that "*of course*, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree."

*Local No. 93*, 478 U.S. at 529 (emphasis added). Here, based on the evidence provided, and a consideration of the PCJ in light of the Trust Related Agreements, the Court finds that a later-entered consent decree may well impose obligations on the intervenors that would require their approval. Thus, the Court will not limit the intervenors' participation in this litigation.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Intervene filed by Ambac (D.I. 4), TSI (D.I. 9), the Noteholders (D.I. 11), GSS (D.I. 12), PHEAA (D.I. 20), WTC (D.I. 31), U.S. Bank (D.I. 33, 35) will be GRANTED and the Court will place no limitation on the Intervenors' right to participate in this action. An appropriate order will follow.