# HEYMAN ENERIO GATTUSO & HIRZEL LLP
PRACTICING THE ART OF LAW

300 DELAWARE AVENUE • SUITE 200 • WILMINGTON, DELAWARE 19801
TEL: (302) 472.7300 • FAX: (302) 472.7320 • WWW.HEGH.LAW

April 1, 2019

**VIA ECF**
The Honorable Maryellen Noreika
U.S. District Court for the District of Delaware

Re: *Consumer Financial Protection Bureau v. The National Collegiate Master Student Loan Trust, et al.* (the "Trusts"), No. 17-cv-01323

Dear Judge Noreika:

We write on behalf of certain Intervenors to move to compel highly relevant and non-privileged documents responsive to a third-party subpoena served on McCarter & English LLP ("McCarter"). [Ex. A] McCarter purportedly represented the defendant Trusts in matters before the CFPB and executed the proposed consent judgment ("PCJ") on behalf of the Trusts.

The subject documents were subpoenaed pursuant to this Court's order directing the adjudication of the "Threshold Issues," namely (i) whether McCarter had authority to execute the PCJ on behalf of the Trusts, and (ii) its authority aside, whether McCarter's actions were otherwise improper or in violation of the Trust Related Agreements.[1] [D.I. 99] The Intervenors seek communications among the Chaitman Group[2] and with the "Equity Owners" of the Trusts (VCG Securities LLC and its principals or affiliates ("VCG")) or the CFPB.

The existing record indicates that McCarter and other firms in the Chaitman Group acted at VCG's direction in negotiating the PCJ to the exclusion and detriment of Ambac and other parties. They (i) wrongly refused to involve in the negotiations or disclose the terms of the PCJ to certain other parties whose consent they knew was required for its execution, (ii) acted at the direction of VCG to circumvent the Owner Trustee's determination that the PCJ should not be executed, and (iii) agreed to and executed a PCJ that by its plain terms contravenes the Trust Related Agreements. Briefly: Chaitman was retained by the Owner Trustee at VCG's direction in November 2015. [Ex. B] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. C] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. D, p. 17] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Exs. E-F] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. E] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. F], ▮▮▮▮▮▮▮▮▮▮

---

[1] Capitalized terms not defined here have the meaning given to them in D.I. 98.

[2] "Chaitman Group" includes McCarter, Chaitman LLP ("Chaitman") and DiCello Levitt & Casey LLC ("DLC"), and other firms Chaitman or the Equity Owners purportedly retained on behalf of the Trusts.

███████████████████████ [Ex. E] ██████████████
█████████████ [Ex. G] ████████████████████████
██████████████████████████ [Ex. H] ███████████
████████████████ [Exs. I, J].

On June 29, 2017, McCarter presented the proposed consent order to WTC for execution, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ [Exs. K-L] WTC refused, ████████████████████████████████████████████████████████████████████████████████ [Id.; see also Ex. M, WTC Motion to Intervene [D.I. 31 ¶¶ 3, 5] As WTC explained, WTC was concerned that the order would violate the governing agreements ████████████████████████████████████████████████████████████████████████████████████████ Id. Nevertheless, VCG directed McCarter to execute the PCJ, even though as an Owner, VCG was proscribed from acting directly for the Trusts. [Ex. N, § 2.03(b)(iv)] Communications among the Chaitman Group, VCG or the CFPB will inform whether and to what extent McCarter violated its duties to the Trusts and its beneficiaries by secretly negotiating and executing the PCJ on the terms it did.

The Intervenors conferred with McCarter on January 30, 2019 and February 5, 2019 regarding the subpoena. The parties are at an impasse. [Ex. R] *First*, McCarter summarily asserts that its communications with other firms purporting to have represented the Trusts are not relevant to whether McCarter's actions were authorized or compliant with the Trust Related Agreements and the law. McCarter also contends that, except for four documents and communications with the CFPB concerning whether Ambac's or other Trusts participant's consent was required to execute the consent order or to amend the Trust Related Agreements, its communications with the CFPB—including over a year of negotiations of the PCJ—are not relevant to the Threshold Issues. To the contrary, such communications go to the core of the Threshold Issues. *See In re MiMedx Grp. Secs. Litig.*, 2015 U.S. Dist. LEXIS 125747, at *12 (D. Del. July 17, 2015) (parties may obtain discovery on "any matter that bears on, or that reasonably could bear on, any issue that is or may be in [the] case") As purported lawyers for the Trusts, any communications among the Chaitman Group opining on or concerning McCarter's purported authority to negotiate and execute the PCJ or to ████████████████████████████████████████████████████████████████████████████ [*See* Ex. U] go to the heart of the Threshold Issues. Indeed, McCarter's position on relevance is inconsistent with VCG's, as VCG has produced numerous documents regarding negotiation of the PCJ beyond the two categories McCarter has agreed to produce. [Ex. V][3] Likewise, the Chaitman Group's communications with VCG are directly relevant to whether McCarter properly acted on behalf of and in the interest of the Trusts— or wrongly acted to further the distinct and contrary interests of VCG. The communications with the CFPB (including records of oral communications) likewise will indicate what terms McCarter proposed for the PCJ and for whose benefit. [*E.g.*, Exs. O, P, Q]

---

[3] Exhibit V is an email chain VCG produced, with privilege redactions, regarding ██████████████ ████████████ McCarter possesses this document but has inexplicably withheld it in full. The email chain unquestionably is relevant, and given McCarter's unsupportable privilege claims discussed below, the document and others like it should be produced in full.

*Second*, McCarter cannot meet its burden to establish the applicability of attorney-client privilege or work product protection that belong to the Trusts. *Lemelson v. Bendix Corp.*, 104 F.R.D. 13, 16 (D. Del. 1986) (party invoking a privilege bears burden to show its applicability). Under Delaware law and the Trust Related Agreements, the Equity Owners are proscribed from acting directly for or on behalf of the Trusts,[4] so McCarter's communications with VCG cannot be covered by any privilege between McCarter and the Trusts. Rather, a small number of contractually appointed parties, including the Owner Trustee and the Administrator, are authorized to act on behalf of the Trusts.[5] Indeed, the Trusts, acting through the Owner Trustee at the direction of the Equity Owners, retained Chaitman, which in turn purportedly engaged McCarter. *See Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 320 (S.D.N.Y. 1991) (privileges do "not give an attorney the right to withhold work product from his own client"); *In re Am. Metrocomm Corp.*, 274 B.R. 641, 655 (Bankr. D. Del. 2002).

Moreover, even if McCarter could assert privilege here, the at-issue communications should be produced to direct economic beneficiaries in the transactions–the Noteholders and the Note Insurer–under the "fiduciary exception" to the attorney-client privilege. *Wal-Mart Stores v. Ind. Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264, 1278 (Del. 2004); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 383-86 (3d Cir. 2007) (applying fiduciary exception in corporate litigation). This is particularly true in view of these extraordinary circumstances: The documents produced to date show McCarter acted at VCG's direction to take actions beneficial to the Equity Owners and detrimental to the Trusts, the Noteholders, and the Note Insurer. These actions facially violated numerous covenants in the Indentures and Trust Agreements. [*E.g.*, Ex. S, NCSLT 2007-3 Indenture, § 3.05 (Trusts shall protect lien of assets in favor of Indenture Trust Estates)]; [Ex. N, Master Trust Agreement, § 2.03(b)(iv) (Trusts shall avoid appearance of conducting business of owners)]. Indeed, this Court has already observed that "significant questions exist regarding the authority of prior counsel [McCarter] to sign the PCJ on behalf of the Trusts, and over the objection of the Owner Trustee." [D.I. 95 at 11] The fiduciary exception should prevent McCarter from using the privilege of the Trusts as a shield and should require disclosure to the Noteholders and Note Insurer, the parties that have been most harmed by the actions the Equity Owners, through McCarter, have purportedly taken for the Trusts.

Finally, even if McCarter could establish that the work product doctrine applied (it cannot), that qualified protection is overcome because the Intervenors have a substantial need and cannot otherwise obtain the equivalent of these documents by other means. *See* Fed. R. Civ. P. 26(b)(3). There is no "substantial equivalent" to the demanded communications, which provide otherwise unavailable insight into the coordination among drafters of the PCJ.

For the foregoing reasons, the Court should grant the Intervenors' motion to compel.

Respectfully,

Kurt M. Heyman (# 3054)

cc:   All counsel of record (via ECF)

---

[4] *See, e.g.*, 12 Del. Code § 3806; [Ex. N, Master Trust Agreement § 2.03(b)(iv)].

[5] *See, e.g.*, 12 Del. Code § 3806; [Ex. N, Master Trust Agreement §§ 2.01, 2.03(b)(i); Ex. S, NCSLT 2007-3 Indenture § 3.05; Ex. T, NCSLT 2007-3 Administration Agreement ¶ 1(a)(i)].