## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                     Plaintiff,<br><br>      v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*,<br><br>                  Defendants. | No. 17-CV-01323 (MN) |

## LETTER TO THE HONORABLE MARYELLEN NOREIKA
## FROM ANDREW D. CORDO

Of counsel:
Uri Itkin
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1788
uitkin@kasowitz.com

ASHBY & GEDDES
Andrew D. Cordo (#4534)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel:  (302) 654-1888
acordo@ashbygeddes.com

*Attorneys for Objecting Noteholders*

Dated:  April 12, 2019

**ASHBY & GEDDES**

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

April 12, 2019

VIA ECF

The Honorable Maryellen Noreika

U.S. District Court for the District of Delaware

      Re:   *CFPB v. NCMSLT et al.*, No. 17-cv-01323-MN

Dear Judge Noreika:

We and Kasowitz Benson Torres LLP represent the group of 17 Objecting Noteholders[1] and write to address why the 1601 documents withheld by VCG on the basis of privileges belonging to the Trusts (the "At-Issue Communications") should be produced to the Objecting Noteholders. VCG and the Law Firms insist the At-Issue Communications were made for the benefit of the Trusts and are protected by privileges belonging to the Trusts. The "fiduciary exception" to privilege permits the Trusts' beneficiaries to consider such communications, made purportedly on their behalf. As the primary (if not exclusive) beneficiaries of the Trusts and the intended beneficiaries of the Law Firms' advice, the Objecting Noteholders are entitled to inspect the At-Issue Communications under established Delaware law.[2]

**<u>The Objecting Noteholders Are the Trusts' Beneficiaries</u>.** The Noteholders are the intended, primary and effectively only beneficiaries of the Trusts. The Trusts' intended beneficiaries are the Noteholders. *See*, *e.g.*, Trust Agreement ("TA"), D.I. 31-1, § 2.03 ("<u>Purposes and Powers</u>. (a) The purpose of the Trust is . . . (i) To acquire a pool of Student Loans, to execute the Indenture and to issue the Notes.").[3] Leaving no doubt as to that intention, the Trust Agreements state expressly that the Noteholders are beneficiaries of the Trusts so long as the Notes are outstanding. *See* TA § 14.04 ("for so long as any of the Notes . . . are outstanding . . . the Noteholders . . . are third-party beneficiaries [of the Trust Agreements]"). The Noteholders are also the direct economic beneficiaries of the Trusts, which have granted their "right, title and interest" in <u>all</u> of their assets (the "Indenture Trust Estate") to an Indenture Trustee for the benefit of Noteholders. *See* Indenture, D.I. 67-1, at 1-2, Granting Clause. Unless and until all Noteholders are repaid in full, owners of so-called Beneficial Interests in the Trusts (*i.e.*, VCG) are entitled to

---

[1]     Capitalized terms not defined here have the meaning given to them in D.I. 141.

[2]     The Objecting Noteholders would treat the At-Issue Communications as confidential under the Protective Order and agree to preserve the Trusts' privilege over the documents.

[3]     The Noteholders are paradigmatic intended beneficiaries under Delaware law. *See*, *e.g.*, *Arrowood Indem. Co. v. Hartford Fire Insu. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011) ("For a party to be deemed a third-party beneficiary to a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a preexisting obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract."); *see also Capano v. Capano*, 2014 WL 2964071, at *13 (Del. Ch. June 30, 2014) (in determining whether party is an intended beneficiary of a Delaware statutory trust, courts "look to the text of the business trust agreement and respect its plain language").

The Honorable Maryellen Noreika
April 12, 2019
Page 2

nothing from the Trusts or the Indenture Trust Estate. *See* Indenture § 8.04(b). Given that the Owners have no reasonable expectation of payment from the Trusts, it is dubious whether they remain beneficiaries at all.

**Under the Fiduciary Exception, Privileged Communications On Behalf of a Trust Must Be Produced to a Trust's Beneficiaries.** The fiduciary exception to attorney-client privilege is rooted in centuries of trust law and stems from the principle that the benefit of advice regarding trust administration using "both the authority and funds of the trust" runs to a trust's beneficiaries. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 232 (3d Cir. 2007); *see also Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del. Ch. 1976). The exception's most "straight-forward" application is to trust beneficiaries. *Wachtel*, 482 F.3d at 232. As VCG conceded in its April 2 letter, the principle that "it is the beneficiary, rather than the trustee, who is the client component of the attorney-client privilege" is the law in this Circuit. *See* D.I. 147, at 2 (citing *Wachtel*).

To determine whether a trust lawyer's "real" clients are the trust's representatives or its beneficiaries, courts consider whether "(1) the content of the advice was for the benefit of the trust, not the trustees; (2) the advice was paid for with assets of the trust, not the trustees; and (3) no adversarial proceeding against the trustees was pending, meaning that the trustees had no need to seek personal legal advice." *Wachtel*, 482 F.3d at 232; *see also Mennen v. Wilmington Tr. Co.*, 2013 WL 4083852, at *4 (Del. Ch. July 25, 2013) (identifying factors, citing *Riggs* and *Wachtel*).

These factors make plain that the Trusts' beneficiaries – *i.e.*, the Noteholders – were the Law Firms' real clients. *First*, both VCG and the Law Firms insist that the At-Issue Communications were made for the benefit of the Trusts and pursuant to an engagement for the Trusts. *See, e.g.*, D.I. 141-1 at 2 ("WTC confirms its retention of Chaitman to represent the Trusts"); Ex. 1 (McCarter retained to represent the Trusts); D.I. 141-1 at 17 (DLC retained to represent the Trusts). *Second*, the Law Firms have either been paid from the Trusts or sought payment from the Trusts for the legal advice reflected in the At-Issue Communications. Further – and crucially – the payments contemplated by the PCJ negotiated and executed by the Law Firms – *i.e.*, disgorgement, civil penalties and the costs of compliance – would be borne by the Noteholders. *Third*, both VCG and the Law Firms insist that the At-Issue Communications reflect communications and advice for the benefit of the Trusts, not "personal legal advice" sought by VCG. As the intended beneficiaries of the Law Firms' advice, the Objecting Noteholders are entitled through the fiduciary exception to consider that advice, and to consider what was done in response to that advice "on their behalf." *Riggs*, 355 A.2d at 716.

That the At-Issue Communications involve VCG and not the Owner Trustee is a distinction that makes no difference. VCG contends (D.I. 147) that it acted as a "representative" of the Trusts, on behalf of the Trusts, and pursuant to authority derived from an engagement letter executed by the Owner Trustee. VCG concedes that "the Owner Trustee is also party to the privilege here," and the Court has ordered the At-Issue Communications – which VCG had "withheld for asserting the Trust privilege" – produced to the Owner Trustee. *See* April 4, 2019 Conference Tr. at 33-34, 40 (excerpted and attached as Ex. 2). Under the fiduciary exception and "real" client analysis applied by *Riggs*, *Wachtel*, and their progeny, documents withheld by VCG on the grounds of the Trusts' privilege must be provided to the Noteholders. That the Owner Trustee has no objection to the Noteholders reviewing the Trusts' privileged documents is both consistent with the purpose of the fiduciary exception and confirms why that exception does, and should, apply here.

The Honorable Maryellen Noreika
April 12, 2019
Page 3

VCG's contention (D.I. 147 at 3) that it holds Beneficial Interests in the Trusts is irrelevant to the "real client" analysis. The Noteholders are the intended, primary and (at present) only beneficiaries of the Trusts. *See* TA §§ 2.03, 14.04; Indenture at 1-2, Granting Clause. Contrary to VCG's false assertion, the fiduciary exception applies to work product, especially where trust beneficiaries seek work product generated for the Trusts.[4] In short, absent a repudiation of its position to date that the Law Firms represented the Trusts – and a concession that the Law Firms represented VCG personally – VCG has no rejoinder.

It speaks volumes that VCG – the Trusts' purported "representative" – objects to sharing legal advice that it supposedly procured for the Trusts with the Trusts' beneficiaries. Despite VCG's current attempt to shield this advice, the record reflects VCG's understanding that its communications with McCarter might ultimately be shared with others. *See, e.g.*, Ex. 3 (May 5, 2017 email chain between VCG and McCarter, concluding with VCG asking McCarter "for a quick call" on an "important" PCJ-related matter because "I don't want to put it on email!").

**The Objecting Noteholders Need Not Show Good Cause, But Have It.** The "straight-forward" application of the fiduciary exception in the trust context means that trust beneficiaries need not demonstrate "good cause" to obtain legal advice procured for their benefit. *See Wachtel*, 482 F.3d at 232; *Solis*, 644 F.3d at 228 ("common-law principles governing required disclosure of trustee communications do not impose a 'good cause' limitation on the beneficiary's access to this type of information") (quoting *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 326 (S.D.N.Y. 2011). The good cause test is nonetheless easily met here: (i) this is no fishing expedition: the At-Issue Communications are a discrete set of communications, identified by an agreed-upon search protocol, concerning the Law Firms' representation of the Trusts in connection with the CFPB investigation and the PCJ (ii) there is more than a colorable claim here: the Court has determined that "significant questions exist regarding the authority of prior counsel [McCarter] to sign the PCJ on behalf of he Trusts, and over the objection of the Owner Trustee" (D.I. 95 at 11); (iii) the At-Issue Communications are not available from other sources; (iv) the Objecting Noteholders hold billions in Notes, are (and will be) directly impacted by the legal advice in question, and are being asked to pay the Trusts' counsel and the PCJ-related costs; and (v) there are no trade secrets at stake. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970).

For the foregoing reasons, we respectfully request the Court order VCG to produce the At-Issue Communications to the Objecting Noteholders.

---

[4]   *See Riggs*, 355 A.2d at 716 ("[t]o permit the work product privilege to shield [the challenged legal advice] from the beneficiaries would contravene the policy of full disclosure which is essential in the trustee-beneficiary relationship."); *Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (fiduciary exception "similarly applies to the work product doctrine" in trust and ERISA context) (collecting cases). The "substantial need" requirement is met as a matter of course by trust beneficiaries because "the beneficiaries are entitled to know what the trustees did, that is, what legal opinion was sought on their behalf and what was done in light of that opinion on their behalf." *Riggs*, 355 A.2d at 716. VCG's reliance on *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, at *11 (Del. Ch. Nov. 13, 2002), for the proposition that the "fiduciary exception does not apply to work product" (D.I. 147 at 3) is bizarre given that this opinion (in a shareholder books and records action) does not address the fiduciary exception at all.

The Honorable Maryellen Noreika
April 12, 2019
Page 4

Respectfully submitted,

/s/ Andrew D. Cordo (#4543)

Of Counsel:
Michael A. Hanin
Uri Itkin

cc: All counsel of record (by ECF)