IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1323 (MN) |
| THE NATIONAL COLLEGIATE MASTER STUDENT TRUST, et al., | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

On April 4, 2019, the Court held a discovery teleconference, during which the Responding Non-Parties[1] and McCarter & English, LLP ("McCarter") argued that 1601 documents withheld ("the Withheld Documents") from intervenors on the basis of attorney-client privilege belonging to the Trusts and work product immunity should be protected from discovery. At the conclusion of that teleconference, and absent objection from the Responding Non-Parties and McCarter, the Court ordered production of the Withheld Documents to Owner-Trustee Wilmington Trust Corporation. The Court also asked for copies of the documents to be submitted *in camera* and invited other intervenors to submit supplemental briefing relating to the fiduciary exception to the attorney-client privilege and the work-product doctrine. The Court received submissions from: the Objecting Noteholders ("Noteholders"); Ambac Assurance Corporation ("Ambac"); U.S. Bank National Association ("U.S. Bank"), in its capacity as Indenture Trustee; and, GSS Data Services, Inc. ("GSS"). (D.I. 162, 163, 164, & 165). Three of those submissions did not dispute that the

---

[1] The Responding Non-Parties are: VCG Securities, LLC; VCG Owners Trust, NC Owners LLC, NC Residual Owners Trust, Pathmark Associates, LLC, and CeCe & Co. Ltd., LCC. (D.I. 147)

documents are privileged but each argued that the intervenor submitting the document is entitled to the documents under the fiduciary exception.[2] Responding Non-Parties and McCarter disagree. (D.I. 176, 177). For the reasons discussed below, the Court finds that certain of the Withheld Documents should be produced to the Noteholders and Ambac, but should not be produced to U.S. Bank.

The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege, however, is not absolute, and courts have found that it "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996) (internal citations and quotation marks omitted); *United States v. McFadden & Co. P'ship*, No. 88-2285, 1989 WL 47285, at *2 (W.D. Pa. Jan. 5, 1989) (quoting *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984)). One such limit exists in the context of fiduciary relationships. "Rooted in the common law of trusts, the fiduciary exception is based on the rationale that the benefit of any legal advice obtained by a trustee regarding matters of trust administration runs to the beneficiaries." *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011). Consequently, "trustees . . . cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege." *Id.* at 226-27 (quoting *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del. Ch. 1976)).

---

[2] GSS stated that it "takes no position at this point on the question of whether the 'fiduciary exception' applies to the Administrator with respect to the Withheld Documents, or whether the Administrator has any other basis to obtain the Withheld Documents" and thus the Court will accept, at this time, that the documents may be withheld from GSS. (D.I. 165).

2

The questions currently before the Court are (1) whether the intervenors seeking disclosure are properly "beneficiaries" of the Defendant Trusts, and, if so, (2) whether they fall under the fiduciary exception to attorney-client privilege.

Under Delaware law, "[f]or a party to be deemed a third-party beneficiary to a contract, (i) the contracting parties must have been intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a preexisting obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering the contract." *Arrowood Indem. Co. v. Hartford Fire Insu. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011). One of the trust agreements submitted to the Court by Responding Non-Parties[3] states that "[t]he purpose of the Trust is . . . [t]o acquire a pool of Student Loans, to execute the Indenture and to issue the Notes." (D.I. 177, Ex. 1 § 2.03(a)(i)). That agreement, moreover, states "that for so long as any of the Notes are outstanding or any amounts are owed to the Indenture Trustee or the Note Issuer, the Noteholders and the Note Issuer are third party beneficiaries hereof." (*Id.* § 14.04). Additionally, the "Indenture" submitted by Responding Non-Parties informs that each Trust "hereby Grants to the Indenture Trustee . . . all the Issuer's right, title and interest in and to" all of the Trusts' assets for the benefit of the Noteholders and Ambac. (D.I. 177, Ex. 2 at 1-2). In light of the language in the documents governing the trusts and indentures, and the fact that the notes remain outstanding, the Court finds that the Responding Non-Parties' argument that the Responding Non-Parties are the sole beneficiary is unavailing. To the contrary, the Noteholders and Ambac are third-party beneficiaries of the Trusts. The Court,

---

[3] The Court understands this agreement to be representative of the other agreements relevant to the action.

3

however, does not find that U.S. Bank, as the Indenture Trustee, is a beneficiary of these Trusts, and U.S. Bank makes no argument that this is the case.[4]

As beneficiaries of the Trusts, the Court finds that the Noteholders and Ambac are entitled to privileged communications and work product on behalf of the Trusts under the fiduciary exception. In *Riggs National Bank v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976) – which the United States Supreme Court has called the "leading American case on the fiduciary exception," *see United States v. Jicarilla Apache Nation*, 564 U.S. 162, 171 (2011) – the Delaware Court of Chancery held that beneficiaries of a trust are entitled to otherwise privileged materials prepared for representatives of a trust in connection with matters of trust administration, and for which the trustees had paid using trust assets. In determining whether the beneficiaries should have access to privileged documents, the Court examined who stood as counsel's "real clients." *Riggs*, 355 A.2d at 712-13. The "real client" analysis requires the Court to determine whether (i) the content of the advice was for the benefit of the trust, (ii) the advice was paid for with assets of the trust, and (iii) no adversarial proceeding against trustees or trust representatives was pending, requiring their own personal legal advice. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 232 (3d Cir. 2007) (citing *Riggs*, 355 A.2d at 711). Here, Responding Non-Parties themselves allege that the legal advice provided by Chaitman and McCarter was for the benefit of the Trusts, not the owners themselves. (D.I. 147 at 1-2 ("The Trusts retained Chaitman, and through Chaitman, McCarter and other law firms.")). Moreover, the record shows that the legal advice was paid for by – or payment has been sought from – the Trusts themselves, not Responding Non-Parties. (*See e.g.*, D.I. 79 (McCarter Motion to Withdraw as Counsel) ¶ 2-3 ("Defendants retained [McCarter] to

---

[4] Because U.S. Bank is not a beneficiary, Responding Non-Parties and McCarter may properly withhold documents from U.S. Bank on the basis of a privilege belonging to the Trusts.

represent Defendants in connection with the underlying investigation" and "Defendants apparently have been unable to pay the substantial legal fees owed to [McCarter], despite agreement from Defendants that such legal fees were incurred and are owed to Counsel."). Thus, the Court finds that the "real client" of Chaitman, McCarter, and any other firms engaged in the negotiation of the Proposed Consent Judgment, was the Trusts themselves and therefore the beneficiaries thereof.

Though McCarter and the Responding Non-Parties argue that the Noteholders and Ambac have not met the "good cause" criteria outlined in a Fifth Circuit case, that case, unlike the instant one, addressed a corporation-shareholder situation. *See Garner v. Wolfinbarger*, 430 F.3d 1093, 1101-02 (5th Cir. 1970).

The Court finds that the Noteholders and Ambac, as third-party beneficiaries of the Trusts, are entitled to those materials withheld from production on the basis of privileges belonging to the Trusts. Because, however, the Court's November 29, 2018 order bifurcated consideration of the Proposed Consent Judgment ("PCJ"), and limited phase one thereof to the issues of "[w]hether the law firm of McCarter & English had the authority to execute the Proposed Consent Judgment on behalf of the Defendants under the Trust Related Agreements and applicable law" and "[w]hether – authority aside – it was improper or (in violation of the Trust Related Agreements) for McCarter & English to enter into the [PCJ]" (D.I. 99), the Court will limit the production of documents to those that preceded the filing of this action and the PCJ on September 18, 2017.

THEREFORE, IT IS HEREBY ORDERED this 17th day of May 2019 that on or before May 31, 2019, the Responding Non-Parties (as defined *supra*, n.1) and McCarter & English, LLP shall produce all Withheld Documents dated September 18, 2017 and prior.

_____
The Honorable Maryellen Noreika
United States District Judge