IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : | C.A. No. 17-1323 (MN) |
| Plaintiff, | : | |
| v. | : | |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST et al., | : | |
| Defendants. | : | |

**AMBAC ASSURANCE CORPORATION'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT AGAINST DEFENDANT TRUSTS**

Intervenor Ambac Assurance Corp. respectfully submits this opposition to Plaintiff Consumer Financial Protection Bureau's Application for Entry of Default against the Defendant Trusts, filed July 2, 2020. [Dkt. 295] The CFPB's request for entry of default against the Trusts contravenes the explicit directive and order of this Court—and CFPB's representations to secure that order, which it now disregards. The Application should be rejected out of hand.

The CFPB seeks entry of default because the Trusts are unrepresented and therefore have not yet responded to the CFPB's complaint. Yet at the court conference just two weeks ago, counsel for Ambac raised this precise concern with the Court—and this Court specifically stated that issues relating to the lack of Trust representation, including the Trusts' response to the complaint, would be deferred while the Intervenors' imminent Rule 12(b) motions are briefed:

**Counsel for Ambac:**

There is also a wrinkle in that, you know, the Trust remain . . . unrepresented in the []action and obviously we don't think that stops the covered persons motion from going forward in light of the requirement that the Court consider subject matter jurisdiction at any time, but

> we just think that's a further reason to prioritize the question of subject matter jurisdiction.
> . . .
>
> **The Court:**
>
> . . . So I'll hear from anyone else on that issue, but what I'm thinking is if I say brief the issues that you want to brief now, obviously if something else comes up during the case related to subject matter jurisdiction, you can raise it, but I would prefer that you brief everything that you're aware of now, and ***we'll deal with what the Defendants want to do when they get counsel.***

Ex. A at 6:15–8:3 (emphasis added). In direct response to that instruction, counsel for the CFPB specifically represented he *agreed* with the Court's preferred order of operations.

> **Counsel for CFPB:**
>
> I wanted to say just briefly that as you already noted, ***we agree*** with the proposal that at least you have outlined so far. We think that for efficiency sake the arguments that can be made should be made now.

*Id.* at 9:2–6.

Further, during the post-conference negotiations of the stipulation requested by the Court, the CFPB repeatedly represented to Intervenors that answers should be deferred until after the ruling on the contemplated motions to dismiss. The CFPB explained: "We expect the court to set any appropriate deadlines that ***follow ruling on the MTD***," Ex. B (emphasis added), and "it is unnecessary to include language articulating the basic power of the Court to establish appropriate deadlines," Ex. C. As the CFPB recognized, the Court's ruling that the filing of the Trusts' answer should follow the motion to dismiss was well within its inherent authority. *Katz v. Feldman*, No. 18-213 (MN), 2019 WL 266945, 2019 U.S. Dist. LEXIS at *3–4 (D. Del. Jan. 18, 2019) ("Every Court has the inherent authority to manage the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." (citation omitted)).

This record evinces a level of gamesmanship that should not be countenanced. The CFPB served the Complaint on June 11, 2020, ***then*** represented to the Court the next day that it agreed

with deferring any response from the Trusts, *then* represented to the Intervenors that it believed deadlines for responding to the complaint should set only after motions to dismiss are resolved, and *then* filed this Application seeking a default of its own making. Either the CFPB deliberately and repeatedly misrepresented its position, or it has simply reversed course notwithstanding its prior representations. Either way, as with the unauthorized Proposed Consent Judgment, the CFPB is wrongly seeking to take advantage of Trusts' unrepresented status to secure a result that will not survive an adjudication on the merits.

Indeed, the CFPB's effort to obtain a default against the Trusts for failing to appear is yet its latest improper attempt to mischaracterize the Trusts as autonomous bodies that act of their own accord—a fallacy that pervades its entire theory of the Trusts' liability in this action. As the CFPB admits in its complaint, the Trusts are paper entities "who do not have employees, and all actions relating to the administration of the Trusts . . . are carried out by" other parties. Compl. ¶ 12. Moreover, the CFPB well knows, and as the Court is aware, the Trusts have been unable to retain counsel, and the mechanism for how they may do so will be resolved by an impending decision on fully briefed Rule 12(c) motions in the Delaware Court of Chancery. In the interim, the Intervenors—the Trusts' constituents and beneficiaries—will continue to litigate this matter and capably defend the Trusts' interests as they have for three years, even without nominal representation of the Trusts. Given the continued progression of this action irrespective of Trust participation, there is no conceivable justification for entry of default here. *See Byrd v. Keene Corp.*, 104 F.R.D. 10, 11 (E.D. Pa. 1984 ("Default judgments serve as deterrents to delay in judicial proceedings" (citing 10 Wright, Miller & Kane, Federal Practice and Procedure § 2681 (agreeing that default judgment "must normally be viewed as available only when the adversary process has

been halted . . . the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights")).

In the end, the CFPB's tactic appears to be little more than a ruse to distract from the fact that Supreme Court has just called into question the constitutionality of ***all*** of the CFPB's pending enforcement matters, including this action. *See Seila Law LLC v. CFPB*, No. 19-7, 2020 WL 3492641 (U.S. June 29, 2020). But the CFPB may not avoid confronting that constitutional question—which will be raised in the imminent motions to dismiss—with its procedural ploy.

Accordingly, in view of the Court's sound reasoning for staging the procedural phases of this case—and the CFPB's explicit endorsement of that reasoning—the Court should exercise its discretion to reject the Application. *See generally Mandija v. Capano Homes, Inc.*, No. 18-393, 2018 U.S. Dist. LEXIS 124074, at *2 (D. Del. July 24, 2018) ("Entry of default is within the discretion of the trial court.") (citing *Aron v. Quest Diagnostics, Inc.*, 174 F. App'x 82, 84 (3d Cir. 2006)); *see also Draeger Med. Sys., Inc. v. My Health, Inc.*, No. 15-248, 2015 WL 4039940, 2015 U.S. Dist. LEXIS 85504, at *4–5 (D. Del. 2015) ("In general, the entry of default and default judgment is disfavored because they prevent a plaintiff's claims from being decided on the merits." (citing, *inter alia*, *Medunic v. Lederer*, 533 F.2d 891, 893–94 (3d Cir. 1976) and *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (noting that the Third Circuit "does not favor entry of defaults" and "requir[ing] doubtful cases" to be resolved "on their merits")).

OF COUNSEL:

PATTERSON BELKNAP WEBB & TYLER LLP
Erik Haas
Peter W. Tomlinson
Joshua Kipnees
George A. LoBiondo
Jared S. Buszin
Devon Hercher
Peter Shakro
1133 Avenue of the Americas
New York, NY 10036

Dated:  July 6, 2020

HEYMAN ENERIO
 GATTUSO & HIRZEL LLP

*/s/ Melissa N. Donimirski*
Kurt M. Heyman (No. 3054)
Melissa N. Donimirski (No. 4701)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
kheyman@hegh.law
mdonimirski@hegh.law

*Attorneys for Ambac Assurance Corporation*