# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Consumer Financial Protection Bureau,     )
                                         )
                 Plaintiff,         )
                                           )     C.A. No. 1:17-cv-01323-MN
                 v.                 )
                                           )
The National Collegiate Master Student     )
Loan Trust, *et al.*,                        )
                                           )
                 Defendants.      )

## PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO INTERVENOR TRANSWORLD SYSTEMS INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND INTERVENORS AMBAC ASSURANCE CORP., WILMINGTON TRUST CO., AND PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS

## Table of Contents

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................ 1

FACTS ............................................................................................................................ 2

ARGUMENT ................................................................................................................... 4

I.      Movants Lack Standing to Bring Arguments on Defendants' Behalf ................................ 4

II.     The Bureau Can Prosecute this Enforcement Action After *Seila Law v. CFPB*. ................. 5

        A.      *Seila Law* provides no basis to dismiss this enforcement action because it has
                been approved by a Director fully accountable to the President. ................................ 5

        B.      The statute of limitations does not render the Director's ratification invalid. ............ 10

III.    The Court Has Subject Matter Jurisdiction Over This Action ........................................... 13

        A.      The Complaint pleads three valid grounds for subject matter jurisdiction. ............... 13

        B.      Defendants' status as "covered persons" is an element of the Bureau's claims,
                not the Court's subject matter jurisdiction. ............................................................. 14

IV.     The Complaint Properly Alleges That Defendants Are Covered Persons and That
        They Are Liable for the Conduct of Their Servicers. ....................................................... 16

        A.      The Complaint properly alleges that the Trusts are "covered persons" .................... 17

        B.      Movants' arguments that Defendants are not "covered persons" as a matter of
                law are unpersuasive ............................................................................................. 18

                1.      Defendants acquire, service, and collect on student loans ............................ 18

                2.      The CFPA's legislative history offers no support to Movants ...................... 22

        C.      The Complaint states a claim based on an agency theory of liability ....................... 23

V.      The Bureau's Complaint Is Not Barred by the Statute of Limitations ............................... 27

        A.      The CFPA provides an actual discovery statute of limitations ................................ 28

        B.      Discovery is not apparent from the face of the Complaint ...................................... 29

VI.     CONCLUSION ............................................................................................................ 30

# Table of Authorities

**Cases**

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) ...................................................29

*AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700 (E.D. Pa. 2014) .........................20

*Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016)........................ 6, 8, 12

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)........................................................ 14, 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................16

*AT & T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ...........................25

*Badaracco v. Comm'r*, 464 U.S. 386 (1984) ...........................................................29

*Bandimere v. SEC*, 844 F.3d 1168 (10th Cir. 2016)..................................................... 8

*Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822 (3d Cir. 2011)..................................................27

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*,
522 U.S. 192 (1997)...............................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................16

*Benjamin v. V.I. Port Authority*, 684 Fed. Appx. 207 (3d Cir. 2017) ......................................... 9

*Bogart v. City of New York*, No. 13 CIV. 1017 NRB, 2015 WL 5036963
(S.D.N.Y. Aug. 26, 2015)...........................................................................................26

*British Telecomms. PLC v. IAC/InteractiveCorp.*, 356 F. Supp. 3d 405 (D. Del. 2019)..............24

*Brown v. Transworld Sys., Inc.*, No. 2:20-cv-00669-RSL, D.I. 52, Defendant Trusts'
Mem. in Supp. of Mot. to Dismiss (W.D. Wash. June 5, 2020) ............................................... 4

*Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965).................................................12

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ...............................11

*CFPB v. D & D Mktg.*, No. cv 15-9692, 2016 WL 8849698 (C.D. Cal. Nov. 17, 2016) ............. 9

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016)....................................................... 6

*CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) .....................................16

*CFPB v. Nationwide Biweekly Admin.*, No. 15-cv-02106-RS, 2017 WL 3948396
(N.D. Cal. Sept. 8, 2017) ...........................................................................................30

*CFPB v. Navient*, No. 3:17-cv-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ...................... 9

*CFPB v. NDG Fin. Corp.*, No. 15-CV-5211 (CM), 2016 WL 7188792
(S.D.N.Y. Dec. 2, 2016) ...................................................................................29

*CFPB v. RD Legal Funding*, 332 F. Supp. 3d 729 (S.D.N.Y. 2018) ................................... 10, 18

*Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114 (3d Cir. 2013) ...........25, 26

*D.J.S.-W. v. United States*, 962 F.3d 745 (3d Cir. 2020) ............................................11

*E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456 (1924)....................................29

*FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996) .........................................6, 7

*FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994) ...............................................12

*FEC v. NRA Pol. Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) ...................................... 6

*Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014) ...........................17

*Fort Bend Cty., TX v. Davis*, 139 S.Ct. 1843 (2019) .............................................15

*Foster v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00253-CV, 2018 WL
1095760 (Tex. App. Mar. 1, 2018) .................................................................19

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008)..................................21, 22

*FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927 (N.D. Cal. 2010) .................................25

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ...............................................25

*Gabelli v. SEC*, 568 U.S. 442 (2013) ............................................................29

*In re Washington Mut., Inc.*, 419 B.R. 271 (Bankr. D. Del. 2009) ...............................22

*In the Matter of Integrity Advance, LLC*, File No. 2015-CFPB-0029 (Jan. 24, 2020) ................30

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) .........................................11

*Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200 (3d Cir. 2002) ..............................12

*Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020)................................26

*Johnson v. United States*, 544 U.S. 295 (2005) ................................................11

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803 (3d Cir. 2003) ................24

*Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992) ..........................29

*Keel v. Del. State Univ. Bd. of Trs.*, No. 17-1818 (MN), 2020 WL 2839222
(D. Del. May 31, 2020) ............................................................................27

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429 (3d Cir. 2018) ............................................22

*Kwang Kim v. Wilmington Tr. Co.*, No. 17CV528-WQH-AGS, 2018 WL 4296983
(S.D. Cal. Sept. 7, 2018) .............................................................................19

*Lovette v. Nat'l Collegiate Student Loan Tr. 2004-1*, 149 So. 3d 735
(Fla. Dist. Ct. App. 2014) ...........................................................................19

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ........................................................................ 7

*Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 CIV. 7955 (GEL), 2008 WL 4378443
(S.D.N.Y. Sept. 25, 2008) ...........................................................................26

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) ....................................13

*Merriam v. Demoulas*, No. CIV.A. 11-10577-RWZ, 2013 WL 2422789
(D. Mass. June 3, 2013) ..............................................................................26

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y 2019) ......19

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 1:18-cv-01781-PGG-BCM,
D.I. 80, Defendants' Joint Mot. to Dismiss (S.D.N.Y. Jan. 18, 2019) ..................... 4

*Motley v. N.J. State Police*, 196 F.3d 160 (3d Cir. 1999) ........................................... 5

*Nat'l Collegiate Student Loan Tr. 2004-1 v. Ogunbiyi*, 123 N.E.3d 563 (Ill. App. Ct. 2018) .......19

*Nat'l Collegiate Student Loan Tr. 2007-2 v. Kuzma*, 187 So. 3d 91 (La. Ct. App. 2016) ...........19

*Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013) ............................................. 8

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) ............................20

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*,
730 F.3d 263 (3d Cir. 2013) ........................................................................30

*PHH Corporation v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016) ......................................... 9

*Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154 (2010) .................................. 14, 15, 16

*Ringling v. City of Hempstead*, 193 F. 596 (5th Cir. 1911) ....................................... 9

*Ryder v. United States*, 515 U.S. 177 (1995) ........................................................ 7

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ....................................................27

*Sebelius v. Cloer*, 569 U.S. 369 (2013) .............................................................22

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ........................................ 5, 7, 9, 10

*Stephens v. Clash*, 796 F.3d 281 (3d Cir. 2015)........................................27, 28

*Stern v. Marshall*, 564 U.S. 462 (2011) ............................................................ 9

*United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674 (E.D. Pa. 2009) ..................28

*United States v. Graham*, 305 F.3d 1094 (10th Cir. 2002) .........................................21

*United States v. Kouevi*, 698 F.3d 126 (3d Cir. 2012) ............................................22

*UPS Worldwide Forwarding, Inc. v. USPS*, 66 F.3d 621 (3d Cir. 1995) ................................... 4

*Wheeler v. Travelers Ins. Co.*, 22 F.3d 534 (3d Cir. 1994) ......................................... 4

*Zarra v. Sun Sentinel Co.*, No. 12-60542-CIV, 2012 WL 5306368 (S.D. Fla. Oct. 29, 2012) .....21

**Statutes and Regulations**

12 Del. C. § 3801(g) ........................................................................17

12 Del. C. § 3801(g)(1) .....................................................................18

12 Del. C. § 3804(a) ........................................................................19

12 U.S.C. § 5481 ............................................................................15

12 U.S.C. § 5481(14) ........................................................................13

12 U.S.C. § 5481(15)(A)(i) ............................................................... 17, 18

12 U.S.C. § 5481(15)(A)(x) ............................................................... 17, 18

12 U.S.C. § 5481(5)(B).......................................................................23

12 U.S.C. § 5481(6)(A).......................................................................17

12 U.S.C. § 5531 ............................................................................13

12 U.S.C. § 5536(a)(1)(B)....................................................................13

12 U.S.C. § 5561(5)..........................................................................28

12 U.S.C. § 5562(c)..........................................................................27

12 U.S.C. § 5564(a) ...................................................................... 14, 15

12 U.S.C. § 5564(g)(1) .......................................................................... 10, 11, 28

12 U.S.C. § 5565 .................................................................................... 5

12 U.S.C. § 5565(a)(1) ......................................................................... 13, 15

12 U.S.C. §§ 5561-5567 .......................................................................15

18 U.S.C. § 842 ....................................................................................21

28 U.S.C. § 1345 ..................................................................................13

28 U.S.C. § 1605 ..................................................................................21

29 U.S.C § 213 .....................................................................................21

**Other Authorities**

Allen S. Gutterman, Business Transactions Solutions § 71:36 (2020) .......................................19

Restatement (Third) Of Agency § 1.02 (2006) ..................................................25

Restatement (Third) Of Agency § 2.03 (2006) ..................................................25

S. Rep. No. 111-176 ..............................................................................23

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Consumer Financial Protection Bureau files this consolidated opposition to motions to dismiss filed by Intervenor Transworld Systems Inc. ("TSI"), *see* D.I. 242, and Intervenors Ambac Assurance Corp. ("Ambac"), Wilmington Trust Company ("Wilmington"), and Pennsylvania Higher Education Assistance Agency ("PHEAA"), *See* D.I. 300.[1] None of the other three Intervenors, the Owners, or Defendants have joined either motion or moved to dismiss this action.

## SUMMARY OF ARGUMENT

Movants attempt to step into the shoes of the Defendants to claim that they cannot be held accountable for the illegal activities that were conducted on their behalf and the proceeds of which inured to their benefit. Movants' motions to dismiss should be denied because Movants lack standing to pursue their arguments on Defendants' behalf, the Bureau's lawsuit is consistent with the Constitution's separation of powers, the Court has subject matter jurisdiction over this action, the Complaint properly alleges the elements of its claims, and the action is not time-barred.

First, Movants lack prudential standing to assert the legal interests of Defendants, and lack authority within the structure of Defendant Trusts to speak on their behalf.

Second, the Bureau can prosecute this enforcement action after *Seila Law v. CFPB* because it has been approved by a Director fully accountable to the President, and because the

---

[1] This brief uses the term "Movants" to refer to all four parties collectively or when responding to arguments made in both motions, and uses the term "Ambac Movants" when referring to Ambac, Wilmington, and PHEAA or when responding to arguments made only by those three entities. It refers to the respective opening briefs as "TSI Br." (D.I. 243) and "Ambac Movs. Br." (D.I. 301). Exhibits to the Ambac Movants' brief are referred to as "Ambac Movs. Ex."

Consumer Financial Protection Act's ("CFPA") statute of limitations does not render the Director's ratification invalid.

Third, the Court has subject matter jurisdiction over this action for at least three independent reasons: the CFPA expressly grants jurisdiction over violations of its provisions, the Bureau's claims arise under Federal law, and the Bureau is a Federal agency plaintiff authorized by statute to initiate this action. Each ground is apparent from the face of the Complaint.

Fourth, Defendants are "covered persons" under the CFPA, and therefore subject to the Bureau's authority. Defendants' status as "covered persons" is an element of the Bureau's claims—not, as Movants argue, an element of this Court's subject matter jurisdiction. The Complaint sufficiently alleges that Defendants are "persons" that acquire, purchase, and service loans, and collect debts, and therefore are "covered persons" under the CFPA.

Fifth, Defendants are liable for the acts and practices of their servicers. The Complaint sufficiently alleges that Defendants' servicers had actual or apparent authority from Defendants to service loans and collect debt on Defendants' behalf.

Sixth, the Complaint was timely filed. The Ambac Movants have failed to show that the allegations of the Complaint demonstrate that it is time-barred. The Ambac Movants' argument that the CFPA's date-of-discovery limitations period began to run at the very outset of the Bureau's investigation is unsupported by the law.

## FACTS

An investigation conducted by Plaintiff Consumer Financial Protection Bureau ("Bureau") into the loan servicing and debt collection practices of Defendants revealed that between November 1, 2012, and April 25, 2016, Defendants, through their servicer, filed over 90,000 debt collection lawsuits in courts across the country against borrowers whose student loans Defendants ostensibly owned. *See* D.I. 1, Compl. ¶ 24. Though filed by Defendants'

servicer, the relevant Defendant Trusts were the named plaintiffs in every collection action. In support of these lawsuits, Defendants' servicer prepared notarized affidavits swearing to facts necessary to demonstrate that Defendants owned the sued-upon debts. *See id.* ¶¶ 26-27. In numerous instances, sworn representations contained in these affidavits were false. *See id.* ¶¶ 28-39. Defendants' servicer improperly notarized nearly every affidavit it produced from November 1, 2012, to August 3, 2014. *See id.* ¶¶ 44-51. And on hundreds of occasions, Defendants' servicer filed collections actions without possessing proof of Defendants' ownership of the loans in question, or filed actions beyond the applicable statutes of limitations. *See id.* ¶¶ 52-58. This conduct represented, at a minimum, millions of dollars in harm to over two thousand consumers. *See id.* ¶¶ 52-58. Defendants' servicer engaged in this conduct for the benefit of Defendants. *See id.* ¶¶ 17-18, 24. This conduct constituted deceptive and unfair acts and practices under the CFPA. *See id.* ¶¶ 60-93.

Following its investigation, the Bureau negotiated separate settlements with Defendants and their current servicer, Intervenor TSI. The settlement with TSI was entered in a Bureau administrative proceeding on September 18, 2017. *See* D.I. 303-2, Ambac Movs. Ex. 6, Doc. 2017-CFPB-0018. The settlement with Defendants was filed with this Court along with the Complaint on September 18, 2017. *See* D.I. 3-1. Following this Court's denial of the Bureau and Defendants' joint motion to approve the settlement, *see* D.I. 273, the Bureau has proceeded to prosecute this action by serving Defendants with the Complaint, *see* D.I. 277-291. The Bureau

filed an application for entry of default against Defendants after they failed to make any responsive pleading or motion. *See* D.I. 295.[2]

## ARGUMENT

### I. Movants Lack Standing to Bring Arguments on Defendants' Behalf.

As the Bureau has argued previously, *see* D.I. 306, 312, Movants' attempts to stand in the shoes of Defendants and litigate on their behalf violate the basic principal of prudential standing that "a litigant assert his [or her] own legal interests rather than those of third parties." *UPS Worldwide Forwarding, Inc. v. USPS*, 66 F.3d 621, 626 (3d Cir. 1995) (citing *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994) (internal citations and quotations omitted)).

Movants are not defendants to this action. They and the other Intervenors are interested third parties who were granted leave to challenge the sufficiency of the settlement reached between the Bureau and the Defendant Trusts. The Intervenors' success in that effort does not convey on them (or any subset of them) the authority to defend this action. As the Court has noted multiple times, the agreements that formed the Defendant Trusts and govern their operations strictly provide for which parties may take what action on the Trusts' behalf. *See* D.I. 272, Order Denying Mot. to Approve PCJ, at 2; D.I. 95, Order Granting Mots. to Intervene, at 1-2. None of the Movants have presented any support for the notion that they are authorized to speak for Defendants or bind them to any legal position. Movants lack prudential standing and

---

[2] Defendants have not had counsel in this action since July 16, 2018. Certain Intervenors have represented to the Court that Defendants are unable to obtain new counsel. However, certain Defendants are represented by separate counsel in at least two pending proceedings brought against them by consumers. *See Brown v. Transworld Sys., Inc.*, No. 2:20-cv-00669-RSL, D.I. 52, Defendant Trusts' Mem. in Supp. of Mot. to Dismiss (W.D. Wash. June 5, 2020); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 1:18-cv-01781-PGG-BCM, D.I. 80, Defendants' Joint Mot. to Dismiss (S.D.N.Y. Jan. 18, 2019).

the Court should deny their motions on this basis alone. TSI's motion is especially problematic, as TSI is judicially estopped from making the arguments it advances.[3]

## II.     The Bureau Can Prosecute this Enforcement Action After *Seila Law v. CFPB.*

### A.     *Seila Law* provides no basis to dismiss this enforcement action because it has been approved by a Director fully accountable to the President.

The Ambac Movants contend that *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)—holding that the provision in the CFPA purporting to limit the President's authority to remove the Bureau's Director unconstitutionally impeded the President's powers under Article II of the Constitution—requires this Court to dismiss the Bureau's Complaint. It does not.

In *Seila Law*, the Court held that the unconstitutional removal provision could be severed from the rest of the statute, and that the Bureau could "continue to operate" with a Director who is now "removable by the President at will." *Id*. at 2192. After *Seila Law*, Bureau Director Kraninger, who is now fully accountable to the President, ratified the decision to file the Complaint in this case. *See* D.I. 308-1. As the Bureau explained in its notice regarding that ratification, in the wake of *Seila Law*, the Bureau's Director considered the basis for the decision to file the Complaint in this proceeding before formally ratifying that decision. *See* D.I. 308. What this means is that this matter now continues with the express approval of a Director who is fully accountable to the President.

That ratification cured any problem with the initial filing and prosecution of this case. It is well established—in the Third Circuit and other circuits—that ratification by an official

---

[3] TSI stipulated to the Bureau's subject matter jurisdiction in the September 15, 2017 Consent Order. *See* Ambac Movs. Ex. 6, at 1-2. TSI's current argument that the Bureau lacks subject matter jurisdiction under 12 U.S.C. § 5565 is plainly inconsistent with the stipulations and admissions it made in the administrative proceeding. The Court should find that TSI is judicially estopped from taking such contradictory positions. *See Motley v. N.J. State Police*, 196 F.3d 160, 163 (3d Cir. 1999).

unaffected by a constitutional problem can "cure" a constitutional problem with an agency action initially taken by an official whose authority was in doubt. *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602-606 (3d Cir. 2016) (holding that ratification by properly appointed officials "adequately addressed" the constitutional problem with action initially approved by official appointed by Board that included members appointed in violation of Article II )[4]; *see also, e.g.*, *CFPB v. Gordon*, 819 F.3d 1179, 1190-91 (9th Cir. 2016) (concluding that ratification by properly appointed official "cured any Article II deficiencies" with enforcement action's initial approval by official appointed in violation of Article II); *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 709 (D.C. Cir. 1996) (concluding that ratification of an enforcement action by properly constituted Federal Election Commission was "an adequate remedy" for action's initial approval by unconstitutionally constituted Commission).

The D.C. Circuit's decision in *FEC v. Legi-Tech* is particularly instructive. Before *Legi-Tech*, the D.C. Circuit had held in *FEC v. NRA Pol. Victory Fund* that the FEC was unconstitutionally structured because it included congressional members, and, being "aware of no theory" that would allow it to do otherwise, dismissed the judgment. 6 F.3d 821, 827-28 (D.C. Cir. 1993), *cert. dismissed*, 513 U.S. 88 (1994). Shortly after that decision, the FEC reconstituted itself without the congressional members. It then ratified its ongoing enforcement actions, including one against Legi-Tech. Legi-Tech argued, however, that it was entitled to dismissal because, when the FEC had issued its complaint, it was still unconstitutionally structured. The D.C. Circuit disagreed. Instead, it held that dismissal was "neither necessary nor appropriate"

---

[4] *Advanced Disposal* also sets out the "general requirements" for ratification in this circuit. 820 F.3d 592 at 602-603. The ratifier must have the authority to act at the time of the ratification, must have "full knowledge of the decision to be ratified," and "must make a detached and considered affirmation of the earlier decision." *Id*. at 602. The Director's declaration establishes that these standards have been met. D.I. 308-1.

because the ratification by the properly constituted FEC was an "adequate remedy" for the constitutional problem with the initial complaint. *Legi-Tech*, 75 F.3d at 708-09. Thus, it allowed the FEC to continue with its enforcement action without having "to return to square one." *Id*. at 708.

The situation here is very similar to *Legi-Tech*. When the Bureau filed its Complaint against Defendants, the for-cause removal provision still purported to limit the President's ability to remove the Bureau's Director. But after *Seila Law* invalidated the removal restriction, the Bureau's Director ratified this action. Now this action is going forward under the supervision of a Director directly responsible to the President. This approval by an official fully accountable to the President ensures that the President has the authority that Article II demands, and it cures any constitutional problem with the filing of the Complaint by an official insufficiently answerable to him. Indeed, dismissing this lawsuit after an official fully accountable to the President has approved it would undermine, not respect, the executive authority that Article II protects.

The Ambac Movants argue here that this action must be dismissed irrespective of the Director's ratification because "there must be a remedy." Ambac Movs. Br. at 13.[5] They ignore the simple fact that the ratification itself provides the remedy for the Constitutional violation: A

---

[5] As the Ambac Movants point out, *Ryder v. United States*, 515 U.S. 177 (1995), and *Lucia v. SEC*, 138 S. Ct. 2044 (2018), both hold that parties who bring successful separation-of-powers challenges are entitled to an "appropriate" remedy. *Ryder*, 515 U.S. at 182-83 ("[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."); *accord Lucia*, 138 S. Ct. at 2055. But in both cases—which involved adjudications presided over by officers who had been unconstitutionally appointed—the appropriate remedy was a "new 'hearing before a properly appointed' official." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 183, 188). Here, of course, the "hearing" is not at issue because it is being conducted by this Court, not by any officer whose appointment is subject to challenge. What Defendants call into question is the issuance of the Complaint. Thus, consistent with *Ryder* and *Lucia*, all that the Defendants are entitled to is a new decision by a properly accountable official on whether to file that Complaint. They have gotten exactly that.

Director who is indisputably accountable to the President has authorized the prosecution of this action. Because the removal provision has been severed, the Ambac Movants have received exactly what they claimed was initially lacking—a decision by an official fully accountable to the President on whether to pursue the action against them. Not surprisingly, the Ambac Movants would prefer that Defendants not be required to answer for the violations of law alleged in the Bureau's Complaint. But that hardly means that the Ambac Movants and Defendants have been denied an appropriate remedy.

The Ambac Movants do not cite any authority holding that dismissal is required in these circumstances—where the constitutional problem has been fixed and an official unaffected by the constitutional violation has confirmed the action should go forward. They cite *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016), and *Noel Canning v. NLRB*, 705 F.3d 490, 514 (D.C. Cir. 2013), *aff'd*. 573 U.S. 513 (2014). *See* Ambac Movs. Br. at 12. But neither of those cases involved enforcement proceedings that had been ratified by officials unaffected by the relevant constitutional violation. *See Bandimere*, 844 F.3d at 1188 (setting aside final order in SEC administrative adjudication because administrative law judge who had presided over the hearing had been unconstitutionally appointed); *Noel Canning*, 705 F.3d at 514 (vacating NLRB decision because members of Board had been appointed in violation of Appointments Clause). Besides, the enforcement proceedings in *Bandimere* and *Noel Canning* were not dismissed outright, but continued before constitutionally appointed decision makers on remand. *Bandimere*, Securities Act Release No. 10728, 2019 WL 6324287 (Nov. 22, 2019); *Noel Canning*, 361 NLRB No. 129, 2014 WL 7189095 (Dec. 16, 2014). And, indeed, the Third Circuit later held that actions taken by officials affected by the very Appointments Clause violation that *Noel Canning* identified were valid once ratified by properly appointed officials. *Advanced Disposal*, 820 F.3d at 606.

The Ambac Movants also cite the unpublished decision in *Benjamin v. V.I. Port Authority*, 684 Fed. Appx. 207 (3d Cir. 2017), *see* Ambac Movs. Br. at 12, which dismissed a corporation's lawsuit approved by a committee that lacked authority to act for the corporation under Virgin Islands corporate law. But that case held that an action filed by officials who lacked authority had to be dismissed only because (unlike here) it had *not* been validly ratified. *Id.* at *212.[6]

Courts which have considered the specific issue now before this Court—whether a Bureau law enforcement action could continue under the leadership of an official fully accountable to the President—have concluded that enforcement actions may proceed in such circumstances. *PHH Corporation v. CFPB*, 839 F.3d 1, 39 (D.C. Cir. 2016) (Kavanaugh, J.) (remanding for administrative enforcement proceeding to continue before agency led by Director removable at will), *rev'd on other grounds en banc*, 881 F.3d 75 (D.C. Cir. 2018); *CFPB v. Navient*, No. 3:17-cv-101, 2017 WL 3380530, at *19 (M.D. Pa. Aug. 4, 2017) (holding, before *Seila Law*, that if removal provision were found unconstitutional and severed, that "would not affect the CFPB's ability to maintain the present suit"); *CFPB v. D & D Mktg.*, No. cv 15-9692, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016) (holding that "[t]he CFPB may continue … the prosecution" of case filed by Director unconstitutionally insulated from presidential removal once its Director is "subject to direct removal").

---

[6] The Ambac Movants also rely on other decisions from far afield which on their face have no application to the Bureau Director's ratification at issue here. *See* Ambac Movs. Br. at 13-14. *Ringling v. City of Hempstead*, 193 F. 596 (5th Cir. 1911), if it has continuing force, addresses only the very different question of whether a state statute can ratify the disincorporation of a municipality after the state statute conferring authority for the municipal disincorporation has been declared unconstitutional. *See id.* at 600. And *Stern v. Marshall*, 564 U.S. 462 (2011), simply held that bankruptcy judges not subject to Article III's tenure and salary protections lacked authority to enter judgment on a common law tort claim. *See id.* at 487.

The district court's decision in *CFPB v. RD Legal Funding*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018), *appeal pending*, No. 18-3156 (2d Cir.), does not cast doubt on these other courts' unanimous conclusion. The district court in *RD Legal Funding* concluded that the unconstitutional removal restriction required a Bureau enforcement action to be dismissed even though an acting Director fully accountable to the President had ratified it. But that ratification did not cure the problem in that court's view because that court also concluded—contrary to what the Supreme Court has now held in *Seila Law*—that the provision was not severable and thus that the whole of the Bureau's statute was invalid. *Id.* at 784; *but see Seila Law*, 140 S. Ct. at 2192 (holding that removable provision is severable). The *RD Legal Funding* court did not conclude that a Bureau that was properly headed by an official removable at will could not ratify an enforcement action.

### B. The statute of limitations does not render the Director's ratification invalid.

The Ambac Movants separately argue that the ratification by the Bureau's fully accountable Director cannot be effective because the statute of limitations has now run on the CFPA violations alleged in the Complaint. *See* Ambac Movs. Br. at 14-16. This heads-I-win-tails-you-lose argument is simply wrong. The CFPA's statute of limitations provides that, "[e]xcept as otherwise permitted by law or equity, no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. 5564(g)(1). The Ambac Movants are wrong to claim that even though the Bureau attempted to prosecute its claims in a manner consistent with the CFPA, the statute of limitations in this case not only began to run, but, in fact, expired before the Bureau could ever lawfully file suit. That is, the Ambac Movants argue that the CFPA should be interpreted so that, prior to *Seila Law*, the Bureau could "discover" violations of the CFPA and begin the ticking of the statute of limitations clock, but could not file a complaint before that clock expired.

The Ambac Movants do not cite any case in which a statute of limitations was construed to run before a party (let alone the federal government) could lawfully file suit and obtain relief. *Cf. Johnson v. United States*, 544 U.S. 295, 305 (2005) (calling it "highly doubtful" that Congress intended a time limit on pursuing a claim to expire before the claim arose); *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (absent some contrary indication in statute, limitations period ordinarily does not begin to run until "the plaintiff can file suit and obtain relief"). This is not surprising. "Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims." *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (internal quotation omitted). That goal is satisfied here, and nothing in the CFPA suggests that Congress intended to time-bar suits that are filed within the statutory time limit but not approved by a Director removable at will until after the time limit passed.

Moreover, the CFPA's statute of limitations applies "[e]xcept as otherwise permitted by law or equity . . . ." 12 U.S.C. 5564(g)(1). Here, equity surely permitted the Bureau, now that it is led by a Director who is removable by the President at will, to ratify claims it had already brought during the limitations period. Indeed, courts have equitably tolled the application of a statute of limitations where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 96 nn.3-4 (1990); *see D.J.S.-W. v. United States*, 962 F.3d 745, 750-51 (3d Cir. 2020) (equitable tolling is appropriate if the plaintiff has pursued its rights diligently, and some extraordinary circumstance prevented timely filing). This is because statutes of limitations "assure fairness to defendants" and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence is lost, memories have faded, and

witnesses have disappeared." *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 215–16 (3d Cir. 2002) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). Allowing the Bureau to continue to prosecute its claims after the Director's ratification risks no unfair surprise or other injustice to Defendants or the Ambac Movants. That result, moreover, is wholly consistent with the Third Circuit's teaching that, "as an equitable remedy," ratification should be "applied flexibly and . . . adapted to deal with unique and unusual circumstances." *Advanced Disposal*, 820 F.3d at 603–04.

The common law agency rules that the Ambac Movants cite, *see* Ambac Movs. Br. at 14, do not cast doubt on the Bureau's ability to proceed with the action here. Under those rules, a ratification of a lawsuit in certain circumstances may not be effective if it comes after the relevant statute of limitations has expired. *See, e.g.*, Restatement (Third) of Agency § 4.05 & Reporter's Note e (citing split of authority on the point). This rule is irrelevant here because the CFPA's statute of limitations has not expired: For all the reasons set forth above, that limitations provision was satisfied or tolled when the Bureau filed this suit within the statutory time limit.[7] The Ambac Movants can point to nothing in the CFPA's text, structure, or purposes suggesting that Congress intended for the statute of limitations to be interpreted to grant them immunity from the Bureau's diligent enforcement of the consumer laws.

---

[7] In this respect, this case is distinguishable from *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994), which involved a different statutory time limit. There, the Court concluded that the 90-day jurisdictional time limit on petitioning for certiorari was not satisfied where an agency filed a petition within the time limit, but without the statutorily-required approval that the Solicitor General could have given within the 90-day period but did not. *Id.* at 98-99. That conclusion sheds no light on whether Congress intended for the CFPA's statute of limitations to be satisfied or tolled when the Bureau takes every step that it could possibly take and files an enforcement action within the specified time limit, just without the approval of a Director removable at will.

### III.    The Court Has Subject Matter Jurisdiction Over This Action.

Movants ask the Court to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that the Court lacks jurisdiction because Defendants are not "covered persons" as defined in the CFPA. *See* Ambac Movs. Br. at 16-20; TSI Br. at 5-6. Movants are incorrect. First, the Complaint asserts three independent grounds for the Court's subject matter jurisdiction, all of which are valid. Second, Movants have not actually challenged this Court's subject matter jurisdiction at all, but rather the sufficiency of the Bureau's allegations.

### A.    The Complaint pleads three valid grounds for subject matter jurisdiction.

Three independent grounds for the Court's subject matter jurisdiction are pled on the face of the Complaint. *See* Compl. ¶ 4. First, the Complaint pleads jurisdiction under the explicit grant Congress included in the CFPA itself at 12 U.S.C. § 5565(a)(1). The Complaint alleges four counts of deceptive acts or practices and one count of unfair acts or practices under the CFPA. *See* Compl. ¶¶ 60-94 (citing 12 U.S.C. §§ 5531, 5536(a)(1)(B)). The prohibition against deceptive and unfair acts or practices is a "Federal consumer financial law." *See* 12 U.S.C. § 5481(14). Therefore, by an explicit grant from Congress, this Court has jurisdiction to adjudicate the Bureau's claims.

The Complaint also pleads jurisdiction under 28 U.S.C. § 1331, which gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Here, the only claims alleged in the Complaint "arise under" the CFPA, a Federal statute. The Court's jurisdiction under Section 1331 is thus apparent from the face of the Complaint. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

Finally, the Complaint pleads jurisdiction under 28 U.S.C. § 1345, which gives Federal district courts "original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of

Congress." Congress expressly authorized the Bureau to bring suit for violations of Federal consumer financial law. *See* 12 U.S.C. § 5564(a); Compl. ¶¶ 60-94. Thus jurisdiction lies over the Bureau's claims because it is a Federal agency empowered by Congress to bring them.

The Court may end its inquiry here, as the elements of all three grounds pleaded in the Complaint have been satisfied. Moreover, as shown below, the one argument Movants advance does not, in fact, draw the Court's subject matter jurisdiction into question.

**B.    Defendants' status as "covered persons" is an element of the Bureau's claims, not the Court's subject matter jurisdiction.**

Both the Ambac Movants and TSI cite to the Supreme Court's decision in *Arbaugh v. Y&H Corp.* to argue the Court lacks subject matter jurisdiction because Defendants are not "covered persons" under the CFPA. TSI's brief cites the case for the general proposition that a party may raise subject matter jurisdiction at any time. *See* TSI Br. at 3. The Ambac Movants' brief only cites the opinion syllabus. *See* Ambac Movs. Br. at 10, 16 (citing 546 U.S. 500, 501 (2006)). But the first sentence of the opinion explains that it is concerned with "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *See Arbaugh*, 546 U.S. at 503. Movants' briefs suffer from this very confusion.

To determine whether a statutory requirement is jurisdictional, courts consider several factors, including: (1) whether Congress explicitly labels the requirement as jurisdictional, (2) whether the statute's structure demonstrates that the requirement is jurisdictional, and (3) whether prior case law compels the court to conclude the requirement is jurisdictional. *See Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154, 162-63 (2010) (citing *Arbaugh*, 546 U.S. at 515-16). Under this test the "covered person" requirement in the CFPA is not jurisdictional.

The CFPA provides that "[i]t shall be unlawful for any covered person . . . to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). Here, the Bureau alleges that Defendants are covered persons and that they have engaged in deceptive and unfair acts or practices. *See* Compl. ¶¶ 8, 62-93. The CFPA defines a "covered person" as "any person that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6)(A). The definition of "covered person" makes no mention of jurisdiction, and therefore does not meet the first factor. *See Arbaugh*, 546 U.S. at 515; *Muchnick*, 559 U.S. at 163.

The CFPA's jurisdictional grant does not reference the covered person definition. *See* 12 U.S.C. § 5565(a)(1). Indeed, the Bureau can bring an action under Federal consumer financial law against "any person," not merely "covered persons." *See* 12 U.S.C. § 5564(a). Nor does the structure of the CFPA link the jurisdictional provision with the covered person provision. The latter appears in a general definitions section, *see generally* 12 U.S.C. § 5481, while the former appears in the subpart of the CFPA that delineates the Bureau's enforcement powers, *see generally* 12 U.S.C. §§ 5561-5567. This is logical, as the covered person definition is applicable to several aspects of the Bureau's regulatory authority, while the jurisdiction provision is specific to the Bureau's enforcement authority. Thus, the covered person requirement does not meet the second factor. *See Arbaugh*, 546 U.S. at 515, *Muchnick*, 559 U.S. at 164-65.

Finally, Movants cite no precedents treating the covered person requirement as jurisdictional "even absent a jurisdictional label." *Muchnick*, 559 U.S. at 168 (internal quotations omitted); *see also Fort Bend Cty., TX v. Davis*, 139 S.Ct. 1843, 1849 (2019) ("[T]he Court has stated it would treat a requirement as 'jurisdictional' when 'a long line of [Supreme] Cour[t] decisions left undisturbed by Congress' attached a jurisdictional label to the prescription.")

(internal citations omitted). Indeed, Movants have not cited to any authority interpreting the covered person requirement of the CFPA. *See, e.g.*, *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 907-13 (S.D. Ind. 2015) (analyzing covered person requirement under Rule 12(b)(6)). Thus, there is nothing like the kind of clear line of precedent needed for the covered person requirement to meet the third test.

Movants' argument that Defendants are not "covered persons" under the CFPA does not implicate this Court's fundamental power to hear this case, but instead addresses whether the Bureau can make out an element of its claims under Rule 12(b)(6). *See Arbaugh*, 546 U.S. at 516 ("[W]e hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); *Muchnick*, 599 U.S. at 166 ("Section 411(a) thus imposes a type of precondition to suit that supports nonjurisdictional treatment under our precedents.").

## IV. The Complaint Properly Alleges That Defendants Are Covered Persons and That They Are Liable for the Conduct of Their Servicers.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

## A. The Complaint properly alleges that the Trusts are "covered persons."

Movants' make two arguments for dismissal under Rule 12(b)(6). First, as explained in Section III.B, *supra*, Movants argue that the Complaint does not sufficiently plead that Defendants are "covered persons" under the CFPA. *See* Ambac Movs. Br. at 16-20; TSI Br. at 4-6. Second, the Ambac Movants argue that the Complaint does not properly allege that Defendants can be held liable for the conduct of their servicers. *See* Ambac Movs. Br. at 22-25. The Complaint should not be dismissed as a matter of law because the allegations establish both that Defendants are "covered persons" and that they are liable for the alleged violations.

Under the CFPA, a "covered person" is (1) a person that (2) offers or provides a consumer financial product or service. *See* 12 U.S.C. § 5481(6)(A). The Complaint alleges sufficient facts to satisfy both elements of this definition. The CFPA defines "person" as "an individual, partnership, company, corporation, *association (incorporated or unincorporated), trust*, estate, cooperative organization, or other entity." 12 U.S.C. § 5481(19) (emphasis added). The Complaint alleges that Defendants are 15 statutory trusts organized under the laws of the Delaware. *See* Compl. ¶¶ 9, 11. The Delaware Statutory Trust Act ("DSTA"), under which Defendants were organized, provides that a "statutory trust" is an "unincorporated association." 12 Del. C. § 3801(g). The Complaint properly alleges that Defendants are "persons" within the meaning of the CFPA, whether as "trusts," "unincorporated associations," or both.

The CFPA provides multiple definitions for the offering or provision of consumer financial products or services, including "acquiring, purchasing," and "servicing loans," and "collecting debt related to any consumer financial product or service." 12 U.S.C. § 5481(15)(A)(i), (x). Here, the Complaint alleges that Defendants engage in acquiring and

servicing consumer loans and the collection of debts.[8] *See* Compl. ¶¶ 2-3, 8, 10, 12-14, 18-23. The Complaint specifically alleges how Defendants, through their servicers, engaged in the collection of debts by filing collections lawsuits against consumers. *See id.* ¶¶ 24, 43, 52, 54, 55, 58. The Complaint properly alleges that Defendants engage in the offering or provision of consumer financial products or services within the meaning of the CFPA.

**B.  Movants' arguments that Defendants are not "covered persons" as a matter of law are unpersuasive.**

Movants make two arguments for why Defendants are not "covered persons." First, they argue that Defendants cannot, as a matter of law, "engage in" any activity because the Trusts are merely passive entities that cannot literally *do* anything. *See* Ambac Movs. Br. at 17-19; TSI Br. at 5-6. Second, they hold up snippets of the CFPA's legislative history as proof that Congress never intended for passive entities to be covered by the CFPA. *See* Ambac Movs. Br. at 19-20. Neither argument is persuasive.

**1.  Defendants acquire, service, and collect on student loans.**

The DSTA defines statutory trusts as "unincorporated associations . . . under which property is or will be held, managed, administered, . . . or business or professional activities for profit are carried on or will be carried on, by a trustee or trustees or as otherwise provided in the governing instrument." 12 Del. C. § 3801(g)(1). In other words, a Delaware statutory trust is, by

---

[8] The Ambac Movants assert that the Complaint only alleges that Defendants engage in "servicing loans" and "collecting debt," *see* Ambac Movs. Br. at 17 (citing Compl. ¶ 61), but ignore the allegation that Defendants engage in the "acquiring" and "purchasing" of loans, *see* Compl. ¶¶ 8, 10. And contrary to TSI's argument, the CFPA does not require that a person both "extend[] credit *and* servic[e] loans" to provide a financial product or service. *See* TSI Br. at 4 n.6 (quoting 12 U.S.C. § 5481(15)(A)(i)). Such an interpretation would create an absurd gap in the Bureau's regulatory authority, which the interpretive canon TSI relies on cannot support. *See RD Legal Funding*, 332 F. Supp. 3d at 766-67.

definition, an entity whose business activities will be carried on by another. According to Movants' argument, this would make entities such as the Defendant Trusts immune from suit since the trusts themselves do not "carry on" any conduct. But the DSTA provides that a statutory trust can "sue and be sued," and may be sued for "liabilities contracted or incurred by the trustees or other authorized persons, or by the duly authorized agents of such trustees or other authorized persons, in the performance of their respective duties." 12 Del. C. § 3804(a).[9]

Accordingly, courts have recognized certain Trust Defendants as proper defendants in other litigation. *See, e.g.*, *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 700-706 (S.D.N.Y 2019); *Kwang Kim v. Wilmington Tr. Co.*, No. 17CV528-WQH-AGS, 2018 WL 4296983, at *8 (S.D. Cal. Sept. 7, 2018); *Foster v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00253-CV, 2018 WL 1095760, at *1 (Tex. App. Mar. 1, 2018). And, of course, the individual Defendants are the named plaintiff in thousands of debt collection actions in courts throughout the country. *See, e.g.*, *Nat'l Collegiate Student Loan Tr. 2004-1 v. Ogunbiyi*, 123 N.E.3d 563 (Ill. App. Ct. 2018); *Nat'l Collegiate Student Loan Tr. 2007-2 v. Kuzma*, 187 So. 3d 91 (La. Ct. App. 2016); *Lovette v. Nat'l Collegiate Student Loan Tr. 2004-1*, 149 So. 3d 735 (Fla. Dist. Ct. App. 2014). Despite the Ambac Movants' one-sentence dismissal of the significance of this litigation activity, *see* Ambac Movs. Br. at 19 n.17, there is nothing contradictory about the Bureau's allegations that Defendants engage in debt collection and that they do so through their servicers.

---

[9] As commentators have noted, this is a departure from historical trust law. *See* Allen S. Gutterman, Business Transactions Solutions § 71:36 (2020) ("While at common law suits against a business trust needed to be brought against its trustees, rather than against the trust, it is now generally recognized that actions may be brought against a business trust as an entity.")

The Bureau's allegations are also consistent with the text of Defendants' governing documents.[10] In fact, the Indenture for each Trust speaks directly to the very issue now before the Court, providing:

> *Although the Issuer will contract with other Persons to assist it in performing its duties under this Indenture, any performance of such duties* by a Person identified to the Indenture Trustee in an Officers' Certificate of the Issuer *shall be deemed to be action taken by the Issuer.* Initially, the Issuer has contracted with the Servicers and the Administrator to assist the Issuer in performing its duties under this Indenture.

D.I. 228, Ex. 3, NCSLT 2006-4 Indenture § 3.07(b) (emphases added).[11] The Indenture further provides that "[t]he Issuer shall act solely in its own name and through its duly authorized officers or agents in the conduct of its business," *id.* § 3.23(e), and that "[a]ll actions of the Issuer shall be taken by a duly authorized officer or agent of the Issuer." *Id.* § 3.23(g). Thus, according to the Indentures, the Trusts are engaged in loan servicing because the actions of their loan servicers, such as Movant PHEAA, are deemed to be the actions of the Trusts.

The Trust Agreement contains similar language, for example, providing that:

The purpose of the Trust is *to engage in the following activities*:

(i) *To acquire a pool of Student Loans*, to execute the Indenture and to issue the Notes;
(ii) To enter into the Trust Related Agreements and *to provide for* the administration of the Trust and *the servicing of the Student Loans*;

---

[10] The Court may consider items appearing in the record. *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 710 (E.D. Pa. 2014) ("A court may 'consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.'") (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). The Indenture and Trust Agreement have both been filed with the Court. *See* D.I. 228, 303-3.

[11] Under each Indenture the term "Issuer" is used to refer to each respective Defendant Trust for which that Indenture was created. *See* D.I. 228, Ex. 3 at 68. The "Servicers" referenced in this provision are defined as: "[PHEAA] . . . and any other loan servicer . . . ." *Id.* at 74.

> (iii) *To engage in those activities and to enter into such agreements that are necessary, suitable or convenient to accomplish the foregoing* or are incidental thereto or connected therewith; and
> (iv) *To engage in such other activities as may be required* in connection with conservation of the Trust Property and Distributions to Owners.

*See* Ambac Movs. Ex. 7, Trust Agreement § 2.03(a) (emphases added).[12] It goes on to provide that "the Trust *will act solely in its own name* and the Owner Trustee or other agents selected in accordance with this Agreement will act on behalf of the Trust . . . ." *Id.* § 2.03(b)(i) (emphasis added). It therefore is not the Bureau's allegations, but Movants' argument, that is out of step with the plain language of the controlling law, actual practice, and governing contracts.

Finally, the cases the Ambac Movants cite in support of their position are inapposite.[13] First, none of them interpret the CFPA, but instead pass upon language in three vastly different statutes, none of which bears any resemblance to the CFPA in structure or purpose. *See* Ambac Movs. Br. at 18 (citing *United States v. Graham*, 305 F.3d 1094, 1097 (10th Cir. 2002) (interpreting 18 U.S.C. § 842); *Freund v. Republic of France*, 592 F. Supp. 2d 540, 553 (S.D.N.Y. 2008) (interpreting 28 U.S.C. § 1605); *Zarra v. Sun Sentinel Co.*, No. 12-60542-CIV, 2012 WL 5306368, at *2 (S.D. Fla. Oct. 29, 2012) (interpreting 29 U.S.C. § 213)). The *Graham* and *Zarra* cases are particularly inapposite since they examine the application of the relevant statutory language to individuals. *See Graham*, 305 F.3d at 1097; *Zarra*, 2012 WL 5306368, at *1. Movants make no attempt to explain how the relatively commonplace term "engage in" as used in these three statutes provides any guidance to the Court in interpreting the "covered person" definition in the CFPA.

---

[12] The Ambac Movants attempt to waive away this language in the Trust Agreement by only quoting a small part of it and claiming that the only relevant activity described in this provision is "contracting for the loans to be serviced by others." Ambac Movs. Br. at 18 n.16.

[13] TSI's brief cites no cases to support its position.

The *Freund* case does apply statutory language to an entity, but the opinion makes plain that a legal entity *can* "engage in" an activity vicariously. The relevant question before the *Freund* court was whether an agency of the French government— "CDC"—was "engag[ing] in a commercial activity in the United States." *See id.* at 556. Plaintiffs argued it was by alleging that subsidiaries of CDC engaged in commercial activity in the US. *See id.* But the court found that the allegations did not demonstrate either an agency relationship between CDC and the subsidiaries, or that the subsidiaries were alter-egos of CDC. *See id.* at 557-59; *see also id.* at 557-58 (discussing Supreme Court cases applying "law of private corporations" to determine applicability of commercial activity exemption). Here, as the Bureau will show, the conduct of Defendants' servicers can be attributed to Defendants vicariously, and so *Freund*, if applicable at all, supports the conclusion that the Trusts can engage in the offering or provision of consumer financial products or services through agents or servicers.

### 2. The CFPA's legislative history offers no support to Movants.

Movants largely ignore the text of the CFPA and instead grasp at straws in its legislative history. Typically, statutory construction begins by looking to the plain language of the act in question. *See Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 438 (3d Cir. 2018) (citing *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)). Recourse to legislative history is reserved for circumstances where the text at issue is ambiguous. *See United States v. Kouevi*, 698 F.3d 126, 133 (3d Cir. 2012); *In re Washington Mut., Inc.*, 419 B.R. 271, 277 (Bankr. D. Del. 2009). Movants' briefs do not argue or even suggest that there is any ambiguity in any of the provisions relevant here.

Even if it were appropriate to examine the CFPA's legislative history, Movants' citations are irrelevant to the question their briefs pose. Both briefs quote a passage from the report issued by the Senate committee that drafted the Dodd-Frank Act of 2010, of which the CFPA was one part. *See* TSI Br. at 5 n.2 (quoting S. Rep. No. 111-176, at 160 (2010)); Ambac Movs. Br. at 20

(same). But this passage addresses the meaning of "consumer financial products and services," not "covered person." TSI quotes the explanation that acting as a fiduciary or creating a trust are not consumer financial products or services because they are not for consumers' personal use. *See* TSI Br. at 5 n.2. But the CFPA provides that acquiring and servicing loans or collecting debt "in connection with" financial products used by consumers for personal purposes—e.g., student loans—*are* consumer financial products or services. *See* 12 U.S.C. § 5481(5)(B).[14] The Ambac Movants point to the Committee's explanation that "insurance or securities activities" are not "consumer financial products and services," but this exclusion is irrelevant to the Bureau's claims here, which do not address any "securities activities" Defendants engage in.

The Ambac Movants also cite a Treasury Department white paper written before the passage of the CFPA outlining what the Bureau's enforcement authority might look like. *See* Ambac Movs. Br. at 20 n.18 (quoting Ambac Movs. Ex. 9 at 57). The cited passage is generic and does not address what or who should be excluded from the scope of the CFPA, nor does it reflect congressional intent given that it was not authored by any part of Congress.

### C. The Complaint states a claim based on an agency theory of liability.

Accepting all factual allegations as true and taking all reasonable inferences in the light most favorable to the Bureau, the Complaint against Defendants, based upon agency liability, is

---

[14] More relevant congressional intent is expressed by the Committee when it notes that "mortgage servicers typically provide services to the owners of the mortgages. Nonetheless, this service is included in the definition of 'consumer financial product or service' because of its obvious impact on consumers." S. Rep. No. 111-176, at 159-60. And the Committee also explained that it saw a need to ensure coverage of service providers because, "[w]ithout such authority, covered persons could remove many important functions that bear directly on consumers from the CFPB's oversight simply by contracting those functions out to service providers, thereby escaping the jurisdiction of the CFPB and leading to significant regulatory arbitrage." *Id.* at 161. Thus, Congress was concerned to ensure that entities could not shield themselves from the CFPA's proper coverage through ingenious contractual arrangements.

sufficient to survive the Ambac Movants' motion to dismiss. A plaintiff "must allege facts sufficient to allow [an agency] relationship to be proven at trial, but it is not required to have extensive proof at the complaint stage." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003); *see also British Telecomms. PLC v. IAC/InteractiveCorp.*, 356 F. Supp. 3d 405, 410 (D. Del. 2019).[15]

Here, the Complaint alleges plausible claims for relief against the Defendants under an agency theory of vicarious liability. The basic purpose of each Trust is to acquire a pool of private student loans, execute the indentures and issue notes secured by the pools of student loans, enter into trust-related agreements, and provide for the administration of the Trusts and the servicing and collection of student loans. *See* Compl. ¶ 10. All actions relating to the administration of the Trusts, servicing of the student loans, and collecting debt are carried out by Defendants' Servicers. *See id.* ¶ 12, 18. Defendants' Servicers are any Servicer, Primary Servicer, Subservicer, Special Servicer, Administrator, and any other individual or entity acting on behalf of the Trusts with respect to the servicing and collection of the student loans owned by the Trusts, whether retained directly by Defendants or retained by an individual or entity acting on behalf of Defendants. *See id.* ¶ 13. The Complaint alleges the existence of an agency relationship and identifies Defendants' agents. *See id.* D.I. ¶¶ 15-16. The Complaint specifically alleges that since November 1, 2014, Defendants' Subservicer has been Transworld Systems, Inc. *See id.* ¶ 16. The Complaint alleges that the Servicers and other entities executed, notarized, and filed deceptive affidavits on behalf of the Trusts and filed collection lawsuits on behalf of the

---

[15] The Bureau notes that there are numerous "Trust Related Agreements" which further define the Defendants' relationships to its various trustees and servicers. *See* Ambac Movs. Ex. 7 at 7 (listing at least 14 agreements in definition of "Trust Related Agreements"). Any, or all, of these documents could be offered to litigate the issue of agency on the merits.

Trusts. *See id.* ¶¶ 19-20. Finally, it alleges that Subservicers acting on behalf of Defendants executed, notarized, and caused to be filed affidavits and documents in collections lawsuits in support of claims that consumers owed debts to Defendants. *See id.* ¶ 25.

Contrary to the Ambac Movants' assertions, *see* Ambac Movs. Br. at 23, "control" is not the *sine qua non* of an agency relationship and vicarious liability can be based upon apparent authority. "'Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013) (citing *AT & T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1439 (3d Cir. 1994); *see also* Restatement (Third) Of Agency § 2.03 (2006).[16]

Courts have frequently held entities liable for the conduct of agents or servicers that act with actual or even apparent authority. *See FTC v. Stefanchik*, 559 F.3d 924, 930 ("Under the FTC Act, a principal is liable for the misrepresentations of his agent acting within the scope of the agent's actual or apparent authority."); *FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927, 939 (N.D. Cal. 2010) (finding liability under FTC Act for allegedly unauthorized actions of defendant's contracted call centers). The Complaint is replete with allegations supporting, at a minimum, apparent authority to act on behalf of the Trust Defendants. There are numerous

---

[16] The Ambac Movants assert that the Special Servicing Agreement ("SSA") disclaims an agency relationship and provides that the Special Servicer shall be an independent contractor. *See* Ambac Movs. Br. at 4 (citing Ambac Movs. Ex. 1 §§ 17-18). The existence of agency is determined by the facts of the relationship, and the parties' characterizations of their relationship in an agreement do not control. *See* Restatement (Third) Of Agency § 1.02 (2006). And as a matter of law, independent contractors can be agents. *See AT & T*, 42 F.3d at 1437–39. In any event, the SSA does not disclaim any and all agency relationship, it merely limits the Special Servicer's agency relationship to the activities it is authorized to undertake on the Trusts' behalf, *see* Ambac Movs. Ex. 1 § 17, including retaining subservicers to act on the Trusts' behalf to service and collect on loans, *see id.* §§ 2(B)(i), (xv).

allegations referencing the Trusts' servicers filing collections lawsuits and affidavits on its behalf. *See e.g.*, D.I. 1 at ¶¶ 18, 19, 20, 24, 25, 26, 43. The reasonable inference, based upon lawsuits filed in the name of the Trusts as plaintiffs, is that the individual/entity filing such a lawsuit has the authority to do so. This is all that is required at this stage in the proceeding. *Covington*, 710 F.3d at 120.

The Ambac Movants also argue that the Bureau has not established Article III standing because the alleged violations of the law are not fairly traceable to the conduct of Defendants. *See* Ambac Movs. Br. at 20-22. Injuries committed by a Defendant's agents are fairly traceable to the Defendant. *See, e.g.*, *Merriam v. Demoulas*, No. CIV.A. 11-10577-RWZ, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) ("[Article III's] causation standard does not require that the defendant personally commit the act that harms the plaintiff. For instance, a plaintiff can have standing to sue a principal for acts committed by his agent."); The Ambac Movants' brief appears to argue that vicarious liability is per se incompatible with Article III standing, but that is not the law. *See Bogart v. City of New York*, No. 13 CIV. 1017 NRB, 2015 WL 5036963, at *4 (S.D.N.Y. Aug. 26, 2015) (vicarious liability and constitutional standing are distinct inquiries); *Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 CIV. 7955 (GEL), 2008 WL 4378443, at *2 (S.D.N.Y. Sept. 25, 2008) (allegations of aiding and abetting liability are "sufficient for purposes of Article III"). The cases cited by the Ambac Movants simply stand for the general proposition that a proper party must be the defendant in a suit, which, as the foregoing demonstrates, Defendant Trusts are here. *See, e.g.*, *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1207–08 (11th Cir. 2020) (holding that plaintiffs did not have standing because they failed to establish at trial the vicarious liability of the defendant).

Taking the facts as alleged in the Complaint as true with all reasonable inferences in a light most favorable to the Bureau, including those allegations demonstrating apparent authority to file lawsuits on behalf of the Trusts, establishes that the motion to dismiss should be denied.

## V.       The Bureau's Complaint Is Not Barred by the Statute of Limitations.

There are no grounds to dismiss the Complaint based on the CFPA's statute of limitations. "A statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Keel v. Del. State Univ. Bd. of Trs.*, No. 17-1818 (MN), 2020 WL 2839222, at *5 (D. Del. May 31, 2020). The Third Circuit nevertheless permits a limitations defense to be raised in a Rule 12(b)(6) motion, but only if "the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stephens*, 796 F.3d at 288 (internal citation and quotation marks omitted); *Keel*, 2020 WL 2839222, at *5. And because a plaintiff is not required to plead facts in its complaint to overcome an affirmative defense, "the statute of limitations cannot justify Rule 12 dismissal" if the complaint does not reveal when the limitations period began to run. *Stephens*, 796 F.3d at 288 (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)).

The Ambac Movants come nowhere close to meeting this standard. Their entire argument is based on the Bureau's █████████████████████████████ – an investigative tool used by the Bureau to collect information from a person who may have information relevant to a violation, *see* 12 U.S.C. § 5562(c) – ████████████████████. *See* Ambac Movs. Br. at 25-27. ███████ is not referenced on the face of the Complaint, and the Ambac Movants point to no allegations in the Complaint that relate to this action's timeliness. The standard for dismissal for untimeliness on a 12(b)(6) motion has not been met, and the Court may end its inquiry here.

Even if the Court were to go beyond the face of the Complaint, the Ambac Movants have not established grounds for dismissal.

## A. The CFPA provides an actual discovery statute of limitations.

The Ambac Movants argue that the Bureau discovered or should have discovered the violations to which this action relates before September 18, 2014. *Id.* at 25. Specifically, they contend that ███████████████████████████, constitutes proof that the Bureau "had begun investigating" Defendants, and therefore "[knew] or had reason to know of" the violations more than three years before filing suit. *Id.* at 26-27. This argument both misconstrues the CFPA's statute of limitations and ignores Supreme Court and Third Circuit precedent regarding the definition of "discovery."

Under the CFPA, "[e]xcept as otherwise permitted by law or equity, no action may be brought under this title more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). A "violation" is "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law." 12 U.S.C. § 5561(5). According to its plain text, the CFPA's statute of limitations runs from actual discovery, not from constructive discovery of the violations as the Ambac Movants contend.

The Ambac Movants rely on three cases, none of which support their interpretation of the CFPA's limitations provision. *See* Ambac Movs. Br. at 15, 26. Two of these cases involve statute of limitations provisions that are fundamentally different from § 5564(g)(1). *See Stephens*, 796 F.3d at 284-89 (grafting flexible, knew-or-should-have-known "discovery rule" onto accrual limitations provision); *United States ex rel. Bauchwitz v. Holloman*, 671 F. Supp. 2d 674, 695 (E.D. Pa. 2009) (interpreting limitations provision that expressly included both actual and constructive discovery). And while the third case involved the CFPB's limitations provision, the district court conducted no analysis before suggesting that a constructive discovery rule would

apply, did not even apply the standard to any set of facts, and relied on a Second Circuit case involving private plaintiffs and a different statute. *See CFPB v. NDG Fin. Corp.*, No. 15-CV-5211 (CM), 2016 WL 7188792, at *19 (S.D.N.Y. Dec. 2, 2016) (citing *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir. 1992)). The CFPA's limitations provision, on the other hand, clearly does not contemplate constructive discovery as the statute in *Bauschwitz* did, nor is there justification for anything approaching the judicially-created rule adopted in *Stephens*.[17] For these reasons, the Court should recognize that the CFPA's statute of limitations does not incorporate a constructive discovery standard.

### B. Discovery is not apparent from the face of the Complaint.

Even if § 5564(g)(1) were a constructive discovery limitations provision, the Ambac Movants still have not satisfied their burden. To prove that the Bureau's claims were filed outside the limitations period, they would have to show that the face of the Complaint reveals that the Bureau discovered or should have discovered all necessary elements of the violations underlying its claims before September 18, 2014. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010) (limitations period does not begin to run until plaintiff discovers facts suggesting

---

[17] Courts have voiced concern about the possibility of applying a constructive discovery standard to actions brought by government enforcement agencies. When canvassing discovery-rule cases akin to those in *Stephens* and *Bauschwitz*, the Supreme Court noted that it has "never applied the discovery rule in [that] context, where the plaintiff is not a defrauded victim seeking recompense, but is instead the Government bringing an enforcement action for civil penalties." *Gabelli v. SEC*, 568 U.S. 442, 449 (2013). Various practical considerations suggest that a constructive discovery standard should not be read into a statute of limitations applying only to the government. *See 3M Co. v. Browner*, 17 F.3d 1453, 1461 (D.C. Cir. 1994). This is especially true because it is "unclear whether and how courts should consider agency priorities and resource constraints in applying [the constructive discovery] test to Government enforcement actions." *Gabelli*, 568 U.S. at 452-453. Reading constructive discovery into the CFPA also would run afoul of Supreme Court precedent requiring statutes of limitation to receive strict construction in favor of the government. *See Badaracco v. Comm'r*, 464 U.S. 386, 391-392 (1984) (citing *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)).

all necessary elements of violation); *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (facts are not discovered until they can be "adequately plead . . . in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss") (internal quotation omitted). Thus, ████████████ ██████████████████, a preliminary investigative step cannot possibly constitute constructive "discovery" of Defendants' CFPA violations. *See CFPB v. Nationwide Biweekly Admin.*, No. 15-cv-02106-RS, 2017 WL 3948396, at *10, n.22 (N.D. Cal. Sept. 8, 2017) (Bureau has not discovered a violation if it lacks sufficient facts to file suit) *appeal pending; In the Matter of Integrity Advance, LLC*, File No. 2015-CFPB-0029, at 14 (Jan. 24, 2020 Order) (discovery does not occur until "a plaintiff has a complete and present cause of action"). The Ambac Movants offer no explanation for how the Bureau would have a complete and present cause of action before even investigating possible wrongdoing.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Intervenor Transworld Systems Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.I. 242) and Intervenors' Motion to Dismiss (D.I. 300). The Bureau's prosecution of this action does not offend separation of powers principles, the Court has subject matter jurisdiction over the Bureau's claims, the claims are not time-barred, and the Bureau has standing to sue the named Defendants.

The Bureau requests oral argument pursuant to Local Rule 7.1.4.

Dated: August 7, 2020

Respectfully submitted,

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

THOMAS G. WARD
*Enforcement Director*

DEBORAH MORRIS
*Deputy Enforcement Director*

ALUSHEYI J. WHEELER
*Assistant Litigation Deputy*

/s/ Gabriel Hopkins
Gabriel Hopkins
gabriel.hopkins@cfpb.gov
Phone: 202-435-7842
Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368
Jane Peterson
jane.peterson@cfpb.gov
202-435-9740

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020, I electronically filed Plaintiff's Opposition to Intervenor TSI's Motion to Dismiss and Intervenors Ambac, WTC, and PHEAA's Motion to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing(s) to all parties to this matter registered for CM/ECF.

I hereby further certify that I sent a copy of the same by certified mail to agent authorized to accept service on behalf of the Defendants.

Dated: August 7, 2020

<u>/s/ Gabriel Hopkins</u>
Consumer Financial Protection Bureau
1700 G St. NW
Washington, DC 20552
gabriel.hopkins@cfpb.gov

*Attorney for Plaintiff Consumer*
*Financial Protection Bureau*