IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | : | |
| | : | |
| | : | C.A. No. 17-1323 (MN) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST et al., | : | |
| | : | |
| Defendants. | : | |

**INTERVENORS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND 12(b)(1)**

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Kurt M. Heyman (No. 3054)
Melissa N. Donimirski (No. 4701)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
kheyman@hegh.law
mdonimirski@hegh.law

*Attorneys for Ambac Assurance Corporation*

OF COUNSEL:

PATTERSON BELKNAP WEBB & TYLER LLP
Erik Haas
Peter W. Tomlinson
Joshua Kipnees
George A. LoBiondo
Jared S. Buszin
Devon Hercher
Peter Shakro
1133 Avenue of the Americas
New York, NY 10036

STEVENS & LEE, P.C.
Stacey A. Scrivani (No. 6129)
919 Market Street, Suite 1300
Wilmington, DE 19801
(302) 425-3306
sasc@stevenslee.com
eaw@stevenslee.com

*Attorneys for Pennsylvania Higher Education Assistance Agency d/b/a American Education Services.*

OF COUNSEL:

STEVENS & LEE, P.C.
Nicholas H. Pennington
620 Freedom Business Center, Ste 200
King of Prussia, PA 19406
(610) 205-6352
nhp@stevenslee.com

BAYARD, P.A.
Stephen B. Brauerman (No. 4952)
Elizabeth A. Powers (No. 5522)
600 N. King Street, Suite 400
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
epowers@bayardlaw.com

*Attorneys for Wilmington Trust Company*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.      THE INTERVENORS HAVE STANDING TO SEEK DISMISSAL .............................. 3

II.     THIS ACTION CANNOT BE RATIFIED....................................................................... 4

        A.      Ratification Does Not Cure the Constitutional Injury ............................................5

        B.      It Is Far Too Late to Ratify the Complaint ............................................................6

III.    THE TRUSTS ARE NOT COVERED PERSONS UNDER THE CFPA....................... 10

        A.      The CFPB Cannot Evade the CFPA's Jurisdictional Requirements ....................10

        B.      The Trusts Are Not Covered Persons ..................................................................10

                1.      The Trusts Do Not Service Loans or Collect Debt....................................11

                2.      The Trusts Do Not "Engage" in Offering or Providing Consumer
                        Products or Services.................................................................................12

                3.      The Trusts Do Not Acquire or Purchase Loans Within the Meaning
                        of the CFPA .............................................................................................13

IV.     THE COMPLAINT LACKS FACTS SUPPORTING VICARIOUS LIABILITY.......... 14

        A.      There Are No Allegations to Support the Existence of an Agency Relationship
                Between the Trusts and Servicers .......................................................................15

        B.      There Are No Allegations to Support the Existence of Apparent Authority.........16

V.      THE CFPB'S CLAIMS ARE TIME-BARRED ............................................................ 18

CONCLUSION.......................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Disposal Servs. E., Inc. v. NLRB*,
820 F.3d 592 (3d. Cir. 2016) ................................................................5, 6

*Amato v. Wilentz*,
952 F.2d 742 (3d Cir. 1991) ..................................................................3, 4

*Aurandt v. Brown*,
2017 WL 1215451 (W.D. Pa. Mar. 31, 2017) ........................................18

*Badaracco v. Comm'r*,
464 U.S. 386, 388 (1984) ........................................................................19

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*,
522 U.S. 192 (1997) ..................................................................................7

*Benjamin v. V.I. Port Auth.*,
684 F. App'x 207 (3d Cir. 2017) ..............................................................6

*Bishop v. Bishop*,
257 F.2d 495 (3d Cir. 1958) ....................................................................8

*Brown v. Interbay Funding LLC*,
2004 WL 2579596 (D. Del. Nov. 8, 2004) .......................................15, 16

*Carr v. United States*,
560 U.S. 438 (2010) ................................................................................14

*CFPB v. Forster & Garbus, LLP*,
2:19-cv-2928 (E.D.N.Y.) (Aug. 11, 2020 docket entry) ..........................6

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ..................................................................5

*CFPB v. ITT Educ. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015) ...............................................11, 13

*CFPB v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018) ....................................................5, 9

*Covington v. Int'l Ass'n of Approved Basketball Offs.*,
710 F.3d 114 (3d Cir. 2013) ...............................................................15, 16

## TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

**Cases**

*Csi Inv. Partners II, L.P. v. Cendant Corp.*,
  180 F. Supp. 2d 444 (S.D.N.Y. 2000).............................................................................7

*D.J.S.-W. v. United States*,
  962 F.3d 745 (3d Cir. 2020)..........................................................................................8, 9

*Doe Co. v. Cordray*,
  849 F.3d 1129 (D.C. Cir. 2017) .......................................................................................8

*Doolin Sec. Sav. Bank, F.S.B. v. Ofc. of Thrift Supervision*,
  139 F.3d 203 ......................................................................................................................6

*FEC v. Legi-Tech, Inc.*,
  75 F.3d 704 (D.C. Cir. 1996) ......................................................................................5, 6

*FEC v. NRA Political Victory Fund*,
  513 U.S. 88 (1994)............................................................................................................6

*Fisher v. Townsends, Inc.*,
  695 A.2d 53 (Del. 1997) .................................................................................................15

*FTC v. Inc21.com Corp.*,
  688 F. Supp. 2d 927 (N.D. Cal. 2010)...........................................................................17

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) .........................................................................................17

*Gabelli v. SEC*,
  568 U.S. 442 (2013).....................................................................................................7, 18

*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990)............................................................................................................9

*Johnson v. United States*,
  544 U.S. 295 (2005)..........................................................................................................7

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*,
  65 F. App'x 803 (3d Cir. 2003) .....................................................................................16

*Kline v. Elite Med. Labs., Inc.*,
  2019 WL 6828590 (M.D. Pa. Dec. 13, 2019)................................................................17

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Kurz v. Philadelphia Elec. Co.*,
    96 F.3d 1544 (3d Cir. 1996)..................................................................................18

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018)........................................................................................5

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)....................................................................................18, 19

*Meyer v. Holley*,
    537 U.S. 280 (2003)..........................................................................................15

*Neuchatel Ins. v. ADT Sec. Sys., Inc.*,
    1997 WL 539687 (E.D. Pa. Aug. 11, 1997) ......................................................19

*New Castle Cnty. v. Halliburton NUS Corp.*,
    111 F.3d 1116 (3d Cir. 1997)............................................................................20

*NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*,
    124 F.3d 1094 (9th Cir. 1997) ..........................................................................17

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)..............................................................................13

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994)..........................................................................18, 20

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002)................................................................................4

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
    Transactions, Inc.*,
    730 F.3d 263 (3d Cir. 2013)..............................................................................19

*Pollice v. Nat'l Tax Funding, L.P.*,
    225 F.3d 379 (3d Cir. 2000)..............................................................................12

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
    33 F. Supp. 3d 245 (S.D.N.Y. 2014)..................................................................17

*Ray v. Kertes*,
    285 F.3d 287 (3d Cir. 2002)..............................................................................12

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Ryder v. United States*,
  515 U.S. 177 (1995)..........................................................................................................5

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020).....................................................................................................5

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2019 WL 6828984 (D. Del. Dec. 13, 2019).................................................................17

*United States v. $515,060.42 in U.S. Currency*,
  152 F.3d 491 (6th Cir. 1998) (19 U.S.C. § 1621)......................................................18

*United States v. Atiyeh*,
  402 F.3d 354 (3d Cir. 2005).........................................................................................8, 9

*United States v. Jackson*,
  480 F.3d 1014 (9th Cir. 2007) ......................................................................................14

*United States v. Kubrick*,
  444 U.S. 111 (1979)...................................................................................................7, 20

*In re W.R. Grace & Co.*,
  316 F. App'x 134 (3d Cir. 2009) ...................................................................................6

*Weis-buy Servs., Inc. v. Paglia*,
  411 F.3d 415 (3d Cir. 2005).............................................................................................9

*Zeleznik v. United States*,
  770 F.2d 20 (3d Cir. 1985)..........................................................................................20

**Statutes**

12 U.S.C. § 5481(5)(b) ...............................................................................11, 12, 13, 14

12 U.S.C. § 5491(c)(3).........................................................................................................9

12 U.S.C. § 5531(a) ..........................................................................................................11

12 U.S.C. § 5561(5) ..........................................................................................................18

12 U.S.C. § 5564.........................................................................................7, 10, 18, 19

28 U.S.C. § 1331................................................................................................................10

v

**Statutes**

28 U.S.C. § 1345 ................................................................................................................. 10

28 U.S.C. § 1658(b)(1) .................................................................................................. 18, 19

28 U.S.C. § 2255 .................................................................................................................. 7

28 U.S.C. § 2462 ................................................................................................................ 18

29 U.S.C. § 1451 .................................................................................................................. 7

**Other Authorities**

Restatement (Second) of Agency § 1 cmt. b ....................................................................... 16

Restatement (Third) of Agency § 2.01 cmt. f ...................................................................... 15

Restatement (Third) of Agency § 2.03 & cmt. c .................................................................. 17

Restatement (Third) of Agency § 3.03 cmt. b ..................................................................... 17

## PRELIMINARY STATEMENT

As the Intervenors'[1] opening brief showed, the CFPB's claims were unconstitutionally brought; are too old to bring anew; and, in any event, are far outside the CFPB's statutory mandate. The CFPB's opposition only serves to underscore the overreaching nature of its action by presenting a procedural objection to the Intervenors' standing and a novel theory of how the CFPB's enforcement authority could sweep in the Trusts. Both arguments misapprehend or deliberately disregard the nature, constituents, and structure of the securitizations at issue.

First, the CFPB tries to evade scrutiny of its complaint by claiming the Intervenors lack standing to seek dismissal. This argument is readily disposed of because it ignores settled Third Circuit law on third-party standing, which authorizes parties that have relationships with named defendants to advance their consistent interests—particularly where the defendants' ability to act is impaired. Here, once again, the CFPB chooses to ignore that the Trusts are legal shells that cannot act on their own, and which therefore by necessity contracted with third parties, including the Intervenors, to act on their behalf. The CFPB also disregards this Court's ruling that Ambac is a third-party beneficiary whose economic interests are aligned with the Trusts'. D.I. 181 at 3.

Second, the CFPB asserts for the first time that the Trusts are subject to its enforcement authority for *directly* engaging in offering a consumer product or service. The purported consumer transaction the CFPB cites is the one-time acquisition of a pool of student loans by a special purpose vehicle (each Trust) from another special purpose vehicle (a "Depositor") at the outset of each securitization over a decade ago. That structured financing transaction was *not* a consumer transaction within the meaning of the CFPA, and the CFPB's attempt to tether its statutory authority to that sale shows just how far afield the CFPB has strayed from its mandate. It advances

---

[1] Defined terms and abbreviations retain the meanings used in the Intervenors' opening brief.

1

this theory of direct liability because it cannot defend its previous position that the Trusts should be held vicariously liable for the acts of independent contractors the Trusts do not control. Moreover, as the Structured Finance Association has explained, D.I. 73-1, the CFPB's intrusion into the realm of structured finance regulation, if allowed, would impair the liquidity function securitizations provide, and impede the availability of loans for consumers the CFPB should be endeavoring to protect.

Aside from these two novel arguments, the CFPB does not present any argument that was not anticipated and refuted in the Intervenors' opening brief. Significantly, the CFPB has no answer for how its complaint can survive the Supreme Court's decision in *Seila Law*. That decision confirmed the CFPB was unconstitutionally structured when it investigated, initiated, and litigated this action. But the CFPB claims none of that matters because its Director's recent boilerplate "ratification" cures all. This position flouts two different strands of Supreme Court precedent: First, the Court has recognized since the nineteenth century that actions taken under the authority of an unconstitutional statute are void *ab initio*. Second, ratification is impossible where the ratifier cannot "do the act ratified at the time ratification was made." Here, the act that the CFPB seeks to ratify is the filing of its complaint, but it cannot now do that act because the statute of limitations has long run on the claims it seeks to pursue. The CFPB's only rejoinder— that the limitations period should be tolled for the period it operated outside of constitutional bounds—has no support in the CFPA or elsewhere in law.

Finally, the CFPB has not proposed filing an amended complaint, or argued that it could fix any of these fatal flaws if given the chance. This action—commenced as a result of the CFPB's collusion with an opportunistic profiteer, filed by an unconstitutionally structured agency, and maintained against the wrong parties—should be dismissed with prejudice.

2

## ARGUMENT

### I.     THE INTERVENORS HAVE STANDING TO SEEK DISMISSAL

As this Court has repeatedly recognized, the Intervenors have valid interests in the Trusts—including an interest in preventing the wrongful dissipation of Trust assets—and have capably litigated this action for nearly three years in the absence of authorized Trust counsel.  *See* D.I. 95; D.I. 272.  Nevertheless, the CFPB begins its opposition with a meritless attack on the Intervenors' standing to bring this motion.

To begin with, the CFPB misstates the record by suggesting the Court granted the Intervenors leave to participate here only "to challenge the sufficiency of the settlement reached between the Bureau and the Defendant Trusts."  Opp. Br. at 4.  That is precisely the opposite of what the Court did.  Although the CFPB ***argued*** that the Court should restrict intervention to "the limited purpose of objecting to the Bureau's Motion to Approve the Proposed Consent Judgment," D.I. 54 at 3, the Court rejected the CFPB's position and instead "place[d] ***no limitation*** on the intervenors' participation in this litigation," D.I. 95 at 1 (emphasis added).  The Court's prior order therefore squarely belies the CFPB's renewed arguments on this motion.

The CFPB's claim that the Intervenors lack prudential standing is wrong too.  Opp. Br. at 4–5.  This is a textbook case for application of the third-party standing doctrine, which allows the Intervenors to seek dismissal of the CFPB's complaint by raising defenses available to the Trusts. The doctrine requires a balancing of three factors: (i) "the relationship between the [litigant] and the third party whose rights are asserted"; (ii) "the ability of the third party to advance its own rights"; and (iii) "whether the [litigant] and the third party have consistent interests."  *Amato v. Wilentz*, 952 F.2d 742, 749–50 (3d Cir. 1991).

Here, all three *Amato* factors support the Intervenors.  The first and third factors are satisfied because, as this Court already recognized, the Intervenors and the Trusts have consistent

interests and their relationship is "such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Id.* at 751. The Intervenors include Ambac, one of the Trusts' beneficiaries, D.I. 181 at 3–4, as well as the Owner Trustee, the Trusts' authorized representative under Delaware law and the Trust Related Agreements, *see* D.I. 226 at 4–5; *see also* D.I. 272 at 5–6. Their interests are wholly aligned with those of the Trusts in seeking dismissal of this action. And the second *Amato* factor is satisfied because there is a "hindrance to the [Trusts'] ability to protect [their] own interests." *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 (3d Cir. 2002). As this Court knows, the Trusts are currently unrepresented, and the very mechanism by which the Trusts can secure representation is the subject of pending litigation.[2] June 12, 2020 Hr'g. Tr. The Intervenors can therefore raise Rule 12 arguments that the Trusts are unable to raise themselves.

## II.    THIS ACTION CANNOT BE RATIFIED

As explained in the Intervenors' opening brief, the CFPB lacked authority to initiate this enforcement action in 2017 when its structure violated the Constitution's separation of powers. Open. Br. at 10–12. The CFPB does not dispute this. Instead, the CFPB argues that the slate has been wiped clean because its current Director purports to have "ratified"—in July 2020—the CFPB's filing of its complaint back in September 2017. Opp. Br. at 5–6; D.I. 308. But this does not cleanse the complaint of its unconstitutional taint. "Ratification" is not a valid remedy for the CFPB's structural violation of the Constitution—and even if it were, the CFPB cannot overcome the fatal fact that ratification is quite simply too late.

---

[2] The CFPB observes that certain Trusts are represented in other civil actions. Opp. Br. at 4 n.2. This is irrelevant. Those cases bear no relation to this enforcement action, do not implicate the same impediments to appointing Trust counsel, and were not the subject of disputed Owner instructions (and ensuing litigation) that resulted in the lack of authorized representation here.

### A.      Ratification Does Not Cure the Constitutional Injury

First, the CFPB's purported ratification "does not cure the constitutional injury—enforcement . . . by an unconstitutionally insulated Director." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2221 (2020) (Thomas, J., concurring).  This is the corollary to decades of Supreme Court precedent recognizing that one who has been injured by a separation-of-powers violation is entitled to ***meaningful*** relief.  *See, e.g.*, *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018) ("Appointments Clause remedies are designed . . . to create incentives to raise Appointments Clause challenges."); *Ryder v. United States*, 515 U.S. 177, 182–83 (1995) ("[O]ne who makes a timely challenge to the constitutional validity of" an official's authority is entitled to "whatever relief may be appropriate").  The CFPB claims it satisfied *Lucia* and *Ryder* when its Director rubber-stamped her predecessors' actions.  Opp. Br. at 7 n.5.  But that is no relief at all; the proper remedy is dismissal of the complaint.  *Ryder*, 515 U.S. at 184 n.3 (the correct remedy is that which "afforded respondent the relief requested pursuant to its constitutional challenge").[3]

Although dismissal is warranted under existing precedent, the issue will soon be resolved with finality.  After the Intervenors filed their opening brief, the Supreme Court granted certiorari in *Collins v. Mnuchin*, No. 19-563 (S. Ct.), on this very question:  "[W]hether the court must set

---

[3] The CFPB cites several cases in which it was a party.  Opp. Br. at 6, 9.  All pre-date *Seila Law*, and some—notably *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016)—are further inapposite because they relate to an earlier ***Recess*** Appointments Clause violation by the former CFPB director.  That was a defect in ***his*** authority, not (as here) a structural defect in the ***Bureau's***.  *See CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018) (appeal pending) (distinguishing *Gordon* because the separation of powers violation "concerns the structure and authority of the CFPB itself, not the authority of an agent to make decisions on the CFPB's behalf").  The CFPB also cites *Advanced Disposal Services East, Inc. v. NLRB*, 820 F.3d 592 (3d. Cir. 2016) and *FEC v. Legi-Tech, Inc.*, 75 F.3d 704 (D.C. Cir. 1996).  Opp. Br. at 6–7 & n.4.  But as discussed at *infra*, 6–8 those cases confirm ratification is ***not*** available to the CFPB here.

aside a final agency action that [the agency] took when it was unconstitutionally structured."[4]  But here, the Court need not wait for *Collins*; instead, the Intervenors' motion can also be granted on the narrower ground that the ratification was untimely, as explained below.

### B.      It Is Far Too Late to Ratify the Complaint

Even if ratification were an adequate remedy for the constitutional violation, it is not available to the CFPB here because the statute of limitations expired on all of its claims before the ratification.  Open. Br. at 14–16.  The Third Circuit has explained that ratification can succeed only if, "at the time of ratification," the ratifier "***still*** ha[s] authority to take the action to be ratified." *Advanced Disposal*, 820 F.3d at 602 (emphasis added); *accord FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994).  This means that the ratification must occur ***before*** any deadlines or limitations periods have passed.  *Advanced Disposal*, 820 F.3d at 603.[5]  When ratification has been attempted ***after*** the statute of limitations has run, the Third Circuit has consistently found the ratification ineffectual.  *See Benjamin v. V.I. Port Auth.*, 684 F. App'x 207, 212 (3d Cir. 2017); *In re W.R. Grace & Co.*, 316 F. App'x 134, 136 (3d Cir. 2009).

In this case, the three-year statute of limitations had begun running on all of CFPB's claims

---

[4] In light of this development, at least one district court has ruled that a pending CFPB enforcement action cannot proceed until the Supreme Court decides *Collins*.  *See CFPB v. Forster & Garbus, LLP*, 2:19-cv-2928 (E.D.N.Y.) (Aug. 11, 2020 docket entry).

[5] The CFPB's reliance on *Legi-Tech* fails for the same reason:  there, the court expressly recognized that there are circumstances under which "the statute of limitations might bar reinitiation of the suit."  75 F.3d at 707; *see id.* at 708 ("Even were the Commission to return to square one—assuming the statute of limitations was not a bar . . . .").  And the D.C. Circuit has since confirmed that it imposes the same timing requirement on ratification as the Supreme Court, Third Circuit, and Restatement.  *See Doolin Sec. Sav. Bank, F.S.B. v. Ofc. of Thrift Supervision*, 139 F.3d 203, 212–14 (ratification effective only because valid director ratified charges "***at a time when he could have initiated the charges himself***" (emphasis added)).

no later than May 2016, and expired no later than May 2019.[6]  Open. Br. at 15–16.  Under *NRA Political Victory Fund* and *Advanced Disposal*, these claims had to be ratified within that timeframe.  Director Kraninger's attempt in July 2020 therefore comes far too late.  *See id.* at 16.

To evade these binding precedents, the CFPB argues that the limitations period either did not begin to run until *Seila Law* was decided, or was tolled for an unspecified period of time by some unexplained event.  Opp. Br. at 10–11.  It offers no persuasive support for either theory.

First, the CFPA's three-year limitations period must be enforced as written.[7]  *See Gabelli v. SEC*, 568 U.S. 442, 454 (2013) ("[T]he cases in which a statute of limitation may be suspended by causes not mentioned in the statute itself are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.").  Nowhere does the statute delay accrual due to the CFPB's constitutional infirmities, and that exception may not now be read in.  The CFPB's assertion that it can now "lawfully" commence an action based on conduct that occurred ***any time*** before the *Seila Law* decision is baseless, and such an unfettered right to assert old claims would be "utterly repugnant to the genius of our laws."  *Id.* at 452; *see United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them.").[8]

---

[6] As explained in the Intervenors' opening brief and *infra* at 18–20, the statute of limitations had expired on a substantial portion of the claims well before May 2016.

[7] As the CFPB notes, the statute of limitations period applies "[e]xcept as otherwise permitted by law or equity."  Opp. Br. at 12 (citing 12 U.S.C § 5564(g)(1)).  As discussed *infra* at 8–10, there is no basis for the Court to equitably toll the statute of limitations here.

[8] The CFPB's authorities have no application here.  *Johnson v. United States* dealt solely with the phrase "facts supporting the claim or claims" in 28 U.S.C. § 2255.  *See* 544 U.S. 295, 304–05 (2005).  And *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.* held only that 29 U.S.C. § 1451 does not start the limitations period before an alleged violation of the statute occurs.  522 U.S. 192, 201–02 (1997); *see also Csi Inv. Partners II, L.P. v. Cendant Corp.*, 180 F. Supp. 2d 444, 460 (S.D.N.Y. 2000) (noting that *Bay Area Laundry* "merely shows that a cause of action does not arise until the defendant does some wrongful act").

As a fallback, the CFPB argues that even if the claims accrued before 2017, "equity" should intervene to toll the statute of limitations until after the Supreme Court decided *Seila Law*.  Opp. Br. at 11–12.  But there is no equitable exception for a party that has acted without legal authority. Indeed, the equities weigh heavily ***against*** the CFPB, after years of prosecuting this case unconstitutionally to the detriment of the Trusts and the Intervenors.  *See Doe Co. v. Cordray*, 849 F.3d 1129, 1137 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("[T]he equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency.").  This included an extended period during which the CFPB knowingly orchestrated and then defended an improper "consent" judgment that, if the CFPB had succeeded, would have decimated the Trusts and extinguished the Intervenors' rights.  Incredibly, the CFPB persisted in this course knowing full well that its proposed order had been concealed from Ambac, whose consent the CFPB admitted was required yet not obtained, D.I. 272 at 11–12—and even after the Owner Trustee advised the CFPB of the proposed order's various improprieties, D.I. 238 at 23 n.26.  The CFPB's inequitable conduct throughout this proceeding bars it from now availing itself of equitable tolling.  *See Bishop v. Bishop*, 257 F.2d 495, 500 (3d Cir. 1958) ("the doors of a court of equity" are closed "to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

Regardless, the doctrine has no application here.  Equitable tolling is to be used "only sparingly," *United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005), typically in one of three "very narrow" circumstances, none of which is present here:  (1) "where the defendant has actively misled the plaintiff"; (2) "where the plaintiff in some extraordinary way has been prevented from asserting . . . her rights"; or (3) "where the plaintiff has timely asserted . . . her rights mistakenly in the wrong forum," *e.g.*, *D.J.S.-W. v. United States*, 962 F.3d 745, 750 (3d Cir. 2020).  The CFPB appears to invoke the second scenario, claiming "some extraordinary circumstance prevented

timely filing." Opp. Br. at 11.[9] But the Third Circuit has admonished this scenario applies "only where the circumstances that caused a litigant's delay are both extraordinary **and** beyond [its] control." *D.J.S.-W.*, 962 F.3d at 752.

Here, the CFPB cannot show that the circumstances were beyond its control. The CFPB had ample opportunity to obtain a timely ratification of this action from Acting Director Mick Mulvaney—who purportedly was removable without cause by virtue of his "acting" status—just as it did to avoid constitutional challenges in other cases. *See, e.g.*, *RD Legal Funding, LLC*, 332 F. Supp. 3d at 784. The CFPB's failure to do so belies its claims of uncontrollable circumstances and diligence. *See Weis-buy Servs., Inc. v. Paglia*, 411 F.3d 415, 424 (3d Cir. 2005) (equitable tolling unavailable where parties "sat on their hands" and failed to protect their interests).

Moreover, the determination of the CFPB's unconstitutionality is hardly a matter that was beyond its own control. To the contrary, the CFPB advocated **for** the declaration of its own unconstitutionality that emerged from *Seila Law*. *See* Resp. Br., *Seila Law*, 2019 WL 4528136, at *16, *20 (Sept. 17, 2017) ("[T]he Court should hold that the removal restriction in 12 U.S.C. § 5491(c)(3) impermissibly infringes the separation of powers fundamental to our constitutional structure."). Having received the ruling it requested, the CFPB cannot now complain that the consequences of *Seila Law* were unfair or beyond its control. *See Atiyeh*, 402 F.3d at 367 ("no convincing rationale" to apply equitable tolling where the defendant "did not 'induce' the Government's current situation").

Finally, the CFPB say tolling would not visit an "injustice" upon the Trusts or the Intervenors. Opp. Br. at 11–12. That is not relevant under the applicable standard, and it is plainly

---

[9] The CFPB's citation to *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 nn.3–4 (1990) is unavailing because the cases cited in those footnotes involve circumstances not present here, i.e., the plaintiff had been misled by the defendant or filed in an incorrect forum.

wrong.  Allowing the CFPB to proceed would force the Trusts and the Intervenors to spend ever more time and resources defending against the CFPB's improper and time-barred allegations. Such an outcome would be manifestly unjust, and the Court should not allow it.

## III.    THE TRUSTS ARE NOT COVERED PERSONS UNDER THE CFPA

### A.    The CFPB Cannot Evade the CFPA's Jurisdictional Requirements

The CFPB contends that jurisdiction in this matter is based on the general federal jurisdictional statutes of 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 12 U.S.C. § 5564(a), (f).  Opp. Br. at 13.  But each of these statutes further requires an alleged violation of federal law—and the only violation the complaint alleges is a breach of the CFPA's UDAAP prohibitions.  Therefore, to the extent that federal jurisdiction exists, it must be premised on the CFPA, and the Trusts must qualify as "covered persons" under that Act.  Regardless of whether this issue is analyzed through the lens of Rule 12(b)(1) or 12(b)(6), the CFPB has not met its pleading burden.

Alternatively, the CFPB points to lawsuits involving the Trusts and notes that under the Delaware Statutory Trust Act, the Trusts can sue and be sued.  Opp. Br. at 19.  This is irrelevant to the question at hand, which is not whether the Trusts can *ever* be named as defendants in *any* action, but whether the Trusts are "covered persons" under the CFPA and therefore proper defendants in *this* enforcement action brought by an agency with statutorily limited powers.  They are not.

### B.    The Trusts Are Not Covered Persons

Congress expressly limited the CFPB's enforcement authority for UDAAP violations to a "covered person" that engaged in a UDAAP "in connection with any transaction *with a consumer* for a consumer financial product or service, or the offering of a consumer financial

product or service." 12 U.S.C. § 5531(a) (emphasis added).[10]  The term "covered person" is defined to include any company that "engages in offering or providing a consumer financial product or service." *Id.* § 5481(6)(A).  Accordingly, the complaint must plausibly allege that the Trusts offered or provided one of twelve delineated consumer financial products or services and therefore qualified as "covered persons."  The complaint fails to do so, and the CFPB's attempt to backfill it with unpled theories is unavailing.

### 1.  The Trusts Do Not Service Loans or Collect Debt

First, the Trusts are not covered persons because they do not offer a "financial product or service," which is defined in pertinent part as "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions)" and "collecting debt." *Id.* § 5481(15)(A)(i), (x).  This product or service must be "delivered, offered, or provided in connection with a consumer financial product or service."  *Id.* § 5481(5)(B).

The CFPB argues that the Trusts themselves participate in the collection and servicing of loans, but this claim is belied by its own pleading, which states that those activities are all conducted by third parties.  *Compare* Opp. Br. at 17–19, *with* Compl. ¶¶ 12, 18–20.  *CFPB v. ITT Educational Services, Inc.* is instructive:  there, the court ruled that the CFPB had not sufficiently pled that the defendant, an educational institute, extended credit where the loans were offered through third-parties.  219 F. Supp. 3d 878, 909 (S.D. Ind. 2015).  Likewise, here, "***all actions*** relating to the administration of the Trusts, ***servicing of the student loans***, ***and collecting debt*** are carried out by [third parties]."  Compl. ¶ 12 (emphases added).

---

[10] The CFPA also applies to certain "service providers" and "related persons" of covered persons, but the CFPB have not alleged that the Trusts qualify as either.

Nor can the CFPB seek to manufacture a claim through a vicarious liability theory not authorized by the CFPA.[11]   The CFPA specifically enumerates the "related parties" of covered persons that can be subject to the CFPB's enforcement authority by virtue of their relationship to a "covered person."   Notably, the CFPA explicitly permits enforcement against "directors" and "agents" of "covered persons," but does ***not*** list "principals" among qualifying "related parties." 12 U.S.C. § 5481(25)(C)(i); *see Ray v. Kertes*, 285 F.3d 287, 296 (3d Cir. 2002) ("[W]hen a statute specifically enumerates some categories, it impliedly excludes others.").   Given this omission, the CFPB has no authority to pursue vicarious liability against the Trusts, purportedly as "principals," for the conduct of third-party covered persons allegedly acting as their "agents."   *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (individuals who do not qualify as debt collectors under the FDCPA cannot be held vicariously liable under that statute).

2.    The Trusts Do Not "Engage" in Offering or Providing Consumer Products or Services

Second, the Trusts are not proper defendants because a covered person is one that "engages in offering or providing a consumer financial product or service."   12 U.S.C. § 5481(6)(A).   As Intervenors have shown, a plain reading of the statute confirms that the Trusts must ***engage*** in one of the activities identified above.   Open. Br. at 17–18.

The CFPB rejects this dictionary definition, while failing to offer one of its own.   But the definition proposed by the Intervenors is consistent with interpretations from other courts—and,

---

[11]  Contrary to the CFPB's claims, the Intervenors' arguments are not inconsistent with the governing agreements.   Nothing in the Trust Related Agreements—not even the CFPB's cherry-picked excerpts—states or implies that subservicers like TSI qualify as the Trusts' agents.   For example, the CFPB quotes selectively from the Trust Agreement for the proposition that "agents selected in accordance with this Agreement will act on behalf of the Trust."  Opp. Br. at 21.   This provision, quoted in full, makes clear that the "agents" it refers to are "subject to direction by the Trusts' Owners," which is clearly not the case here.   *See* Decl. of Erik Haas dated July 10, 2020 ("Haas Decl."), Ex. 7, NCSLT 2006-4 Trust Agreement § 2.03(b)(i).

indeed, with the CFPB's *own* reading of the language elsewhere.  In 2015, the CFPB advocated for, and the Court embraced, the definition of "engage" that the CFPB now rejects.  *See ITT Educ. Servs., Inc.*, 219 F. Supp. 3d at 908 (quoting *United States v. Graham*, 305 F.3d 1094, 1102 (10th Cir. 2002)) (stating that within the context of the CFPA, the word "engage" means "to occupy or involve oneself; take part; be active").  As passive securitization vehicles, the Trusts cannot and do not "engage" in offering or providing any services at all.

### 3. The Trusts Do Not Acquire or Purchase Loans Within the Meaning of the CFPA

Finally, lacking any legitimate basis to claim that the Trusts engage in servicing loans or debt collection, the CFPB introduces a new theory:  that each Trust is a "covered person" that engaged in offering a consumer service or product by acquiring a pool of loans over a decade ago from a Depositor, another special purpose vehicle, to enable the securitization of the loans.[12]  To fall within the CFPB's statutory mandate, a UDAAP violation requires "a transaction with a consumer" entailing the provision of "a consumer financial product or service."  12 U.S.C. § 5531. But here, each pool was purchased from a Depositor *solely* to facilitate the securitization; these were not transactions with a consumer, and involved no consumer interaction whatsoever.[13]  And the CFPB's attempt to bootstrap that transaction to its jurisdictional reach belies the CFPB's claim that it does not seek to "address any 'securities activities'" here.  Opp. Br. at 23.

In any event, the long-ago acquisition of a pool of loans does not show any Trust "engages" in a consumer transaction under the CFPA.  Congress's use of the present tense "engages" indicates

---

[12] *See* Haas Decl. Ex. 7, Trust Agreement § 2.03(a)(i); NCSLT 2006-3 Deposit and Sale Agreement, *available at* https://www.sec.gov/Archives/edgar/data/1223029/000088237706003526/p06 -1554ex99_6.htm.  The Court can take judicial notice of this public disclosure to the SEC. *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

[13] Indeed, the acquisition of loans, outside of the context of loan servicing, was not even pled as a theory of jurisdiction in the complaint.  *See* Compl. ¶ 61.

this provision does not apply to actions completed before the CFPB was even created. *Carr v. United States*, 560 U.S. 438, 447–49 (2010) (Congress's "choice of verb tense" informs "a statute's temporal reach" and the "present tense generally does not include the past."); *United States v. Jackson*, 480 F.3d 1014, 1018–19 (9th Cir. 2007) ("the use of the present tense" indicates Congress did not intend to cover acts that occurred "before the enactment of the statute"). By premising their enforcement powers on these purchases, the CFPB underscores how removed the Trusts are from the alleged wrongdoing—all of which concerns servicing and collection practices.

Moreover, by claiming the Trusts qualify as "covered persons" because they "acquire, purchase, and service loans, and collect debts," Opp. Br. at 2, the CFPB disregards the plain language of the statute, which defines the relevant financial service or product as: "extending credit and servicing loans, ***including*** acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions)." 12 U.S.C. § 5481(15)(A)(i) (emphasis added). Thus, read in context, the words "acquiring" and "purchasing" describe aspects of "servicing loans," and thus must relate to and include servicing activities.[14] This is consistent with the complaint, which alleges that the Trusts are covered persons because they "engaged in 'servicing loans, including acquiring, purchasing, selling [or] brokering' and in the collection of debt." Compl. ¶ 8. It is also consistent with the CFPB's theory of the case, which has only ever dealt with debt collection and loan servicing practices. The CFPB's distortion of the statutory language should be rejected.

## IV.   **THE COMPLAINT LACKS FACTS SUPPORTING VICARIOUS LIABILITY**

It is undisputed that the Trusts played no role in the alleged UDAAP violations. They are

---

[14] To the extent that "acquiring, purchasing . . ." may also modify "extending credit," they are inapplicable here, as the CFPB has not alleged that the Trusts extend credit. *See* Compl. ¶ 8.

not alleged to have dealt directly with consumers, or with the subservicers who did.  The CFPB's

UDAAP claims and its argument for Article III standing therefore rest entirely on vicarious

liability.  But to get there, the CFPB simply assumes the conclusion that the Trusts exercised (or

had the ability to exercise) control over the servicers' conduct.  The complaint does not contain a

single allegation to support this premise.  So the CFPB now conjures a theory of "apparent

authority" that is incompatible with its complaint, the governing agreements, and the law.

### A.     There Are No Allegations to Support the Existence of an Agency Relationship Between the Trusts and Servicers

To hold a principal liable for the acts of an agent, a plaintiff must show that the principal

has control or the right to direct the conduct of the agent.  *Meyer v. Holley*, 537 U.S. 280, 285–86

(2003).  The CFPB claims, without support, that control is not a required element.  Opp. Br. at 25.

The relevant state and federal law has uniformly held the opposite.  *See* Open. Br. at 22–24;

*Covington v. Int'l Ass'n of Approved Basketball Offs*., 710 F.3d 114, 120 (3d Cir. 2013).[15]

The CFPB next claims that the Special Servicing Agreement's ("SSA") identification of

the special servicer as an independent contractor—and likewise, the subservicing agreement's

identification of subservicers as "independent contractors" of the special servicer—does not

disqualify them as agents of the Trusts.  To be sure, some independent contractors can also qualify

as agents, but ***only*** if the principal retains continuous control over their activities.  *Compare Fisher*

*v. Townsends, Inc.*, 695 A.2d 53, 61 (Del. 1997) (if the principal "dominates the manner or means

of the work performed, the non-agent status of the independent contractor can be destroyed and

the independent contractor becomes an agent"), *with Brown v. Interbay Funding LLC*, 2004 WL

---

[15] The CFPB appears to confuse apparent and actual authority, which are two separate and distinct theories of liability that courts have addressed and examined separately.  *See* Restatement (Third) of Agency § 2.01 cmt. f (2006).  Neither doctrine supports its arguments.

2579596, at *3 (D. Del. Nov. 8, 2004) (agreement demonstrated that the principal was "not in control of the process" and thus the purported agent was acting as an independent contractor); Restatement (Second) of Agency § 1 cmt. b (1958) ("[I]t is the element of continuous subjection to the will of the principal which distinguishes . . . the agency agreement from other agreements."). Absent this level of control, "an entity [that] contracts to perform a service for another is merely an independent contractor." *Brown*, 2004 WL 2579596, at *3.[16] Here, the CFPB has failed to allege *any* facts identifying "the necessary occurrences and reasons that [defendant] controlled" the subservicers, as required to plead an agency relationship. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003).

## B.   There Are No Allegations to Support the Existence of Apparent Authority

Confronted with the deficiencies in its pleadings, the CFPB now pivots to an "apparent authority" theory of agency unmentioned in its complaint.  This theory fares no better.

"Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Covington*, 710 F.3d at 120 (citation omitted).  Critically, the doctrine looks to ***the actions of the principal,*** not the agent, and applies only "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency § 2.03 & cmt. c (2006); *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (apparent authority requires "proof of something said or done by the [alleged principal]").

---

[16] Notably, outside of a single footnote, the CFPB has not addressed the provisions of the SSA that describe the Special Servicer as an "independent contractor" that is not subject to the Trusts' supervision.  *See* Haas Decl. Ex. 2, SSA §§ 2(B), 4, 8(A).  And while the CFPB suggests that other Trust Agreements could be offered to litigate the issue of agency, Opp. Br. at 24 n.15, it has not identified any specific agreement that does so, and none exists.

Here, the CFPB's failure to plead that ***the Trusts*** made any such outward manifestations to consumers renders this theory deficient as a matter of law.  *See Truinject Corp. v. Nestle Skin Health, S.A.*, 2019 WL 6828984, at *10 (D. Del. Dec. 13, 2019) (dismissing claim of apparent authority where the complaint did not "allege any manifestations" by the defendant); *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 255 (S.D.N.Y. 2014) ("[t]o plead apparent authority, the Complaint must contain allegations that [defendant's] statement or interactions" with third-parties gave rise to a belief of apparent authority).  Instead, the complaint alleges the Trusts contracted with a Special Servicer for servicing, which contracted with TSI to perform special servicing under the contract in the event that the original Special Servicer resigned, and which in turn retained law firms for the purpose of debt collection.  Compl. ¶¶ 12–13, 21.  Such allegations are far too attenuated to state a plausible theory of apparent authority.  *See Kline v. Elite Med. Labs., Inc.*, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) (dismissing federal consumer protection claim based on apparent authority where plaintiff had not alleged sufficient facts to show that the defendant took any action to create a belief in the agent's authority); *see also* Restatement (Third) of Agency § 3.03 cmt. b ("The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation.").[17]  For the same reasons, the CFPB's conclusory allegation that the servicers are the "agents" of the Trusts is also insufficient to satisfy the traceability requirement of Article III standing.  Open. Br. at 21–22.

---

[17] The authorities cited by the CFPB do not refute this principle.  For instance, in *FTC v. Stefanchik*, the allegedly deceptive marketing materials were subject to the principal's review.  559 F.3d 924, 927–28 (9th Cir. 2009).  Similarly, in *FTC v. Inc21.com Corp.*, the court found apparent authority where the principal "orchestrated" the "overall scheme and set in motion an army of telemarketers who committed fraud."  688 F. Supp. 2d 927, 939 (N.D. Cal. 2010).

## V.      **THE CFPB'S CLAIMS ARE TIME-BARRED**

As the Intervenors have shown, the statute of limitations began to run on the date when the CFPB discovered or reasonably should have discovered the alleged UDAAP "violations."  Open. Br. at 25-26; 12 U.S.C. § 5564(g)(1).  The CFPA defines "violation" as "any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law."  12 U.S.C. § 5561(5).  Here, the "acts" alleged in the complaint are the filing of purportedly deceptive or unfair collections lawsuits and the proffering of purportedly false testimony in connection with those lawsuits.  Compl. ¶¶ 62–93.  The statute of limitations thus began to run when the CFPB discovered, or reasonably should have discovered, potential concerns with such lawsuits and testimony.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury."); *Aurandt v. Brown*, 2017 WL 1215451, at *4 (W.D. Pa. Mar. 31, 2017) (explaining, in connection with RICO claim predicated on unlawful debt collection practices, that "statute of limitations began to run when Defendants attempted to collect on the debt").

Although the CFPB incorrectly contends that accrual under the CFPA is triggered by actual, not constructive, discovery,[18] this is a red herring.  The CIDs the CFPB issued on September

---

[18] *See Merck & Co. v. Reynolds*, 559 U.S. 633, 645–48 (2010) (recognizing the reference to "discovery" in a statute of limitations typically includes not only "actual discovery," but also "the hypothetical discovery of facts a reasonably diligent plaintiff would know").  Indeed, the U.S. Code is replete with statutory provisions that have been held to apply a constructive discovery standard, even where the statute simply references "discovery," without expressly incorporating language concerning constructive discovery.  *See, e.g., id.* at 637 (28 U.S.C. § 1658(b)(1)); *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996) (29 U.S.C. § 1113); *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 502 (6th Cir. 1998) (19 U.S.C. § 1621).  By contrast, the statute of limitations at issue in *Gabelli*, cited by the CFPB, does ***not*** use the term "discovery."  *See* 568 U.S. at 444–45 (limitations period under 28 U.S.C. § 2462 begins to run "from the date when the claim first accrued").  Nor is the CFPB aided by *Badaracco v. Commissioner*, which

4, 2014—which demanded the Trusts provide interrogatory responses and documents regarding, *inter alia*, student loan documents that had been lost or destroyed, the timing of collections lawsuits, and sworn testimony proffered in support of such lawsuits—make clear that the CFPB had ***actually discovered*** these "acts" underlying its UDAAP claims by that date. Haas Decl. Ex. 3 at WTC_CFPB_00000105, 113–117. Accordingly, the CFPB was required to file suit no later than three years from that date. 12 U.S.C. § 5564(g)(1). Its failure to do so means that the alleged violations relating to these acts are time-barred. Open. Br. at 25–27.

The CFPB's rejoinder is unconvincing. First, it says the Court cannot consider timeliness at the Rule 12 stage because the allegations in the complaint purportedly do not reveal when the limitations period began to run. Opp. Br. at 27–28. But, as the CFPB concedes, the Court may also consider evidence in the record, *see id.* at 20 n.10; *Neuchatel Ins. v. ADT Sec. Sys., Inc.*, 1997 WL 539687, at *4–5 (E.D. Pa. Aug. 11, 1997). The record here includes the CIDs, which demonstrate discovery—and thus accrual—by September 2014. Open. Br. at 15 n.13, 26 n.22.

Second, the CFPB contends that the statute of limitations did not begin to run until it had discovered "all necessary elements of the violations underlying its claims." Opp. Br. at 29–30. That is simply not the law.[19] "The discovery rule ***does not*** delay the running of the statute of limitations until a plaintiff is aware of all of the facts necessary to bring its cause of action." *New*

---

solely concerned the limitations period for when the government could assess federal income taxes. 464 U.S. 386, 388, 392 (1984).

[19] The decisions the CFPB cites deal with securities fraud claims, which are subject to a heightened pleading standard not applicable here. *See Merck*, 559 U.S. at 648–49; *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 273, 275 (3d Cir. 2013) (noting that *Merck* "specifically referenced pleading requirements when discussing the limitations trigger," and explaining that "it is logical to link the statute of limitations standard with the pleading standard"). Moreover, *Merck* expressly declined to address whether facts concerning other necessary elements beyond scienter must be discovered before the limitations period in 28 U.S.C. § 1658(b)(1) accrues. 559 U.S. at 649.

*Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997) (emphasis added). Rather, "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver*, 38 F.3d at 1386; *id.* at 1390–91 (plaintiff's lack of knowledge "regarding the underlying motive behind her discharge is irrelevant for purposes of the discovery rule"); *see also Kubrick*, 444 U.S. at 123 (limitations period begins running on date plaintiff becomes aware of injury, even if plaintiff does not yet know injury may have resulted from negligence). It is therefore immaterial that the CFPB did not have a fully developed factual record of the alleged UDAAP claims by September 2014; the limitations period was triggered because, as the CIDs reflect, the CFPB had already identified and begun investigating its concerns regarding missing loan documents, collections lawsuits, and dubious affidavits. *See, e.g.*, *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985) (accrual is triggered once claimant "possess[es] sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.").

Accordingly, the CFPB discovered the "acts" giving rise to its causes of action no later than the date when the CIDs were issued. It then had three full years from that date to build its case. Yet instead of conducting a bona fide investigation and timely filing a complaint, it chose to spend months collaborating with the Trusts' residual equity holders on an unauthorized "consent" judgment. Having squandered that time during the limitations period, the CFPB cannot now resuscitate its claims by rewriting settled statute-of-limitations principles.

## CONCLUSION

For the foregoing reasons and those set forth in the Intervenors' opening brief, the complaint should be dismissed with prejudice.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Melissa N. Donimirski*
Kurt M. Heyman (No. 3054)
Melissa N. Donimirski (No. 4701)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
kheyman@hegh.law
mdonimirski@hegh.law

OF COUNSEL:

PATTERSON BELKNAP WEBB & TYLER LLP
Erik Haas
Peter W. Tomlinson
Joshua Kipnees
George A. LoBiondo
Jared S. Buszin
Devon Hercher
Peter Shakro
1133 Avenue of the Americas
New York, NY 10036

*Attorneys for Ambac Assurance Corporation*

STEVENS & LEE, P.C.

*/s/ Stacey A. Scrivani*
Stacey A. Scrivani (No. 6129)
919 Market Street, Suite 1300
Wilmington, DE 19801
(302) 425-3306
sasc@stevenslee.com
eaw@stevenslee.com

OF COUNSEL:

STEVENS & LEE, P.C.
Nicholas H. Pennington
620 Freedom Business Center, Ste 200
King of Prussia, PA 19406
(610) 205-6352
nhp@stevenslee.com

*Attorneys for Pennsylvania Higher Education Assistance Agency d/b/a American Education Services.*

BAYARD, P.A.

*/s/ Elizabeth A. Powers*
Stephen B. Brauerman (No. 4952)
Elizabeth A. Powers (No. 5522)
600 N. King Street, Suite 400
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
epowers@bayardlaw.com

*Attorneys for Wilmington Trust Company*

Dated:  August 28, 2020