IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) |
| Plaintiff, | ) ) ) C.A. No. 17-1323 (MN) |
| v. | ) ) |
| THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST et al., | ) ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION

Gabriel S.H. Hopkins, Jane M.E. Peterson, Stephen C. Jacques, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, DC. *Attorneys for Plaintiff.*

Kurt M. Heyman and Melissa N. Donimirski, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; Erik W. Haas, Peter W. Tomlinson, Joshua Kipnees, George A. LoBiondo, Jared Buszin, Devon Hercher, and Peter Shakro, PATTERSON BELKNAP WEBB & TYLER LLP, New York, NY. *Attorneys for Intervenor Ambac Assurance Corporation.*

Stacey A. Scrivani, STEVENS & LEE, P.C., Wilmington, DE; Nicholas H. Pennington, STEVENS & LEE, P.C., King of Prussia, PA; . *Attorneys for Intervenor The Pennsylvania Higher Education Assistance Agency.*

Stephen B. Brauerman, Jason C. Jowers, and Elizabeth A. Powers, BAYARD, P.A., Wilmington, DE. *Attorneys for Intervenor Wilmington Trust Company.*

Daniel A. O'Brien, VENABLE LLP, Wilmington, DE; Allyson B. Baker, Meredith L. Boylan, Sameer P. Sheikh, and Tiffany C. Williams, VENABLE LLP, Washington, DC. *Attorneys for Transworld Systems Inc.*

March 26, 2021
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**

In September 2017, Plaintiff Consumer Financial Protection Bureau ("the Bureau") filed a complaint against fifteen Delaware statutory trusts referred to collectively as The National Collegiate Student Loan Trusts ("the Trusts" or "Defendants") for violations of the Consumer Financial Protection Act 12 U.S.C. § 5536(a)(1)(B). (D.I. 1). For several years, the Trusts were without representation in this action, but as of February 10, 2021, all Trusts are represented. (*See* D.I. 80; D.I. 347, D.I. 350). Several entities that either provide services on behalf of the Trusts or have a financial interest connected to the student loans held by the Trusts have intervened in this action. (D.I. 96).

Currently pending before the Court are two motions filed by a subset of those intervenors, specifically a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by Intervenor Transworld Systems, Inc. ("TSI") (D.I. 242) and a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Intervenors Ambac Assurance Corporation, Pennsylvania Higher Education Assistance Agency, and Wilmington Trust Company (collectively, "Ambac," and with TSI, "Movants") (D.I. 300).[1] Also pending before the Court is the Bureau's application for entry of default pursuant to Rule 55(a), which Ambac, Wilmington Trust and the Trusts opposed. (D.I. 295; D.I. 296; D.I. 307). The Trusts have also joined the motions to dismiss and oppose entry of default. (D.I. 354). For the following reasons, TSI's motion to dismiss is denied,

---

[1] The motions have been fully briefed (*see* D.I. 243, D.I. 319, 323 for TSI's motion and D.I. 301, D.I. 302, D.I. 325, D.I. 326, D.I. 328, D.I. 330, D.I. 331, D.I. 332, D.I. 333, D.I. 335, D.I. 336 for Ambac's motion) and the Court heard argument on January 26, 2021 (*see* D.I. 356). After the argument, Ambac and the Bureau submitted additional letters. (D.I. 348, D.I. 351, D.I. 353, D.I. 357, D.I. 358). The Court has considered all of the submissions and argument.

Ambac's motion to dismiss is granted, and the Bureau's request for entry of default is denied as moot.

I. **BACKGROUND**

As set forth in the Court's earlier opinions, the Trusts were created between 2001 and 2007 pursuant to the Delaware Statutory Trust Act, 12 Del. Code § 3801, *et. seq.*, to acquire private student loans, collect payments from borrowers, and distribute gains to the holders of notes. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Trust*, No. 17-cv-1323 (MN), 2020 WL 2915759, at *1 (D. Del. May 31, 2020); *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Trust*, No. 17-cv-1323 (MN), 2018 WL 5095666, at *1 (D. Del. Oct. 19, 2018); The Trusts have no employees or internal management and rely on certain trust-related agreements to provide their operating structure. The basic purpose of each Trust is to acquire a pool of student loans, issue notes secured by the pools of student loans, and provide for the servicing and collection of those student loans. (D.I. 1 ¶ 10).

On September 4, 2014, the Bureau issued a civil investigative demand ("CID") to each of the Trusts for information concerning collections lawsuits brought against borrowers based on defaulted student loans. (D.I. 301 at 3). On May 9, 2016, the Bureau sent a Notice and Opportunity to Respond and Advise ("NORA") to the Trusts stating that the Bureau was considering initiating enforcement proceedings against the Trusts based on the collections lawsuits.[2] (*Id.*). A few weeks later, the Bureau received a NORA response from the McCarter & English firm ("McCarter") purporting to represent the Trusts. (*Id.*). Thereafter, McCarter and the Bureau negotiated a Proposed Consent Judgment to resolve the Bureau's investigation of the Trusts. (*Id.*).

---

[2] Neither the contents of the CID and NORA nor the fact of their issuance are alleged in the complaint. Therefore, the Court did not consider them in rendering this decision.

On September 18, 2017, the Bureau filed this enforcement action against the Trusts along with a Motion to Approve the Proposed Consent Judgment. (D.I. 1; D.I. 3). After limited discovery, on May 31, 2020, the Court denied the Motion to Approve the Proposed Consent Judgment, concluding that McCarter was not authorized to execute the Proposed Consent Judgment. (D.I. 272). As a result, the Bureau has had to proceed with litigating this case along a more typical route.

On June 29, 2020, the United States Supreme Court issued its opinion in *Seila Law* holding that the Bureau's structure – *i.e.*, leadership by a single director that could be removed by the President only for inefficiency, neglect, or malfeasance, and not at will – violated the Constitution's separation of powers. *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2197 (June 29, 2020). Ambac relies on *Seila Law* to argue that the complaint should be dismissed. (D.I. 301 at 10).

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

"If the court determines . . . it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Motions brought under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a facial or factual challenge to the court's jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citations omitted). A challenge is facial when a motion to dismiss is filed prior to an answer and thereby asserts that the complaint, on its face, is jurisdictionally deficient. *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. *Lincoln*, 800 F.3d at 105 ("'In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached

thereto, in the light most favorable to the plaintiff.'") (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). The party asserting that federal jurisdiction exists has the burden of establishing subject matter jurisdiction. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555-56. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable

inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988).

### III. DISCUSSION

Movants have asserted multiple grounds for dismissal, but the Court need only address two: (i) whether the Court has subject matter jurisdiction to decide this case; and (ii) whether the Bureau has the enforcement authority to prosecute this case.

#### A. Subject Matter Jurisdiction

Movants ask the Court to dismiss this action under Rule 12(b)(1) because the Trusts are not "covered persons" as required by the Consumer Financial Protection Act of 2010 ("CFPA"). (D.I. 243 at 4; D.I. 301 at 16). The complaint asserts five claims based on 12 U.S.C. §§ 5531 and 5536(a)(1)(B). (D.I. 1 ¶¶ 62-93). Section 5536(a)(1)(B) makes it unlawful "for any covered person or service provider to engage in any unfair, deceptive, or abusive act or practice." Section 5531 gives the Bureau authority to "prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice." Thus, the CFPA requires that the defendant be either a "service provider" or "covered person." The Bureau is proceeding on the theory that the Trusts are covered persons. (D.I. 1 ¶ 8). A "covered person" is:

> (A) any person that engages in offering or providing a consumer financial product or service; and
>
> (B) any affiliate of a person described in subparagraph (A) if such affiliate acts as a service provider to such person.

5

12 U.S.C. § 5481(6).[3]

The CFPA defines "consumer financial produce or service" as any one of eleven types of products or services. 12 U.S.C. §§ 5481(5) & (15). Here, the Bureau argues that subparts (i) and (x) apply. These subparts state that a "covered" person is one who engages in:

> (i) extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions); or
>
> (x) collecting debt related to any consumer financial product or service.

12 U.S.C. § 5481(15)(A)(i), (x); D.I. 1 ¶ 8.

Movants primarily argue that the Trusts cannot be covered persons because they are paper entities without management or employees; therefore, the Trusts cannot engage in any activity. (D.I. 301 at 17-19; D.I. 323 at 5-6). Although the Court harbors some doubt that the Trusts are "covered persons" under the plain language of the statute, it does not agree that whether the Trusts are "covered persons" is a jurisdictional requirement.

To determine whether a restriction, such as the term "covered persons," is jurisdictional, the Court looks to "whether Congress has clearly stated that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). As the Supreme Court has explained, this is a "readily administrable bright line" rule. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 172 (2010). "[A]bsent such a clear statement," courts "should treat the restriction as nonjurisdictional." *Sebelius*, 568 U.S. at 153.

---

[3] The Bureau is proceeding under the "any person" prong, not the "any affiliate" prong, which requires that the person offer or provide "a consumer financial product or service." (D.I. 1 ¶ 8).

The sole section of the CFPA addressing subject matter jurisdiction is 12 U.S.C. § 5565(a)(1), which grants jurisdiction over "an action or adjudication proceeding brought under Federal consumer financial law." Section 5565 nowhere mentions the term "covered persons." Compare this to 28 U.S.C. § 1132, where the $75,000 amount in controversy requirement is clearly understood to be jurisdictional, because the statute explicitly states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000." Accordingly, there is no clear statement in the CFPA's jurisdictional grant that "covered persons" is required.

Looking at this from the other direction, the term "covered persons" appears throughout the CFPA, including in the definitions, *see* 12 U.S.C. § 5481(6)(A), the section identifying unlawful acts, *see* 12 U.S.C. § 5536(a)(1)(B), and the section granting the Bureau's authority, *see* 12 U.S.C. § 5536(a). But in none of those sections using the term "covered persons" is there any mention of jurisdiction. Compare this to Title VII of the Civil Rights Act of 1964, which makes it unlawful for "an employer . . . to discriminate against any [employee] with respect to . . . sex," 42 U.S.C. § 2000e–2(a)(1), and defines "employer" as "a person . . . who has fifteen or more employees," § 2000e(b). In *Arbaugh v. Y&H Corp.*, the Supreme Court rejected defendants' argument that the 15–employee threshold was jurisdictional because it did not appear in Title VII's jurisdictional provisional and instead "appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" 546 U.S. 500, 515 (2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). That reasoning applies here as well.

Movants argue that "covered persons" is jurisdictional because the CFPA grants jurisdiction only over "proceedings brought under Federal consumer financial law." (D.I. 323 at

4; *see also* 12 U.S.C. § 5565(a)(1)). Stated differently, Movants essentially contend that the Court does not have subject matter jurisdiction unless the Bureau has stated a claim for a violation of Federal consumer financial law. Movants' proposed test for subject matter jurisdiction is contrary to the "readily administrable bright line" rule prescribed by the Supreme Court. *See Reed*, 559 U.S. at 172. Accordingly, the Court concludes that the term "covered persons" is not jurisdictional.

Movants present no other challenges to subject matter jurisdiction. The Court concludes that it has subject matter jurisdiction over this action based on 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 12 U.S.C. § 5565(a)(1).[4] Movants' motions to dismiss for lack of subject matter jurisdiction is denied.

### B. Enforcement Authority

As noted above, in *Seila Law*, the Supreme Court held that the structure of the Bureau, which included a restriction on the removal of the single independent director, violated the separation of powers. *Seila Law*, 140 S.Ct. at 2192, 2197. The Supreme Court severed the removal restriction, and remanded to the lower courts to determine in the first instance the appropriate remedy. Specifically, the lower courts were to determine what to do about a petition to enforce a CID that the Bureau had filed while its structure was unconstitutional. *Id*. at 2208, 2211. Could

---

[4] Section 1331 gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Where federal law creates the cause of action, as the CFPA does here, the cause of action arises under federal law. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Section 1345 gives Federal district courts "original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The Bureau is identified as an "executive agency" in 12 U.S.C. § 5491(a) and expressly authorized to commence a civil action in 12 U.S.C. § 5564(a). Finally, the Court has jurisdiction over the Bureau's claims under 12 U.S.C. § 5565(a)(1) because a proceeding asserting claims based on a violation of the CFPA is a proceeding "brought under Federal consumer financial law."

the CID still be enforced because the act was effectively ratified by a director removable at will? *Id*. If not, then the petition had to be dismissed. *Id*. at 2208.

Here, there is no question that the Bureau initiated this action against the Trusts at a time when its structure violated the Constitution's separation of powers. Thus, the Court must determine whether that defect has been cured by ratification or whether dismissal is required. Under Third Circuit precedent, there are three general requirements for "[r]atification of previously unauthorized agency action": (1) "the ratifier must, at the time of ratification, still have the authority to take the action to be ratified"; (2) "the ratifier must have full knowledge of the decision to be ratified"; and (3) "the ratifier must make a detached and considered affirmation of the earlier decision." *Advanced Disposal Serv. E., Inc. v. Nat'l Labor Relations Bd.*, 820 F.3d 592, 602 (3d Cir. 2016). The dispute here concerns the first requirement. (D.I. 301 at 12-16).

Under the first requirement, "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, ***but also at the time the ratification was made.***" *Advanced Disposal*, 820 F.3d at 603 (quoting *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994) (emphasis in original)). Movants contend that the Bureau no longer had the power to ratify this action, because the ratification occurred after the statute of limitations had run on the claims. (D.I. 301 at 14). And ratification is, in general, not effective when it takes place after the statute of limitations has expired. *See Benjamin v. V.I. Port Authority*, 684 F. App'x 207, 212 (3d Cir. 2017) (affirming dismissal because ratification "beyond the statute of limitations" was "too late to be effective"); *Advanced Disposal*, 820 F.3d at 604 (holding that ratification was effective because no statutory limitation prevented the director from re-running the Union election at the time he ratified it).

9

Under the CFPA, "[e]xcept as otherwise permitted by law or equity, no action may be brought . . . more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. 5564(g)(1). On July 9, 202, a few weeks after the Supreme Court's decision in *Seila Law*, Bureau Director Kraninger ratified the decision to initiate this action. (D.I. 308-1; D.I. 391 at 5). Movants contend that the Bureau had discovery of the violations more than three years before that ratification date, *i.e.*, before July 9, 2017.

The Bureau does not dispute that "Director Kraninger's ratification . . . came more than three years after the date of discovery of these violations." (D.I. 356 at 35:8-10). The Bureau nevertheless argues that the untimely ratification should have no impact on the case, because statute of limitations are designed to encourage plaintiffs to diligently pursue their rights and that goal was satisfied here because the Bureau timely filed the initial complaint.[5] (D.I. 319 at 10). The problem with this argument, however, is that it confuses the timeliness requirements for filing the original complaint with the timeliness requirements for ratification.[6]

The timeliness requirements for ratification ensures that "[t]he intervening rights of third persons cannot be defeated by the ratification." *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994) (quoting *Cook v. Tullis*, 85 U.S. 332, 338 (1873)). If a principal were allowed to ratify unauthorized agency actions after the statute of limitations had expired, "he would have the unilateral power to extend the . . . statutory period for filing [complaints] by days,

---

[5]  Whether the Bureau timely filed the original complaint is a disputed issue.

[6]  Because the timing problem for ratification does not turn on what acts trigger or do not trigger the running of the statute of limitations, or whether the original complaint was timely filed, the cases cited by the Bureau are not particularly helpful. *See* D.I. 319 at 11; *Johnson v. United States*, 544 U.S. 295, 298 (2005) (determining when the 1–year statute of limitations in 28 U.S.C. § 2255 begins to run); *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 195 (1997) (determining when the six-year statute of limitations in the Multiemployer Pension Plan Amendments Act of 1980 begin to run).

10

weeks, or, as in this case, even longer. Such a practice would result in the blurring of the jurisdictional deadline." *Id*. at 99. Accordingly, the Court cannot disregard the timeliness requirement for ratification. And the Court cannot find that the statute of limitations was "satisfied" for the purposes of ratification because the Bureau brought the original suit within the applicable limitations period. (D.I. 319 at 11-12; D.I. 356 at 36:6-24; D.I. 351 at 2).

In the alternative, the Bureau asks the Court to find that the statute of limitations for the purposes of ratification was equitably tolled. (D.I. 319 at 11-12; D.I. 356 at 35:12-15). A litigant is entitled to equitable tolling if: (1) he "pursu[ed] his rights diligently," and (2) "some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "[T]he diligence prong . . . covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee*, 136 S.Ct. at 756. If the first two prongs are satisfied, then the "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

Here, the Bureau's request for equitable tolling stumbles on the first prong – diligent pursuit of its rights. In the Bureau's short history, constitutional challenges based on the appointment of its Director have been regular and reoccurring. Indeed, the particular constitutional challenge here has been the subject of no fewer than fifteen judicial opinions in six years.[7] Not all

---

[7] *See Consumer Fin. Protection Bureau v. Think Finance, LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *1 (D. Mont. Aug. 3, 2018) (not unconstitutional); *Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018) (unconstitutional), *vacated and remanded*, 828 F. App'x 68, 70 (2d Cir. 2020); *Consumer Fin. Protection Bureau v. All Am. Check Cashing, Inc.*, C.A. No. 3:16-cv-356-WHB-JCG, 2018 WL 9812125, at *2 (S.D. Miss. Mar. 21, 2018) (not unconstitutional), *aff'd*, 952 F.3d

11

of these opinions came out in the Bureau's favor: two courts found that the removal clause was unconstitutional. *See Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 784 (S.D.N.Y. 2018), *vacated and remanded*, 828 F. App'x 68, 70 (2d Cir. 2020); *PHH Corp. v. Consumer Fin. Protection Bureau*, 839 F.3d 1, 8 (D.C. Cir. 2016), *rev'd en banc*, 881 F.3d 75, 77 (D.C. Cir. 2018). In addition, the Bureau has itself taken the position that the removal clause was unconstitutional because of the for-cause removal provision. *See Consumer Financial Protection Bureau v. Think Finance, LLC*, No. CV-17-127-GF-BMM, 2018 WL 3707911, at *1 (D. Mont. Aug. 3, 2018) (pointing out that "the Acting Director of the CFPB and the Department of Justice now question the constitutionality of the CFPB's structure"); *see also Consumer Fin. Protection Bureau v. Future Income Payments, LLC*, C.A. No. 8:17-cv-00303-JLS-SS, 2018 WL 7502720, at *1 (C.D. Cal. Dec. 18, 2018) (asking to vacate the district court decision that the CFPB structure passed constitutional muster.). In sum, the Bureau was (as it should have been) acutely aware that there was doubt over the constitutionality of its enforcement authority.

---

591, 593 (5th Cir. 2020), *vacated for en banc rehearing*, 953 F.3d 381, 382 (5th Cir. 2020); *Consumer Fin. Protection Bureau v. Seila Law, LLC*, No. 8:17-cv-01081-JLS-JEM, 2017 WL 6536586, at *2 (C.D. Cal. Aug. 25, 2017) (not unconstitutional), *aff'd*, 923 F.3d 680, 682 (9th Cir. 2019), *rev'd*, 140 S.Ct. 2183 (2020); *Consumer Fin. Protection Bureau v. Navient Corp.*, Civ. No. 3:17-CV-101, 2017 WL 3380530, at *18 (M.D. Pa. Aug. 4, 2017) (not unconstitutional); *Consumer Fin. Protection Bureau v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 975 (C.D. Cal. 2017) (not unconstitutional), *voluntarily vacated by request of Bureau*, C.A. No. 8:17-cv-00303-JLS-SS, 2018 WL 7502720, at *1 (C.D. Cal. Dec. 18, 2018); *Consumer Fin. Protection Bureau v. D & D Mktg., Inc.*, CV 15-9692 PSG (Ex), 2017 WL 5974248, at *1 (C.D. Cal. Mar. 21, 2017) (not unconstitutional); *John Doe Co. v. Consumer Fin. Protection Bureau*, 849 F.3d 1129, 1133 (D.C. Cir. 2017) (declined to definitely decide issue); *Consumer Fin. Protection Bureau v. NDG Fin. Corp.*, No. 15-cv-5211 (CM), 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016) (declined to definitely decide issue); *PHH Corp. v. Consumer Fin. Protection Bureau*, 839 F.3d 1, 8 (D.C. Cir. 2016) (J. Kavanaugh) (unconstitutional), *rev'd en banc*, 881 F.3d 75, 77 (D.C. Cir. 2018); *Consumer Fin. Protection Bureau v. ITT Educ. Serv., Inc.*, 219 F. Supp. 3d 878, 899 (S.D. Ind. 2015) (not unconstitutional); *Consumer Fin. Protection Bureau v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1086 (C.D. Cal. 2014) (not unconstitutional).

Despite its admitted "questioning" of its own structure and the other red flags, however, the Bureau could not identify a single act that it took to preserve its rights in this case in anticipation of the constitutional challenges that could have reasonably ended with an unfavorable ruling from the Supreme Court (*i.e.,* what actually happened). (D.I. 356 at 28:14-33:22). It may be that a tolling agreement would not have made much sense because the Bureau had already filed the complaint, or that that ratification prior to the Supreme Court's opinion in *Seila Law* ultimately would not have been effective. But the attempt to engage in these or similar actions would have demonstrated that the Bureau was not only aware of the admitted risk to its rights, but also that it had the desire to preserve them. In other words, it is difficult to interpret the Bureau's passivity in the face of the inevitable constitutional challenge as diligence.[8]

The Bureau argues that the diligence prong should focus only on whether the complaint was timely filed and the litigation diligently pursued. (D.I. 356 at 34 at 8-20). But here too, there is an absence of favorable facts. As to timely filing, Intervenors have raised a second separate statute of limitations defense under Rule 12(b)(6) that is based on the filing of the complaint on September 18, 2017, more than three years after the Bureau issued the CID to the Trusts on September 4, 2014. (D.I. 301 at 26). The Bureau argues that the Court cannot resolve that second statute of limitations issue at this time because the facts on which Intervenors rely are outside the pleadings. (D.I. 319 at 27). This is correct as a matter of law. *See Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). But that circumstances even allow Intervenors to raise a colorable statute

---

[8] The Bureau notes that a challenge to the removal provision was not made in this case until July of 2020 and contends that it would not have made sense as the plaintiff to inject the issue of ratification into the case. (D.I. 356 at 32:9-34:1). Although that may be true, nothing prevented the Bureau from creating favorable facts it could point to later when the ratification issue may occur.

13

of limitations argument casts doubt on whether the Bureau pursued its rights diligently at the filing stage.

As to whether the Bureau has diligently pursued this litigation, it did not identify any particular fact the Court should look upon favorably. (D.I. 356 at 34:18-35:2). Notably, the Bureau failed to pursue this very argument seriously in its brief, which did not even set out the three prong standard for equitable tolling, explain why each prong was satisfied in this case, or point to any supporting facts. (*See* D.I. 101 at 11-12). Stated differently, the Bureau's argument on equitable tolling has been brief and conclusory.

Given these foregoing facts, or absence of facts, the Court cannot conclude that the Bureau has diligently pursued its rights. Thus, on the current pleading, the Court cannot find that equitable tolling applied to the statute of limitations for the purposes of ratification and as a result, the Bureau did not, at the time of ratification, still have the authority to take the action to be ratified. Ratification "beyond the statute of limitations" is "too late to be effective." *Benjamin*, 684 F. App'x at 212. Thus, Director Kraninger's ratification of the decision to file the complaint in this action did not cure the constitutional defect created by the for-cause removal provision in existence when this action was commenced. This means that the complaint, initially filed by a Director unconstitutionally insulated from removal, cannot still be enforced. Ambac's motion to dismiss the complaint based on the lack of enforcement authority is granted.

**IV.   CONCLUSION**

TSI's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is denied. (D.I. 242). Ambac's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) is granted-in-part and denied-in-part. The motion is denied as to Rule 12(b)(1) but granted as to Rule 12(b)(6). The Bureau's application for entry of default pursuant Fed. R. Civ. P. 55(a) is denied as moot. (D.I. 295).

An appropriate order will be entered.