**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:17-cv-01323-MN |
| v. | ) | |
| | ) | |
| The National Collegiate Master Student | ) | |
| Loan Trust, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO
DEFENDANTS' AND INTERVENORS AMBAC ASSURANCE CORP.,
PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, WILMINGTON
TRUST CO., AND TRANSWORLD SYSTEMS INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT ...................................................................................................1

FACTS ..........................................................................................................................................2

LEGAL STANDARD ..................................................................................................................3

ARGUMENT ...............................................................................................................................3

I.      The CFPA's Invalid Removal Restriction Is No Impediment to This Case Proceeding ........3

        A.      The Bureau's Director is Fully Accountable to the President and Was So When the
                Bureau Filed the First Amended Complaint ..................................................................3

        B.      In the Alternative, The First Amended Complaint Pleads Additional Facts That the
                Bureau Timely Ratified the Original Complaint ...........................................................7

II.     The First Amended Complaint Sufficiently Alleges That Defendants Are Covered Persons
        ........................................................................................................................................10

        A.      The Trusts Are "Persons" Who "Engage" In Conduct Covered By the CFPA ..........10

        B.      Defendants' Arguments That They Are Not "Covered Persons" as a Matter of Law
                Are Unpersuasive ........................................................................................................13

III.    The First Amended Complaint Sufficiently Alleges That Defendants Engaged in Unfair
        and Deceptive Acts or Practices ...................................................................................16

IV.     The Bureau's Allegations Are Not Barred by the Statute of Limitations ............................19

        CONCLUSION ...........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016) ................................6, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................3

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) ...........................................7

*Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir. 2019) ........................................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................3

*Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860 (3d Cir. 1977) ....................................18

*CFPB v. Navient Corp.*, No. 3:17-cv-101, 2021 WL 134618 (M.D. Pa. Jan. 13, 2021) ...............9

*Christiana Tr. v. Riddle*, 911 F.3d 799 (5th Cir. 2018) ....................................................15

*Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114 (3d Cir. 2013) ..................18

*Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014) ................................3

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ........................19

*FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927 (N.D. Cal. 2010) ....................................19

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010) ...........................................................17

*FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980) ...........................................9

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .............................................................19

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ................................................4, 5

*Hawk v. Carrington Mortg. Servs. LLC*, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016) ...............15

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ................................15

*Holland v. Florida*, 560 U.S. 631 (2010) ..........................................................................9

*J.J. Rissell, Allentown, Pa. Tr. v. Marchelos*, 976 F.3d 1233 (11th Cir. 2020) ..............13

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803 (3d Cir. 2003) ............17, 18

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187 (4th Cir. 2013) .......................................................................................14

*Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750 (2016) .......................7

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) ..................................................... 14

*Ross v. Varano*, 712 F.3d 784 (3d Cir. 2013) ......................................................................................... 9

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ................................................................................. 5

*Stephens v. Clash*, 796 F.3d 281 (3d Cir. 2015) ............................................................................... 19

*T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311 (3d Cir. 2019) ........................................ 5, 6

*United States v. Manamela*, 612 F. App'x 151 (3d Cir. 2015) ...................................................... 14

**Statutes**

12 U.S.C. § 2605(i) ............................................................................................................................ 15

12 U.S.C. § 5481(15)(A) .............................................................................................................. 10, 14

12 U.S.C. § 5481(19) ................................................................................................................ 10, 11, 13

12 U.S.C. § 5481(5) ........................................................................................................................... 10

12 U.S.C. § 5481(6)(A) ...................................................................................................................... 10

12 U.S.C. § 5517(a)(2)(A) .................................................................................................................. 14

12 U.S.C. § 5536(a)(1)(B) .................................................................................................................. 16

12 U.S.C. § 5564(a) ........................................................................................................................... 16

12 U.S.C. § 5564(g)(1) ......................................................................................................................... 7

12 U.S.C.§ 5531(a) ............................................................................................................................ 16

Del. Code Ann. tit. 12, § 3801(i) (2020) ........................................................................................... 11

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................................................................................ 13

Delaware Statutory Trust Act (DSTA) .............................................................................................. 11

Fed. R. Civ. P. 15(a) ............................................................................................................................ 6

Fed. R. Civ. P. 15(b) ............................................................................................................................ 6

Fed. R. Civ. P. 15(c)(1)(B) ................................................................................................................... 5

Prisoner Litigation Reform Act (PLRA) ............................................................................................. 4

Real Estate Settlement Procedures Act (RESPA) .......................................................................... 15

Restatement (Third) Of Agency § 1.02 (2006) ............................................................................. 18

Restatement (Third) Of Agency § 4.01 cmt. b (2006) .................................................................... 6

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Consumer Financial Protection Bureau ("Bureau") brought this action against 15 student loan trusts ("Defendants" or the "Trusts") to address illegal debt-collection activities by the Trusts. Specifically, the Trusts, through their agents, filed tens of thousands of debt-collection lawsuits against consumers across the country supported by false or misleading affidavits, in some cases beyond the statute of limitations, resulting in the collection of millions of dollars from consumers that the Trusts would not have obtained if they had acted lawfully. Through this action, the Bureau seeks to obtain compensation for consumers harmed by the Trusts' illegal activities, and to prevent the Trusts—which still hold student loan debt—from committing future violations of relevant federal law. The Bureau files this brief in opposition to the Trusts' Motion to Dismiss the First Amended Complaint.

## SUMMARY OF ARGUMENT

This Court should deny Defendants' motion to dismiss because the Bureau's First Amended Complaint was approved by an Acting Director fully accountable to the President, and thus arguments based on the Consumer Financial Protection Act of 2010's ("CFPA") invalid removal restriction are no longer properly before the Court. Also, although the Court need not address ratification issues in order to deny the motion to dismiss, the First Amended Complaint pleads additional facts that establish the Bureau's diligent pursuit of its rights, thereby warranting the application of equitable tolling.

Moreover, the First Amended Complaint sufficiently alleges the elements of its claims. Defendants are "covered persons" under the CFPA because they engage in acquiring, purchasing, and servicing loans, and collecting debts. The same holds true of the Bureau's allegations that Defendants "engaged in" the deceptive and unfair acts or practices at issue.

Finally, none of the allegations in the First Amended Complaint demonstrate that the initial complaint was time-barred.

The Court should, accordingly, deny Defendants' Motion to Dismiss.

## FACTS

Between November 1, 2012, and April 25, 2016, the Defendants filed over 90,000 debt-collection lawsuits in courts across the country against borrowers whose student loans Defendants ostensibly owned. *See* D.I. 362, First Amended Complaint ("D.I. 362") ¶ 51. The relevant Defendant Trust was the named plaintiff in every collection action. *See id.* ¶ 52. In support of these lawsuits, Defendants' agents prepared notarized affidavits swearing to facts purporting to demonstrate that Defendants owned the sued-upon debts. *See id.* ¶¶ 53-54. In numerous instances, sworn representations contained in these affidavits were false. *See id.* ¶¶ 55-66. Defendants' agents improperly notarized nearly every affidavit they filed from November 1, 2012, to August 3, 2014. *See id.* ¶¶ 71-79. And on hundreds of occasions Defendants' agents filed collections actions without possessing proof of Defendants' ownership of the loans in question, or filed collections actions beyond the applicable statutes of limitations. *See id.* ¶¶ 86-87. Defendants' agents engaged in this conduct for the benefit of Defendants. *See id.* ¶¶ 49-50. This conduct constituted deceptive and unfair acts and practices under the CFPA, s*ee id.* ¶¶ 89-122, and caused millions of dollars in harm to over two thousand consumers. *See id.* ¶¶ 80-86.

After the Supreme Court's June 2020 decision in *Seila Law v. CFPB*, certain intervenors filed a motion to dismiss the Bureau's initial complaint, arguing, *inter alia*, that the case could not proceed because at the time the Bureau filed the complaint, a provision of the CFPA invalidly purported to shield the Bureau's Director from removal at will by the President. The Court agreed and dismissed the complaint. The Court also agreed with the Bureau that

ratification could potentially cure any problem stemming from the removal restriction, but concluded that the Bureau's ratification, which occurred ten days after the Supreme Court issued its decision in *Seila Law*, had come too late. The Court held that the deadline for such ratification could be equitably tolled, but ruled that the Bureau had not satisfied the requirements for tolling because it had not identified specific facts showing that it diligently pursued its rights in this case. *See* D.I. 359, Memorandum Opinion ("D.I. 359") at 11-14. The Court granted the Bureau leave to file an amended complaint and the Bureau did so.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

## ARGUMENT

I.     **The CFPA's Invalid Removal Restriction Is No Impediment to This Case Proceeding**

A.     **The Bureau's Director is Fully Accountable to the President and Was So When the Bureau Filed the First Amended Complaint**

Defendants seek to dismiss the First Amended Complaint because the CFPA formerly purported to limit the grounds on which the President could remove the Bureau's Director. But

that issue was resolved by the Supreme Court in June 2020. The Bureau filed the First Amended Complaint nine months later while headed by an official indisputably removable at will by the President. Defendants' arguments about the CFPA's invalid removal restriction are no longer properly before the Court, and provide no grounds for dismissing the First Amended Complaint.

"In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). "Of course, the original pleading is not entirely without effect. When the original pleading has been superseded, an amended pleading still may relate back to the filing date of the original pleading for statute of limitations purposes." *Id.* at 82 n.18.

It is elementary that a defect in a superseded complaint provides no grounds for dismissing an amended complaint if the amended complaint does not suffer the same defect. For example, the Third Circuit held in *Garrett* that an amended complaint that was filed after the plaintiff was released from prison could not be dismissed simply because the original complaint—filed while the plaintiff was in prison—was subject to dismissal for failure to satisfy the Prisoner Litigation Reform Act (PLRA). *Id.* at 84. "When he filed the [amended complaint]," the court explained, "Garrett was no longer a prisoner and therefore was not subject to the PLRA's administrative exhaustion requirement. Thus, because it relates back to the original complaint, the [amended complaint] cures the original filing defect." *Id.*; *see See also id.* at 82 ("[I]t is [the plaintiff's] status at the time of the amendment and not at the time of the original filing that determines whether a statutory precondition to suit has been satisfied.").

The Bureau's filing of the First Amended Complaint resolved the issue this Court found with the original complaint. The Court dismissed the original complaint under Rule 12(b)(6)

because it was filed when the Bureau's Director was purportedly insulated from at-will removal. But that alleged legal defect no longer existed at the time the Bureau filed the First Amended Complaint in April 2021. Nearly a year before that filing, the Supreme Court held the statutory removal restriction invalid and severable, making clear that from that point on, "[t]he agency may … continue to operate, but its Director, in light of our decision, must be removable by the President at will." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020). Thus, there is no dispute that the Bureau filed the First Amended Complaint when it was headed by an official, Acting Director Uejio, who was, is, and will continue to be fully accountable to the President.[1]

Defendants also do not dispute that the First Amended Complaint relates back to the original complaint for statute of limitations purposes. The First Amended Complaint relates back because it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "To determine if relation back is proper" under this prong of Rule 15, "the only issue is whether there is a common core of operative facts in the two pleadings." *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 328 (3d Cir. 2019) (quotation marks omitted). That condition is easily met here: the claims in the First Amended Complaint concern the same conduct set out in the original complaint. Where this prerequisite is satisfied, as it is here, operation of Rule 15(c) is automatic and the First Amended Complaint relates back. *Id.* at 327 ("[I]f a supplemental complaint meets the requirements for relation back then relation back is mandatory, *and not*

---

[1] Nor could Defendants claim that the legal defect this Court found in the original complaint somehow carries forward to the First Amended Complaint and requires that pleading's dismissal. That argument would turn the rules of civil procedure upside down: a properly amended pleading *cures* the problem with an initial filing, it is not rendered deficient by that initial problem. *See, e.g.*, *Garrett*, 938 F.3d at 84; *T Mobile*, 913 F.3d at 328.

*subject to additional equitable considerations*.") (quotation marks and brackets omitted; emphasis added).[2]

To be sure, the Court dismissed the original complaint based on its conclusion that the Bureau had not timely ratified the complaint. While the Bureau respectfully disagrees that its ratification was not timely, it is sufficient for purposes of this motion to note that different rules apply to ratifications and to amended pleadings and that those rules serve different ends. Whereas ratification is typically a unilateral act by one party to a case or transaction, a party can file an amended pleading only during certain timeframes specified by rule or with leave of the court. *See* Fed. R. Civ. P. 15(a)-(b). Whereas ratification applies broadly to a variety of contexts beyond just litigation, *see, e.g.*, Restatement (Third) Of Agency § 4.01 cmt. b (2006) (discussing ratification of contractual obligations and tortious conduct), Rule 15 is specifically meant to "encourage resolution of [litigated] disputes on the merits whenever possible" and must be applied with that end in mind. *T Mobile*, 913 F.3d at 329; *see also id.* at 328 ("The clear preference embodied in Rule 15 is for merits-based decision making."). And while this Court considered equitable factors in assessing whether the Bureau's ratification was timely, *see* D.I. 359 at 11-14; *see generally Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 603 (3d Cir. 2016) (calling ratification "an equitable remedy"), such equitable considerations play no role in the Rule 15 analysis once leave to amend has been granted. *See again T Mobile*, 913 F.3d at 327 (holding that relation back "is mandatory, and not subject to additional equitable considerations") (quotation marks omitted). Defendants have not explained why any aspect of ratification doctrine would apply to the very different context of an amended pleading under

---

[2] The same rule of relation back applies both to amended pleadings, which add allegations about conduct pre-dating the original complaint, and supplemental pleadings, which add allegations about conduct post-dating the original complaint. *See T Mobile*, 913 F.3d at 327-28.

Rule 15—let alone why it would trump the plain language of that rule allowing relation back in these circumstances.

### B.  In the Alternative, The First Amended Complaint Pleads Additional Facts That the Bureau Timely Ratified the Original Complaint

As explained above, the filing of the First Amended Complaint means that the Court no longer needs to address ratification issues at all. But if the Court does consider such issues, it should conclude that the First Amended Complaint alleges additional facts sufficient to establish on a motion to dismiss that the Bureau has diligently pursued its rights in this case and that its time to ratify the original complaint was equitably tolled.[3]

The Bureau has satisfied the elements of equitable tolling for the purpose of ratification by demonstrating (1) it has been pursuing its claims diligently; and (2) that some extraordinary circumstance beyond the Bureau's control prevented timely filing. *See Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). Where the first two prongs are satisfied, the "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

The Court previously concluded that while equitable tolling was generally available in these circumstances, the Bureau "did not identify any particular fact the Court should look upon favorably" showing that the Bureau diligently pursued its claims. D.I. 359 at 13-14. The First Amended Complaint provides such facts. For example, it explains that the Bureau: negotiated

---

[3] The Bureau maintains and preserves its prior arguments that the Court need not even reach equitable tolling either because (1) the Bureau satisfied the statute of limitations in 12 U.S.C. § 5564(g)(1) when it timely filed this action or (2) if the removal restriction somehow prevented the Bureau from doing so, then it also prevented the Bureau from discovering Defendants' violations and thus beginning the running of the limitations clock. *See, e.g.*, D.I. 319 at 10-11.

with Defendants and filed a proposed consent judgment to resolve the litigation, D.I. 362 ¶ 9; submitted briefing on various motions to intervene, *id.* ¶ 10; continued to prosecute this action through multiple changes in the Bureau's leadership, *id.* ¶¶ 11, 17; engaged in discovery with Intervenors, including "litigating numerous discovery disputes," *id.* ¶¶ 16, 18; submitted "[b]riefing on the threshold legal issues related to the proposed consent judgment," *id.* ¶ 19; promptly served Defendants after the Court's ruling on the proposed consent judgment called into doubt Defendants' prior waiver of service, *id.* ¶ 20; moved for entry of default against Defendants, *id.* ¶ 22; and promptly submitted Director Kraninger's declaration of ratification, *id.* ¶ 24. And the prior filings in this case reflect that the Bureau has vigorously disputed Defendants' and Intervenors' attempts to dismiss this case, *see* D.I. 319 (opposition to first motion to dismiss); D.I. 326, 330, 332, 335 (notices of supplemental authority submitted by the Bureau); D.I. 351, 358 (letter responses submitted by Bureau), and has filed a First Amended Complaint resolving any issue with the original complaint.

Defendants' core argument is that equitable tolling is not applicable because the Bureau did not expressly ratify this case while it was headed by an acting official (Mick Mulvaney) to whom the removal restriction did not apply. The Bureau reiterates its prior arguments that there was no cause for Acting Director Mulvaney to have expressly ratified this action when no participant in this case raised any objection to the statutory removal restriction until more than 16 months after he left the Bureau. Nor did Acting Director Mulvaney expressly ratify any other Bureau action where the removal-restriction issue had not been raised.[4]

---

[4] The Bureau also reiterates its prior argument that the Court could find that Acting Director Mulvaney implicitly ratified the case. D.I. 351.

Nevertheless, what matters now is that the First Amended Complaint, in contrast to the original complaint, alleges numerous facts demonstrating the Bureau's diligent pursuit of its claims. As those allegations show—particularly when properly read in the light most favorable to the Bureau—the Bureau has in no way slept on its rights. This is true notwithstanding Defendants' attempts to hypothesize potential other steps the Bureau might also have taken. After all, "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citations omitted); *accord Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013).

Having failed to show that the Bureau did not exercise sufficient diligence, Defendants move on to claim that the Bureau failed to demonstrate that "some extraordinary circumstance stood in [the Bureau's] way" and prevented timely filing. D.I. 367. at 10. But Defendants misapprehend the extraordinary circumstance at issue. It was not, as Defendants suggest, the Supreme Court's ruling in *Seila Law*; it was instead the existence of the unconstitutional removal restriction in the CFPA, a circumstance that was both extraordinary and beyond the Bureau's control. *See CFPB v. Navient Corp.*, No. 3:17-cv-101, 2021 WL 134618, at *13 (M.D. Pa. Jan. 13, 2021) ("Any defect in the CFPB's timely pursuit of this action was caused by an obstacle 'beyond its control', namely the statutory language of [the removal restriction].").

Defendants get no further suggesting that they will suffer "enormous prejudice" from litigating this case. D.I. 367 at 10-11. "[T]he expense and annoyance of litigation" is not a cognizable form of injury in these circumstances. *Cf. FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980). If a simple desire not to have to answer the allegations of wrongdoing in a complaint were sufficient to defeat equitable tolling, no statute of limitations would ever be equitably tolled. Allowing the Bureau to continue to prosecute its claims risks no unfair surprise

9

or other injustice to Defendants. That result, moreover, is wholly consistent with the Third

Circuit's teaching that, "as an equitable remedy," ratification should be "applied flexibly and …

adapted to deal with unique and unusual circumstances." *Advanced Disposal Servs. E., Inc. v.*

*NLRB*, 820 F.3d 592, 603 (3d Cir. 2016).

## II.     The First Amended Complaint Sufficiently Alleges That Defendants Are Covered Persons

The allegations in the First Amended Complaint, taken as true, state a plausible claim that

Defendants are covered persons under the CFPA because they engage in acquiring, purchasing,

and servicing student loans, and collecting student loan debt. In arguing to the contrary,

Defendants ignore most of the First Amended Complaint's allegations, and Defendants'

arguments that they cannot be covered persons as a matter of law are not supported by the

CFPA's text or any relevant authority.

### A.     The Trusts Are "Persons" Who "Engage" In Conduct Covered By the CFPA

The First Amended Complaint plausibly alleges that the Defendants are covered persons

subject to liability under the CFPA for their unfair and deceptive acts or practices. Under the

CFPA, a "covered person" is (1) a person that (2) engages in offering or providing a consumer

financial product or service. *See* 12 U.S.C. § 5481(6)(A). The CFPA defines "person" as "an

individual, partnership, company, corporation, association (incorporated or unincorporated),

trust, estate, cooperative organization, or other entity." 12 U.S.C. § 5481(19). The CFPA defines

"consumer financial product or service" as, among other things, "acquiring, purchasing," and

"servicing loans," and "collecting debt related to any consumer financial product or service." 12

U.S.C. § 5481(5), (15)(A)(i), (15)(A)(x).

The First Amended Complaint alleges facts that are more than sufficient to satisfy these

statutory definitions. First, Defendants do not argue they are not "persons" under the CFPA, nor

could they. The First Amended Complaint alleges that Defendants are 15 statutory trusts organized under the laws of the state of Delaware. *See* D.I. 362 ¶¶ 7, 26. The Delaware Statutory Trust Act ("DSTA"), under which Defendants were organized, provides that a "statutory trust" is an "unincorporated association." Del. Code Ann. tit. 12, § 3801(i) (2020). The First Amended Complaint properly alleges that Defendants are "persons" within the meaning of the CFPA, whether as "trusts," "unincorporated associations," or both, 12 U.S.C. § 5481(19).

Second, the First Amended Complaint alleges that Defendants are "covered persons" because they "engage in" acquiring, purchasing, and servicing consumer loans as well as collecting debts. Indeed, the First Amended Complaint alleges that Defendants were created specifically for the purpose of acquiring, servicing, and collecting on student loans, D.I. 362 ¶¶ 27, 31, and that Defendants act in their own name to accomplish these purposes, *id.* ¶¶ 29-30. Defendants' motion concedes, as it must, that the Trusts "acquired" over 800,000 student loans but argues that because consumers were not parties to that acquisition process, those acquisitions do not bring the Trusts under the covered person statutory definition. *See* D.I. 367 at 13. Defendants are wrong. The CFPA contains no requirement that a covered person acquire loans directly from consumers; and certainly Congress understood that entities routinely buy and sell consumer loans and debt without directly interacting with consumers.[5]

Defendants also engage in regular servicing of the loans they acquired through certain designated entities. D.I. 362 ¶¶ 34-35. These designated entities have been empowered by the Trust Related Agreements to act in Defendants' names and for Defendants' benefit to service

---

[5] Defendants, incorrectly asserting that the acquisition of the loans was not "in connection" with a consumer financial product or service (*see* D.I. 367 at 13), also improperly conflate the covered person standard with the question of whether the Defendants engaged in deceptive or unfair acts under the CFPA.

student loan debt. *Id.* ¶¶ 29, 33, 35-36. In agreements with these entities, Defendants explicitly represent that the actions of these designated entities, acting within the prescribed authority of relevant servicing agreements, are, legally, the actions of Defendants themselves. *Id.* ¶ 35.

Defendants also engage in debt collection through certain designated entities and contracts with subservicers to assist in these activities. *Id.* ¶ 36. Defendants have filed thousands of debt-collection lawsuits against borrowers whose loans are held or allegedly held by the Trusts since 2012. *Id.* ¶ 37. The Defendants are the named plaintiffs in each of these suits. *Id.* Defendants are also named as defendants in countersuits and other actions related to the alleged debts and defend such actions in their own names. *Id.* Defendants retain a "Special Servicer" to ensure the servicing, collection, and litigation of delinquent and defaulted student loans for Defendants' benefit. *Id.* ¶ 38. In that role, the Special Servicer acts for and represents the Trusts, and the Special Servicer's actions are deemed to be the actions of the Trusts. *Id.* ¶ 39. Defendants also retain subservicers to assist them in collecting debts, and Defendants exercise control over their debt-collection subservicers. *Id.* ¶¶ 36, 38-41, 44-46. Defendants are responsible for compliance with federal law concerning the servicing and collection of student loan debt. *Id.* ¶ 32. Taken together, the allegations in the First Amended Complaint plausibly assert that Defendants "engage in" acquiring, servicing, and collecting on student loan debt, and are thus covered persons under the CFPA.[6]

---

[6] Defendants' main response to the allegations themselves is to assert that the First Amended Complaint says things that it does not. For instance, they claim that the allegations "concede that the Trusts are passive securitization vehicles." *See* D.I. 367 at 12 (citing D.I. 362 ¶ 29). But ¶ 29 of the First Amended Complaint does not allege that Defendants are "passive securitization vehicles," nor does any other allegation. Similarly fabricated is the charge that the First Amended Complaint alleges that Defendants "take no action related to the servicing of student loans or collecting debt." *See id.* Again, this may be Defendants' preferred characterization of themselves, but it is not what the First Amended Complaint alleges.

**B.    Defendants' Arguments That They Are Not "Covered Persons" as a Matter of Law Are Unpersuasive**

Defendants insist that the CFPA's definition of "covered person" contains an unstated limitation that a person must engage personally or directly in the offering or provision of a financial product or service, and claim that they do not do so. *See* D.I. 367 at 11-12 ("vicarious liability allegations [cannot] transform the Trusts into covered persons"). At bottom, Defendants' argument is that since the Trusts have no officers or employees, they can't "engage" in anything. But Defendants' argument must fail because, like any legal entity, they engage in activities through others. The "persons" that are eligible to be a "covered person" under the CFPA include companies, corporations, and, of course, trusts. *See* 12 U.S.C. § 5481(19). Given these types of persons can *only* act through agents, *see, e.g.*, *J.J. Rissell, Allentown, Pa. Tr. v. Marchelos*, 976 F.3d 1233, 1235 (11th Cir. 2020) ("a trust, like a corporation, is an artificial entity that can act only through agents"), it is plain that Congress understood that the category of "covered person" would include many persons that, by definition, act through others. The logical conclusion of Defendants' flawed argument would be to nullify the CFPA's application to such entities and restrict its authority solely to individuals, a result contrary to the plain language of the statute and principles of statutory construction.

Further, Defendants' are incorrect that an entity must "directly" offer or provide a product or service to a consumer for that entity to "engage in" the offering or providing of that service. The phrase "engage in" is capacious and shows that Congress meant to encompass more activity than directly "offering or providing" a relevant product or service. The ordinary, plain meaning of "engage in" includes participating in or playing some role in an activity, but not necessarily performing every aspect of that activity oneself. *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining "engage" as "[t]o employ or involve oneself; to take part in; to embark

13

on"). Again, Defendants were established to acquire, service, and collect on student loans, they held (or claimed to hold) the loans at issue here, and they arranged for others to service and collect on the loans for their benefit and in their name. There can be little doubt that they were "engaged in" the offering or provision of the relevant products or services.

Similarly, the term "providing" is broad and courts have interpreted it in similar contexts to include providing a service to consumers through or with the help of intermediaries. *See, e.g.*, *United States v. Manamela*, 612 F. App'x 151, 156 (3d Cir. 2015) (while interpreting the definitional provisions of a criminal healthcare fraud statute, concluding that "'[p]rovide' does not mean 'provide *directly*'") (emphasis in original); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 202-03 (4th Cir. 2013) (finding that several interlocking entities all "provided" cable services to consumers and rejecting the argument that only the "*initial* link in a chain of delivery" qualified as a provider) (emphasis in original).

Finally, other sections of the CFPA demonstrate that Congress was capable of drafting provisions to reach only the *direct* offering or provision of products or services when it chose to do so. *See, e.g.*, 12 U.S.C. § 5481(15)(A)(vii)(I) (exempting from one definitional provision merchants dealing in a "nonfinancial good or service sold directly by such person to the consumer"); *See also* 12 U.S.C. § 5517(a)(2)(A)(i) (referring to persons that "extend[] credit directly to a consumer").

The authorities Defendants cite illustrate clearly the error in their argument. They begin by citing to *Pollice v. Nat'l Tax Funding, L.P.* for its holding that an entity can only be vicariously liable for the actions of a "debt collector" if the entity itself is also a "debt collector" under the Fair Debt Collection Practices Act (FDCPA). 225 F.3d 379 (3d Cir. 2000), *abrogated*

*on other grounds by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017). But even accepting Defendants' entirely unsupported premise that the FDCPA's statutory regime maps onto the covered person analysis under the CFPA, the holding in *Pollice* actually favors the Bureau's position. The Third Circuit held that all of the *Pollice* defendants were 'debt collectors' under the FDCPA, including an entity that purchased the underlying receivables but had no employees and thus did not itself contact consumers and demand payment. *Id.* at 405. Indeed, the Third Circuit was even more explicit in a later FDCPA case, *Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir. 2019). There the court rejected the argument that a "passive debt owner" could not be a "debt collector" under the FDCPA. *See id.* at 266-68 ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment.").

Defendants also point to two inapposite cases interpreting a provision of the Real Estate Settlement Procedures Act ("RESPA"). *See* D.I. 367 at 15 (citing *Christiana Tr. v. Riddle*, 911 F.3d 799 (5th Cir. 2018) and *Hawk v. Carrington Mortg. Servs. LLC*, 2016 WL 4433665 (M.D. Pa. Aug. 17, 2016)). In both of those cases, plaintiffs unsuccessfully sued mortgage holders under a RESPA provision explicitly limited to "servicers." *Christiana Tr.*, 911 F.3d at 801-02, 804; *Hawk*, 2016 WL 4433665 at *1. But under RESPA, a "servicer" is the person responsible for receiving payments from mortgagees and transmitting those funds to the mortgage holder per the terms of the loan, and the definition of the term does not contain broad language like "engage" or "provide." *See* 12 U.S.C. § 2605(i)(2), (i)(3). Furthermore, the statute explicitly exempts a lender or loan holder from the definition of "servicer" unless it performs the specific servicing conduct itself. *See* 12 U.S.C. § 2605(i)(2). These courts' interpretation of a specific provision of RESPA has no bearing on the interpretation of "covered person" under the CFPA.

### III.   The First Amended Complaint Sufficiently Alleges That Defendants Engaged in Unfair and Deceptive Acts or Practices

The First Amended Complaint also alleges that Defendants are liable for five counts of unfair or deceptive acts or practices. The CFPB prohibits "any covered person" from "engag[ing] in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). The Bureau may commence a civil action to seek appropriate relief in response to violations of this prohibition. 12 U.S.C. § 5564(a); *see also* 12 U.S.C.§ 5531(a) (authorizing Bureau to take action "to prevent a covered person or service provider from committing or engaging in" unfair, deceptive, or abusive acts or practices "in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service").

The First Amended Complaint alleges that Defendants "engaged in" the relevant unfair and deceptive acts or practices. As noted, one of Defendants' primary purposes is to service and collect on private student loans, which they do in their own name, acting—in the only way it is possible for trusts to act—through entities that are empowered to act in Defendants' name and as their agents. D.I. 362 ¶¶ 27-48. Defendants, acting through these entities, filed collections lawsuits on their own behalf and in their own name without the documentation needed to prove ownership of the loans. *See, e.g.*, *id.* ¶¶ 50-52, 80-87. Defendants, again acting through these entities, filed hundreds of lawsuits in which they misrepresented to consumers that Defendants had a legal right to obtain judgment on time-barred debts. *See, e.g.*, *id.* ¶¶ 86-87. In similar fashion, Defendants executed and notarized deceptive affidavits and caused them to be filed in such debt-collection actions. *See, e.g.*, *id.* ¶¶ 49, 54-79.

These allegations are more than enough at this stage to show that Defendants engaged in the relevant violations. As noted, the ordinary meaning of the phrase "engaged in" is broad and

easily encompasses acting through or with the assistance of intermediaries such as Defendants' subservicers.

Defendants dispute that the First Amended Complaint adequately alleges that they engaged in the relevant violations, asserting implausibly that the servicers that filed debt-collection suits on their behalves, in their names, and for their benefit were not their agents. *See* D.I. 367 at 16-19. As an initial matter, the relevant statutory language—to "engage in" an unfair or deceptive practice—is expansive enough to encompass acting with the assistance of or in concert with intermediaries even when those intermediaries are not agents. *Cf. FTC v. Neovi, Inc.*, 604 F.3d 1150, 1155-57 (9th Cir. 2010) (explaining that an entity "is not discharged from liability" for unfair practices simply because others participated in the illegal conduct and noting that "a single violation of the Act may have more than one perpetrator").

But even if the Court concludes that the Bureau must allege an agency relationship between Defendants and their servicers, the Bureau has done so here. The First Amended Complaint alleges that Defendants hired the servicers to act as their agents and, in particular, to file debt-collection lawsuits in Defendants' names in state courts across the country. *See, e.g.*, D.I. 362 ¶¶ 3, 28-33. These and similar allegations suffice at this point to describe an agency relationship. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) (A plaintiff "must allege facts sufficient to allow [an agency] relationship to be proven at trial, but it is not required to have extensive proof at the complaint stage.").

Defendants selectively quibble with the Bureau's interpretation of certain provisions in the Trust-Related Agreements, but their arguments fall short of the mark. *See* D.I. 367 at 16-17. For one thing, Defendants fail to even acknowledge other relevant provisions described in the complaint that go to their liability. *See, e.g.*, D.I. 362 ¶ 31 (Trusts represent that they "engage in"

servicing student loans), ¶ 32 (Trusts assume responsibility for compliance with all federal laws and regulations). Nor are Defendants' arguments persuasive on their own terms. For example, Defendants quote part of the Special Servicing Agreement stating that the Special Servicer is not subject to the supervision of the Trusts. But the very next sentence of that agreement (which Defendants leave out) demonstrates that the Special Servicer, in carrying out the responsibilities specified by the agreement, "act[s] for," "represent[s]," and is deemed "an agent of the Trusts."[7]

More fundamentally, the ultimate determination whether an agency relationship exists is a question of fact that cannot be resolved at this stage. *See, e.g.*, *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 865 (3d Cir. 1977) ("Because the existence of an agency relationship hinges largely on the particular facts of each case, discovery was essential to the preparation of an agency theory argument in this case."); *Jurimex*, 65 F. App'x at 808 (reversing decision granting motion to dismiss and explaining that "the factual nature of the [agency] relationship alleged in the amended complaint would be better understood after discovery"). Parties' characterizations of their relationship in an agreement do not control this factual issue. *See* Restatement (Third) Of Agency § 1.02 (2006).

In particular, such characterizations do not speak to whether the servicers acted with apparent authority. "Vicarious liability can … be based on apparent authority. Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013) (quotation marks omitted). Courts have frequently held entities liable for the conduct of

---

[7] "Unless expressly authorized by the Trusts, the Special Servicer shall have no authority to act for or represent the Trusts, respectively, *in any way other than as specified hereunder* and shall not *otherwise* be deemed an agent of the Trusts." D.I. 310, Exhibit 1, § 17 (emphasis added).

others acting with apparent authority. *See, e.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 930-31 (9th Cir. 2009) (holding defendant liable for deceptive acts of his apparent agent); *FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927, 939 (N.D. Cal. 2010) (defendant that "organiz[ed]" telemarketing operation and "reap[ed] its profits" was liable for deceptive acts of call centers acting on its behalf even if the defendant did not authorize those misrepresentations); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 527 (S.D.N.Y. 2000) ("The law is clear that under the FTC Act, a principal is liable for misrepresentations made by his/her agents (i.e., those with the actual or apparent authority to make such representations) regardless of the unsuccessful efforts of the principal to prevent such misrepresentations."). The First Amended Complaint is replete with allegations that the servicers acted with, at minimum, apparent authority when they filed lawsuits and affidavits on Defendants' behalf and in Defendants' names. The reasonable inference of consumers in such cases would be that the servicers had the authority to carry out these actions. This is all that is required at this stage in the proceeding.

## IV.    The Bureau's Allegations Are Not Barred by the Statute of Limitations

There are no grounds to dismiss the First Amended Complaint based on the CFPA's statute of limitations. As the Court previously recognized, it cannot, as a matter of law, resolve statute of limitations issues by relying on facts outside the pleadings. D.I. 359 at 13 (citing *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015)). Again Defendants attempt to rely on facts outside the pleadings by pointing to the existence of a civil investigative demand ("CID") — an investigative tool used to collect information from a person who may have information relevant to a *possible* violation — issued by the Bureau on September 4, 2014. *See* D.I. 367 at 19-20. Defendants use this information request to speculate about what the Bureau "knew" or

"believed" at the time it was issued. *See id.*[8] But the materials on which Defendants seek to rely are not pled in the First Amended Complaint, and are not otherwise properly before the Court on this motion to dismiss. (And even if they were, it would be plain error to construe these materials in the light *least* favorable to the Bureau on a motion to dismiss, as Defendants urge.) Defendants simply ignore the Court's order and repeat almost verbatim the arguments that this Court already rejected. *Compare* Defs. Br. at 20, *with* D.I. 301, Ambac Movs. Br. at 26. Defendants provide no reason the Court should revisit its prior holding, which was entirely correct.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss (D.I. 366). The Bureau filed the First Amended Complaint while headed by an official the President can remove at will, the First Amended Complaint states claims against Defendants, and the claims are not time-barred.[9]

Dated: June 11, 2021

                              Respectfully submitted,

                              *Attorneys for Plaintiff*
                              *Bureau of Consumer Financial Protection*

                              CARA PETERSEN

---

[8] Defendants have it backwards when they suggest that the Bureau cannot issue a CID, or even open an investigation, unless it has already discovered the relevant violations. D.I. 367 at 19-20 n.14. To the contrary, CIDs and other investigatory tools are a means by which the Bureau discovers violations of law such as those alleged in the First Amended Complaint.

[9] The Bureau respectfully submits that the presentation of facts and legal arguments in the briefs and record is sufficiently clear to warrant resolving Defendant's motion without oral argument. The Bureau stands ready, however, to present oral argument if the Court determines that it would be of assistance in resolving the motion.

*Acting Enforcement Director*

DEBORAH MORRIS
*Deputy Enforcement Director*

ALUSHEYI J. WHEELER
*Assistant Litigation Deputy*

/s/ Tiffany Hardy
Tiffany Hardy
tiffany.hardy@cfpb.gov
202-435-9375
Stephen C. Jacques
stephen.jacques@cfpb.gov
202-435-7368
Gabriel Hopkins
gabriel.hopkins@cfpb.gov
Phone: 202-435-7842

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: 202-435-7722

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2021, I electronically filed Plaintiff's Opposition to Defendants and Intervenors Ambac, PHEAA, TSI, and WTC's Motion to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing(s) to all parties to this matter registered for CM/ECF.


Dated: June 11, 2021


/s/ Tiffany Hardy
Consumer Financial Protection Bureau
1700 G St. NW
Washington, DC 20552
tiffany.hardy@cfpb.gov

*Attorney for Plaintiff Consumer*
*Financial Protection Bureau*