IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THE NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 17-1323 (MN) |

**DEFENDANTS' AND INTERVENORS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

ARGUMENT ..... 1

I. THE AMENDED COMPLAINT DOES NOT CURE THE UNTIMELINESS ..... 1

A. Amendment Cannot Make the CFPB's Stale Claims Timely ..... 1

B. The CFPB Is Still Not Entitled to Equitable Tolling ..... 3

II. THE TRUSTS CANNOT BE HELD LIABLE FOR UDAAP UNDER THE CFPA ..... 6

A. The Trusts Are Not Covered Persons Within the Meaning of the CFPA ..... 6

1. *The Trusts Do Not Engage in Any Activity That Could Render Them Covered Persons Under the CFPA* ..... 6

2. *The Trusts Cannot Be Held Vicariously Liable for UDAAP Violations Based on the Alleged Actions of Third-Party Subservicers* ..... 8

B. The Trusts Cannot Be Held Vicariously Liable on the Basis of Agency or Apparent Authority ..... 9

III. THE CFPB'S CLAIMS ARE TIME-BARRED ..... 10

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Disposal Servs. East v. NLRB*,
820 F.3d 592 (3d Cir. 2016)....................4, 5

*Barbato v. Greystone All., LLC,*
916 F.3d 260 (3d Cir. 2019)....................9

*Cabrera v. Pierce*,
2014 WL 3956175 (D. Del. Aug. 13, 2014)....................5

*Carrier v. Bank of Am., N.A.,*
2014 WL 356219 (D.N.J. Jan. 31, 2014), *aff'd*, 592 F. App'x 135 (3d Cir. 2015)....................10

*CFPB v. ITT Educ. Servs., Inc.,*
219 F. Supp. 3d 878 (S.D. Ind. 2015)....................6

*In re Cmty. Bank of N. Va.*,
467 F. Supp. 2d 466 (W.D. Pa. 2006)....................2

*D.J.S.-W by Stewart v. United States*,
962 F.3d 745 (3d Cir. 2020)....................3, 4

*FEC v. NRA Political Victory Fund*,
513 U.S. 88 (1994)....................3

*Gabelli v. SEC*,
568 U.S. 442 (2013)....................3

*Garczynski v. Countrywide Home Loans, Inc.,*
656 F. Supp. 2d 505 (E.D. Pa. 2009)....................10

*Garrett v. Wedford Health,*
938 F.3d 69 (3d Cir. 2019)....................2

*Hawk v. Carrington Mortg. Servs. LLC,*
2016 WL 4433665 (M.D. Pa. Aug. 17, 2016)....................8

*Jannarone v. Sunpower Corp.,*
2018 WL 5849468 (D.N.J. 2018)....................10

*Menominee Indian Tribe of Wisconsin v. United States*,
136 S. Ct. 750 (2016)....................5

*Meyer v. Holley,*
537 U.S. 280(2003)....................................................................................................9

*Nelson v. County of Allegheny*,
60 F.3d 1010 (3d Cir. 1995)..........................................................................................2

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions*,
730 F.3d 263 (3d Cir. 2013)..........................................................................................10

*PHH Corp. v. CFPB*,
839 F.3d 1 (D.C. Cir. 2016) ..........................................................................................5

*Pollice v. National Tax Funding, L.P.*,
225 F.3d 379 (3d Cir. 2000)........................................................................................8, 9

*Smith v. Ulta Salon*,
2020 U.S. Dist. LEXIS 52271 (D.D.C. Mar. 24, 2020)...............................................2

*T Mobile Te., LLC v. City of Wilmington,*
913 F.3d 311 (3d Cir. 2019)..........................................................................................2

*Truinject Corp. v. Nestle Skin Health,*
2019 WL 6828984 (D. Del. Dec. 13, 2019)...............................................................10

*United States v. Jackson,*
480 F.3d 1014 (9th Cir. 2007) .....................................................................................7

*Weis-Buy Servs., Inc. v. Paglia*,
411 F.3d 415 (3d Cir. 2005)..........................................................................................4

*Williams v. Beard*,
300 F. App'x 125 (3d Cir. 2008) ..................................................................................5

**Statutes**

12 U.S.C. § 5481 ........................................................................................................6, 7, 8

12 U.S.C. § 5531 ...............................................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1

Restatement (Third) of Agency § 2.03 & cmt. c (2006) ................................................10

Movants[1] submit this reply brief in further support of their motion to dismiss the CFPB's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

## I. THE AMENDED COMPLAINT DOES NOT CURE THE UNTIMELINESS

### A. Amendment Cannot Make the CFPB's Stale Claims Timely

It is undisputed that the CFPB discovered the alleged violations more than three years before former Director Kraninger ratified the decision to bring this action. Opinion at 10. Because the ratification came after the statute of limitations expired on the CFPB's claims, it was "too late to be effective." *Id*. at 14. As a result, "the complaint, initially filed by a Director unconstitutionally insulated from removal, cannot still be enforced." *Id*.

The CFPB's amended complaint cannot change any of this—it is simply one last attempt to evade the timeliness requirements of the ratification doctrine. Although the CFPB was given leave to replead "to cure the deficiencies outlined in the Memorandum," D.I. 360, it now contends that merely filing an amended complaint, approved by a removable acting director, somehow "resolved" the constitutional defect at the heart of this case. Opp. Br. at 4–5. That misconstrues the defect, which has nothing to do with the CFPB's current structure; rather, as the Court held, it is "that the Bureau ***initiated*** this action . . . at a time when its structure violated the Constitution's separation of powers." Opinion at 9; *id.* at 14 (noting "the constitutional defect created by the for-cause removal provision in existence when this action was commenced"). And this defect became fatal once the complaint was not ratified within the limitations period. *See id*. at 9–11.

---

[1] Defined terms herein have the meaning ascribed to them in Movants' opening brief. All emphasis is supplied unless otherwise stated. TSI takes no position regarding the arguments made in Section I herein.

The CFPB's relation back theory fails for this reason. It is axiomatic that for an untimely amended complaint to successfully relate back, the original complaint must have been timely and validly filed.[2] The original complaint here fails that test, because (1) the CFPB was unconstitutionally structured when it was filed, and (2) the CFPB failed to timely ratify it. *See* Opinion at 10–11 ("[T]he Court cannot find that the statute of limitations was 'satisfied' for the purposes of ratification because the Bureau brought the original suit within the applicable limitations period."); *see also id*. at 10 (rejecting CFPB's reliance on contention that it "timely filed the initial complaint" as "confus[ing] the timeliness requirements for filing the original complaint with the timeliness requirements for ratification"). And, unlike in the cases the CFPB cites,[3] no post-complaint events could cure the constitutional problem with this action—save for a timely ratification that the CFPB admittedly did not obtain. It is simply too late now to salvage this constitutionally infirm lawsuit—via amended complaint, ratification, or otherwise.

The CFPB's contrary position defies not only Supreme Court and Third Circuit precedent, but also common sense. If "relation back" could preempt the requirement that ratification must be made within the limitations period, that requirement (and indeed, the entire ratification framework) would be a nullity. This Court has already explained why that cannot be the outcome: "If a principal were allowed to ratify unauthorized agency actions after the statute of limitations had

---

2 *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir. 1995) (parties cannot use relation back "to perform an end-run around the statute of limitations that bars their claims"); *In re Cmty. Bank of N. Va.*, 467 F. Supp. 2d 466, 477 (W.D. Pa. 2006) ("A plaintiff cannot revive a time barred claim by the simple artifice of filing an amended complaint."); *see also Smith v. Ulta Salon*, 2020 U.S. Dist. LEXIS 52271, at *6–8 (D.D.C. Mar. 24, 2020) (compiling cases recognizing "that an amended complaint cannot relate back to an untimely original pleading").

3 In *Garrett v. Wedford Health*, unlike here, the plaintiff's amended and supplemental complaint pled both "additional claims" and "new facts and claims" that, taken together, ***actually did*** cure the defect in the original pleading. 938 F.3d 69, 81–84 (3d Cir. 2019). And *T Mobile Te., LLC v. City of Wilmington* concerned ripeness—a defect that, unlike the CFPB's failure to timely ratify, can be remedied through the passage of time. 913 F.3d 311, 329–30 (3d Cir. 2019).

expired, 'he would have the unilateral power to extend the . . . statutory period for filing [complaints] by days, weeks, or, as in this case, even longer.'" Opinion at 10–11 (quoting *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 99 (1994)). Such a result "would be utterly repugnant to the genius of our laws." *Gabelli v. SEC*, 568 U.S. 442, 452 (2013).

**B. The CFPB Is Still Not Entitled to Equitable Tolling**

Nor can equitable tolling salvage the amended complaint, even if it were theoretically available in these circumstances (which it is not, *see* Opening Br. at 8). The CFPB still has not identified "a single act that it took to preserve its rights in this case." Opinion at 13. Instead, the CFPB simply repeats the same story that it acted diligently by negotiating the defective proposed consent judgment ("PCJ"), and then continuing to defend the PCJ in this Court. Opp. Br. at 7–8.

These factual allegations do not help the CFPB for at least three reasons. First, none of them are new; they were all known to the Court when it determined that the CFPB did not deserve equitable tolling in this action. *See* Opinion at 13–14. Second, the allegations only underscore that the CFPB acted inequitably: the CFPB knew that the PCJ was not authorized before executing it, and certainly during the years that followed, yet persisted in trying to foist it upon the Trusts and Intervenors. *See* Opening Br. at 9–10. The CFPB's appeals to equity are therefore unavailing.

Third, and most important, the CFPB misstates the relevant inquiry. It is not enough for a plaintiff to show that it took steps to litigate time-barred claims, which is necessarily true in every case that implicates equitable tolling. Rather, the plaintiff must also exercise diligence in "***preserving*** [its] claim." *E.g.*, *D.J.S.-W by Stewart v. United States*, 962 F.3d 745, 750–51 (3d Cir. 2020); *see also* Opinion at 13 (finding it "difficult to interpret the Bureau's passivity in the face of the inevitable constitutional challenge as diligence"). That is why it was—and still is—dispositive that the CFPB could not identify any steps taken "***in anticipation of the constitutional challenges***" to its enforcement authority, "despite its admitted 'questioning' of its own structure

and the other red flags." *Id.*; *D.J.S.-W*, 962 F.3d at 753–54 (lack of diligence where "counsel should have been on heightened alert given his own personal experience in litigating" the same timeliness issue in another lawsuit). And that is why it matters that the CFPB did not procure a ratification of this case from Acting Director Mulvaney, even as it did precisely that in at least four other enforcement actions as early as 2018, following several challenges to the constitutionality of its structure. *See* Opening Br. at 5, 9. Such inaction is antithetical to the required diligence.

The CFPB urges that there was "no cause for Acting Director Mulvaney to have expressly ratified this action" before the separation-of-powers issue was briefed here. Opp. Br. at 8. But the "cause" is obvious: the CFPB needed to take steps demonstrating "the desire to preserve" its rights, such as procuring a timely ratification that "it could point to when the ratification issue" inevitably did arise. Opinion at 12–13 & n.8. This is not expecting too much, as the CFPB now complains, Opp. Br. at 8–9; it is precisely the same step the CFPB took in at least four other actions, but simply chose not to take here.[4] *See Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 424 (3d Cir. 2005) (no equitable tolling where parties "sat on their hands" and failed to protect their interests).

Just as the CFPB's renewed request for equitable tolling again fails the diligence prong, its remaining contentions miss the mark as well. It contends that its own unconstitutionality is an "extraordinary circumstance" that supports tolling. Opp. Br. 9. But the CFPB misses the second half of this factor – i.e., the circumstances causing a litigant's delay must be "both extraordinary

---

[4] Alternatively, the CFPB suggests, the Court "could" find that Acting Director Mulvaney "implicitly" ratified this case. Opp. Br. at 8 n.4. This is wrong twice over. First, the CFPB has repeatedly conceded that "Acting Director Mulvaney ***did not*** ratify this case during his tenure." *See* D.I. 348-1, Hr'g Tr. at 40:7–10; *id.* at 37:20–23; *id.* at 38:21–23. Second, Mulvaney cannot be deemed to have ratified this action unknowingly or "implicitly" because ratification requires "full knowledge of the decision to be ratified," and "***considered*** affirmation of the earlier decision." *Advanced Disposal Servs. East v. NLRB*, 820 F.3d 592, 602–03 (3d Cir. 2016). The CFPB makes no attempt to show how it fulfilled these requirements. In fact, the CFPB has argued the opposite, i.e., that Mulvaney was too busy to consider this matter at all. D.I. 351 at 2.

***and*** beyond its control." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016) (emphasis in original). And here, the CFPB brought its troubles onto itself through its failed and inconsistent litigation strategy. In 2016, the D.C. Circuit "remed[ied] the constitutional violation" by severing the CFPA's unconstitutional for-cause removal provision, making the CFPB "an executive agency" and giving the President "the power to . . . remove the Director at will at any time." *PHH Corp. v. CFPB*, 839 F.3d 1, 39 (D.C. Cir. 2016). This is the precise outcome that the CFPB would later request, and receive, from the Supreme Court in *Seila Law* four years later. *See* Opening Br. at 10. Thus, remediating the defect in its structure was an outcome very much in the CFPB's control: it needed only to have embraced the relief the *PHH* court ordered in 2016, which would have cured the defect in its structure before it filed this lawsuit. But instead, the CFPB petitioned for rehearing *en banc*, succeeded in getting the panel's decision vacated, and continued to insist that there was no constitutional problem—only to later about-face entirely. Under such circumstances, where the untimeliness flows from the plaintiff's own litigation decisions, tolling is not available.[5]

Finally, the CFPB asks the Court to apply ratification so "flexibly" that the requirements of that doctrine disappear altogether. Opp. Br. at 10. But no amount of flexibility can vitiate the requirement that the ratification be timely. *See Advanced Disposal*, 820 F.3d at 603–04. This Court's previous holding that it "cannot disregard the timeliness requirement for ratification" stands as entirely correct, and still applies here. Opinion at 11.

---

[5] *See, e.g.*, *Williams v. Beard*, 300 F. App'x 125, 132 (3d Cir. 2008) (timeliness issue "resulted from a strategic decision, not an 'extraordinary circumstance'"); *Cabrera v. Pierce*, 2014 WL 3956175, at *5 (D. Del. Aug. 13, 2014) (party's litigation strategy, including decision not to take protective measures to preserve claim, was not "extraordinary circumstance").

## II. THE TRUSTS CANNOT BE HELD LIABLE FOR UDAAP UNDER THE CFPA

### A. The Trusts Are Not Covered Persons Within the Meaning of the CFPA

#### 1. *The Trusts Do Not Engage in Any Activity That Could Render Them Covered Persons Under the CFPA*

Movants have shown that the Trusts are not covered persons because they do not "engage[] in offering or providing a consumer financial product or service," which is defined in pertinent part as "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit" and "collecting debt." 12 U.S.C. § 5481(6)(A), (15)(A)(i), (x); *see* Opening Br. at 12 (collecting case law construing "engage" to mean actively participate).[6]

The CFPB seeks to avoid this statutory requirement by arguing that an entity "engage[s]" in covered conduct if it merely "participat[es] or play[s] some role," even if it does "not necessarily perform[] every aspect of that activity." Opp. Br. at 13. But even under this definition, the Trusts do not "engage" in debt collection or servicing; the Trusts do not play *any* role in performing those activities, which undisputedly are performed by third-party subservicers. AC ¶¶ 29, 35–37; Opp. Br. at 11–12 (acknowledging these activities are performed "through" third parties). And the CFPB's even broader fallback interpretation—that the term "engages" in the covered persons definition is "expansive enough to encompass acting with the assistance of or in concert with intermediaries even when those intermediaries are not agents"—has been rejected. *See CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 909 (S.D. Ind. 2015) (where CFPB alleged defendant had offered loans "through" third parties, holding that defendant did not "engage" in providing

---

[6] Although the CFPB repeats the canard that the Trusts have somehow "represent[ed] that they 'engage in' servicing" (Opp. Br. at 17–18), neither its brief nor the amended complaint cites any source for this purported representation, and none exists. The CFPB appears to distort a provision in the governing documents acknowledging that one purpose of the Trusts is to enter into agreements that provide for loan servicing by third parties — *not* that the Trusts themselves engage in servicing. *See* Opening Br. at 12 n.7 (citing D.I. 303-3, Trust Agreement § 2.03(a)(ii)).

loans because it did not "itself offer[] to students the 'third party loans' that are the subject of its claims").[7]

Next, the CFPB contends that the Trusts "engaged" in "offering or providing a consumer financial product" because they acquired over 800,000 loans (which were provided to consumers by third-party lenders) over a decade ago from a special-purpose entity to enable the securitizations of the loans. Opp. Br. at 10–11. As Movants showed, Opening Br. at 6–8, that argument falls flat in numerous respects.[8] *First*, it does not meet the statutory criteria for covered persons: acquiring loans as part of a securitization is not "engag[ing] in offering or providing" any service or product; it is the opposite—i.e., ***receiving*** an asset. Nor is it a "transaction with a consumer." 12 U.S.C. § 5531(a). *Second*, each acquisition was made over a decade ago—before the CFPB was even created—and thus cannot support a claim that the Trusts "engage" in buying loans. *See* Opening Br. at 13 n.10; *United States v. Jackson*, 480 F.3d 1014, 1018–19 (9th Cir. 2007) ("the use of the present tense" indicates Congress did not intend to prohibit acts "before the enactment of the statute"). *Third*, these loan acquisitions are completely separate from the violations alleged in the amended complaint, which exclusively concern servicing and collection practices.

Finally, the CFPB argues that since Congress included "trusts" in the definition of "person," and trusts must "act through others," it must have intended for "engage" to include any acts performed by a third party on behalf of a trust, and not just those performed by the trust itself. Opp. Br. at 13. Not only does this contention defy the definition of "engage," and improperly

---

[7] The CFPB claims that the Trusts are covered persons because they "provide" for covered activities indirectly – i.e., by or through "intermediaries." Opp. Br. at 14. But since "engaging" requires active participation, this interpretation would effectively write out the term "engages" from the statutory definition.

[8] To be clear, "acquiring" loans appears in the covered persons definition only as an aspect of "servicing loans," and is not an independent ground for "covered person" status. *See* Opening Br. at 13 n.9 (citing 12 U.S.C. § 5481(15)(A)(i)).

conflate "person" with the narrower "covered person,"[9] it also ignores that trusts come in many different forms.[10] Other types of trusts may well qualify as covered persons and thereby fall within the CFPB's mandate, but the Defendant Trusts here were specifically structured as passive securitization vehicles, and do not engage in any covered activities. Opening Br. at 3–4.

2. *The Trusts Cannot Be Held Vicariously Liable for UDAAP Violations Based on the Alleged Actions of Third-Party Subservicers*

The CFPB next posits, without support, that the Trusts can be held vicariously liable for UDAAP violations because third-party subservicers engage in debt collection and servicing for loans held by the Trusts. Opp. Br. at 13–14. The CFPB fails to address Movants' argument that Congress omitted principals from the definition of "related parties" who can be subject to the CFPB's enforcement authority by virtue of their relationship to a "covered person." Opening Br. at 14–15. Given this omission, it is particularly appropriate to apply the rule of construction that when a statute already specifically delineates the universe of persons subject to an enforcement regime, vicarious liability cannot be used to circumvent that express delineation. *Id*. (citing, *inter alia*, *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000); *Hawk v. Carrington Mortg. Servs. LLC*, 2016 WL 4433665, at *2 (M.D. Pa. Aug. 17, 2016)). The CFPB's attempt to distinguish Movants' authorities on their facts misses the forest for the trees: each case recognized that vicarious liability could not be used to expand the reach of a consumer protection statute to

---

9 The CFPB ignores that the term "person," as distinct from "covered person," is used throughout the Act. *See, e.g.*, 12 U.S.C. § 5481(21) (discussing "persons" regulated by securities commissions). Thus, a trust does not need to qualify as a "covered person" to give meaning to Congress's inclusion of "trust" in the definition of "person."

10 For instance, real estate investment trusts (REITs) can be structured to directly lease property and provide brokerage or leasing services. *See* REITs: Overview, Thomson Reuters Practical Law Practice Note Overview 8-504-7098, at 3, 13; SEC, Investor Bulletin: Real Estate Investment Trusts (Dec. 2011) at 1, *available at*: https://www.sec.gov/investor/alerts/reits.pdf.

entities not otherwise regulated by it.[11] That principle applies with equal force here.[12]

### B. The Trusts Cannot Be Held Vicariously Liable on the Basis of Agency or Apparent Authority

Even if the Trusts could theoretically be held vicariously liable under the CFPA for third parties' alleged UDAAP violations, the amended complaint fails to show that the imposition of vicarious liability would be appropriate here. The CFPB's argument appears to be that an agency relationship is necessarily created any time a debt holder contracts with a third-party servicer. But contracting with another party does not create an agency relationship unless the contract provides a ***right to control***. *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003). The CFPB has not pleaded or even argued that the Trusts control the Special Servicer with which the Trusts contracted—let alone control the third-party subservicers that are not in privity with the Trusts and that actually performed the servicing. Indeed, the pertinent agreements ***disclaim*** any oversight by the Trusts or the creation of an agency relationship:

> Independence of the Special Servicer. For all purposes of this Agreement, the Special Servicer ***shall be an independent contractor*** and ***shall not be subject to the supervision of the Trusts*** with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Trusts, the Special Servicer shall have no authority to act or represent the Trusts, respectively, in any way other than as specified hereunder and ***shall not otherwise be deemed an agent*** of the Trusts.

D.I. 310-1, SSA § 17; *see* Opening Br. at 3–4.

The CFPB's fallback "apparent authority" theory is equally flawed. Apparent authority looks to ***the actions of the principal***, not the agent, and applies only "when a third party reasonably

---

[11] Similarly, the CFPB's citation to *Barbato v. Greystone All., LLC* further supports Movants' point. 916 F.3d 260, 269–70 (3d Cir. 2019) (reaffirming *Pollice*'s holding that alleged principal can only be held vicariously liable under the FDCPA if it itself qualifies as a debt collector).

[12] The CFPB seeks refuge in cases applying vicarious liability in the context of the FTCA. *See* Opening Br. at 15 n.12; Opp. Br. at 17. But in each such case, the actor held vicariously liable for FTCA violations was itself within the agency's enforcement authority. *See* Opening Br. at 15.

believes the actor has authority to act on behalf of the principal and ***that belief is traceable to the principal's manifestations***." Restatement (Third) of Agency § 2.03 & cmt. c (2006). Thus, courts in this Circuit have repeatedly dismissed claims that fail to allege the purported "apparent authority" was created by conduct of the alleged principal and not solely by the conduct of the putative agent.[13] The amended complaint's failure to plead that ***the Trusts***—as opposed to the subservicers—made outward manifestations to consumers dooms its apparent authority theory.

## III. THE CFPB'S CLAIMS ARE TIME-BARRED

The CFPB's September 4, 2014 civil investigative demands show that the CFPB was on notice of the violations it alleges by that date. Opening Br. at 19–20. The CFPB offers no authority to refute this, *see* Opp. Br. at 20 n.8, and merely insists that the undisputedly authentic CIDs are "outside the pleadings" and thus cannot be considered on a Rule 12 motion. But in this Circuit, courts may grant dismissal on statute of limitations grounds where untimeliness is established by materials outside the pleadings, so long as the materials are "in the record of the case." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions*, 730 F.3d 263, 271 (3d Cir. 2013). The record here includes the CIDs, which demonstrate discovery—and thus accrual—more than three years before the CFPB brought this action. Opening Br. at 19–20. Accordingly, the CFPB's claims are time-barred as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the amended complaint with prejudice.

---

13 *See Carrier v. Bank of Am., N.A.*, 2014 WL 356219, at *5 (D.N.J. Jan. 31, 2014), *aff'd*, 592 F. App'x 135 (3d Cir. 2015); *Truinject Corp. v. Nestle Skin Health*, 2019 WL 6828984, at *10 (D. Del. Dec. 13, 2019); *Jannarone v. Sunpower Corp.*, 2018 WL 5849468, at *4 (D.N.J. 2018); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 511–12 (E.D. Pa. 2009).

DATED: June 25, 2021

PINCKNEY, WEIDINGER, URBAN & JOYCE

*/s/ Michael A. Weidinger*
Michael A. Weidinger (No. 3330)
Megan Ix Brison (No. 6721)
2 Mill Road, Suite 204
Wilmington, DE 19806
(302) 504-1497
mweidinger@pwujlaw.com
mixbrison@pwujlaw.com

*Attorneys for Defendants*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Melissa N. Donimirski*
Kurt M. Heyman (No. 3054)
Melissa N. Donimirski (No. 4701)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
kheyman@hegh.law
mdonimirski@hegh.law

*Attorneys for Ambac Assurance Corporation*

OF COUNSEL:
Joshua Kipnees
George A. LoBiondo
Devon Hercher
Peter Shakro
Jonah Wacholder
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

STEVENS & LEE, P.C.

*/s/ Stacey A. Scrivani*
Stacey A. Scrivani (No. 6129)
919 Market Street, Suite 1300
Wilmington, DE 19801
(302) 425-3306
sasc@stevenslee.com

*Attorneys for Pennsylvania Higher Education Assistance Agency d/b/a American Education Services.*

VENABLE LLP

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)
Allyson B. Baker (*pro hac vice*)
Meredith L. Boylan (*pro hac vice*)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
(302) 298-3535
DAObrien@venable.com
ABBaker@venable.com
MLBoylan@venable.com

*Attorneys for Transworld Systems, Inc.*

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
Elizabeth A. Powers (No. 5522)
600 N. King Street, Suite 400
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
epowers@bayardlaw.com

*Attorneys for Wilmington Trust Company*