

1700 G Street NW, Washington, D.C. 20552

October 27, 2021

Via ECF

The Hon. Stephanos Bibas
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

> Re: *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust, et al.*, No. 1:17-cv-01323-SB (D. Del.)

Dear Judge Bibas:

      Plaintiff Consumer Financial Protection Bureau writes in response to the Court's order of October 13, 2021, concerning Defendants' motion to dismiss the First Amended Complaint.

      Defendants ask the Court to dismiss this public enforcement action because, at the time it was filed, a provision in the Consumer Financial Protection Act of 2010 ("CFPA") purported to limit the grounds on which the President could remove the Bureau's Director. Defendants' objections to that removal restriction have been fully resolved, however, and they provide no grounds for dismissal. First, this case can move forward without even reaching ratification. For one, arguments about the removal restriction are no longer germane because the Bureau filed the operative pleading in this case—the First Amended Complaint—after the Supreme Court made clear that the Director serves at the pleasure of the President. What is more, the Supreme Court held in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), that an unconstitutional removal restriction does not render agency action void, and that to justify relief based on a removal provision, a party must show that the provision caused it actual harm—a showing Defendants have not made (and cannot make). Second, any concern about whether the Bureau would seek to pursue Defendants' violations of law were it not for the removal restriction was definitively resolved by the Bureau's multiple ratifications of this action—regardless of whether those ratifications

occurred within the statute of limitations that governs when actions must be filed. Third, if the Court concludes otherwise and finds that the ratifications would otherwise be untimely, it should equitably toll the limitations period in these circumstances.

For all these reasons, the Court should reject Defendants' efforts to escape liability for their harmful and unlawful conduct based on a statutory provision that had no effect on this case and that was "never really part of the body of governing law" to begin with. *Id.* at 1788.

## BACKGROUND

1. The Bureau was established by the CFPA. As enacted, the CFPA purported to limit the grounds on which the President could remove the Bureau's single Director. 12 U.S.C. § 5491(c)(3). The Supreme Court held in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), that this removal restriction was invalid but that it was severable from the rest of the statute. As a result, although the Director cannot be shielded from at-will removal, the other provisions of the CFPA "remain fully operative." *Id.* at 2209 (plurality).

2. The Bureau filed this action in September 2017 against 15 student loan trusts ("Defendants") to address their unlawful debt-collection activities and to obtain redress for injured consumers. These activities include the filing of tens of thousands of debt-collection lawsuits against consumers that were supported by false or misleading affidavits, resulting in the collection of millions of dollars from consumers across the country that Defendants would not have obtained if they had acted lawfully.

At the time the Bureau filed suit, it was headed by an appointee of President Obama, Richard Cordray, who was purportedly shielded from at-will removal. Since then, the Bureau has continued to pursue this case under four other Directors. These officials were appointed by both President Trump and President Biden. Three were indisputably removable at will for the entirety of their tenures.[1] The fourth, Director Kathleen Kraninger, who was nominated by President Trump and confirmed by the Senate, expressly ratified the filing of this suit after *Seila Law* made clear that she too was removable at will. *See* D.I. 308-1.

Following the decision in *Seila Law*, certain intervenors in this case moved to dismiss. They argued, for the first time, that the CFPA's removal restriction meant the Bureau's

---

[1] These officials are: Acting Director Mick Mulvaney, Acting Director David Uejio, and Director Rohit Chopra.

complaint must be dismissed. D.I. 300, 301. The Court granted their motion. D.I. 359. It agreed with the Bureau that ratification could potentially resolve any issue with the removal restriction but concluded that Director Kraninger's ratification came too late. *Id.* at 9-11. The Court believed that the statute of limitations in 12 U.S.C. § 5564(g)(1), which governs when the Bureau must file actions to enforce the CFPA, also governs when the Bureau must ratify such an action. *Id.* at 10-11. The Court concluded that the deadline for such a ratification could be equitably tolled but that the Bureau had not satisfied the requirements for tolling because it had not identified specific facts showing that it diligently pursued its rights. *Id.* at 11-14.

The Court granted the Bureau leave to amend its complaint. D.I. 360. Acting Director Uejio—who was at all times removable at will by the President—approved the Bureau's filing of the First Amended Complaint, which the Bureau did on April 30, 2021. D.I. 362. The request presently before the Court is a motion to dismiss the First Amended Complaint. D.I. 366, 367.

3.   After the parties in this case completed briefing on that motion to dismiss, the Supreme Court in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), shed significant new light on the issues raised by Defendants' motion. *Collins* considered a challenge to actions by the Federal Housing Finance Agency (FHFA) during a time when that agency's statute—like the CFPA prior to *Seila Law*—purported to shield its single Director from at-will removal.

The Court agreed with the challengers that the FHFA's removal restriction was unconstitutional under *Seila Law*. *Collins* at 1783-84. But it rejected their contention that the removal restriction rendered invalid any of the FHFA's actions. The Court explained that, even as to actions the agency took while it was headed by officials to whom the removal restriction purportedly applied, "the [challengers'] argument is neither logical nor supported by precedent." *Id.* at 1787. The Court distinguished separation-of-powers cases involving "a Government actor's exercise of power that the actor did not lawfully possess," including where the official was improperly appointed. *Id.* at 1788. Unlike in those cases, the Court explained, the unconstitutional removal restriction provided "no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office." *Id.*; *see also id.* at 1788 n.23 ("Settled precedent … confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the … responsibilities of his office"); *id.* at 1789-95 (Thomas, J., concurring) (writing separately to emphasize why an invalid removal restriction does not render agency action void). Because the FHFA Directors were properly appointed, "there [wa]s no reason to regard any of the actions taken by the FHFA … as void." *Id.* at 1787 (majority).

The Court held that it was "possible" that challengers could obtain some type of relief, but only if they could show that the removal restriction actually caused "harm." *Id.* at 1788-89.

The Court further explained that the harm necessary to obtain relief had to be more concrete than the harm necessary to establish standing to challenge a removal restriction. *Id.* at 1788 n.24 ("What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief … ."). A party has standing if it "was harmed by an action that was taken by [an unconstitutionally insulated] officer and that the plaintiff alleges was void"—but that alone is not enough to require "actions taken by such an officer" to be "undone." *Id.* Rather, for a challenger to obtain relief, the removal restriction must have actually had an impact on the challenged action. *See id.* at 1789 (explaining that the removal provision would cause harm where the President "express[ed] displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way"); *see also id.* at 1801 (Kagan, J., concurring in part) ("agree[ing]" with majority that relief is available only where the removal restriction "affected the complained-of decision").

## ARGUMENT

### I. The Court should reject Defendants' arguments about the CFPA's removal restriction and allow this case to move forward without reaching ratification.

#### A. This issue dropped out of the case when the Bureau filed its amended complaint.

As the Bureau has explained, Defendants' arguments about the removal restriction are no longer properly presented because Defendants have moved to dismiss the First Amended Complaint, a pleading filed nine months after *Seila Law* confirmed that the Bureau's Director serves at the pleasure of the President. *See* D.I. 368 at 3-7. The removal restriction thus provides no basis to grant the only form of relief Defendants have asked for: dismissal of the First Amended Complaint. In response, Defendants have offered no reason why that operative pleading—as opposed to the now-superseded initial complaint—must be dismissed, instead simply reiterating arguments about ratification that are no longer relevant. *See* D.I. 370 at 1-3.

#### B. In any event, *Collins* forecloses Defendants' claims about the removal restriction.

If the Court were to address Defendants' arguments, it should reject them. The Supreme Court held in *Collins* that agency actions are not rendered void by the mere existence of an invalid removal restriction and that such a provision does not strip a properly appointed official of the power to carry out his responsibilities. *Collins* at 1787-88 & n.23. *Collins* thus confirms that notwithstanding the removal restriction's invalidity, the Bureau's Director at all times had the authority to authorize this action and that the action therefore was valid from the outset.

*Collins* held that a party could still obtain relief if it could show that a removal restriction actually "inflict[ed] … harm." *Id.* at 1789. But Defendants cannot make that showing here. The Bureau has pursued this action under the leadership of five successive Directors appointed by three consecutive Presidents. Four of these officials were indisputably removable at will by the President for all or part of their tenures, and so were subject to full presidential oversight by both Presidents who have been in office since this action was filed. Had either President Trump or President Biden disapproved of this suit, they could easily have made their preferences known and, if necessary, put in place a new Director to carry out those preferences. Neither did. *Cf. Collins v. Mnuchin*, 938 F.3d 553, 594 (5th Cir. 2019) (en banc) (concluding that it would not "make sense" to "wipe out an action approved or ratified by two different Presidents' directors under the guise of respecting the presidency"), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761. As a result, Defendants cannot plausibly claim there has been insufficient opportunity for presidential supervision of this matter. Because Defendants have not shown and cannot show that the removal restriction caused them any harm, the Court need not even reach ratification in order to reject Defendants' arguments.

## II. If the Court does consider ratification, it should hold that the Bureau's multiple ratifications foreclose Defendants' arguments, without reaching equitable tolling.

After *Collins*, ratification merely serves to confirm, if any confirmation were needed, that this action should proceed. The ratifications by multiple Directors appointed by and removable at will by two different Presidents make clear that the removal restriction has no relevance to this case. In particular, the ratification by a Director, Kathleen Kraninger, who President Trump appointed and had plenary power to remove puts the lie to any argument Defendants might offer that the removal restriction somehow harmed them because the Bureau filed this action after President Trump took office but while the Bureau was headed by an appointee of President Obama.[2] Whether or not the removal restriction had any impact on President Trump's decision

---

[2] Even before Director Kraninger's express ratification, Acting Director Mulvaney allowed this action to proceed when he could have ordered its dismissal. He therefore implicitly ratified this action. *See CFPB v. Fair Collections & Outsourcing, Inc.*, No. 19-cv-2817, 2020 WL 7043847, at *7 (D. Md. Nov. 30, 2020) (holding that Bureau's "continued prosecution of this case" ratified the filing of the complaint); *see generally Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (ratification requires only "the principal's assent (*or conduct that justifies a reasonable assumption of assent*)" (emphasis added)). And following Director Kraninger's ratification, Acting Director Uejio expressly ratified the Bureau's pursuit of this case when he authorized the filing of the First Amended Complaint.

not to remove the Director who first approved this action, ratification makes clear that the removal restriction had no impact on this case and caused Defendants no actual harm.

In the alternative, even if the removal restriction had caused harm (it did not), ratification would provide an adequate remedy—as Third Circuit precedent involving improperly appointed officials confirms. In particular, the Third Circuit held in *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602-06 (3d Cir. 2016), that ratification "cure[d]" any defect that might have existed with respect to an agency action first approved by an improperly appointed official. *See also id.* at 603 (describing ratification as "an equitable remedy"). That holding applies with at least as much force to the removal issue in this case—particularly given the Supreme Court's suggestion in *Collins* that invalid appointments give rise to a more fundamental problem than do invalid removal restrictions. *See* 141 S. Ct. at 1788 (explaining that an invalid appointment means that the appointee does "not lawfully possess" power, while in contrast an invalid removal restriction does not mean that the relevant official "lacked the authority to carry out the functions of the office"); *see also id.* at 1793 (Thomas, J., concurring) (emphasizing the same distinction).

The Third Circuit is not alone. Every other circuit to have considered the issue has concluded that ratification provides a proper remedy where a separation-of-powers issue called into question the validity of an agency action.[3] They have done so in cases involving so-called "structural constitutional defect[s]." *See FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707-09 (D.C. Cir. 1996). And they have done so in cases specifically about the CFPA's removal restriction, holding that ratification "cure[d]" any problem with a Bureau action that was filed while the Director was purportedly removable only for cause. *See CFPB v. Seila Law LLC*, 984 F.3d 715, 718-19 (9th Cir. 2020), *rehearing en banc denied as amended*, 997 F.3d 837 (2021). At the district court level, every district court besides this one that has considered the Bureau's post-

---

[3] *See, e.g.*, *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 161-63 (2d Cir. 2021); *Moose Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 2854 (2021); *CFPB v. Gordon*, 819 F.3d 1179, 1190-91 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2291 (2017); *McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 338-39 (6th Cir. 2017). In keeping with such decisions, the Bureau has previously referred to ratification in this case as providing a "remedy." As explained above, however, *Collins* has shed significant new light on these issues and shows that ratification would not actually be required in the circumstances here.

*Seila Law* ratifications has held that they fully resolve any issue arising from the removal restriction.[4]

These cases are correct. Ratification provided Defendants with a full and precisely tailored remedy—if any were needed—to any harm they could have suffered from the removal restriction. Defendants have suggested the Bureau might not have sought to challenge their violations of law if the Director had been removable at will. That objection was conclusively resolved by Director Kraninger's decision to ratify the Bureau's decision to pursue this action, a step that she took while she was unmistakably removable at will. There can be no reason for concern at this point that Defendants are "being subjected to [suit] without adequate presidential oversight and control." *See Seila Law LLC*, 984 F.3d at 718. Ratification also appropriately accounts for the significant interests of the Bureau and of the public, including those consumers who were harmed by Defendants' illegal conduct—not to mention the President's interest in executing the law. *Cf. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2355-56 (2020) (plurality) (rejecting challengers' request in First Amendment case for broad remedy that "would end up harming a different and far larger set of strangers to this suit" than the narrower approach the Court did adopt); *United States v. Morrison*, 449 U.S. 361, 364 (1981) (describing "general rule" that constitutional remedies "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests"). Those significant interests would be "unnecessarily infringe[d]"—to say the least—by the "remedy" that Defendants seek: dismissal of this action with no recompense for the people harmed by their unlawful practices.

Defendants argue in response that even though Director Kraninger ratified this action soon after *Seila Law* made clear she was removable at will—and soon after certain intervenors indicated that they intended to raise, for the first time, arguments about the removal restriction—her ratification came too late. Defendants are wrong. They rely primarily on *FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994) ("*NRA PVF*"), but that case is inapposite. There, a deadline expired before any entity with statutory authority acted. Here, an entity with clear

---

[4] *See, e.g.*, *CFPB v. Navient Corp.*, 523 F. Supp. 3d 681, 701-02 (M.D. Pa. 2021), *pet. for interlocutory review denied*, No. 21-8011 (3d Cir. July 12, 2021); *CFPB v. Access Funding, LLC*, No. 16-cv-3759, 2021 WL 2915118, at *15-20 (D. Md. July 12, 2021); *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 49-54 (D.R.I. 2020); *Fair Collections & Outsourcing*, 2020 WL 7043847, at *5-7.

statutory authority—the Bureau—filed suit before the statute of limitations expired. Therefore, there was no need for the ratification to *separately* satisfy the statute of limitations.

*NRA PVF* involved an attempt by the Solicitor General to ratify a petition for certiorari that had been filed by the FEC. The Court held that the FEC lacked "statutory authority" to independently file the petition—or even "to litigate this case in th[e Supreme] Court" at all. *Id.* at 90, 98. Because the petition was, in effect, a nullity at the time it was filed, its initial filing did not satisfy the statutory deadline. The Court rejected the Solicitor General's later attempt to ratify the petition because, by the time of that ratification, the jurisdictional deadline to file a petition for certiorari had passed without any entity having authority to file such a petition having done so. *Id.* at 98-99. To allow ratification in these circumstances, the Court explained, would give the Solicitor General "the unilateral power to extend the 90-day statutory period for filing certiorari petitions" and, in doing so, potentially infringe the "rights of third persons." *Id.*

By contrast, the Bureau had clear statutory authority to file this lawsuit. *See* 12 U.S.C. §§ 5564, 5565. And *Collins* confirms that "the unlawfulness of the removal provision d[id] not strip the [Bureau] Director of the power to undertake the … responsibilities of his office," including the decision to authorize the filing of this action, and that there is no reason to regard the filing of this action as "void." *See Collins*, 141 S. Ct. at 1787-88 & n.23. As a result, it is clear that when the Bureau timely filed this suit, it satisfied the applicable statutory deadline, unlike the FEC in *NRA PVF*.[5]

Even if *NRA PVF* were relevant here (it isn't), none of the timing concerns that animated that decision are implicated by the Bureau's timely filed complaint. The Bureau's complaint satisfied all the purposes that statutes of limitations are meant to serve, such as putting Defendants on notice of the claims against them. There is thus no reason for concern, as there was in *NRA PVF*, that the Bureau's ratifications here might have interfered with the "rights of third persons" or been used to evade a statutory deadline. *See* 513 U.S. at 98. Indeed, it is telling that Defendants, while insisting that a statutory removal provision with no relevance to this case should allow them to escape liability entirely, have failed to provide any explanation *why* that

---

[5] Defendants have relied on other cases that discuss or apply similar timing requirements for ratifications. But these cases, like *NRA PVF*, are distinguishable in that they involved ratifications of actions that, in contrast to this enforcement action, the initial actor lacked authority to take in the first place. *See Advanced Disposal*, 820 F.3d at 602 (official lacked authority to oversee union election); *Benjamin v. V.I. Port Auth.*, 684 F. App'x 207, 211 (3d Cir. 2017) (entity lacked authority to initiate lawsuit).

result could possibly be justified. *Cf. Collins*, 938 F.3d at 594 (asking, in response to a similar argument, "[H]ow does that make sense?"). Their request for dismissal is entirely at odds with the Third Circuit's view of ratification as "an equitable remedy" that "has been applied flexibly and has often been adapted to deal with unique and unusual circumstances." *Advanced Disposal*, 820 F.3d at 603.

### III. If the Court does consider equitable tolling, it should hold that the statute of limitations was equitably tolled in these circumstances.

Were the Court to disagree with the above analysis and conclude that the Bureau's ratifications were subject to and failed to satisfy the statute of limitations in 12 U.S.C. § 5564(g)(1), it should hold that the limitations period was equitably tolled.

First, as a general matter, equitable tolling is available even if the Court determines that the CFPA's removal restriction made it impossible for the Bureau to ratify this action within three years of discovering Defendants' violations. "[A] nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46 (2010); *accord Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007). Defendants cannot rebut that presumption here. Indeed, the relevant statute of limitations specifically states that it does not bar suits that would be "otherwise permitted by … equity." 12 U.S.C. § 5564(g)(1). This Court previously concluded that equitable tolling is available here as a general matter—it simply found that the Bureau had not at that point demonstrated that all of the equitable tolling factors were satisfied. *See* D.I. 359 at 11-14. Both of the other courts that have considered the matter have agreed that the CFPA's statute of limitations can be equitably tolled in these circumstances. *See Navient*, 523 F. Supp. 3d at 699-702; *Access Funding*, 2021 WL 2915118, at *18-20. There is no reason for the Court to reconsider its prior conclusion that tolling is available here if the necessary elements are met.

Second, if the Court reaches this issue, it should hold that the requirements for equitable tolling are satisfied here because: (1) the Bureau has diligently pursued its claims in this case, and (2) an extraordinary circumstance beyond the Bureau's control prevented timely filing. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (describing these requirements). In addition, Defendants will not be prejudiced by equitable tolling. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (describing this an additional factor to consider where the two elements of equitable tolling are met).

As the Bureau has explained, the First Amended Complaint alleges numerous facts demonstrating the Bureau's diligent pursuit of its claims. *See* D.I. 368 at 7-9. These facts, as well as the Bureau's prior filings in this case, make clear that the Bureau has not slept on its rights.

This is so notwithstanding Defendants' claim that Acting Director Mulvaney was somehow required to expressly ratify this action during his tenure, even though he did not do so in any other case in which the removal restriction was not in dispute, and no participant in this case raised any objection to the removal restriction until more than 16 months after he had left the Bureau.

In addition, Congress's decision to include a statutory removal restriction in the CFPA that the Supreme Court later made clear was invalid constitutes an extraordinary circumstance beyond the Bureau's control. *See Navient*, 523 F. Supp. 3d at 701 ("Any defect in the CFPB's timely pursuit of this action was caused by an obstacle 'beyond its control', namely the statutory language of [the removal restriction]."); *Access Funding*, 2021 WL 2915118, at *20 ("Any defect in the CFPB's timely pursuit of this action was caused by an obstacle 'beyond its control.'"). "Even if the CFPB had questioned the constitutionality of its structure, it was unable to rectify any defects." *Access Funding*, 2021 WL 2915118, at *20.[6]

Finally, Defendants will suffer no prejudice from this case moving forward in the ordinary course. Allowing the Bureau to continue to prosecute its claims risks no unfair surprise or other injustice to Defendants—they have known about these claims since when they were (timely) filed four years ago. Nor is the mere "expense and annoyance of litigation" a cognizable form of injury in these circumstances that should entitle Defendants to the windfall they seek. *Cf. FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980).

\* \* \*

The Court should deny the motion to dismiss the First Amended Complaint.

---

[6] The CFPB's statute of limitations is triggered by the Bureau's discovery of a violation. *See* 12 U.S.C. § 5564(g)(1) ("no action may be brought … more than 3 years after the date of discovery"). Defendants urge a paradoxical reading of the provision: According to them, even before *Seila Law*, the Bureau was constitutional enough to discover their violations and begin the running of the statute-of-limitations clock, but it was not until after *Seila Law* (and after Defendants contend the statute of limitations had expired) that the Bureau was constitutional enough to take the necessary actions to satisfy the statute of limitations. Equitable tolling is particularly appropriate to avoid this peculiar heads-we-win-tails-you-lose result.

Respectfully submitted,

/s/ Gabriel Hopkins

Gabriel Hopkins
gabriel.hopkins@cfpb.gov
202-435-7842
Kevin Friedl
kevin.friedl@cfpb.gov
202-435-9268
Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368
Tiffany Hardy
tiffany.hardy@cfpb.gov
202-435-9375
1700 G Street NW
Washington, DC 20552

*Attorneys for Plaintiff Consumer Financial Protection Bureau*