

300 Delaware Avenue • Suite 200 • Wilmington, Delaware 19801
Tel: (302) 472.7300 • Fax: (302) 472.7320 • WWW.HEGH.LAW

DD:   (302) 472-7314
Email:   mdonimirski@hegh.law

October 27, 2021

**VIA ECF**

The Honorable Stephanos Bibas, sitting by designation
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

      Re:    *CFPB v. NCMSLT et al.*, **17-cv-01323-SB**

Dear Judge Bibas:

      We represent Ambac Assurance Corporation, and write on behalf of Defendants (the "Trusts") and Intervenors[1] (collectively, "Movants") to address the two issues raised in the Court's October 13, 2021 Order: (1) whether enforcement actions the CFPB initiated while it was unconstitutionally structured can move forward where they are ratified by a new director removable at will by the President, and (2) whether equitable tolling is available where ratification within the statute of limitations is impossible due to a yet-to-be-identified constitutional defect in the agency's structure.

      The answer to each question is no. First, the CFPB's structural constitutional defect—and resulting injury suffered by the Trusts and Intervenors—cannot be cured by ratification. Second, the CFPB cannot use the doctrine of equitable tolling as a means to evade the timing requirements of ratification, which are mandatory under Supreme Court and Third Circuit precedent.

      Moreover, as explained below, ratification[2] was ***not*** impossible here for two reasons. First, the CFPB's constitutional defect had in fact been identified as early as 2015; indeed, it was recognized and corrected by a D.C. Circuit panel in 2016, confirmed by the Executive Branch in 2017, and was then embraced by the CFPB in 2019. Second, ratification was plainly not

---

[1] As used herein, "Intervenors" refers to Ambac Assurance Corporation; Wilmington Trust Company; and Pennsylvania Higher Education Assistance Agency d/b/a/ American Education Services. Transworld Systems Inc. takes no position with respect to the arguments set forth herein.

[2] In noting that ratification was available to the CFPB in this action and procured by the CFPB in other enforcement actions, Movants do not concede that ratification can erase the constitutional injury inflicted on the defendants in such actions.



The Honorable Stephanos Bibas
October 27, 2021
Page 2

impossible here because, as the CFPB has acknowledged, it timely ratified at least four other enforcement actions of similar vintage—beginning as early as 2018—but simply did not bother to ratify this one. Those ratifications were executed by the CFPB's then-Acting Director, Mick Mulvaney, who was removable without cause by the President by virtue of his "acting" status. Accordingly, the CFPB cannot meet the prerequisites of equitable tolling, even if that doctrine otherwise applied (which it does not).

I.  **RATIFICATION CANNOT CURE THE CFPB'S SEPARATION-OF-POWERS VIOLATION**

When the CFPB filed its complaint in this action, the structure of the CFPB—which vested executive power in a single director who could not be removed by the President except for cause—violated the Constitution's separation of powers. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020). The CFPB now concedes that it acted unconstitutionally when it initiated enforcement actions (like this one) during that period. *Id.* at 2220–21 (Op. of Thomas, J.) ("The CFPB has conceded that these actions," i.e., the issuance of a CID and commencement of an enforcement action in 2017, "were unconstitutional."). In *Seila Law*, the Supreme Court severed the unconstitutional for-cause removal restriction and remanded to the lower courts to decide the remedy for the "here-and-now" injury of being subjected to an unconstitutionally filed and maintained enforcement action. *Id*. at 2196 (Op. of the Court).[3]

Following *Seila Law*, Judge Noreika dismissed the original complaint in this action without deciding whether ratification can ever cure a structural constitutional violation, although Movants had briefed that question. *See* D.I. 309 at 10–14. Instead, Judge Noreika assumed *arguendo* that ratification was theoretically available, and dismissed on the alternative ground that the CFPB failed to timely ratify this action. *See* D.I. 359 at 9.[4]

---

[3] The CFPB has sometimes argued that, by choosing to remand *Seila Law*, the Supreme Court implicitly endorsed the notion that ratification can theoretically cure injuries caused by structural constitutional defects. That argument finds no support in *Seila Law* itself, and the Supreme Court has since unequivocally refuted it. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021) (stating that the *Seila Law* "remand did not resolve any issue concerning ratification").

[4] Other district courts have concluded that ratification is a sufficient remedy for the constitutional violation committed by the CFPB in enforcement actions like this one. *See, e.g.*, *BCFP v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 52 (D.R.I. 2020). Such decisions largely flowed from flawed premises, and Movants submit that they are incorrect. *Compare id.* (permitting ratification after erroneously concluding that "the CFPB was never divested of its power to act as a principal"), *with infra* I.B.2. Even those incorrect rulings recognize, however, that the Director could only ratify claims which had not yet expired. *See Citizens Bank, N.A.*, 504 F. Supp. 3d at 50; *BFCP v. Fair Collections & Outsourcing, Inc.*, No. 19 Civ. 2817, 2020 WL 7043847, at *5 (D. Md. Nov. 30, 2020) ("In order for a ratification to be valid, the principal, here, the CFPB, must have had the ability to do the act both at the time it was done and at the time of ratification.").



The Honorable Stephanos Bibas
October 27, 2021
Page 3

Nevertheless, the threshold remedy question provides an independent basis for dismissal, because the CFPB's attempt to ratify its own unconstitutional conduct cannot redress the Trusts' injury. First, separation-of-powers violations are structural defects that courts have repeatedly found to require automatic reversal. The appropriate remedy in this case, as in other cases involving structural defects, is to set aside the act—here, the initiation of this lawsuit—taken by the unconstitutionally structured government agency. Second, the CFPB cannot invoke ratification because the fundamental premise of that doctrine is that a principal under certain circumstances may authorize the unsanctioned acts of an agent. The doctrine has no application where, as here, the CFPB seeks to have a purported *agent*—a director removable at will by the President—retroactively authorize the acts of the *principal*—in this case, the unconstitutionally structured CFPB. Finally, even if ratification could cure structural constitutional violations and had any application here, the CFPB's ratification attempt fails because it lacked executive authority when it filed its complaint against the Trusts in 2017.

### A.  Ratification Cannot Remedy a Structural Constitutional Violation

It is not surprising that the Supreme Court has never held that a structural constitutional injury can be cured through ratification: ratification is not a remedy for a violation of the Constitution's separation of powers.

In the context of agency actions, "issues of separation of powers" are "structural errors." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017). As many courts have held, when "structural errors" result in constitutional injury to a defendant, they require "automatic reversal" without any requirement of a showing of prejudice to the defendant. *Id.* ("Issues of separation of powers are structural errors that do not require a showing of prejudice" for reversal of the agency action to be appropriate); *see also Neder v. United States*, 527 U.S. 1, 7 (1999) (structural constitutional injuries are "so intrinsically harmful as to require automatic reversal"); *Freytag v. Comm'r*, 501 U.S. 868, 868–69 (1991) (separation-of-powers violations are "structural" constitutional errors); *Cirko v. Comm'r of Social Sec.*, 948 F.3d 148, 154 (3d Cir. 2020) (harm from separation-of-powers violation is "presumed"); *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) ("Issues of separation of powers . . . seem most fit to the doctrine" that "structural" errors are "subject to automatic reversal."). Thus, as the Supreme Court explained in *Seila Law*, "a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority"— and when the separation-of-powers violation involves "the President's removal power," a litigant *per se* "'sustain[s] injury' from an executive act that allegedly exceeds the official's authority." 140 S. Ct. at 2196 (citations omitted).

---

That principle is fatal to the CFPB in this case, as explained in Movants' briefing, *see* D.I. 367 at 7, and recognized by Judge Noreika in her ruling dismissing the original complaint, *see* D.I. 359 at 9–11.



The Honorable Stephanos Bibas
October 27, 2021
Page 4

Here, the CFPB has conceded that the enforcement actions it filed while it was unconstitutionally structured "***injured*** Defendants by subjecting them to the authority of an official unconstitutionally insulated from Presidential Control." Suppl. *En Banc* Br. of CFPB, *CFPB v. All American Check Cashing, Inc.*, No. 18-60302, 2020 WL 5231790, at *3 (5th Cir. Aug. 31, 2020) (CFPB suppl. br.) (emphasis added). Although ratification may under certain circumstances have the effect of authorizing an *action*, it cannot cure a past constitutional ***injury***. *Seila Law*, 140 S. Ct. at 2221 (Thomas, J.) ("[T]he alleged ratification does not cure the constitutional injury—enforcement of an investigative demand by an unconstitutionally insulated Director. . . . Thus, even if the CFPB's ratification theory is valid, Seila still has an injury"); *Ringling v. City of Hempstead*, 193 F. 596, 601 (5th Cir. 1911) ("An unconstitutional law is null and void, and proceedings had under it afford no basis for subsequent ratification or retroactive validation."); *Franklin v. Navient, Inc.*, No. 17 Civ. 1640, 2021 WL 1535575, at *2 (D. Del. Apr. 19, 2021) ("When a court finds a law unconstitutional, it finds that it is 'void, and is as no law' from the day it is passed." (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1879)).[5]

Thus, the appropriate remedy in this case is to set aside the act taken by the unconstitutional government actor by dismissing this action. *See Ryder v. United States*, 515 U.S. 177, 184 n.3 (1995) (the correct remedy is that which "afforded respondent the relief requested pursuant to its constitutional challenge"); *see also Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (setting aside decision of unconstitutionally appointed administrative law judge); *Stern v. Marshall*, 564 U.S. 462, 469 (2011) (invalidating bankruptcy court order issued in violation of Article III of the Constitution); *Noel Canning v. NLRB*, 705 F.3d 490, 514 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014) (voiding National Labor Relations Board order due to invalid recess appointments and separation-of-powers violation). Dismissal is the only outcome consistent with the Supreme Court's admonition that a successful, "timely challenge to the constitutional validity of" a government official's authority requires meaningful relief. *See. e.g.*, *Ryder*, 515 U.S. at 182–83; *accord Lucia*, 138 S. Ct. at 2055 n.5 (meaningful remedies must be available for constitutional

---

[5] Contrary to the CFPB's prior arguments (D.I. 371), the Supreme Court's recent decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), does not erase the constitutional injury or foreclose meaningful relief here. Although the Court noted that actions taken by FHFA directors who were unconstitutionally insulated from removal were not necessarily void *ab initio*, that does not foreclose "entitlement to retrospective relief." *Id*. at 1788; *see also id*. at 1789 ("it is still possible for an unconstitutional provision to inflict . . . harm"); *see also* D.I. 371 at 2 n.1 (CFPB conceding that "*Collins* left open the possibility that the challengers in that case might obtain some other form of relief"). Moreover, unlike the *Collins* plaintiffs who sought to recover money, the Trusts are defendants in an enforcement action. The *Collins* Court's remedies analysis depended in part on "the prospect that affording a more traditional remedy…could mean unwinding or disgorging hundreds of millions of dollars that have already changed hands." 141 S. Ct. at 1799 (Gorsuch, J., concurring in part). But nothing in *Collins* "undoes [the Supreme Court's] prior guidance authorizing more meaningful relief in other situations," such as this case. *Id*.


challenges to "create incentives to raise" them) (cleaned up). As courts have consistently explained, when a litigant raises a "constitutional challenge as a defense to an enforcement action," the court may not "declare the [agency]'s structure unconstitutional without providing relief" to the challenger. *E.g.*, *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993).

The CFPB has conceded that relief is necessary, but nevertheless insists that ratification—i.e., former-Director Kraninger's rubber stamp of approval—is all the "relief" the Trusts should get. *See* D.I. 320 at 7 n.5. Of course, that is no relief at all. Allowing ratification to simply wipe the slate clean would leave the Trusts and Intervenors entirely without relief for the unconstitutional actions taken by an unaccountable federal agency. Instead, this action must be dismissed. *See Ryder*, 515 U.S. at 184 n.3.

### B. Ratification Cannot Rectify Unconstitutional Agency Action

#### 1. An Agent Cannot Ratify the Unconstitutional Act of a Principal

Even if ratification could cure a structural constitutional violation—and it cannot—the doctrine has no application to the CFPB's enforcement action here. The ratification doctrine concerns the effect of a principal's subsequent approval of an agent's action that the agent had lacked authority to undertake. *See Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) ("Ratification occurs when a principal sanctions the prior actions of its purported agent.") (cleaned up); Restatement (Second) of Agency § 82 (1958) (ratification gives effect to unauthorized act of an agent); Restatement (Third) of Agency § 4.01(1) (2006) (defining ratification as the "affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority").

In this case, the CFPB seeks to turn the ratification doctrine on its head through its theory that an agent (its director) may ratify the acts of the principal (the CFPB). The constitutional violation here, however, was the ***principal***—the CFPB itself—acting without Executive oversight when it opened an investigation and later filed this enforcement action. *See Seila Law*, 140 S. Ct. at 2204 ("The CFPB Director's insulation from removal by an accountable President is enough to render the ***agency's structure*** unconstitutional.") (emphasis added); *accord* 12 U.S.C. § 5564(a) ("The Bureau," not its director, may "commence a civil action"). Because the CFPB "'is not an agent and does not purport to be one,' the doctrine of ratification does not apply." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.03 cmt. b) (alteration omitted); *Perry v. Scruggs*, 17 F. App'x 81, 91 n.1 (4th Cir. 2001) (finding the "doctrine of ratification does not apply" in situation which did not involve a purported agent acting without authority).


The Honorable Stephanos Bibas
October 27, 2021
Page 6

### 2. The Principal Lacked Authority in 2017 to Initiate this Action

Additionally, even if the Court were to find the ratification doctrine potentially applicable, Director Kraninger's ratification attempt in July 2020 still fails the first prong of the two-prong test for effective ratification, which requires that the principal must be able "to do the act ratified at the time the act was done," and not only "at the time the ratification was made." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994); *see also Norton v. Shelby Cnty.*, 118 U.S. 425, 451 (1886) (Since "[t]o ratify is to give validity to the act of another, [it] implies that the person or body ratifying has *at the time power to do the act ratified*") (emphasis added).

The CFPB fails the first prong of the ratification test because it lacked authority to wield executive power when it commenced its enforcement action against the Trusts in 2017.[6] At that time, because the CFPB's director (Director Cordray) was unconstitutionally insulated from removal, the CFPB impermissibly operated without oversight by the President—especially important here, because Director Cordray was a holdover from the prior administration. The Supreme Court made clear that absent severance of the unconstitutional removal restriction, there would be "no agency . . . with statutory authority to maintain" the enforcement action against Seila Law. 140 S. Ct. at 2208; *see also CFPB v. Seila Law LLC*, 997 F.3d 837, 842 (9th Cir. 2021) (Bumatay, J.) ("[T]he President's ability to oversee the CFPB Director was so fundamental, and the defect so severe, that if the removal protection were not severable, it may mean that 'the entire agency is unconstitutional and powerless to act.'"). Because the CFPB was not accountable to the President when it filed this case in 2017, the CFPB did not have "the authority to bring the action" on behalf of the Executive Branch. *Id.* at 844; *see also Bowsher v. Synar*, 478 U.S. 714, 732 (1986) (officers not controlled by the President are not "entrusted with executive powers"). In other words, the CFPB did not have the authority to commence its enforcement action in 2017— i.e., "to do the act ratified at the time the act was done." *NRA Political Victory Fund*, 513 U.S. at 98. The action therefore cannot be ratified.

### II. EQUITABLE TOLLING IS UNAVAILABLE

Even if the Court were to conclude that ratification could somehow cure the injury to the Trusts and Intervenors caused by the CFPB's separation-of-powers violation, the CFPB's amended complaint must still be dismissed because the CFPB failed to timely ratify the action. Director Kraninger's ratification came too late, and equitable tolling cannot rescue this action from dismissal.

---

[6] Nor did the CFPB satisfy the second prong of the ratification test—i.e., it could not have brought this suit in July 2020, "at the time the ratification was made." *See supra* n.4. The CFPB conceded this point, as Judge Noreika noted when dismissing the original complaint. *See* D.I. 359 at 10 ("The Bureau does not dispute that 'Director Kraninger's ratification . . . came more than three years after the date of discovery of these violations.'").


As an initial matter, earlier ratification was eminently possible if the CFPB had simply exercised the same level of diligence in this case as it exercised in at least four others similarly situated. The CFPB does not dispute that it obtained ratifications from former Acting Director Mulvaney—who like Director Kraninger, was removable at will—in several enforcement actions beginning as early as 2018, but failed to do so here. And even assuming *arguendo* that it was "impossible" for the CFPB to timely ratify this case due to its unconstitutional structure, equitable tolling cannot rescue this action. As explained herein, the doctrine of equitable tolling cannot simply be bootstrapped onto the doctrine of ratification to excuse a structural constitutional violation. And even if it could in theory, equitable tolling is not available to the CFPB on the facts of this case.

### A. Timely Ratification Was Not Impossible Here

By the time that it filed this action in September 2017, the defect in the CFPB's structure had been identified in numerous proceedings throughout the country in which defendants challenged the CFPB's constitutionality and enforcement authority. D.I. 359 at 11; *see, e.g.*, Opening Br. of Pet'rs, *PHH Corp. v. CFPB*, No. 15-1177, 2015 WL 5695665, at *21 (D.C. Cir. Sept. 28, 2015) (petitioners asserting that the CFPB's structure violates the Constitution's separation of powers). And in March 2017—six months before the CFPB filed this case against the Trusts—the United States publicly agreed, asserting that the for-cause removal provision "is an unwarranted limitation on the President's executive power." *PHH Corp.*, 2017 WL 1035617, at *19 (amicus br. of the United States); *see also id.* at *16 (noting that "the CFPB's interference with executive power is exacerbated by both its single-headed nature and its wide-ranging policy making and enforcement authority over private conduct").

In light of these developments, in 2018 the CFPB began procuring ratifications of at least four other enforcement actions from then-Acting Director Mulvaney—who, due to his "acting" status, was subject to removal without cause prior to *Seila Law*. D.I. 359 at 11–12 n.7; D.I. 348 at 1 n.1 (collecting CFPB's ratifications from Acting Director Mulvaney in other contemporaneous enforcement actions); *see also Collins*, 141 S. Ct. at 1783 (unconstitutional removal restriction does not extend to an "acting" director). Yet it is undisputed that the CFPB never bothered to obtain a ratification from Acting Director Mulvaney in this action. D.I. 348-1 at 40:7–10; 37:20–23; 38:21–23. It was certainly not "impossible" for the CFPB to take the exact protective measure in this case that it took in various others, as Judge Noreika recognized when she dismissed the CFPB's original complaint. *See* D.I. 359 at 11–13.

Nor can the CFPB seek tolling on the theory that its structural constitutional defect was not addressed until the Supreme Court's *Seila Law* decision in 2020. As an initial matter, "because Supreme Court decisions clarify what the law has *always* meant, their rulings apply to all open cases, even those whose facts predate the ruling." *Franklin*, 2021 WL 1535575, at *2 (cleaned up). Therefore, the CFPB's failure to protect its rights cannot be excused by the timing of *Seila*



The Honorable Stephanos Bibas
October 27, 2021
Page 8

*Law*. *See id.* at \*3 ("So if a court first rules that a statute allows an action, but later changes its mind, someone who acted in the meantime is liable.").

Moreover, four years earlier, a D.C. Circuit panel identified and addressed the same defect, holding that the CFPB's structure violated the Constitution's separation of powers, and severing the CFPA's unconstitutional for-cause removal provision. This made the CFPB "an executive agency" and gave the President "the power to . . . remove the Director at will at any time." *PHH Corp. v. CFPB*, 839 F.3d 1, 39 (D.C. Cir. 2016). This is the precise ruling that the CFPB would later request, and receive, from the Supreme Court in *Seila Law* three years later. *See* Br. of Resp't, *Seila Law LLC v. CFPB*, No. 19-7, 2019 WL 4528136, at \*16 (U.S. Sept. 17, 2019) (CFPB arguing that its structure is unconstitutional and the "proper remedy for the constitutional violation is to sever the provision limiting the President's authority to remove the Bureau's Director"). Had the CFPB simply embraced the D.C. Circuit's ruling in 2016 (as it later did in 2019), the defect in its structure would have been cured before it filed this lawsuit, thus avoiding the constitutional injury inflicted upon the Trusts here. But instead, the CFPB petitioned for rehearing *en banc* in *PHH*, succeeded in getting the panel's decision vacated, and continued to insist that there was no constitutional problem—only to later reverse course entirely. *See* Br. of Resp't on Rehearing *En Banc*, *PHH Corp. v. CFPB*, No. 15-1177, 2017 WL 1196119, at \*1–2 (D.C. Cir. Mar. 31, 2017) (CFPB insisting in *en banc* briefing that "Congress did not violate Article II by creating an independent agency led by a single Director removable only for cause"); *PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) (vacating panel decision and adopting CFPB's erroneous separation-of-powers position) (*en banc*).

Given this history, it cannot be said that it was "impossible" for the CFPB to proceed constitutionally with this action in 2017. And the CFPB cannot now seek to benefit from the delay it created in remediating its own unconstitutional structure.[7]

### B. Equitable Tolling Cannot Erase the Timing Requirements of Ratification

Regardless of whether ratification was theoretically "impossible" within the statute of limitations here, the CFPB cannot combine the two doctrines of ratification and equitable tolling to extend indefinitely the limitations period.

As an initial matter, there is "no supporting precedent" for the proposition that equitable tolling is "available in the first instance" to an agency to cure a constitutional defect and permit ratification of an untimely enforcement action. *CFPB v. Navient Corp.*, 522 F. Supp. 3d 107, 116 (M.D. Pa. 2021). This is for good reason: as the Supreme Court has warned, "equity never lends

---

[7] These same facts doom any attempt by the CFPB to claim that the circumstances causing its delay were "both extraordinary ***and*** beyond its control," as the doctrine of equitable tolling requires. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 757 (2016) (emphasis in original); *see* D.I. 370 at 4–5.

<a>
</a>

<a>The Honorable Stephanos Bibas
October 27, 2021
Page 9</a>

its aid to enforce a forfeiture or penalty." *Liu v. SEC*, 140 S. Ct. 1936, 1941 (2020) (internal quotation and citation omitted); *see also United States v. Kubrick*, 444 U.S. 111, 117 (1979) (the "right to be free of stale claims in time comes to prevail over the right to prosecute them"). Equitable tolling is a particularly poor fit here, where an agency seeks to invoke the doctrine against parties that have already been injured by the agency's constitutional violation. *See John Doe Co. v. Cordray*, 849 F.3d 1129, 1137 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency," i.e., the CFPB).

Grafting equitable tolling onto ratification would also have the perverse effect of eliminating the ratification doctrine's timeliness requirement—that the commencement of an action cannot be ratified after the right to bring it "has been terminated by lapse of time." *E.g.*, *NRA Political Victory Fund*, 513 U.S. at 98. This requirement is no technicality: it acts as a bulwark, ensuring that the "intervening rights of third persons cannot be defeated by the ratification." *Id.* Indeed, as Judge Noreika recognized in dismissing the CFPB's original complaint, "If a principal were allowed to ratify unauthorized agency actions after the statute of limitations had expired, 'he would have the unilateral power to extend the . . . statutory period for filing [complaints] by days, weeks, or, as in this case, even longer.'" D.I. 359 at 10–11 (quoting *NRA Political Victory Fund*, 513 U.S. at 99). Such an unlimited extension of the limitations period "would be utterly repugnant to the genius of our laws." *Gabelli v. SEC*, 568 U.S. 442, 452 (2013).

C. **The CFPB Is Not Entitled to Equitable Tolling Here**

All else aside, even if equitable tolling were theoretically available, the CFPB cannot meet the stringent standard for its application to the facts of this case. Equitable tolling of a statute of limitations is to be used "only sparingly," *United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005), and only if two elements are met: (1) a party "has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe*, 136 S. Ct. at 755 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Here, as discussed at length in Judge Noreika's decision dismissing the original complaint, and then in Movants' briefing on their motion to dismiss the amended complaint, the CFPB cannot satisfy either prong. *See* D.I. 359 at 11–13; D.I. 367 at 8–10; D.I. 370 at 3–5. And even if it could, Movants have also explained why the CFPB cannot demonstrate an absence of prejudice, and therefore should not be granted equitable tolling. *See* D.I. 367 at 10–11; *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (If the first two prongs are satisfied, then the "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply.").

Finally, the CFPB's inequitable conduct throughout this proceeding bars its present attempt to avail itself of equitable tolling. *See Bishop v. Bishop*, 257 F.2d 495, 500 (3d Cir. 1958) ("the doors of a court of equity" are closed "to one tainted with inequitableness or bad faith relative to



The Honorable Stephanos Bibas
October 27, 2021
Page 10

the matter in which he seeks relief"). The CFPB brought this action only after spending months collaborating with a hedge fund to foist an unauthorized $20 million "consent" judgment upon the defendant Trusts. *See* D.I. 226 at 16–19. The CFPB had reason to know that this proposed "consent" judgment ("PCJ") had never been properly authorized by parties with authority to provide the Trusts' consent. D.I. 367 at 9–10. The CFPB was also on notice that its PCJ violated the Trusts' governing agreements, and consequently, the rights of numerous third parties. *See* D.I. 226 at 22–23. Further, the CFPB knew that its proposed order had been concealed from Intervenor Ambac—whose consent, the CFPB also knew, was a contractual requirement that had never been fulfilled. *See* D.I. 272 at 11–12. And the CFPB knew that the Owner Trustee, the party with the contractual authority to execute the consent order on the Trusts' behalf, had refused to do so. D.I. 226 at 23 n.26; D.I. 228 Ex. 4 at -0001467. None of this gave the CFPB pause. It continued to pursue the PCJ for years, until Judge Noreika finally threw out the PCJ on May 31, 2020. D.I. 272. In view of this history, the CFPB cannot now rely on equity to salvage this action. *See Bishop*, 257 F.2d at 500 (party seeking equitable relief has the burden of showing that "there has been honesty and fair dealing" on its part).

\* \* \* \* \*

For the foregoing reasons and those set forth in Movants' prior submissions, we respectfully request that the Court dismiss the CFPB's amended complaint with prejudice. We thank the Court for its attention to this matter, and are available to answer any questions the Court may have.

Respectfully submitted,

*/s/ Melissa N. Donimirski*

Melissa N. Donimirski (#4701)

MND/daa