IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CONSUMER FINANCIAL
PROTECTION BUREAU,

   *Plaintiff,*

  v.         No. 1:17-cv-1323-SB

NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST et al.

   *Defendants.*

---

Carolyn I. Hahn, Colin T. Reardon, Gabriel S.H. Hopkins, Jane M.E. Peterson, Stephen C. Jacques, Tiffany Hardy, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C.

              *Counsel for Plaintiff.*

Daniel M. Silver, MCCARTHER & ENGLISH LLP, Wilmington, DE; Megan Ix Brison, Michael A. Weidinger, PINCKNEY WEIDINGER URBAN & JOYCE LLC, Wilmington, DE.

             *Counsel for Defendants.*

---

**MEMORANDUM OPINION**

December 13, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Sometimes litigation is a moving target. Legal rules can change while the parties are battling it out. Earlier this year, the National Collegiate Student Loan Trusts successfully argued that the Consumer Financial Protection Bureau's suit against them was untimely. This Court dismissed the case without prejudice, relying on then-prevailing precedent. But then the Supreme Court announced a new rule. And the CFPB renewed its suit. Applying the new rule, at least on the complaint before me, this case is timely.

Plus, the Trusts say the CFPB lacks authority to sue them because they are not "covered persons" under the Consumer Financial Protection Act. But they "engaged in" servicing loans and collecting debt through their contractors, so they fall within the statute. I must thus let the CFPB's case proceed.

## I. BACKGROUND

In 2017, the CFPB sued the Trusts for engaging in forbidden debt-collection and litigation practices. First Am. Compl., D.I. 362 ¶¶ 1–2. Now the Trusts move to dismiss. Understanding that motion requires us to take a whistle-stop tour through both this protracted enforcement action and the structure of the CFPB.

### A. The Trusts and the CFPB's enforcement

The Trusts were set up to securitize student loans. They bought a pool of 800,000 private loans, then sold notes secured by that pool to investors. *Id.* ¶¶ 27, 34. As students repaid their loans, the investors would take a cut. D.I. 54, at 4. Just like any other securitization, the value of the notes depended on the riskiness of the

underlying asset: the more students default on their loan payments, the less valuable the notes.

Thus, the Trusts have a powerful incentive to ensure that students do not miss loan payments. Since the Trusts have no employees, they collect debt and service the loans through third parties. First Am. Compl. ¶ 29.

To that end, in 2009 the Trusts contracted with a special servicer to collect "past-due and defaulted student loans" and to do "collections litigation." D.I. 54, at 5. The special servicer, in turn, entered into agreements with "subservicers," who would "conduct[] collections" and "oversee[] various law firms that [would] file collection lawsuits against borrowers in the name of the Trusts." *Id.*; *see* First Am. Compl. ¶¶ 38–44.

But the subservicers soon attracted the attention of the CFPB. After a lengthy investigation, it found that the subservicers had "executed and notarized deceptive affidavits" and "filed … collections lawsuits lacking" key evidence. First Am. Compl. ¶¶ 49–50. The CFPB concluded that they engaged in unfair and deceptive debt-collection practices. D.I. 54, at 1–2.

So in 2014, the CFPB started administrative proceedings against the Trusts. Though the parties reached a settlement and asked the Court to enter a consent decree, the Court declined. D.I. 272. That forced the CFPB to sue.

**B. The structure of the CFPB and the Trusts' first motion to dismiss**

But midway through this litigation, the Supreme Court injected a new issue. Since its creation in 2008, the CFPB had been headed by a single director, insulated from removal by the President. Yet the Court said that structure "violate[d] the separation

of powers." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197, 2209 (2020). So it severed the removal restriction, leaving the rest of the statute intact.

That ruling implicated this enforcement action, which the CFPB filed in 2017 while headed by an improperly insulated director. Aware that such a director may have lacked the power to bring an enforcement action, a new director (now removable at will by the President) ratified the suit to cure any defect. D.I. 308-1.

But earlier this year, Judge Noreika ruled that the ratification came too late to save this suit. D.I. 359, at 8–14. All CFPB enforcement actions must be brought within three years of the date on which it discovers the violation. 12 U.S.C. §5564(g)(1). Yet here, the CFPB admitted that "ratification … came more than three years after the date of discovery." D.I. 356, at 40:20−21. Plus, it could not show that the statute-of-limitations clock was extended by equitable tolling. So Judge Noreika dismissed the suit without prejudice, giving the CFPB another chance to explain why its suit was timely. D.I. 360.

After that ruling, the CFPB amended its complaint. And the Trusts brought this motion to dismiss, arguing that the new complaint suffered from the same timeliness defect as the first one. D.I. 367, at 7–11. They also contend that the Trusts do not count as "covered person[s]" under the Act and so cannot be targets of CFPB enforcement. *Id.* at 11; 12 U.S.C. §5481(6).

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). I must accept all

allegations in the complaint as true and draw all inferences in favor of the nonmoving party. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

## II. THIS SUIT IS NOT YET TIME BARRED

The Trusts say the CFPB failed to ratify this suit before the statute-of-limitations clock ran out. But this assumes that unconstitutional removal protections automatically void agency action. And earlier this year, the Supreme Court rejected that premise. Thus, the CFPB stopped the clock when it sued. So on the compliant now before me, the suit is timely filed.

### A. There was no need for the CFPB to ratify this suit

The CFPB brought this suit while it was unconstitutionally structured. Back then, courts saw actions brought by improperly structured agencies as "ultra vires" and so void. *Collins v. Yellen*, 141 S. Ct. 1761, 1795 (2021) (Gorsuch, J., concurring in part). And void actions cannot stop the statute-of-limitations clock. Thus, to save the suit, an agency had to cure the constitutional defect, then ratify the action before the clock ran out. Here, ratification happened too late. So Judge Noreika dismissed this lawsuit.

Yet earlier this year, the Supreme Court undercut that reasoning. *Id.* at 1788 (majority opinion). It held that an unconstitutional *removal* restriction does not invalidate agency action so long as the agency head was properly *appointed*. Such an agency head has "authority to carry out the functions of the office." *Id.* So the agency's actions are not "void" and do not need to be "ratified," unless a plaintiff can show that the removal provision harmed him. *Id.* Put differently, he must show that the agency

action would not have been taken but for the President's inability to remove the agency head. *Id.*

That is not the case here. This suit would have been filed even if the director had been under presidential control. It has been litigated by five directors of the CFPB, four of whom were removable at will by the President. D.I. 377, at 2. And the CFPB did not change its litigation strategy once the removal protection was eliminated. This is strong evidence that this suit would have been brought regardless. Thus, the CFPB's initial decision to bring this suit was not ultra vires.

### B. At this stage, I may not decide whether this suit is time barred

Because the decision to bring this suit was a valid agency action, it is not untimely if it was *filed* within three years of the date on which the CFPB discovered the alleged violation. 12 U.S.C. §5564(g)(1).

The Trusts argue that even under this test, the suit is time barred. The CFPB sued on September 18, 2017. Yet the Trusts say, the CFPB had discovered the alleged misconduct by September 4, 2014, when it issued a civil investigative demand asking the Trusts for information about possible violations. D.I. 367, at 19. If true, this suit is time barred.

But the Trusts' argument is premature. On this motion to dismiss, I may consider a statute-of-limitations defense only if "the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (internal quotation marks omitted). Otherwise, the defendant would be forced to state facts necessary to anticipate and overcome an affirmative defense. *Id.*

Yet the Trusts fall afoul of this rule by relying on a civil-investigative-demand letter outside the complaint. *See* D.I. 302-3. Because I may not consider that letter, the Trusts' argument fails. Even if I *could* look at the letter, it does not unambiguously show that the CFPB knew about the alleged violations by September 4, 2014. The letter states that its purpose is to "determine whether [the Trusts] … engaged [in] … unlawful acts." *Id.* at 4. Such an investigation would have been pointless if the agency already knew about the Trusts' alleged misconduct.

The Trusts may still try to make out a statute-of-limitations defense, but that will have to wait until summary judgment.

### III. THE TRUSTS ARE "COVERED PERSONS" UNDER THE CONSUMER FINANCIAL PROTECTION ACT

The Trusts argue that the CFPB cannot bring an enforcement action against them because they are not "covered persons" as required under the Act. But this theory is undercut by the statute's text: the Trusts "engage in" servicing and collecting debt.

Start with the text. The CFPB may bring enforcement actions to "prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice." 12 U.S.C. §5531(a). Thus, it may sue only a "covered person" or a "service provider." The CFPB does not argue that the Trusts are "service provider[s]." *See* First Am. Compl. ¶8. So this suit may only proceed if they are "covered person[s]": "person[s] that engage[] in offering or providing a consumer financial product or service." 12 U.S.C. §5481(6).

The CFPB argues that the Trusts qualify because they "engage[] in" providing some of the "financial product[s] or service[s]" listed in the Act: "servicing loans,

including acquiring, purchasing, selling, brokering, or other extensions of credit" and "collecting debt." *Id.* §5481(6), (15)(A)(i), (x); First Am. Compl. ¶8. More precisely, it claims that the Trusts "engage in regular servicing of … loans" and "debt-collection activities through … [its] subservicers." *Id.* ¶¶35–36.

The Trusts do not deny that their subservicers collected debt or serviced loans. Instead, they contend that the CFPB cannot hold them liable for those actions. D.I. 367, at 13. The Trusts characterize themselves as "passive securitization vehicles … [that] take no action related to the servicing of student loans or collecting debt." *Id.* at 12.

So this dispute boils down to the breadth of the word "engage." Does a person "engage" in an activity if he contracts with a third party to do that activity on his behalf? Yes.

"Engage" means to "to embark in any business" or to "enter upon or employ oneself in an action." *Engage* (def. 16), Oxford English Dictionary (2d ed. 2000); *see also Engage*, Black's Law Dictionary (11th ed. 2019) ("To employ or involve oneself; to take part in; to embark on.").

That definition is broad enough to encompass actions taken on a person's behalf by another, at least where that action is central to his enterprise. Thus, if a dairy farmer contracts with a farmhand to milk his cows and never does that job himself, he is still employed in or in the business of milking cows.

So too here. The Trusts "embark[ed] in [the] business" of collecting debt and servicing loans when they contracted with the servicers and subservicers to collect their

debt and service their loans. Indeed, the CFPB alleges that the unfair and deceptive debt-collection practices happened in lawsuits brought on behalf of the Trusts, with the "relevant Trust … named [as the] plaintiff in the action." First Am. Compl. ¶ 37. Those suits could have proceeded only with the Trusts' involvement: with narrow exceptions, "a party … must assert his own legal rights and interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks omitted). The subservicers could not have collected any debt without the Trusts' say-so.

True, the subservicers were independent contractors and not Trust employees. D.I. 302-1 § 17. But that is not dispositive. Debt collection and loan servicing are core aspects of the Trusts' business model. If they did not enforce debtors' obligations, their pool of loans would be less valuable, as would the notes they sell to investors. The Trusts cannot claim that they were not "engaged in" a key part of their business just because they contracted it out. *Cf. Barbato v. Greystone All., LLC*, 916 F.3d 260, 266−68 (3d Cir. 2019) (finding that a "passive debt owner" counted as a "debt collector" under the Fair Debt Collection Practices Act when it contracted with a third party to collect debt on its behalf).

Plus, if Congress wanted to allow enforcement against only those who *directly* engage in offering or providing consumer financial services, it could have said so. *See, e.g.*, 12 U.S.C. § 5481(15)(A)(vii)(I) (exempting some merchants from "covered person" status where they deal in "nonfinancial good[s] or service[s] sold *directly* … to the consumer").

Pushing back, the Trusts note that the Act expressly enumerates when a "related person" may be sued based on his relationship to a covered person. D.I. 367, at 14 (citing 12 U.S.C. §5481(25)). That provision, they reason, displaces common-law vicarious liability. Maybe so. But because the Trusts *themselves* count as covered persons, I need not decide whether a non-covered-person principal can ever be held vicariously liable for the acts of his covered-person agent.

\* \* \* \* \*

The Trusts argue that the CFPB was powerless to file this suit and that it filed too late. But both arguments fail. On the complaint now before me, this suit was timely filed. And the CFPB may sue the Trusts because they are "covered persons" under the Consumer Financial Protection Act. Thus, this enforcement action may proceed.