**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Consumer Financial Protection Bureau, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 1:17-cv-01323-SB |
| v. ) | |
| ) | |
| The National Collegiate Master Student ) | |
| Loan Trust, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO MOTION
TO CERTIFY INTERLOCUTORY APPEAL AND FOR STAY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
NATURE AND STAGE OF THE PROCEEDINGS .............................................................. 1
SUMMARY OF ARGUMENT ................................................................................................ 1
FACTS ...................................................................................................................................... 2
LEGAL STANDARD .............................................................................................................. 4
ARGUMENT ............................................................................................................................ 5
   I.   The Court's Application of Collins to the Facts of This Case Does Not Call for Immediate Review ................................................................................................................................. 5
   II.   The Court's Interpretation of the Consumer Financial Protection Act Does Not Call for Immediate Review ....................................................................................................... 9
   III.   A Stay Is Not Warranted ............................................................................................... 13
CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016) .................................. 8

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000) ................................ 4

*Bachowski v. Usery*, 545 F.2d 363 (3d Cir. 1976) ....................................................................... 4

*Barbato v. Greystone All., LLC*, 916 F.3d 260 (3d Cir. 2019) .................................................. 11

*CFPB v. Access Funding, LLC*, No. 16-cv-3759, 2021 WL 2915118 (D. Md. July 12, 2021) ...... 8

*CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) .................................... 12

*CFPB v. Navient Corp.*, No. 21-8011 (3d Cir. July 12, 2021) ..................................................... 6

*CFPB v. Navient Corp.*, 523 F. Supp. 3d 681 (M.D. Pa. 2021) .............................................. 6, 8

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ....................................................................... 1, 3, 6, 7

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019) ................................ 14

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) .................. 12

*FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015) ................................................................................................................................. 13

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) .............................................................. 5

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983) ......................................... 15

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) .......................................... 11

*Hulmes v. Honda Motor Co.*, 936 F. Supp. 195 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998) ............................................................................................................................................ 6

*In re Citizens Bank, N.A.*, 15 F.4th 607 (3d Cir. 2021) ............................................................. 14

*In re Delaware & Hudson Ry. Co.*, 96 B.R. 469 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) ............................................................................................................................................ 4

*In re Physiotherapy Holdings, Inc.*, No. AP 15-51238-KG, 2017 WL 6524524 (D. Del. Dec. 21, 2017) ............................................................................................................................................ 6

*In re THG Holdings LLC*, No. 19-11689 (JTD), 2020 WL 1493622 (D. Del. Mar. 27, 2020) .... 10

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974) .......................................................... 4

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................................ 14

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187 (4th Cir. 2013) .................................................................................................................. 12

*Litgo N.J., Inc. v. Martin*, No. 06-cv-2891-AET, 2011 WL 1134676 (D.N.J. Mar. 25, 2011) ...... 4

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ............................................................ 14

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................................................... 14

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) ................................................ 11

*United States v. Manamela*, 612 F. App'x 151 (3d Cir. 2015) ................................................... 11

*United States v. Nagarwala*, 438 F. Supp. 3d 821 (E.D. Mich. 2020) ........................................ 12

**Statutes**

12 U.S.C. § 5481(19) .................................................................................................................... 11

12 U.S.C. § 5481(6)(A) ................................................................................................. 1, 3, 10, 11

15 U.S.C. § 1692a(6) .................................................................................................................... 11

28 U.S.C. § 1292(b) ................................................................................................................ passim

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Consumer Financial Protection Bureau ("Bureau") brought this action against 15 student loan trusts ("Defendants" or the "Trusts") to address illegal debt-collection activities by the Trusts. Specifically, the Trusts, through their agents, filed debt collection lawsuits beyond the statute of limitations, and supported lawsuits using false or misleading affidavits. Through this action, the Bureau seeks to obtain compensation for consumers harmed by the Trusts' illegal activities, and to prevent the Trusts—which still hold student loan debt—from committing future violations of federal law.

In response to the Court's recent decision denying their motion to dismiss the Amended Complaint, Defendants have filed a motion seeking an unwarranted delay of these proceedings. Defendants have asked this Court to certify an interlocutory appeal of two holdings: that there was no need for the Bureau to ratify this suit, and that the Trusts are covered persons under the Consumer Financial Protection Act ("CFPA"). They also have requested an indefinite stay of all proceedings during the pendency of their appeal, should it be certified.

## SUMMARY OF ARGUMENT

The Court should deny Defendants' motion in its entirety. Certification of the question whether the Bureau was required to ratify this action is unwarranted because Defendants have not satisfied any of the three statutory elements required under 28 U.S.C. § 1292(b). First, the issue is not a controlling question of law because there are multiple alternative grounds for the Third Circuit to affirm this Court's decision on appeal. Second, there is no substantial ground for differing opinions on the Court's application of the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). Defendants do not even claim that the CFPA's removal provision caused them any harm, as *Collins* requires that they show in order to be entitled to relief. Third,

1

reversal on this issue would not materially advance the termination of this litigation because there are multiple other grounds on which to affirm the Court's order, leading only to more litigation, not less. Finally, the Court's order does not implicate issues of nationwide significance. It simply applied the holding of *Collins* to the facts of this case.

The Court also should deny certification of the "covered person" issue because Defendants have not shown that there is substantial ground for difference of opinion regarding the CFPA's definition of covered persons. Under the plain text of the statute, and consistent with analogous Third Circuit caselaw, the Trusts are covered persons because they engaged in the servicing and collection of debt.

And the Court should deny Defendants' request for a stay, even if it certifies one or both issues for interlocutory appeal. Defendants have failed to meet any of the requirements for such a stay—they have not shown a likelihood of success, can identify no harm to them aside from the costs of litigating this matter in the ordinary course, and a stay harms the public interest because, if granted, thousands of consumers harmed by the Trusts' illegal collection of millions of dollars would be forced to wait even longer to obtain compensation.

**FACTS**

Between November 1, 2012, and April 25, 2016, the Defendants filed over 90,000 debt-collection lawsuits against borrowers whose student loans Defendants ostensibly owned. *See* D.I. 362, First Amended Complaint ("Am. Compl.") ¶ 51. In each of these actions, the relevant Defendant Trust was the named plaintiff. *See id.* ¶ 52. Defendants' agents prepared notarized affidavits purporting to demonstrate that the relevant Defendant owned the sued-upon debt. *See id.* ¶¶ 53-54. But in numerous instances the sworn representations in these affidavits were false, or the affidavits were improperly notarized. *See id.* ¶¶ 55-66, 71-79. On hundreds of occasions

Defendants' agents filed collections actions even though they did not possess proof of Defendants' ownership of the loans in question, or filed collections actions beyond the applicable statutes of limitations. *See id.* ¶¶ 86-87. Defendants' agents engaged in this conduct in the Defendants' name and for the Defendants' benefit. *See id.* ¶¶ 49-50. This conduct constituted deceptive and unfair acts and practices under the CFPA, *see id.* ¶¶ 89-122, and caused millions of dollars in harm to over two thousand consumers. *See id.* ¶¶ 80-86.

After the Supreme Court's June 2020 decision in *Seila Law v. CFPB* held that a provision of the CFPA that purported to restrict the President's power to remove the Bureau's Director violated the separation of powers, the Director expressly ratified the filing and pursuit of this litigation. *See* D.I. 308. In March 2021, the Court (Noreika, J.) dismissed the Bureau's complaint on the ground that the Director's ratification was untimely. *See* D.I. 359 at 11-14. The Court granted the Bureau leave to file an amended complaint and the Bureau did so. Defendants again moved to dismiss, reviving, among other arguments, their contention that *Seila Law* required dismissal. *See* D.I. 367, Defs.' Mot. to Dismiss Am. Compl. at 7.

Shortly thereafter, the Supreme Court issued its ruling in *Collins v. Yellen*, holding that an invalid removal provision does not invalidate agency actions and does not entitle parties to relief unless they show that the provision itself caused them actual harm. *See* 141 S. Ct. 1761, 1789 (2021). At no point have Defendants identified any harm resulting from the CFPA's removal provision. This Court denied Defendants' motion to dismiss the amended complaint on December 13, 2021. *See* D.I. 381, Order.

## LEGAL STANDARD

Under 28 U.S.C. § 1292(b), district courts have discretion to certify issues for interlocutory appeal if the order being appealed from: (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). These elements are "conjunctive, not disjunctive." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). "The burden is on the movant to demonstrate that all three requirements are met." *Litgo N.J., Inc. v. Martin*, No. 06-cv-2891-AET, 2011 WL 1134676, at *2 (D.N.J. Mar. 25, 2011).

But interlocutory appeal is not simply an avenue for disappointed litigants to bypass the final order rule. *See Ahrenholz*, 219 F.3d at 676. Instead, it is only to be invoked in "exceptional circumstances [that] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Delaware & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).

Accordingly, the elements of § 1292(b) are best understood as a minimum or prima facie showing needed to seek an interlocutory appeal; necessary but insufficient to justify granting one. Courts should decline to certify issues for interlocutory appeal in most cases even if these minimum requirements are nominally met. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present.").

# ARGUMENT

## I. The Court's Application of Collins to the Facts of This Case Does Not Call for Immediate Review

Interlocutory appeal is not warranted on Defendants' first question: whether the Bureau was required to timely ratify this action. This question does not satisfy any of the criteria for interlocutory review.

*First*, this issue does not involve "a controlling question of law" because reversal of this Court's holding that the Bureau did not need to ratify this suit would not lead to dismissal. There are multiple other grounds—which this Court had no need to resolve, and did not resolve, in its decision—on which to affirm the Court's bottom-line conclusion that this case should proceed. For instance, Defendants' request to dismiss the First Amended Complaint fails for the additional and independent reason that the amended complaint was filed only after the Supreme Court made clear the removal provision has no force or effect, and thus the provision provides no possible basis for dismissing the amended complaint. *See* D.I. 368, Bureau Opp. to Mot. to Dismiss at 3-7; *see generally Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (filing of an amended pleading generally "renders the original pleading a nullity" except for statute-of-limitations purposes). In addition, even if the Third Circuit thought the removal provision was relevant to the Amended Complaint, and further concluded that ratification was required, dismissal would still be unwarranted because the Bureau *did* timely ratify this action. *See* D.I. 377, Bureau Letter Br. at 5-9. And even if the Third Circuit thought that the Bureau's ratification was somehow untimely, dismissal would *still* be unwarranted because any limitations period that might apply to the ratification should be equitably tolled in these circumstances. *See id.* at 9-10. Indeed, the Third Circuit recently denied interlocutory review of a district court order finding that equitable tolling should apply in an analogous circumstance. *See* Order, *CFPB v. Navient Corp.*, No. 21-

8011 (3d Cir. July 12, 2021); *see also CFPB v. Navient Corp.*, 523 F. Supp. 3d 681, 697-702 (M.D. Pa. 2021).

*Second*, there is not "substantial ground for difference of opinion" about the Court's straightforward application of *Collins*'s clear remedial holding. This factor "calls for more than mere disagreement with the [Court's] ruling." *In re Physiotherapy Holdings, Inc.*, No. AP 15-51238-KG, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017). Instead, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (quoting *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998)). Here, there is no doubt about the correct legal standard: the Supreme Court announced it just six months ago in *Collins*. There is also no doubt about how that standard applies here. Indeed, Defendants make no effort to claim that, contrary to this Court's conclusion, they are entitled to relief under *Collins*.

In *Collins*, the Supreme Court held that agency actions are not rendered void by the mere existence of an invalid removal provision, and that such a provision does not strip a properly appointed official of the power to carry out his responsibilities. 141 S. Ct. at 1787-88 & n.23. To obtain relief because of an improper removal provision, a party must show that the provision actually "inflict[ed] … harm." *Id.* at 1789. As this Court noted, the Bureau has litigated this case across the tenures of five different Directors, four of whom were indisputably removable at will by the President. D.I. 380, Mem. Opinion Denying Mot. to Dismiss ("Mem. Op.") at 6. Acting through these officials, the President could at any time have instructed the Bureau to drop this case (or not to file the First Amended Complaint). He did not do so. The Court thus correctly concluded that the removal provision caused Defendants no harm and thus they were not entitled to relief under *Collins*.

6

Rather than dispute this legal conclusion or argue that they were harmed by the removal provision, Defendants instead seek to distinguish *Collins* on the ground that the agency action in that case was first initiated by an at-will-removable official. *See* D.I. 384, Defs.' Mot. for Interlocutory Appeal Br. ("Defs.' Br.") at 12. That purported distinction makes no difference.[1] *Collins* held that actions taken by officials who were purportedly removable only for cause were not rendered invalid by an unconstitutional removal provision. 141 S. Ct. at 1787-88 & n.23 (holding that "there is no reason to regard *any* of the actions taken by the FHFA in relation to the third amendment as void" and that "there is no basis for concluding that *any* head of the FHFA lacked the authority to carry out the functions of the office" (emphasis added)). That reasoning applies equally here and means "there is no basis for concluding that any head of the [Bureau] lacked the authority to carry out the functions of the office," *see id.* at 1788, including by authorizing the filing and continued prosecution of this public enforcement action.

Defendants further claim that this Court overlooked "the *Seila Law* Court's clear instruction to consider the legal sufficiency of ratification." Defs.' Br. at 14. But in *Collins*, the Supreme Court rejected the argument that *Seila Law* meant ratification is required, explaining that *Seila Law* "said no such thing." *Collins*, 141 S. Ct. at 1788. *Seila Law*, the Court emphasized, "did not resolve any issue concerning ratification, including whether ratification was necessary." *Id.*; *see also id.* (rejecting the view that *Seila Law* provided even "implicit support" for the challengers' claim to relief). Nor did *Collins* in any way suggest that the FHFA was required to ratify its actions—much less that those actions would be void sans ratification.

---

[1] It is not even a distinction. The action that Defendants challenge here—the filing of the First Amended Complaint—was likewise initiated by an at-will-removable official.

7

Defendants also note that numerous district courts have allowed Bureau enforcement actions to proceed after finding that the Bureau had validly ratified them. *See* Defs.' Br. at 11. What is most salient about these and similar cases that Defendants cite is that they rejected arguments, like Defendants', that the Bureau's enforcement actions must be dismissed because of the removal provision. Moreover, all but one of these cases were decided before *Collins* and thus shed no light on the proper application of that decision. The only post-*Collins* decision, *CFPB v. Access Funding, LLC*, No. 16-cv-3759, 2021 WL 2915118 (D. Md. July 12, 2021), did not actually consider whether the Bureau's enforcement action could move forward without ratification because the court found that the Bureau had validly ratified the action and that such ratification "serves to establish that this action continues with the approval of a Director removable at will by the President." *Id.* at *20 (quoting *Navient*, 523 F. Supp. 3d at 701).

Defendants get no further claiming the Bureau itself thinks ratification is required. *See* Defs.' Br. at 10-11. True, the Bureau has—consistent with cases such as *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602-06 (3d Cir. 2016)—described ratification as a "remedy" for any problem stemming from the removal provision. But as this Court correctly held, *Collins* shed significant new light on these issues and shows that there was no harm here that ratification would be needed to remedy. (Nor has the Bureau ever conceded that the removal provision caused Defendants the type of harm that *Collins* makes clear is required for relief.) Defendants' focus on the Bureau's pre-*Collins* arguments in this and other cases—rather than on the Supreme Court's binding conclusions in *Collins*—does nothing to show that a "substantial ground for difference of opinion" exists about how this Court applied *Collins*.

*Third*, it would not "materially advance the ultimate termination of this litigation" to send this Court's interlocutory ruling for immediate review by the Third Circuit. As noted above, even

8

if the Third Circuit believed ratification was required, there are multiple alternative grounds on which to affirm the denial of Defendants' motion to dismiss. Interlocutory review—particularly if proceedings in this Court were stayed—would not serve judicial economy or the public interest more generally; it would do little more at this point than further delay this case, which the Bureau filed more than four years ago.

*Fourth*, whether the Bureau was required to ratify this action is not a question of nationwide significance. The Supreme Court's decision in *Seila Law* has resolved any issue with the removal provision going forward. That provision remains a disputed issue in only a handful of cases involving actions the Bureau took prior to *Seila Law*. Even in these cases, the question of whether ratification was required is not itself a significant issue because the Bureau did ratify them. The fact that some of these cases have progressed to courts of appeals does not show that the issue is one of nationwide significance. *Contra* Defs.' Br. at 15-16. It simply shows that these cases have been around long enough that some have reached the appellate courts.

## II. The Court's Interpretation of the Consumer Financial Protection Act Does Not Call for Immediate Review

Interlocutory appeal is also not warranted on Defendants' second question: whether the Trusts qualify as "covered persons" subject to the CFPB's enforcement authority. This question not only fails to meet the minimum statutory criteria for interlocutory review, but also fails to present the kind of extraordinary circumstances required for such a review. Most significantly Defendants do not, and cannot, show that the conclusions in the Court's December 13 Order present a substantial ground for difference of opinion.

Courts consider a number of factors when analyzing whether § 1292(b)'s difference-of-opinion element has been met, including whether there is doubt about the correct legal standard, whether other legal opinions contradict or conflict with the court's order, whether there is an

absence of controlling law on the point in question, or whether the order departs from well-established law. *See In re THG Holdings LLC*, No. 19-11689 (JTD), 2020 WL 1493622, at \*6 (D. Del. Mar. 27, 2020).

Here, the Court's conclusion was a straightforward application of the plain language of the statute to the well-pled allegations of the Amended Complaint. *See* Mem. Op. at 8-9. The Defendants acquire student loans for the purpose of servicing and collecting on them. They service and collect the loans through their agents. Their agents filed lawsuits in courts around the country in Defendants' name, for Defendants' benefit, and with Defendants' authorization.[2] This activity is a core part of Defendants' business model. Defendants are "engaged in" the offering or provision of a consumer financial product and are thus covered persons. *See* 12 U.S.C. § 5481(6)(A). Nothing the Defendants have presented in their present motion demonstrates why there is substantial ground for disagreement with this conclusion.

Defendants argue that this case presents a question of first impression because no court has previously addressed "whether passive securitization trusts can be held liable under the CFPA." *See* Defs.' Br. at 17. But the fact that no court has previously addressed a CFPA action against trusts per se is irrelevant unless the Defendants can marshal authority for the proposition that trusts are treated differently than individuals or companies that engage servicers to conduct business on their behalf. But over the course of two rounds of motion to dismiss briefing, oral argument, and their instant brief, Defendants have entirely failed to do so. Defendants have also failed to grapple with the fact that the CFPA explicitly envisions that covered persons include

---

[2] And as the Bureau alleged in its Amended Complaint and noted in an earlier filing, the Defendants are also active participants in defensive lawsuits related to the debt collection practices carried out in their name. *See* Am. Compl. ¶ 37; D.I. 319, Plaintiff's Br. in Opp. to Intervenors' Mot. to Dismiss Initial Compl. at 19 (collecting cases).

entities that by definition must act through others. *See* 12 U.S.C. § 5481(19) (defining "person" to include partnerships, companies, associations, trusts, estates, or other entities).

Instead, as the Court has correctly pointed out, Defendants rely on their self-serving "characterization" of themselves as "passive" entities that "take no action." *See* Mem. Op. at 8. These characterizations are not consistent with the allegations in the Amended Complaint, which at this stage the Court must still accept as true. But even if they could be considered, Defendants offer no explanation for why they would be determinative, let alone legal authority supporting that position.

Far from being a departure from established law the Court's opinion points out that the same conclusion has been reached by other courts in substantially similar circumstances. *See* Mem. Op. at 9 (citing *Barbato v. Greystone All., LLC*, 916 F.3d 260, 266-68 (3d Cir. 2019))[3]; *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), *abrogated on other grounds by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) (holding that entity with no employees or officers that acquired debts to be serviced and collected by servicers was a "debt collector" under the FDCPA); *United States v. Manamela*, 612 F. App'x 151, 156 (3d Cir. 2015) (while interpreting the definitional provisions of a criminal healthcare fraud statute,

---

[3] The paucity of Defendants' legal reasoning is amply demonstrated by their reversals on the applicability of the Fair Debt Collection Practices Act (FDCPA) to an analysis of the CFPA. In their motion to dismiss brief, they argued that the Third Circuit's interpretation of the definition of "debt collector" under the FDCPA in *Pollice* supported their interpretation of the CFPA. *See* D.I. 367, Defs.' Mot. to Dismiss Am. Compl. at 15. After the Court correctly noted that the Third Circuit's interpretation of the FDCPA is consistent with the Bureau's position, Defendants changed tack and claimed that, actually, FDCPA cases "shed[] no light on … the scope of the CFPA's covered person definition." *See* Defs.' Br. at 18 n.7. They argue that while a covered person under the CFPA "engages in" an activity, debt collectors under the FDCPA "use[]" instrumentalities of interstate commerce. *See id.* (citing 15 U.S.C. § 1692a(6)). They then assert, without authority or reason, that "use" represents a "sweeping definition" as compared to "engage in." *See id.*

11

concluding that "'[p]rovide' does not mean 'provide directly'") (emphasis in original); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 202-03 (4th Cir. 2013) (finding that several interlocking entities all "provided" cable services to consumers and rejecting the argument that only the "initial link in a chain of delivery" qualified as a provider) (emphasis is original).

Defendants' arguments that this Court's opinion conflicts with other decisions fares no better. On this point, they argue that other courts have concluded that other entities did not "engage in" the conduct of third parties in other circumstances. *See* Defs.' Br. at 17-18. Notably, the entities in these cases were not "passive" securitization trusts, which suggests that Defendants concede that that distinction makes no difference to the legal analysis. In any event, none of the decisions cited by Defendants help their cause. In *CFPB v. ITT* the court did not adopt Defendants' argument that covered persons must "engage in" an activity directly, but rather concluded that the Bureau did not sufficiently allege that the entity engaged in the relevant activity. *See* 219 F. Supp. 3d 878, 909 (S.D. Ind. 2015). In *Freund v. Republic of France*, the court similarly concluded that the allegations were insufficient to conclude the relevant entity was engaged in the relevant activity, not that it could never be shown as a matter of law. *See* 592 F. Supp. 2d 540, 557-59 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010). And *United States v. Nagarwala* involved a natural person engaged in criminal child genital mutilation, hardly an analogous fact pattern to this one. *See* 438 F. Supp. 3d 821, 827-28 (E.D. Mich. 2020).

Defendants have also failed to show that the Court applied the incorrect legal standard. Defendants motion to dismiss brief pointed to the dictionary definition of "engage in" and an opinion interpreting the FDCPA to support their argument. *See* Defs.' Mot. to Dismiss Am.

12

Compl. at 12, 15. The Court did the same. So there is no alternative legal standard the Court failed to apply. Rather, the Court recognized that there is no authority for Defendants' insistence that the term "engage in" must be read so narrowly as to exclude them under these facts.

The fundamental ordinariness of the Bureau's position in this litigation moreover demonstrates why the Court's order does not represent the kind of rare and extraordinary circumstance that justifies an interlocutory appeal. Defendants simply disagree with the Court's opinion. In a last-ditch attempt to realize their preferred outcome, they cite to an amicus brief filed over four years ago that makes unsubstantiated claims about the impact of this case on the broader securitization market. *See* Defs.' Br. at 19 (citing D.I. 73-1). But Defendants have never provided evidence that this case will impact the securitization market, or provided a legal justification for why those concerns would trump federal consumer protection law.

Finally, Defendants have failed to demonstrate that the Court's opinion presents the kind of extraordinary and rare circumstances that justify an interlocutory appeal. *See FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015) ("even if all three criteria under Section 1292(b) are met, the district court may still deny certification.") (internal citation omitted). The Court's opinion quite correctly recognized that the Bureau's position is neither novel nor complicated, and the Defendants' arguments are unsupported by statutory text, legal authority, or common sense.

### III.    A Stay Is Not Warranted

Even if the Court certifies either of the issues identified by Defendants for interlocutory appeal, it should not stay proceedings in this case during the pendency of an appeal. Stays of proceedings during interlocutory appeals are not "routine," as Defendants contend. Rather, the statute explicitly provides that "application for an appeal hereunder shall *not* stay proceedings in

13

the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b) (emphasis added). When evaluating a motion for a stay pending appeal, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021) ("The first two factors of this traditional standard are the most critical"). All of these factors militate in favor of allowing proceedings to continue while an appeal is sought.

First, as the above discussion demonstrates, Defendants have not come anywhere close to making a strong showing that they are likely to succeed on the merits of their appeal. Permitting them an opportunity to convince the Circuit Court to reach a different conclusion from this Court would not be reason enough to stay these proceedings. Second, Defendants have made no showing of irreparable injury should proceedings continue. They will suffer no more injury from beginning the discovery process than any other civil litigant who must expend the effort and cost to defend their interests. Such burdens are typically not considered irreparable injury to a party. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) (expense of resources not a sufficient irreparable injury under *Nken*); *cf. Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" when considering a stay under *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)); The Defendants and their servicers have not shown that the past four years of this litigation has had any appreciable impact on the conduct of their business beyond the costs of litigating.

14

In contrast, the longer this protracted litigation drags on without progressing towards a decision on the merits, the greater the harm done to those consumers affected by Defendants' illegal conduct. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (in considering a stay under *Landis* "the clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard"). Thousands of American consumers have been harmed by Defendants' illegal debt collection activities to the tune of millions of dollars. This harm may not just represent money leaving bank accounts, but could also include credit histories permanently marred and judgments standing as impediments to affected consumers obtaining future loans, homes, or other opportunities. There is no justification for an open-ended continuation of that harm. Similarly, the Bureau's action is taken explicitly in the public interest to not only remediate past harms but prevent and deter future harms. As with the relief that consumers could see from the resolution of this case, the public's broader interest in stopping and deterring illegal conduct can only be harmed by a stay here. Defendants' claims that the Bureau's action is harming or will harm borrowers' ability to obtain student loans or the cost of those loans in the future is completely unsupported, and in any event should not be a justification for violations of federal law.

## CONCLUSION

For the foregoing reasons the Court should deny the motion to certify its December 13 Order for interlocutory appeal under 28 U.S.C. § 1292(b). If the Court does so certify, it should deny the request for a stay pending that appeal and permit the parties to proceed with this litigation.

Dated: January 6, 2022

Respectfully submitted,

*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

ERIC HALPERIN
*Enforcement Director*

DEBORAH MORRIS
*Deputy Enforcement Director*

ALUSHEYI J. WHEELER
*Assistant Litigation Deputy*

*/s/ Gabriel Hopkins*
Gabriel Hopkins
gabriel.hopkins@cfpb.gov
(202) 435-7842
Stephen Jacques
stephen.jacques@cfpb.gov
(202) 435-7368
Tiffany Hardy
tiffany.hardy@cfpb.gov
(202) 435-9375

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722