IN THE UNITED STATES COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL ) <br> PROTECTION BUREAU, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> NATIONAL COLLEGIATE MASTER ) <br> STUDENT LOAN TRUST, *et al.*, ) <br> ) <br> *Defendants*. ) <br> ) | Case No. 17-cv-01323-SB |

## **STIPULATED FINAL JUDGMENT AND ORDER**

This Stipulated Final Judgment and Order ("Order") is entered between Plaintiff, Consumer Financial Protection Bureau ("Bureau"), and Defendants, The National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4 (collectively "NCSLTs," "the Trusts," or the "Defendants").

The Bureau and the NCSLTs agree to entry of this Order, without further adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Amended Complaint.

## RECITALS

1. On September 18, 2017, the Bureau commenced this civil action against Defendants to obtain injunctive and monetary relief and civil penalties. On April 30, 2021, the Bureau filed the Amended Complaint alleging violations of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), in connection with the servicing of student loans held by the Trusts. On January 26, 2022, Defendants filed an answer, in which they denied certain allegations. Defendants otherwise neither admit nor deny the allegations in the Amended Complaint, except that Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

2. This Court has jurisdiction over the parties and the subject matter of this action.

3. The Trusts waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claims they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest.

## DEFINITIONS

5. The following definitions apply to this Order:

    a. "Affected Consumers" means Consumers identified on the Master List from whom funds were collected pursuant to a Collections Lawsuit filed between November 1, 2012, and September 18, 2017, by Law Firms retained by one of Defendants' Special Sub-Servicers on behalf of the Trusts to collect a Debt where: (a) the chain-of-

assignment documentation necessary to prove Trust ownership of the Debt was not located; or (b) the lawsuit was time-barred.

b. "Affiant" means any signatory to an Affidavit, other than one signing solely as a notary or witness to the act of signing, signing in that person's capacity on behalf of one or more of the Defendants.

c. "Affidavit" means any sworn statement filed with a court in connection with litigation to collect a Debt.

d. "Collections Lawsuits" means lawsuits filed in the United States of America on behalf of and in the name of one or more of the NCSLTs to establish a Consumer's liability for a Debt and collect on that Debt through judicial processes.

e. "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

f. "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a student loan held by one or more NCSLTs, whether or not such obligation has been reduced to judgment.

g. "Effective Date" means the date on which the Judgment and Order is entered on the docket by the Court.

h. "Enforcement Director" means the Enforcement Director of the Division of Enforcement for the Consumer Financial Protection Bureau, or their delegate.

i. "Law Firm" means a law firm engaged on behalf of one or more Defendants in connection with a Collections Lawsuit.

j. "Master List" means the list, agreed upon by the Bureau and Defendants prior to entry of this Order, of Collections Lawsuits and/or Debt involving Affected Consumers.

k. "Monthly Pay Trusts" means NCSLTs other than the Quarterly Pay Trusts. The Monthly Pay NCSLTs are monthly-pay trusts that make Distribution Date payments each month on the 25th calendar day or if such day is not a business day, the next business day thereafter.

l. "NCSLT-related Entity" means any of the following entities in relation to any of the Defendants: the Indenture Trustee; the Owner Trustee; and the Administrator, not in their individual capacities, but solely in each such entity's capacity as such under the NCSLT Trust Related Agreements.

m. "Quarterly Pay Trusts" means The National Collegiate Student Loan Trust 2003-1 and The National Collegiate Student Loan Trust 2004-1, which are quarterly pay trusts that make Distribution Date payments each quarter. The National Collegiate Student Loan Trust 2003-1 makes Distribution Date payments on the 25th calendar day or if such day is not a business day, the next business day thereafter in the months of February, May, August, and November. The National Collegiate Student Loan Trust 2004-1 makes Distribution Date payments on the 25th calendar day or if such day is not a business day, the next business day thereafter in the months of March, June, September, and December.

n. "Special Sub-Servicer" means the entity that services or serviced past due or defaulted student loans owned by Defendants, including by retaining Law Firms to handle Collections Lawsuits.

o.  "Trust Related Agreements" means all agreements in force as of the date of this Order to which the Trusts are a party and that relate to the securitization or servicing of the Loans owned by the Trusts.

## CONDUCT PROVISIONS

### I.

### Prohibited Conduct

**IT IS ORDERED** that, under §§ 1053 and 1055 of the CFPA:

6.  Defendants may not take any action to cause any service provider to violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, with respect to lawsuits filed to collect on defaulted private student loans that lack documentation necessary to prove Trust ownership of the loans or involving debt that is time-barred.

7.  With regard to Debt associated with Collections Lawsuits identified in the Master List, Defendants are permanently restrained and prohibited from taking any action to cause any service provider to collect or to seek to collect the Debt; furnish information to consumer reporting agencies on the Debt; or resell the Debt.

### II.

### Affirmative Requirements

**IT IS ORDERED** that, under §§ 1053 and 1055 of the CFPA:

8.  Within 30 days of the Effective Date, Defendants shall ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, that the relevant sub-servicing entity is directed to:

    a.  withdraw, dismiss, or terminate all pending Collections Lawsuits on the Master List;

5

    b. cease post-judgment enforcement activities on Collections Lawsuits on the Master List;

    c. seek to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing judgments or settlements relating to Collections Lawsuits on the Master List; and

    d. cease accepting settlement payments related to Collections Lawsuits on the Master List.

9. In the event that an entity other than the current Special Sub-Servicer is retained to service past due and defaulted NCSLT loans, including selecting and overseeing Law Firms ("Alternative Special Sub-Servicer"), the Trusts shall not enter into a contract with the Alternative Special Sub-Servicer, nor shall cause any service provider to do so on the Trusts' behalf, unless the contract includes:

    a. provisions requiring the Alternative Special Sub-Servicer to maintain a compliance program with provisions addressing the following:

        i. comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers with respect to Collections Lawsuits;

        ii. an effective employee training program required for all employees with any involvement in Collections Lawsuits, including but not limited to Affiants, whose duties include reviewing, executing, preparing, processing, verifying, or notarizing of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

   iii. implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

   iv. implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit; and

   v. comprehensive written policies and procedures designed to ensure that any Law Firms engaged by the Alternative Special Sub-Servicer to collect Debt do not violate any Federal consumer financial laws, which must include at a minimum:

      1. the Law Firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

      2. the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and the Alternative Special Sub-Servicer's policies and procedures related to Collections Lawsuits;

      3. the Alternative Special Sub-Servicer's authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

      4. periodic review by the Alternative Special Sub-Servicer of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

    b. unless the Alternative Special Sub-Servicer is already subject to the CFPB's supervisory authority, a provision requiring the Alternative Special Sub-Servicer to consent to any request by the CFPB to examine the Alternative Special Sub-Servicer's adherence to the compliance program referenced above with respect to Collections Lawsuits.

10. The Trusts shall notify the CFPB in writing at least 30 days before execution of a contract with an Alternative Special Sub-Servicer to oversee Collections Lawsuits of an intention to enter into such a contract, including a copy of a proposed contract. The Notice shall include an assessment of the Alternative Special Sub-Servicer's readiness to maintain the compliance program referenced in Paragraph 9(a), and, to the extent that the assessment indicates incomplete readiness, a detailed plan for the prospective Alternative Special Sub-Servicer to adhere to the requirements of the contractual provisions referenced in Paragraph 9(a) within a reasonable time after contract execution.

## MONETARY PROVISIONS

### III.

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

11. A judgment for monetary relief, redress, and damages is entered in favor of the Bureau and against Defendants in the amount of $2,250,000.

12. Within 60 days of the Effective Date, the Monthly Pay Trusts must pay at least one sixth of their respective proportions of the redress amount by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. To the extent not already paid in full, each ensuing month thereafter, on the monthly distribution date, the

        Monthly Pay Trusts must pay another one sixth of their respective proportions of the redress amount by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions, until the Monthly Pay Trusts have fully paid their respective proportions of the total redress amount.

13.    Within 120 days of the Effective Date, the Quarterly Pay Trusts must pay their respective proportions of half of the redress amount by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. Within 180 days of the Effective Date, the Quarterly Pay Trusts must pay their respective proportions of the remaining one half of the redress amount by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

14.    Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress to Affected Consumers as identified by the Bureau, including but not limited to refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

15.    The Bureau may use any remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress to Affected Consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

16. Payment of redress to any Affected Consumer under this Order may not be conditioned on that consumer waiving any right.

## IV.

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

17. In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the Effective Date to the date of payment, and will immediately become due and payable.

18. Defendants must relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants, except that if an appeal is brought by a party other than Defendants and there is a final determination on appeal that this Order is erroneous and is reversed or vacated, then the parties shall file a joint motion in either the appellate court or this Court for an order requiring the Bureau to return the funds within 60 days. If the appellate court or this Court thereby issues an order making clear that the Bureau must return the funds, the Bureau will comply with the terms of such an order and return the funds to Defendants.

19. Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Number or Employer Identification Number), which Defendants previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## COMPLIANCE PROVISIONS

## V.

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

20. For 5 years after the Effective Date, Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' names or addresses. A Defendant must provide this notice at least 30 days before the development or as soon as practicable after learning about the development, but in any case, no longer than 14 days after the development.

21. Within 7 days of the Effective Date, Defendants must designate at least one telephone number and email, physical, and postal addresses as points of contact that the Bureau may use to communicate with each Defendant.

22. Defendants must report any change in the information required to be submitted under Paragraph 20 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

## VI.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

23. Within 7 days of the Effective Date, Defendants must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

24. Within 30 days of the Effective Date, Defendants must deliver a copy of this Order to each NCSLT-related Entity and the Special Sub-Servicer, and ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, the relevant sub-servicing entity is directed to deliver a copy of this Order to any Law Firms who may have responsibilities related to the subject matter of this Order.

25. For 5 years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section V, and will ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, the relevant sub-servicing entity is directed to deliver a copy of this Order to any Law Firms who will have responsibilities related to the subject matter of this Order before they assume their responsibilities.

26. Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from each NCSLT-related Entity and the Special Sub-Servicer. Defendants must also ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, that the relevant sub-servicing entity is directed to secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the

E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from the Law Firms referenced in Paragraph 25.

27. Ninety days from the Effective Date, Defendants must submit to the Enforcement Director a list of all persons and their titles to whom Defendants have delivered this Order under this Section and a copy of all signed and dated statements acknowledging receipt of this Order that Defendants have secured under Paragraph 26.

## VII.

## Recordkeeping

**IT IS FURTHER ORDERED** that:

28. For a period of 5 years following the Effective Date, Defendants shall ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, that the relevant NCSLT-related Entity or sub-servicing entity is directed to create and retain documents and records necessary to demonstrate full compliance with the Affirmative Requirements (Section II) and each provision of this Order, including all submissions to the Bureau.

29. All documents and records must be maintained in their original electronic format. Data should be centralized and maintained in such a way that access, retrieval, auditing, and production are not hindered.

30. Defendants must make the documents identified in Paragraph 28 available to the Bureau upon the Bureau's request, or ensure, to the fullest extent of Defendants' rights under the Trust Related Agreements, that the relevant NCSLT-related Entity or sub-servicing entity is directed to make such records available to the Bureau.

## VIII.

## Notices

**IT IS FURTHER ORDERED** that:

31. Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*In re CFPB v. The National Collegiate Master Student Loan Trust, et al.*, Case No. 17-1323-SB," and send them by email to Enforcement_Compliance@cfpb.gov:

    ATTN: Enforcement Director

    Consumer Financial Protection Bureau

    Division of Enforcement

## IX.

## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

32. Within 14 days of receipt of a written request from the Bureau relevant to Defendants' compliance with their obligations under this Order, Defendants must submit requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents responsive to the Bureau's request.

33. For purposes of this Section, the Bureau may communicate directly with Defendants or their designee, unless Defendants retain counsel related to these communications.

34. Defendants must consent to Bureau representatives interviewing any person affiliated with Defendants, any NCSLT-related Entity, any of Defendants' service providers, or the Special Sub-Servicer who has agreed to such an interview regarding: (a) this matter, (b)

14

anything related to or associated with the conduct described in the Amended Complaint, or (c) compliance with this Order. The person interviewed may have counsel present.

35. Nothing in this Order will limit the Bureau's lawful use of compulsory process under 12 C.F.R. § 1080.6.

## X.

## Transfer of Assignment of Operations

**IT IS FURTHER ORDERED** that:

36. Within 5 years of the Effective Date, should Defendants seek to transfer or assign all or part of their operations that are subject to this Order, including the transfer of student loan special sub-servicing rights, Defendants must, as a condition of sale or transfer, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XI.

## Administrative Provisions

**IT IS FURTHER ORDERED** that:

37. The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Amended Complaint, to the extent such violations occurred before the Effective Date and the Bureau knows about such practices as of the Effective Date. The Bureau may use the practices described in the Amended Complaint in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of

15

the Bureau to determine and ensure compliance with the Order or to seek penalties for any violations of the Order.

## XII.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

38.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

DATED this ___ day of _____, 20__.


_____
United States Circuit Judge