IN THE UNITED STATES COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST, *et al.*,<br><br>*Defendants*. | Case No. 17-cv-01323-SB |

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S
RESPONSE TO PACIFIC INVESTMENT MANAGEMENT COMPANY LLC'S
OBJECTION TO THE PROPOSED STIPULATED JUDGMENT AND OPPOSITION TO
ITS MOTION TO STAY, AND RESPONSE TO THE NOTEHOLDER GROUP'S
CONDITIONAL OBJECTION TO THE PROPOSED STIPULATED JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................... 2

FACTS ......................................................................................................................................... 3

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT ............................................................................................................................... 7

    I.    The Trusts Were Authorized to Enter Into the Proposed Stipulated Judgment ................. 7

    II.   The Proposed Stipulated Judgment Does Not Deprive Noteholders of Any Contractual Rights and Would Not Cause the Trusts to Violate Any Terms of the Trust Related Agreements ........................................................................................................................ 9

    III.  The Proposed Stipulated Judgment is Fair and Reasonable ........................................... 13

    IV.  A Stay of This Case Pending Appeal of a Different Case Is Not Warranted ................. 13

CONCLUSION ......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-cv-756 (M.D. Pa. filed May 6, 2024) ............................................................................................................................ 4

*CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-cv-756, 2024 WL 4367926 (M.D. Pa. Oct. 1, 2024) ........................................................................................................... 5

*CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-3061 (3d Cir. filed Nov. 7, 2024) ............................................................................................................................ 6

*In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116 (Del. Ch. 2020) .................... 9, 10

*In re Nat'l Collegiate Student Loan Trusts Litig.*, Consolidated C.A. No. 12111-VCS (Del. Ch. Apr. 27, 2021) ...................................................................................................... 11

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................. 14

*SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014) ........................................ 6, 13

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) ........................................ 6, 7

*United States v. CCM TCEP, LLC*, No. 21-1461, 2023 WL 5165661 (D. Del. May 18, 2023)... 15

**Statutes**

12 U.S.C. § 5511(a) ............................................................................................................. 13

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Consumer Financial Protection Bureau ("Bureau") brought this action against fifteen student loan trusts ("Defendants" or the "Trusts")[1] to address illegal debt-collection activities by the Trusts. The Bureau alleged that the Trusts, through their agents, filed debt collection lawsuits beyond the statute of limitations and supported lawsuits using false or misleading affidavits. Through this action, the Bureau sought to obtain compensation for consumers harmed by the Trusts' illegal activities and to prevent the Trusts—which still hold student loan debt—from committing future violations of federal law.

On January 16, 2025, the Bureau and Defendants filed a Joint Motion for Entry of Stipulated Final Judgment and Order, D.I. 458 ("Joint Motion"), requesting that this Court enter an attached proposed Stipulated Final Judgment and Order resolving this matter, D.I. 458-1 ("PSJ" or "Proposed Stipulated Judgment"). Defendants joined the motion subject to their request that the Court wait to decide the Joint Motion until any objections to the PSJ, and any responses thereto, were filed. *See* D.I. 459. Upon consideration of the Trusts' request, the Court adopted a schedule which, after two amendments, allowed any objections to be filed by February 18, 2025, and the parties' responses to objections to be filed by March 4, 2025. *See* D.I. 460, 462, 470.

---

[1] Defendants in this matter are National Collegiate Master Student Loan Trust, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4.

Non-party noteholder Pacific Investment Management Company LLC ("PIMCO") filed an objection to the PSJ, combined with a purported motion to stay the matter. D.I. 467 ("PIMCO Objection"). A separate group of non-party noteholders (the "Noteholder Group") filed a "conditional objection" to the PSJ. D.I. 466.

## SUMMARY OF ARGUMENT

The Bureau opposes PIMCO's objection and the Noteholder Group's conditional objection to the Proposed Stipulated Judgment and PIMCO's motion to stay this matter. PIMCO's objection does not challenge the fairness or reasonableness of the PSJ, but instead asserts unfounded and meritless procedural objections that PIMCO previously advanced in an opposition to another proposed stipulated judgment involving the Bureau and Defendants in the Middle District of Pennsylvania. The Bureau urges the Court to overrule those objections, just as that court did, and deny PIMCO's motion to stay the matter.

The Bureau also urges the Court to reject the Noteholder Group's conditional objection to the Proposed Stipulated Judgment. The group conditionally objects "at this time" for no substantive or even procedural reason, but instead because of its uncertainty regarding the Bureau's authority to settle this matter and implement and enforce provisions of the PSJ. That claimed uncertainty, though, is based on speculation and news reports. The reality is that the Bureau has not withdrawn the Joint Motion, is filing this substantive response to both non-parties' objections, and retains its authority to enforce all provisions of the PSJ if entered by the Court.[2]

---

[2] Because the Noteholder's Group did not file a substantive objection to the Joint Motion or PSJ, this response in the Summary of the Argument serves as the entirety of the Bureau's response to the Noteholder's Group's conditional objection.

Because the non-party objectors have provided no legitimate reason to reject the parties' settlement of this matter or delay its implementation any further, the Bureau requests that the Court grant the parties' Joint Motion and enter the Proposed Stipulated Judgment.

## FACTS

The Bureau filed this lawsuit in September 2017 against Defendants for deceptive and unfair acts and practices in collections lawsuits against borrowers who defaulted on their private student loans. D.I. 1. In its Amended Complaint, the Bureau alleged that the Trusts violated the Consumer Financial Protection Act ("CFPA") by engaging in deceptive and unfair acts or practices in collections lawsuits against borrowers in default. D.I. 362. The Bureau alleged that in filing those lawsuits, the Trusts engaged in a variety of unlawful activity, including by filing false and misleading affidavits and testimony, filing improperly notarized affidavits, filing lawsuits without the intent or ability to prove the claims, and collecting time-barred debts. *Id.*

On June 20, 2024, the Court issued an order referring this case to a magistrate judge for alternative dispute resolution. D.I. 427. On November 19, 2024, the parties participated in court-ordered mediation before Magistrate Judge Laura D. Hatcher. At the close of that session, the parties reached an agreement in principle to settle this matter. Over the following month and through the end of 2024, the parties worked diligently on the Proposed Stipulated Judgment and the Joint Motion. On January 15, 2025, the Bureau and the Trusts filed a joint status report with the Court indicating that the parties were close to finalizing the settlement, and that the Trusts were working on receiving the final consents and approvals to file the PSJ. D.I. 457 ("Status Report"). After receiving the required consents and approvals, the Trusts consented to the parties filing the Joint Motion and PSJ. *See* Exh. A, Jacques Decl. ¶ 4 ("Jacques Decl."). On January 16,

2025, the parties filed the Joint Motion and PSJ seeking approval of the settlement. D.I. 458, 458-1.

The Proposed Stipulated Judgment, if entered by the Court, would resolve the case entirely. The judgment provides for injunctive and monetary relief. It would prohibit the Trusts from violating the CFPA with respect to lawsuits filed to collect on defaulted private student loans that lack documentation necessary to prove Trust ownership of the loans or involving debt that is time-barred, and would require the cessation of collection efforts relating to debt identified in certain lawsuits filed by the Trusts and the implementation of certain safeguards to reduce the likelihood of future violations. It also requires the Trusts to pay $2.25 million in restitution to harmed student borrowers. *See* PSJ ¶¶ 6-7 (prohibited conduct), 8-10 (affirmative requirements), 11-16 (order to pay redress). The judgment would not, as PIMCO repeatedly asserts in its brief, require the payment of any civil money penalties.

In May 2024, the Bureau filed a separate lawsuit in the Middle District of Pennsylvania against the same fifteen Trusts that are defendants in this case, plus the Pennsylvania Higher Education Assistance Agency ("PHEAA"). *See CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-cv-756 (M.D. Pa. filed May 6, 2024).[3] That case also involved student loan servicing—the Bureau alleged that PHEAA and the Trusts failed to respond to borrowers seeking relief from student loan payments, including during a national emergency—but alleged conduct and related claims that were distinct from those in this case. MDP D.I. 1. The same day the complaint was filed in *PHEAA-NCSLT*, the Bureau, PHEAA, and the Trusts filed a joint

---

[3] The May 2024 case is referred to in this brief as the *PHEAA-NCSLT* case, and citations to docket entries from that case are identified with the phrase "MDP D.I." Citations to docket entries in this case are identified with the phrase "D.I." per District of Delaware Local Rule 7.1.3(a)(6).

4

motion similar to the one in this case requesting that the court enter an attached proposed stipulated final judgment and order as to the Trusts. MDP D.I. 3.[4]

In a process almost identical to the one adopted here, the court in *PHEAA-NCSLT* agreed to wait to act on the joint motion to approve the proposed stipulated judgment and gave non-parties an opportunity to object to the settlement. MDP D.I. 13. PIMCO was the only objector in the *PHEAA-NCSLT* case, advancing several procedural objections to the settlement, including that the Trusts lacked authority to enter the proposed stipulated judgment and that the settlement would impair PIMCO's contractual rights (both arguments that PIMCO has parroted in its Objection in this case, almost word-for-word). MDP D.I. 33. PIMCO did, however, advance several other objections in the *PHEAA-NCSLT* case that it does not argue in this case, most notably that the settlement in *PHEAA-NCSLT* was unfair and unreasonable. *See id.*

On October 1, 2024, the court in *PHEAA-NCSLT* overruled PIMCO's objections and granted the parties' joint motion for entry of the proposed stipulated judgment and order. *See CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-cv-756, 2024 WL 4367926 (M.D. Pa. Oct. 1, 2024). The court found that "the Trusts had authority to enter into the proposed settlement," *id.* at *10, and that "the proposed judgment does not violate the noteholder's contractual rights, nor does it impose any obligation on the noteholders," *id.* at *16. The court also overruled PIMCO's objection that the settlement was not fair and reasonable. *Id.* at *17. The court therefore granted the parties' motion to enter the proposed stipulated judgment, MDP D.I. 49, and issued a final judgment in the form requested by the Bureau and the Trusts, MDP D.I. 50. PIMCO subsequently appealed the court's decision to the United States Court of Appeals for

---

[4] The parties also sought entry of a proposed stipulated final judgment and order as to PHEAA, but that part of the motion and related subsequent proceedings are not relevant here.

the Third Circuit, MDP D.I. 52, where it remains pending. *CFPB v. Pennsylvania Higher Educ. Assistance Agency*, No. 24-3061 (3d Cir. filed Nov. 7, 2024).

## LEGAL STANDARD

The Trust Related Agreements govern the authority of the Trusts to enter settlements, as well as the distribution of rights and responsibilities among the Trust-related parties, and include the Trust Agreements, *see, e.g.*, D.I. 468-1, the Indentures, *see, e.g.*, D.I. 468-2, and the Administration Agreements, *see, e.g.*, D.I. 468-3.[5]

The proper standard for reviewing a proposed consent judgment involving an enforcement agency "requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved.'" *SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014). The evaluation for fairness and reasonableness should assess "(1) the basic legality of the decree[;] . . . (2) whether the terms of the decree, including its enforcement mechanism, are clear[;] . . . (3) whether the consent decree reflects a resolution of the actual claims in the complaint[;] . . . and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294-95.

In addition, a court should consider that "it is the policy of the law to encourage settlements." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Moreover,

---

[5] The term "Trust Related Agreements" is defined in the PSJ to mean "all agreements in force as of the date of [the PSJ] to which the Trusts are a part and that relate to the securitization or servicing of the Loans owned by the Trusts." PSJ ¶ 5(o). There are separate Trust Related Agreements—including a Trust Agreement, Indenture, and Administration Agreement—for each of the fifteen Defendant Trusts, which contain some slight variations among them. The exemplars PIMCO attached as exhibits in support of its Objection, which are for The National Collegiate Student Loan Trust 2006-4, may differ from the terms of the Trust Related Agreements for other NCSLT Defendants, including those quoted or cited in court opinions interpreting their provisions.

6

"[t]hat policy has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Id.* Finally, "[t]hat so many affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance." *Id.*

## ARGUMENT

PIMCO asserts that the Trusts were not authorized to enter into the Proposed Stipulated Judgment, and that even if they were, the PSJ would violate PIMCO's contractual rights. Admitting that it is collaterally estopped from making these arguments, PIMCO urges the Court not to consider these objections on their merits and instead await the outcome of its appeal of the *PHEAA-NCSLT* matter, where its arguments were first considered and rejected.

PIMCO's assertions are as meritless here as they were in the *PHEAA-NCSLT* matter and should be evaluated by the Court now, without the delay sought by PIMCO. The Trusts in this case were fully authorized to enter into the PSJ, having obtained all necessary authorizations from Trust-related entities. And the PSJ would not cause the Trusts to violate any terms of the Trust Related Agreements. The Bureau therefore renews its request for entry of the PSJ and asks that the Court rule on the parties' joint motion for entry of the PSJ without delay.

### I.   The Trusts Were Authorized to Enter Into the Proposed Stipulated Judgment.

The Trusts agreed to enter into the Proposed Stipulated Judgment with full authority from all required Trust-related entities, including the Owner Trustee and the Owners. PIMCO's Objection vaguely asserts a lack of "evidence" that the Trusts followed the Trust Related Agreements before filing the Joint Motion. *See* PIMCO Objection at 10-11. PIMCO does not identify what evidence would have satisfied its concerns, and instead observes that the Owner

7

Trustee did not intervene in this case and separately move the Court to enter the PSJ, that the Owner Trustee has not publicly announced that it directed the Trusts to enter the PSJ, and that the Trusts have not publicly declared that the Owner Trustee obtained the Owners' written approval to enter the PSJ. *Id.*

But the Trust Related Agreements do not require that the Owner Trustee intervene as a defendant before the Trusts can resolve a lawsuit, and they do not require that the Trusts or any other party make public declarations about internal Trust business before doing so. There is no legitimate question about the Trusts' authority to file the Joint Motion or enter into the PSJ. The Trusts indicated to the Court in the Status Report filed the day before the Joint Motion and PSJ that they were in the process of obtaining the final consents and authorizations. *See* Status Report ¶¶ 6-7. The Trusts subsequently informed the Bureau, through communications between counsel for the parties, that the Trusts had obtained all necessary consents and approvals under the Trust Related Agreements. *See* Jacques Decl. ¶ 4.

That all of the necessary Trust-related parties authorized or consented to the filings also should be clear in light of the absence of any objections by those parties to the filings. Not one Trust-related party objected to the Joint Motion or to the entry of the PSJ, and certainly none questioned the authority of the Trusts to enter the PSJ—not the Owner Trustee, the Owners, the Indenture Trustee, the Administrator, the Note Insurer, or any other party (many of whom, notably, intervened and objected on similar grounds to the parties' initial attempt to settle this matter in 2017). Not even the Noteholder Group, which holds a far larger share of outstanding notes than PIMCO (and which was one of the intervenors earlier in this action who objected to the initial settlement) has substantively objected to the PSJ or questioned whether the Trusts are

authorized to enter it. The Court should reject PIMCO's unsubstantiated suggestion that the Trusts might lack the authority to settle this matter.

II. **The Proposed Stipulated Judgment Does Not Deprive the Noteholders of Any Contractual Rights and Would Not Cause the Trusts to Violate Any Terms of the Trust Related Agreements.**

PIMCO also argues that the Court should not approve the Proposed Stipulated Judgment because it impairs the contractual rights of noteholders. These arguments are unfounded and should be rejected.

PIMCO argues—without any evidence—that entry of the PSJ would cause the Trusts to violate the Trust Related Agreements because it would require them to pay funds in contradiction with the Indenture's payment distribution waterfall. PIMCO Objection at 12. PIMCO asserts that "costs imposed on the Trusts under the [PSJ] are not contemplated under the Trust Related Agreements." *Id.* This is plainly not so. The Administration Agreement and the Trust Agreement have specific provisions referencing the Owner Trustee's or Administrator's authority to compromise non-ordinary course lawsuits, which would invariably include some payment of funds. The Delaware Court of Chancery—which issued a comprehensive opinion on various disputes among the Trusts' controlling entities based on an in-depth consideration of the Trust Related Agreements—interpreted the Trust Agreement, Administration Agreement, and Indenture to find that "non-ordinary course claims would trigger the sometimes-confusing reality that *both* the Indenture Trustee and the Owners may direct the Administrator and the Trusts" to settle a lawsuit. *In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116, 146 & n.133 (Del. Ch. 2020) (citing Administration Agreement § 1(c), Trust Agreement § 4.1(b), and Indenture definition of "Grant"). The Chancery Court concluded that "if the claims asserted

9

against the Trusts relate to the Collateral"[6]—which PIMCO would surely agree these claims do, otherwise they could not have any plausible effect on the noteholders—"the Indenture Trustee may settle the legal action directly on behalf of the Trusts[,]" which "allows the Indenture Trustee to protect the Noteholders' and [Note Insurer's] beneficial interest[,]" or, alternatively, "the Indenture Trustee could direct the Administrator to negotiate and settle the lawsuit at the expense of the Trusts." *Id.* at 146-47 (footnote omitted). Indeed, the plain language of the Administration Agreement also supports this conclusion. *See* Administration Agreement, D.I. 468-3 at § 1(d)(i)(B).

The Indenture's payment waterfall provides for distribution of the Trusts' funds to several entities besides noteholders, including to pay Owner Trustee fees and expenses, Servicing fees and expenses, and Administration fees and expenses. Indenture, D.I. 468-2 at § 8.02(d)(1). Under the Administration Agreement, the Administrator must "perform . . . the duties of the [Trusts]" and it can be reimbursed for its expenses in performance of those obligations, which include "expenses of the [Trusts]." *In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d at 183 & n.402 (alteration in original) (citing Administration Agreement §§ 1(a)(i), 3(b)(iii); Indenture § 8.02(d)(1); Indenture (Appendix A)). Expenses of the Trusts include, for example, the fees of attorneys hired to represent the Trusts. *See id.* at 183. Thus, the Trust Related Agreements have mechanisms to account for payments of Trust expenses— including litigation expenses—without any need to breach the Indenture waterfall or incur debt, and critically, without any requirement for noteholder consent. To find otherwise would suggest

---

[6] The "Collateral" is granted to the Indenture Trustee in the Granting Clause and encompasses "all the [Trusts'] right, title and interest in" the student loans, Servicing Agreements, and any rights to payment, among other things. *See id.* at 134.

that even if the Trusts violate the law, there is no way to resolve any litigation against them if that resolution includes any payment of funds.

The Administration Agreement includes an expense cap of up to $400,000 per year for each of the named Trusts.[7] *See* Administration Agreement, D.I. 468-3 at § 3(b). In comparing the sum of these expense caps for each of the fifteen Trusts, which is approximately $6 million per year, with the $2.25 million the Trusts would owe under the PSJ, ¶¶ 11-16, there is no indication that any payments would need to fall outside the Indenture waterfall. PIMCO's assertions that these payments would have to be paid outside the waterfall and therefore would violate the Indenture are unsupported and factually incorrect. PIMCO Objection at 12. Thus, the PSJ does not violate or seek to modify the Trust Related Agreements.

Next, PIMCO argues that the PSJ imposes non-monetary obligations on the Trusts—such as consenting to the Court's jurisdiction, refraining from violating the CFPA with respect to certain lawsuits, ceasing certain collection efforts, and agreeing to certain safeguards to reduce the likelihood of future violations—that are not permitted by the Trust Related Agreements and therefore violate its contractual rights. PIMCO Objection at 12-13. But PIMCO does not explain how any of these non-monetary provisions have any impact on its contractual right to receive payments under the Indenture waterfall. As a result, PIMCO provides no legal basis to assert an objection based on non-monetary provisions of the PSJ.

---

[7] This excepts The National Collegiate Master Student Loan Trust, which has no expense cap. *See* Order at 2, 4, *In re Nat'l Collegiate Student Loan Trusts Litig.*, Consolidated C.A. No. 12111-VCS (Del. Ch. Apr. 27, 2021), Dkt. No. 1273 (granting an increase in the expense caps to $400,000 for the named Trusts because the Administrator received written instructions to retain counsel on behalf of the Trusts in connection with several proceedings following the August 27, 2020 Chancery Court Opinion clarifying that the Administrator could incur expenses on behalf of the Trusts in certain instances).

PIMCO argues that these non-monetary compliance obligations violate Trust Agreement § 2.03 and Indenture § 3.12 because those provisions delineate the only activities the Trusts may engage in and do not specify these compliance obligations. PIMCO Objection at 13. PIMCO suggests far too narrow of a reading of these provisions. Trust Agreement § 2.03 describes the "purpose" of the Trusts to, among other things, "(ii) . . . provide for the administration of the Trust and the servicing of the Student Loans;" and "(iii) . . . engage in those activities and to enter into such agreements that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith[.]" Trust Agreement, D.I. 468-1 at § 2.03. The PSJ is a necessary and suitable agreement connected to the servicing of the Trusts' loans. Meanwhile, Indenture § 3.12 states that the Trusts "shall not engage in any business other than purchasing, owning, selling and servicing" Trusts loans, "and activities incidental thereto." Indenture, D.I. 468-2 at § 3.12. The non-monetary obligations imposed by the PSJ are incidental to the Trusts' servicing of the NCSLT loans.[8]

As PIMCO acknowledges in its Objection, a separate court has already considered all of its arguments regarding the supposed impairment of its contractual rights that might be caused by a stipulated judgment agreed to between the Trusts and the Bureau. In the *PHEAA-NCSLT* case, the court resoundingly dismissed arguments that PIMCO acknowledges in its Objection "mirror its objections in this case." PIMCO Objection at 15. Indeed, the objections lodged by PIMCO in the *PHEAA-NCSLT* case were much more extensive and cited several additional stipulated judgment provisions that allegedly deprived it of its contractual rights or caused the Trusts to

---

[8] PIMCO also cites Indenture § 3.15, but this provision specifically says the Trusts "shall not make any loan or advance or credit to, or guarantee . . . endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of . . . any other Person[,]" none of which is being imposed by the PSJ. Indenture, D.I. 468-2 at § 3.15.

violate the Trust Related Agreements. This Court should reject PIMCO's impairment arguments here, either based on an independent analysis of those arguments or, as PIMCO concedes in its Objection here, because "the doctrine of collateral estoppel likely would compel this Court to deny PIMCO's Objection to the Proposed Consent Judgment." *Id.*

### III. The Proposed Stipulated Judgment is Fair and Reasonable.

The Proposed Stipulated Judgment is a fair and reasonable resolution of the Bureau's claims, and its provisions for consumer redress and injunctive relief serve the public interest and are consistent with the CFPA's purpose to enforce Federal consumer financial law consistently to ensure consumers have access to fair and transparent markets for consumer financial products and services. 12 U.S.C. § 5511(a). The PSJ is legal, it is clear, it reflects a resolution of the actual claims in the complaint, and it is not tainted in any way. *See Citigroup Glob. Markets*, 752 F.3d at 294-95. The PSJ is supported by the Bureau, the Trusts, and all required Trust-related parties. The PSJ was not objected to by any Trust-related entity, including the Owner Trustee, the Owners, the Administrator, the Special Subservicer, the Note Insurer, or the Indenture Trustee. And neither PIMCO nor the Noteholder Group in their objections argue that the PSJ is unfair or unreasonable. The Court, therefore, should find that the settlement is fair and reasonable, enter the PSJ, and bring an end to this long-running action.

### IV. A Stay of This Case Pending Appeal of Different Case Is Not Warranted.

PIMCO objects to the parties' proposed settlement but asks the Court not to rule on its Objection at this time and instead stay the case pending resolution of its appeal in the *PHEAA-*

13

*NCSLT* matter. PIMCO Objection at 15-16. The Court should deny PIMCO's motion and rule on the parties' Joint Motion.[9]

Contrary to PIMCO's assertion, the three *Landis* factors for determining whether a stay is warranted pending the outcome of another action do not weigh in favor of staying this case. In *Landis*, the Supreme Court recognized that district courts have discretion to control disposition of cases on their own docket, but if "there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," the movant for a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255.

A crucial distinction between this case and those cited by PIMCO—a distinction that necessarily informs any analysis of the three *Landis* factors—is that here the *parties* have heavily negotiated a proposed resolution to the case and have jointly filed a motion seeking entry of a final order, and it is a *non-party* that is seeking a stay that would disrupt that negotiated resolution. By contrast, in *Landis* and the cases upon which PIMCO relies, the question was whether a stay request by one of the parties to an action was warranted, and whether granting such a stay would disadvantage the opposing party. Here, all parties to the case agree that the matter can be resolved here and now, and it is only a non-party with a disputed interest in the settlement agreement—an asserted interest and objection that was already overruled in the

---

[9] It does not appear that PIMCO, as a non-party who has not intervened in this action, has standing to file a motion. The Bureau nevertheless addresses PIMCO's purported motion on its merits.

*PHEAA-NCSLT* case—who is moving for a stay to prevent the entry of that negotiated resolution.

A proper weighing of the *Landis* factors leads to a clear answer: the Court should deny the non-party's request and enter the parties' Proposed Stipulated Judgment. PIMCO argues that the first factor—whether a stay will simplify the issues for trial—weighs in its favor because the Third Circuit's decision in *PHEAA-NCSLT* will supposedly involve the same issues. But the issues relate only to whether a non-party has grounds to object to a settlement agreement duly authorized by all the parties to a case, not to the substantive legal issues that the *Landis* inquiry typically considers. There would be no simplification of the issues before this Court—either with respect to the settlement (whether the settlement is fair and reasonable) or to the substantive issues if this case were to proceed to trial (whether the Trusts' conduct amounted to deceptive and unfair conduct under the CFPA)—that will be informed by the outcome of *PHEAA-NCSLT*. The first *Landis* factor therefore does not support PIMCO's motion for a stay.

The second *Landis* factor—whether discovery is complete and a trial date is set—likewise does not support PIMCO's motion. The factor considers how a case that is midstream, perhaps in its early stages or maybe just before trial, might be affected by a stay. Here the parties are past such considerations, and are at the end of the litigation seeking court approval of a heavily negotiated settlement agreement after more than seven years of litigation. Here it is a non-party seeking to disrupt the efficient resolution of the case, which runs counter to the goal of the second *Landis* prong: judicial economy. *See, e.g., United States v. CCM TCEP, LLC*, No. 21-1461, 2023 WL 5165661 (D. Del. May 18, 2023). The second *Landis* factor, therefore, weighs heavily against PIMCO's motion for a stay.

15

And finally, PIMCO asserts that the third *Landis* factor—whether a stay would unduly prejudice the non-moving party—somehow weighs in its favor. With this argument, PIMCO not only seeks to stay a case to which it is not a party, but also goes so far as to suggest that doing so would not prejudice the actual parties to the case, all of whom have agreed to resolve the matter, believe the settlement is in their interests, and have stated on the record that the settlement is in the public interest. *See* Joint Motion at 2. Because the proposed settlement includes injunctive relief that the parties agree is warranted, and because any delay of that relief will necessarily harm consumers in addition to the interests of the parties, there would be undue prejudice on the parties if PIMCO's motion to stay were granted here. The third *Landis* factor, therefore, also weighs against PIMCO's motion. No stay is warranted here.

## CONCLUSION

For these reasons, the Bureau requests that the Court grant the parties' Joint Motion for Entry of Stipulated Final Judgment and Order and enter the Proposed Stipulated Judgment.

Dated: March 4, 2025

Respectfully submitted,

Cara Petersen
*Principal Deputy Enforcement Director*

Deborah Morris
*Deputy Enforcement Director*

/s/ Stephen Jacques
Stephen Jacques
stephen.jacques@cfpb.gov
202-435-7368

16

*Enforcement Attorneys*
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552
Facsimile: 202-435-7722

*Attorneys for Plaintiff*
*Consumer Financial Protection Bureau*

17