## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

CONSUMER FINANCIAL PROTECTION BUREAU,

      Plaintiff,

      v.

NATIONAL COLLEGIATE MASTER STUDENT
LOAN TRUST, et al.,

      Defendants.

Case No. 17-1323-SB

## DEFENDANTS' RESPONSE TO OBJECTIONS TO JOINT MOTION FOR ENTRY OF STIPULATED ORDER AND JUDGMENT

Defendants (the "Trusts")[1] submit this response to the Objection of Pacific Investment Management Company LLC ("PIMCO") and the Conditional Objection of the Noteholder Group (collectively, "Objections") to the Consumer Financial Protection Bureau (the "CFPB") and the Trusts' Joint Motion to Approve the proposed Stipulated Order and Judgment ("PSJ") filed on January 16, 2025.  In short, PIMCO's objections to the PSJ are without merit, but the Trusts do not object to the Noteholder Group's request for a hearing and additional information regarding the CFPB's ability to settle and implement the PSJ.

PIMCO's objections that the Trusts were not authorized to enter into the PSJ, and that the PSJ's terms violate noteholders' contractual rights, are misplaced.  PIMCO raised the same

---

[1] Defendants are: The National Collegiate Master Student Loan Trust, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, and National Collegiate Student Loan Trust 2007-4.

objections to another proposed consent judgment between the CFPB and the Trusts in *CFPB v. Pennsylvania Higher Education Assistance Authority*, No. 1:24-cv-00756 (M.D. Pa.) ("*CFPB II*"), and the court rejected them on the merits, 2024 WL 4367926 (M.D. Pa. Oct. 1, 2024). Just as in *CFPB II*, the Trusts here were duly authorized to enter into the PSJ, and PIMCO concedes that collateral estoppel precludes its substantive challenges to the PSJ's terms. Similarly, the Trusts oppose PIMCO's request for a stay of this action that is tethered to the Third Circuit's resolution of PIMCO's appeal in *CFPB II*. PIMCO's hope for reversal there does not warrant a delay in the resolution of this action.

By contrast, the Noteholder Group identifies events postdating the Joint Motion to Approve the PSJ—most notably, the CFPB's ongoing shutdown—that raise important questions about the CFPB's ability to implement the PSJ's terms. In response to Defendants' inquiries in light of these events, the CFPB has stated that it expects to retain its authority to implement the PSJ. While Defendants take the CFPB at its word, given the evolving situation at the agency, it may be beneficial for the Noteholder Group and other deal parties to hear directly from the CFPB and receive further information confirming its commitment to implementing the PSJ's terms. Consequently, the Trusts do not oppose the Noteholder Group's request for a hearing on the CFPB's intent and ability to settle this action, before the Court considers the Joint Motion to Approve. The Trusts also respectfully submit that, if the Court is inclined to hold a hearing, the hearing should be held as soon as practicable to provide needed clarity to the Trusts and other interested parties.

**ARGUMENT**

**I.    This Court Should Reject PIMCO's Objections to the PSJ**

**a.  The Trusts Were Authorized to Enter into the Settlement**

As it argued in *CFPB II*, PIMCO argues here that any Trust settlement outside the ordinary course of business requires the Owner Trustee, and the Owner Trustee's authorization of a settlement requires written approval from the Owners.  Dkt. No. 467 at 10–11.  The *CFPB II* court correctly ruled that Owner Trustee authorization, together with written Owner approval, is not the exclusive means of authorizing a Trust settlement, and that the Trusts could rely on the alternative route of authorization in the Administration Agreement, which permits the Indenture Trustee to instruct the Administrator to settle a lawsuit.  *CFPB II*, 2024 WL 4367926, at *9.[2]

But PIMCO's factual premise is also wrong.  Trust counsel *did* receive authorization from the Owner Trustee (among other deal parties) to enter into the PSJ, and the Owner Trustee's authorization *was* preceded by written Owner approval.  *See* Kipnees Decl. ¶ 8.  PIMCO's objection to the Trusts' authority to enter into the settlement is thus both legally and factually incorrect.[3]

---

[2] Similar to *CFPB II*, here, the Administrator was instructed to retain Patterson Belknap Webb & Tyler LLP ("PBWT") as counsel for the Trusts; PBWT negotiated with the CFPB and sought input from the Administrator, the Indenture Trustee, Note Insurer, Owner Trustee and other deal parties; and PBWT received express authorizations or consents from representatives of the Administrator, the Indenture Trustee, Note Insurer, Owner Trustee, and other deal parties to execute the PSJ.  *See* Declaration of Joshua Kipnees ("Kipnees Decl.") ¶¶ 2–8; *CFPB II*, 2024 WL 4367926, at *9–10 (holding that such a process suffices for purposes of settling an action).

[3] PIMCO also mischaracterizes the terms of the PSJ by repeatedly asserting that it would require the Trusts to pay a "civil money penalty."  Dkt. No. 467 at 1, 7, 10.  In point of fact, unlike the proposed stipulated judgment in *CFPB II*, the PSJ here does not call for the payment of any civil monetary penalty.  Rather, the PSJ provides that the Trusts will pay a fixed sum for consumer redress, which the CFPB will distribute to affected borrowers.  Dkt. No. 458-1 ¶¶ 11–14.

### b. Collateral Estoppel Precludes PIMCO's Objections

In any event, as PIMCO itself acknowledges, collateral estoppel "compel[s] this Court to deny PIMCO's Objection to the Proposed Consent Judgment" here, because the *CFPB II* court considered and rejected PIMCO's current arguments. Dkt. No. 467 at 15.

Collateral estoppel prevents "a party from relitigating an issue actually decided in a prior case and necessary to the judgment," *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020), when the party "had a full and fair opportunity to litigate the issue in question," *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016) (quotation omitted).

Every element of collateral estoppel is met here. In *CFPB II*, PIMCO "actually litigated" the same arguments it raises here. *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)). Specifically, PIMCO argued there, as here, (1) that the Trusts lack the authority to enter into a PSJ with the CFPB and (2) that doing so violates the contractual rights of noteholders, by devoting the Trusts' assets to payment and compliance obligations that allegedly are not permitted under the Trusts' governing agreements. *See CFPB II*, No. 1:24-cv-00756, Dkt. No. 33 (PIMCO Brief) at 13–25. The *CFPB II* court addressed those arguments in an opinion, rejected them on the merits, and entered the proposed stipulated judgment as a final judgment. 2024 WL 4367926; *see Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) (for purposes of preclusion, a judgment is final "immediate[ly], notwithstanding any appeal"); *Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 268 n.14 (D. Del. 2020) ("[J]udgments retain their preclusive effect during a pending appeal."). Because PIMCO raised its challenges as separate and independent bases for invalidating the proposed stipulated judgment in *CFPB II*, *see* No. 1:24-cv-00756, Dkt. No. 33 at 16, the court's rejection of each of those arguments was necessary to its decision to enter the

proposed stipulated judgment.  Finally, PIMCO had a full and fair opportunity to litigate its arguments in *CFPB II*:  PIMCO filed a thorough, 31-page opposition brief, 1:24-cv-00756, Dkt. No. 32, after the Court granted PIMCO's requests for both a 28-day extension on its opposition and leave to file a brief nearly twice the length permitted under the local rules, 1:24-cv-00756, Dkt. Nos. 28, 31.

PIMCO's objections to the PSJ are therefore barred by collateral estoppel.

## II.    The Trusts Object to a Stay Pending Resolution of the *CFPB II* Appeal, But Do Not Oppose a Hearing Before the Joint Motion to Approve Is Considered

PIMCO's request for a stay of this action pending resolution of PIMCO's appeal in *CFPB II* is unwarranted.  Another court has already ruled on and rejected the same objections from PIMCO, and there is no reason to believe the Third Circuit will reach a different conclusion.  *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2023 WL 3166727, at *2 (D. Del. Apr. 28, 2023) (denying motion for discretionary stay pending appeal where movant failed to make "strong showing that [it] is likely to succeed on the merits" and that it "will persuade the Third Circuit to disagree with" district court's ruling).  Resolution of this action should not be left in limbo while PIMCO attempts to revive objections it has already lost.

PIMCO emphasizes that in *CFPB II*, the district court stayed the monetary provisions of the stipulated judgment.  Dkt. No. 467 at 9.  But the court did so only *after* granting the motion to enter the stipulated judgment.  1:24-cv-00756, Dkt. No. 59.  Thus, as *CFPB II* illustrates, PIMCO's request for a stay is premature:  PIMCO can ask the Court to stay implementation of the PSJ if and when the Court grants the Joint Motion to Approve and enters judgment.  *See id.* at 4 (noting stay request was "reasonable under the[] circumstances, where the court has entered two intertwined judgments and one of those judgments has been appealed").  Meanwhile, waiting for a resolution of the *CFPB II* appeal—where the CFPB recently requested a three-

month adjournment, *see* 24-3061, Dkt. No. 23 (3d Cir. Feb. 24, 2025)—would unnecessarily postpone disposition of this action.

However, the Noteholder Group identifies several events that have transpired since the parties filed the Joint Motion to Approve that raise questions about the CFPB's current status and capabilities with respect to the PSJ.  The Noteholder Group cites multiple reports that the CFPB's acting Director issued an order preventing the agency from taking any further action in its enforcement matters or ongoing litigation.[4]  *See* Dkt. No. 466 at 2.  In light of those reports, Defendants asked the CFPB whether it remains able and willing to implement the PSJ's terms, if approved.[5]  Kipnees Decl. ¶ 10.  The CFPB confirmed orally and in writing on February 28 and March 3, 2025, respectively, that it "expects to retain its authority to enforce all of the provisions of the PSJ if it is entered by the court, which would include enforcing and complying with all of its provisions."  *Id.*  Although the Trusts have been assured by these representations, given the rapidly evolving situation at the CFPB, both the Noteholder Group and other deal parties may benefit from an opportunity to hear from the CFPB directly and receive additional information confirming the CFPB's commitment to implementing the PSJ.

Thus, the Trusts do not oppose the Noteholder Group's request for a hearing and additional information on the CFPB's intent and ability to implement the PSJ, before the Joint

---

[4] *See also* Hugh Son & Daniel Arkin, *Trump Administration and Musk's DOGE Plan to Fire Nearly All CFPB Staff and Wind Down Agency, Employees Say*, CNBC (Feb. 28, 2025), https://www.nbcnews.com/business/business-news/trump-administration-musks-doge-plan-fire-cfpb-staff-close-agency-rcna194217; Wyatte Grantham-Philips, *The CFPB Drops Its Enforcement Lawsuits Against Capital One, Rocket Homes and More*, AP (Feb. 27, 2025), https://apnews.com/article/cfpb-drops-capital-one-rocket-lawsuits-e3a4a18ccd9ddd97610ef23fd6b843b2.

[5] For example, the PSJ contemplates that the Trusts will pay $2.25 million into a fund administered by the CFPB, which the CFPB will then distribute as redress to affected borrowers. Dkt. No. 458-1 ¶¶ 11, 14–15.

Motion to Approve is considered.  If the Court is inclined to hold a hearing, the Trusts respectfully request that the hearing be held as soon as practicable, to provide much-needed clarity regarding the resolution of this seven-year-old action.

## CONCLUSION

For the foregoing reasons, the Trusts oppose PIMCO's objections, but do not oppose the Noteholder Group's request for a hearing and additional information before the Joint Motion to Approve is considered.

Dated: March 4, 2025

Respectfully submitted,

OF COUNSEL:

Peter W. Tomlinson (*admitted pro hac vice*)
Joshua Kipnees (*admitted pro hac vice*)
Jonah Wacholder (*admitted pro hac vice*)
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Email: pwtomlinson@pbwt.com
        jkipnees@pbwt.com
        jwacholder@pbwt.com

/s/ Michael A. Weidinger
Michael A. Weidinger (DE No. 3330)
Megan Ix Brison (DE No. 6721)
PINCKNEY, WEIDINGER, URBAN &
JOYCE LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806
Tel: (302) 504-1497
Email: mweidinger@pwujlaw.com
        mixbrison@pwujlaw.com

*Counsel for The National Collegiate
Master Student Loan Trust, The National
Collegiate Student Loan Trust 2003-1, The
National Collegiate Student Loan Trust
2004-1, The National Collegiate Student
Loan Trust 2004-2, The National
Collegiate Student Loan Trust 2005-1, The
National Collegiate Student Loan Trust
2005-2, The National Collegiate Student
Loan Trust 2005-3, The National
Collegiate Student Loan Trust 2006-1, The
National Collegiate Student Loan Trust
2006-2, The National Collegiate Student
Loan Trust 2006-3, The National
Collegiate Student Loan Trust 2006-4, The
National Collegiate Student Loan Trust
2007-1, The National Collegiate Student
Loan Trust 2007-2, The National
Collegiate Student Loan Trust 2007-3, and
The National Collegiate Student Loan
Trust 2007-4*